No. 25-2108

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs-Appellees*,

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of
Elections, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia

## JOINT APPENDIX

JASON S. MIYARES
 *Attorney General*

THOMAS J. SANFORD
 *Deputy Attorney General*

CHARLES J. COOPER
BRADLEY L. LARSON
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile
ccooper@cooperkirk.com
blarson@cooperkirk.com

KEVIN M. GALLAGHER
 *Solicitor General*

GRAHAM K. BRYANT
 *Principal Deputy Solicitor General*

MEREDITH L. BAKER
 *Deputy Solicitor General*

JESSICA X. TONG
 *John Marshall Fellow*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
solicitorgeneral@oag.state.va.us

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

Docket Sheet ...................................................................................................1

ECF 23, First Amended Complaint (10-15-25) ..........................................41

ECF 65, Order Consolidating VCIR v. Beals and US v. Virginia (10-18-24) ..............................75

ECF 112, Order Granting in Part and Denying in Part Plaintiffs' Motions for Preliminary Injunction (10-25-24) ...........................................77

ECF 113, Defendants' Notice of Interlocutory Appeal (10-25-24)...............81

ECF 121, Defendants' Motion to Dismiss (11-21-24) .................................85

ECF 127, Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (12-20-24) ...............................................................88

ECF 134, Order Dismissing Interlocutory Appeal as Moot Without Vacating Order Granting Preliminary Injunction (01-14-25)....................127

ECF 135, USCA Judgment as to Defendants' Notice of Interlocutory Appeal (01-14-25) ..............................................................130

ECF 139, United States' Notice of Voluntary Dismissal (01-28-25)...........132

ECF 153, Memorandum Opinion Granting in Part and Denying in Part Defendants' Motion to Dismiss (08-12-25) ..................................134

ECF 154, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (08-12-25) ...............................................166

ECF 160, Defendants' Answer to First Amended Complaint (08-26-25)...............167

ECF 165, Notice of Interlocutory Appeal as to Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (09-11-25) ...................186

ECF 166, Defendants' Motion to Stay Pending Interlocutory Appeal (09-12-25) ...................189

ECF 167, Transmission of Notice of Appeal to US Court of Appeals (09-15-25) .....................199

ECF 171, Plaintiffs' Response in Opposition to Defendants' Motion to Stay Pending Interlocutory Appeal (09-26-25) ...................................200

ECF 172, Plaintiffs' Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs (10-01-25) ...................................214

ECF 172-1, Brief in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs (10-01-25) ...................218

ECF 175, Notice that Defendants Do Not Consent to Plaintiffs' Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs (10-08-25) ...................223

ECF 179, Order Granting Motion for Leave to File an Amended Complaint and Add Party Plaintiffs (10-17-25) ...................................225

ECF 182, Second Amended Complaint (10-23-25)....................................226

ECF 186, Defendants' Memorandum in Support of Motion to Dismiss Second Amended Complaint (11-06-2025)........................................................................................266

ECF 189, Plaintiffs' Response to Defendant's Motion to Dismiss Second Amended Complaint (11-20-2025) ............................................................................................305

APPEAL,LEAD

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
### CIVIL DOCKET FOR CASE #: 1:24-cv-01778-PTG-WBP

Virginia Coalition for Immigrant Rights et al v. Beals et al
Assigned to: District Judge Patricia Tolliver Giles
Referred to: US Magistrate Judge William B. Porter
Case in other court:  4th Circuit, 24-02071
                     Fourth Circuit, 25-02108
Cause: 42:1973 National Voter Registration Act

Date Filed: 10/07/2024
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**Virginia Coalition for Immigrant Rights**      represented by

**Anna Dorman**
The Protect Democracy Project, Inc. (DC)
2020 Pennsylvania Avenue, NW
Suite 163
Washington, DC 20006
**NA**
202-579-4582
Fax: 202-769-3176
Email: anna.dorman@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
The Protect Democracy Project, Inc. (MA)
15 Main Street
Suite 312
Watertown, MA 02472
*** NA ***
(202) 579-4582
Fax: (929) 777-8428
Email: ben.berwick@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle Marie Lang**
Campaign Legal Center
District of Columbia
1101 14th St. NW
Suite 400
Washington, DC 20005
267-205-0578
Email: dlang@campaignlegalcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JA1**

**Eric John Galvez Paredes**
The Protect Democracy Project, Inc.
82 Nassau Street
#601
New York, NY 10038
**NA**
202-579-4582
Fax: 202-769-1376
Email: john.paredes@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ezra David Rosenberg**
Lawyers Committee for Civil Rights Under
Law (DC-NA)
1500 K Street NW
Suite 900
Washington, DC 20005
*** NA ***
202-662-8600
Fax: 202-783-0857
Email: erosenberg@lawyerscommittee.org
*TERMINATED: 03/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
Advancement Project (DC-NA)
1220 L Street Northwest
Suite 850
Washington, DC 20005
**NA**
202-728-9557
Email: hmirza@advancementproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Javon Davis**
Lawyers Committee for Civil Rights Under
Law (DC-NA)
1500 K Street NW
Suite 900
Washington, DC 20005
*** NA ***
202-662-8353
Email: jdavis@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Michael Powers**
Advancement Project (DC-NA)
1220 L Street Northwest
Suite 850
Washington, DC 20005

**NA**
202-728-9557
Fax: 202-728-9558
Email: jpowers@advancementproject.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Hamilton**
Campaign Legal Center (DC-NA)
1101 14th Street NW
Suite 400
Washington, DC 20005
**NA**
202-736-2200
Fax: 202-736-2222
Email: khamilton@campaignlegalcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
Campaign Legal Center
1101 14th St. NW
Suite 400
Washington, DC 20005
202-736-2200
Fax: 202-736-2222
Email: khancock@campaignlegalcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunal Dixit**
Campaign Legal Center (DC-NA)
1101 14th Street NW
Suite 400
Washington, DC 20005
NA
202-736-2200
Fax: 202-736-2222
Email: kdixit@campaignlegalcenter.org
*TERMINATED: 09/08/2025*
*PRO HAC VICE*

**Lucas Della Ventura**
Campaign Legal Center (DC-NA)
1101 14th Street NW
Suite 400
Washington, DC 20005
**NA**
202-736-2200
Fax: 202-736-2222
Email:
ldellaventura@campaignlegalcenter.org
*TERMINATED: 08/20/2025*
*PRO HAC VICE*

**JA3**

*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
Campaign Legal Center (DC-NA)
1101 14th Street NW
Suite 400
Washington, DC 20005
**NA**
202-736-2200
Fax: 202-736-2222
Email: bferguson@campaignlegalcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
The Protect Democracy Project, Inc.
82 Nassau Street
#601
New York, NY 10038
**NA**
202-579-4582
Fax: 202-769-3176
Email:
orion.danjuma@protectdemocracy.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Snow**
Lawyers' Committee for Civil Rights Under
Law
Voting Rights Project
1500 K Street, NW
Suite 900
Washington, DC 20005
202-662-8312
Fax: 202-783-0857
Email: rsnow@lawyerscommittee.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Simone Tyler Leeper**
Campaign Legal Center
1101 14th St NW
Suite 400
Washington, DC 20005
727-418-8011
Email: sleeper@campaignlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shanna Marie Ports**
Campaign Legal Center
1101 14th St. NW
Ste 400

**JA4**

Washington, DC 20005
202-736-2200
Email: sports@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**League of Women Voters of Virginia**          represented by     **Anna Dorman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle Marie Lang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric John Galvez Paredes**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ezra David Rosenberg**
(See above for address)
*TERMINATED: 03/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Javon Davis**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Michael Powers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Hamilton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunal Dixit**
(See above for address)
*TERMINATED: 09/08/2025*
*PRO HAC VICE*

**Lucas Della Ventura**
(See above for address)
*TERMINATED: 08/20/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Snow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Simone Tyler Leeper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shanna Marie Ports**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**African Communities Together**          represented by **Anna Dorman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle Marie Lang**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JA6**

**Eric John Galvez Paredes**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ezra David Rosenberg**
(See above for address)
*TERMINATED: 03/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Javon Davis**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Michael Powers**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine Hamilton**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunal Dixit**
(See above for address)
*TERMINATED: 09/08/2025*
*PRO HAC VICE*

**Rodkangyil Orion Danjuma**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Snow**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Simone Tyler Leeper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shanna Marie Ports**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JA7**

**Plaintiff**

**Rina Shaw**                                    represented by   **Anna Dorman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle Marie Lang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric John Galvez Paredes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ezra David Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Javon Davis**
Lawyers' Committee for Civil Rights Under
Law
1500 K Street NW
Suite 900
Washington, DC 20005
202-662-8353
Email: jdavis@lawyerscommittee.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Michael Powers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JA8**

**Katherine Hamilton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunal Dixit**
Campaign Legal Center (DC-NA)
1101 14th Street NW
Suite 400
Washington, DC 20005
**NA**
202-736-2200
Fax: 202-736-2222
Email: kdixit@campaignlegalcenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lucas Della Ventura**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Snow**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shanna Marie Ports**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JA9**

**Simone Tyler Leeper**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Genet Shiferaw**                         represented by   **Anna Dorman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Benjamin Leon Berwick**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle Marie Lang**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric John Galvez Paredes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ezra David Rosenberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Javon Davis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Michael Powers**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**JA10**

*ATTORNEY TO BE NOTICED*

**Katherine Hamilton**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin P. Hancock**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kunal Dixit**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lucas Della Ventura**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rodkangyil Orion Danjuma**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Snow**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shanna Marie Ports**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Simone Tyler Leeper**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JA11**

**Defendant**

**Susan Beals**
*in her official capacity as Virginia*
*Commissioner of Elections*

represented by **Erika L. Maley**
Office of the Attorney General
Solicitor General
202 North 9th Street
Richmond, VA 23219
703-635-3750
Fax: 804-786-1991
Email: emaley@hunton.com
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
Virginia Office of the Attorney General
Solicitor General
202 North 9th Street
Richmond, VA 23219
804-592-8307
Fax: 804-786-1991
Email: kgallagher@oag.state.va.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
646-285-8691
Email: tsanford@oag.state.va.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
Cooper & Kirk, PLLC (DC-NA)
1523 New Hampshire Ave., NW
Washington, DC 20036
**NA**
202-220-9600
Fax: 202-220-9601
Email: blarson@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
Cooper & Kirk, PLLC (DC-NA)
1523 New Hampshire Ave., NW
Washington, DC 20036
**NA**
202-220-9600
Fax: 202-220-9601
Email: ccooper@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JA12**

**Charles E. James , Jr.**
Williams Mullen (Richmond)
200 South 10th Street
Suite 1600
PO Box 1320
Richmond, VA 23219
(804)420-6529
Fax: (804) 420-6507
Email: cjames@williamsmullen.com
*TERMINATED: 09/08/2025*

**Graham Keith Bryant**
Office of The Attorney General of Virginia
202 North 9th Street
Richmond, VA 23219
804-418-9281
Email: gbryant@oag.state.va.us
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
Cooper & Kirk, PLLC (DC-NA)
1523 New Hampshire Ave., NW
Washington, DC 20036
**NA**
202-220-9600
Fax: 202-220-9601
Email: jmasterman@cooperkirk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John O'Bannon**
*in his official capacity as Chairman of the State Board of Elections*

represented by

**Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles E. James , Jr.**

(See above for address)
*TERMINATED: 09/08/2025*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rosalyn R. Dance**
*in her official capacity as Vice-Chairman of the State Board of Elections*

represented by **Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles E. James , Jr.**
(See above for address)
*TERMINATED: 09/08/2025*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JA14**

**Defendant**

**Georgia Alvis-Long**
*in her official capacity as Secretary of the State Board of Elections*

represented by **Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles E. James , Jr.**
(See above for address)
*TERMINATED: 09/08/2025*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lucas Della Ventura**
(See above for address)
*TERMINATED: 08/20/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Miyares**
*in his official capacity as Virginia Attorney General*

represented by **Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles E. James , Jr.**
(See above for address)
*TERMINATED: 09/08/2025*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christopher P. Stolle**                    represented by **Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**J. Chapman Petersen**                    represented by **Thomas John Sanford**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**Commonwealth of Virginia**                    represented by **Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JA16**                    **Thomas John Sanford**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consolidated Defendant**

**Virginia State Board of Elections**          represented by   **Erika L. Maley**
(See above for address)
*TERMINATED: 08/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Michael Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Sanford**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley L. Larson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Justin Cooper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Keith Bryant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JA17**

**Joseph O'meara Masterman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consolidated Plaintiff**

**United States of America**                    represented by   **Brian Remlinger**
DOJ-Crt
150 M St. NE
Washington, DC 20002
202-717-4154
Email: bremlinger@heckerfink.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Paul Muench**
DOJ-Crt
50 SW 10th St.
Ste Apt. 1305
Miami, FL 33130
202-808-4833
Email: kevin.muench@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J. Mezger**
DOJ-USAO
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: matthew.mezger@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sejal Jhaveri**
DOJ-Crt
950 Pennsylvania Ave
Vot-4con
Washington, DC 20530
202-532-5610
Email: sejal.jhaveri@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Dellheim**
United States Department of Justice - Civil
Rights Division,
950 Pennsylvania Ave, NW
Washington, DC 20530
202-305-5803
Fax: 202-307-3961
Email: richard.dellheim@usdoj.gov

**JA18**

*ATTORNEY TO BE NOTICED*

**Steven Eric Gordon**
United States Attorney's Office (Alexandria)
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
Email: steve.gordon@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Amicus**

**Public Interest Legal Foundation**           represented by **John Christian Adams**
*Public Interest Legal Foundation*                                    107 S. West Street
                                                                                         Suite 700
                                                                                         Alexandria, VA 22314
                                                                                         703-963-8611
                                                                                         Email: adams@electionlawcenter.com
                                                                                         *LEAD ATTORNEY*
                                                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/07/2024 | 1 | Complaint *for Declaratory and Injunctive Relief* ( Filing fee $ 405, receipt number AVAEDC-9781429.), filed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Ports, Shanna) (Entered: 10/07/2024) |
| 10/07/2024 |  | Initial Case Assignment to District Judge Patricia Tolliver Giles and US Magistrate Judge William B. Porter. (Cwel) (Entered: 10/09/2024) |
| 10/08/2024 | 2 | EXHIBIT *in support of Complaint for Declaratory and Injunctive Relief* by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights.. (Attachments: # 1 Exhibit 2- Sept. 3, 2024 ELECT and DMV Memorandum of Understanding, # 2 Exhibit 3 - Sept. 10, 2024 Arlington County Electoral Board Meeting Minutes, # 3 Exhibit 4 - Sept. 16, 2024 Letter from Eric Spicer to Jason Miyares, # 4 Exhibit 5 - Aug. 15, 2024 Fairfax County Electoral Board Minutes, # 5 Exhibit 6 - Sept. 12, 2024 Loudoun County Electoral Board Meeting Packet, # 6 Exhibit 7- 2024.08.20 VFOIA-NVRA Request Letter, # 7 Exhibit 8 - Oct. 3, 2024 Notice of Violation of National Voter Registration Act, # 8 Exhibit 9 - Oct. 7, 2024 Email from ELECT re Notice of Violation of National Voter Registration Act)(Ports, Shanna) (Entered: 10/08/2024) |
| 10/08/2024 | 3 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/08/2024) |
| 10/08/2024 | 4 | Emergency MOTION for Discovery by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/08/2024) |
| 10/09/2024 | 5 | NOTICE of Appearance by Shanna Marie Ports on behalf of League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/09/2024) |

**JA19**

| | | |
|---|---|---|
| 10/09/2024 | 6 | Summons Issued as to Susan Beals, NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed as to USA or Summons Returned Unexecuted as to USA. (Attachments: # 1 Notice to Attorney)(Cwel) Modified to correct docket text on 10/10/2024 (swil). (Entered: 10/09/2024) |
| 10/09/2024 | | Notice of Correction: The filing user has been notified to file a Notice of Hearing Date or a Notice of Waiver of Oral Argument in re 4 Emergency MOTION for Discovery. (wgar, ) (Entered: 10/09/2024) |
| 10/10/2024 | 7 | Financial Interest Disclosure Statement (Local Rule 7.1) by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 8 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 9 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 10 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 11 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 12 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/10/2024 | 13 | Proposed Summons by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/10/2024) |
| 10/11/2024 | 14 | Motion to appear Pro Hac Vice by Robert Brent Ferguson and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9789623. by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/11/2024) |
| 10/11/2024 | 15 | Motion to appear Pro Hac Vice by Kevin Paul Hancock and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9789648. by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/11/2024) |
| 10/11/2024 | 16 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. Susan Beals served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/11/2024) |
| 10/13/2024 | 17 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. Donald W. |

| | | |
|---|---|---|
| | | Merricks served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/13/2024) |
| 10/13/2024 | 18 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. Matthew Weinstein served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/13/2024) |
| 10/13/2024 | 19 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. Rosalyn R. Dance served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/13/2024) |
| 10/13/2024 | 20 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. John O'Bannon served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/13/2024) |
| 10/13/2024 | 21 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. Georgia Alvis-Long served on 10/10/2024, answer due 12/9/2024. (Ports, Shanna) (Entered: 10/13/2024) |
| 10/15/2024 | 22 | Motion to appear Pro Hac Vice by Danielle Marie Lang and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9792347. by League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 23 | AMENDED COMPLAINT against All Defendants, filed by League of Women Voters of Virginia Education Fund, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights, African Communities Together. (Attachments: # 1 Exhibit 1 - Sept. 19, 2024 Letter from Susan Beals to Glenn Youngkin, # 2 Exhibit 2 - Sept. 3, 2024 ELECT and DMV Memorandum of Understanding, # 3 Exhibit 3 - Sept. 10, 2024 Arlington County Electoral Board Meeting Minutes, # 4 Exhibit 4 - Sept. 16, 2024 Letter from Eric Spicer to Jason Miyares and Fairfax County Policy for Referring Individuals who were Removed from the Voter Rolls, # 5 Exhibit 5 - Aug. 15, 2024 Fairfax County Electoral Board Minutes, # 6 Exhibit 6 - Sept. 12, 2024 Loudoun County Electoral Board Meeting Packet, # 7 Exhibit 7- Aug. 20, 2024 VFOIA-NVRA Request Letter re EO35 citizenship purge, # 8 Exhibit 8 - Oct. 3, 2024 Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents, # 9 Exhibit 9 - Oct. 7, 2024 Email from ELECT re Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents, # 10 Corporate Disclosure Statement, # 11 Civil Cover Sheet)(Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 24 | Motion to appear Pro Hac Vice by John Michael Powers and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9792996. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 25 | Motion to appear Pro Hac Vice by Hani Mirza and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9793006. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 26 | MOTION for Preliminary Injunction by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia |

| | | |
|---|---|---|
| | | Coalition for Immigrant Rights. (Attachments: # 1 Plaintiffs Memorandum of Law in Support of Preliminary Injunction, # 2 Exhibit Ex. A, # 3 Exhibit Ex. B, # 4 Exhibit Ex. C, # 5 Exhibit Ex. D, # 6 Exhibit Ex. E, # 7 Exhibit Ex. F, # 8 Exhibit Ex. G, # 9 Exhibit Ex. H, # 10 Exhibit Ex. I, # 11 Exhibit Ex. J, # 12 Exhibit Ex. K, # 13 Exhibit Ex. L, # 14 Exhibit Ex. M, # 15 Exhibit Ex. N, # 16 Exhibit Ex. O, # 17 Exhibit Ex. P, # 18 Exhibit Ex. Q, # 19 Exhibit Ex. R, # 20 Exhibit Ex. S, # 21 Exhibit Ex. T, # 22 Exhibit Ex. U, # 23 Exhibit Ex. V, # 24 Exhibit Ex. W, # 25 Exhibit Ex. X, # 26 Exhibit Ex. Y, # 27 Proposed Order)(Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 27 | Notice of Hearing Date set for 10/24/2024 re 26 MOTION for Preliminary Injunction (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | | Notice of Correction: Filing user notified to file proposed summons re 23 Amended Complaint (Sbro, ) (Entered: 10/15/2024) |
| 10/15/2024 | 28 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 29 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 30 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 31 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 32 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 33 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 34 | Proposed Summons by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights (Ports, Shanna) (Entered: 10/15/2024) |
| 10/15/2024 | 38 | ORDER granting 14 Motion for Pro hac vice Appointed Robert Brent Ferguson for League of Women Voters of Virginia,Robert Brent Ferguson for League of Women Voters of Virginia Education Fund,Robert Brent Ferguson for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/15/2024. (swil) (Entered: 10/16/2024) |
| 10/15/2024 | 39 | ORDER granting 15 Motion for Pro hac vice Appointed Kevin P. Hancock for African Communities Together,Kevin P. Hancock for League of Women Voters of Virginia,Kevin P. Hancock for League of Women Voters of Virginia Education Fund,Kevin P. Hancock for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/15/2024. (swil) (Entered: 10/16/2024) |
| 10/16/2024 | 35 | Summons Issued as to Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein, NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the |

| | | |
|---|---|---|
| | | summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (Attachments: # 1 Notice to Attorney)(Sbro, ) (Entered: 10/16/2024) |
| 10/16/2024 | | Set Deadline as to 26 MOTION for Preliminary Injunction. Motion Hearing set for 10/24/2024 at 10:00 AM in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles. (triv) (Entered: 10/16/2024) |
| 10/16/2024 | 36 | Motion to appear Pro Hac Vice by Javon Deonte Davis and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9795380. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/16/2024) |
| 10/16/2024 | 37 | Motion to appear Pro Hac Vice by Ezra David Rosenberg and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9795383. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/16/2024) |
| 10/16/2024 | 40 | ORDERED that the parties in the above referenced cases are directed to notify the Court no later than noon on Friday, October 18, 2024, for any reason why these cases should not be consolidated. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (Sbro, ) (Entered: 10/16/2024) |
| 10/16/2024 | 41 | Motion to appear Pro Hac Vice by Ryan Snow and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9796054. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/16/2024) |
| 10/16/2024 | 42 | ORDER granting 22 Motion for Pro hac vice Appointed Danielle Marie Lang for African Communities Together,Danielle Marie Lang for League of Women Voters of Virginia,Danielle Marie Lang for League of Women Voters of Virginia Education Fund. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (swil) (Entered: 10/16/2024) |
| 10/16/2024 | 43 | ORDER granting 24 Motion for Pro hac vice Appointed John Michael Powers for African Communities Together,John Michael Powers for League of Women Voters of Virginia,John Michael Powers for League of Women Voters of Virginia Education Fund,John Michael Powers for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (swil) (Entered: 10/16/2024) |
| 10/16/2024 | 44 | ORDER granting 25 Motion for Pro hac vice Appointed Hani Mizra for League of Women Voters of Virginia,Hani Mizra for League of Women Voters of Virginia Education Fund,Hani Mizra for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (swil) (Entered: 10/16/2024) |
| 10/16/2024 | 45 | ORDER granting 37 Motion for Pro hac vice Appointed Ezra David Rosenberg for African Communities Together,Ezra David Rosenberg for League of Women Voters of Virginia,Ezra David Rosenberg for League of Women Voters of Virginia Education Fund,Ezra David Rosenberg for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (swil) (Entered: 10/16/2024) |
| 10/16/2024 | 46 | MOTION to Transfer Case *to Richmond Division* by Susan Beals. (Sanford, Thomas) (Entered: 10/16/2024) |

| | | |
|---|---|---|
| 10/16/2024 | 47 | Brief in Support to 46 MOTION to Transfer Case *to Richmond Division* filed by Susan Beals. (Sanford, Thomas) (Entered: 10/16/2024) |
| 10/16/2024 | 48 | ORDER granting 36 Motion for Pro hac vice Appointed Javon Deonte Davis for African Communities Together,Javon Deonte Davis for League of Women Voters of Virginia,Javon Deonte Davis for League of Women Voters of Virginia Education Fund,Javon Deonte Davis for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/16/2024. (swil) (Entered: 10/17/2024) |
| 10/17/2024 | 49 | ORDERED is the following expedited schedule for the Motion:<br>On or before 5:00 p.m. on Friday, October 18, 2024, Defendants must file any opposition to the Motion;<br>On or before 2:00 p.m. on Sunday, October 20, 2024, Plaintiffs must file any reply to any opposition filed by Defendants;<br>Oral argument on the Motion will be held at 11:00 a.m. on Monday, October 21, 2024, in Courtroom 400. Signed by US Magistrate Judge William B. Porter on 10/17/2024. (dvanm) (Entered: 10/17/2024) |
| 10/17/2024 | | Set/Reset Deadlines as to 4 Emergency MOTION for Discovery . Motion Hearing set for 10/21/2024 at 11:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (dvanm) (Entered: 10/17/2024) |
| 10/17/2024 | 50 | ORDER granting 41 Motion for Pro hac vice Appointed Ryan Snow for African Communities Together,Ryan Snow for League of Women Voters of Virginia,Ryan Snow for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/17/2024. (swil) (Entered: 10/17/2024) |
| 10/18/2024 | 51 | Motion to appear Pro Hac Vice by Simone Leeper and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9799907. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 52 | Motion to appear Pro Hac Vice by Benjamin L. Berwick and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9799928. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 53 | Motion to appear Pro Hac Vice by Rodkangyil Orion Danjuma and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9799950. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 54 | Motion to appear Pro Hac Vice by Anna Dorman and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9799970. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 55 | Motion to appear Pro Hac Vice by Eric John Galvez Paredes and Certification of Local Counsel Shanna Marie Ports Filing fee $ 75, receipt number AVAEDC-9799975. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/18/2024) |

| | | |
|---|---|---|
| 10/18/2024 | 56 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Susan Beals served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 57 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Rosalyn R. Dance served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 58 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Matthew Weinstein served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 59 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Donald W. Merricks served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 60 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights John O'Bannon served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 61 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Georgia Alvis-Long served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 62 | ORDERED that Plaintiffs in both cases shall file their respective oppositions to the Motions to Transfer Venue (Civil Action No. l:24-cv-1778, Dkt. 46; Civil Action No. l:24-cv- 1807, Dkt. 11) no later than 9:00 a.m. on Monday October 21, 2024. Thereafter, the Court will decide the motion on the papers; and it is further ORDERED that the Court will tentatively set the hearing on the United States Motion for Preliminary Injunction (Dkt. 9) on Thursday, October 24, 2024, at 10:00 a.m. (See Order for further details). Signed by District Judge Patricia Tolliver Giles on 10/18/2024. (Sbro, ) (Entered: 10/18/2024) |
| 10/18/2024 | 63 | Request for Hearing by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights re 26 MOTION for Preliminary Injunction *Request for Evidentiary Hearing* (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 64 | SUMMONS Returned Executed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights Jason Miyares served on 10/17/2024, answer due 11/7/2024 (Ports, Shanna) (Entered: 10/18/2024) |
| 10/18/2024 | 65 | ORDER that Virginia Coalition for Immigrant Rights, et al, v. Susan Beals, et al. Civil Action No. 1:24-cv-1778, and United States of America v. Commonwealth of Virginia, et al., Civil Action No. 1:24-cv-1807, are consolidated; Virginia Coalition for Immigrant Rights, et al, v. Susan Beals, et al, Civil Action No. l:24-cv-1778 is designated as the lead case. Documents should bear both case numbers and need only be filed in the lead case (see Order for details) Signed by District Judge Patricia Tolliver Giles on 10/18/24. (pmil, ) (Entered: 10/18/2024) |

| | | |
|---|---|---|
| 10/18/2024 | 66 | ORDER that, to the extent that it is necessary, the Court will conduct an evidentiary hearing on 10/24/2024, at the currently scheduled time for the hearing on Pltfs' Motion for Preliminary Injunction (see Order for details). Signed by District Judge Patricia Tolliver Giles on 10/18/24. (pmil, ) (Entered: 10/18/2024) |
| 10/18/2024 | 67 | Opposition to 4 Emergency MOTION for Discovery filed by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/18/2024) |
| 10/20/2024 | 68 | REPLY to Response to Motion re 4 Emergency MOTION for Discovery filed by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Exhibit Ex. 1, # 2 Exhibit Ex. 2)(Ports, Shanna) (Entered: 10/20/2024) |
| 10/20/2024 | 69 | Opposition *to Defendants' Motion to Transfer Division* filed by United States of America. (Jhaveri, Sejal) (Entered: 10/20/2024) |
| 10/21/2024 | 70 | Opposition to 46 MOTION to Transfer Case *to Richmond Division* filed by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/21/2024) |
| 10/21/2024 | 71 | Minute Entry for proceedings held before US Magistrate Judge William B. Porter: Motion Hearing held on 10/21/2024. Plaintiff appeared through Simone Leaper. Defendant appeared through Thomas Sanford. The parties provided argument to the court. The Court granted in part and denied in part the Plaintiff's 4 Emergency Motion for Discovery. Order to follow. (Tape #FTR.)(Dcrow, ) (Entered: 10/21/2024) |
| 10/21/2024 | 72 | Plaintiffs' Motion is GRANTED in part and DENIED in part. Defendants are Ordered to provide, on a rolling basis, beginning now and with a completion date of Wednesday, October 23, 2024, at noon, the following information: 1. Individualized voter registration information for the registered voters Defendants have identified and removed from the official list of eligible voters on or after August 7, 2024. 2. Individualized voter registration information for voter registration applicants denied registration based on alleged non-citizenship on or after August 7, 2024. 3. The Virginia voter file snapshot for August 7, 2024. 4. The Virginia voter file snapshot for today, October 21, 2024. In all other respects, Plaintiffs Motion is DENIED without prejudice to their right to pursue additional discovery after the Court has authorized non-expedited discovery. Signed by US Magistrate Judge William B. Porter on 10/21/2024. (Dcrow, ) (Main Document 72 replaced on 10/22/2024) (jlan, ). (Entered: 10/21/2024) |
| 10/21/2024 | 73 | MEMORANDUM ORDER that Defendants' motions to transfer (Lead Case Dkt. 46; Civil Action No. 1:24-cv-l 807, Dkt. 11) are DENIED (See Memorandum Order for further details). Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 74 | MOTION for Extension *of Page Limit for a Consolidated Opposition Brief* by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/21/2024) |
| 10/21/2024 | 75 | MOTION for Leave for Expert Witness Dr. Michael McDonald to Appear Virtually at Hearing on Motion for Preliminary Injunction by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/21/2024) |

| 10/21/2024 | 76 | ORDER granting 51 Motion for Pro hac vice Appointed Simone Tyler Leeper for African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund and Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 77 | ORDER granting 55 Motion for Pro hac vice Appointed Eric John Galvez Paredes for African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, and Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 78 | ORDER granting 54 Motion for Pro hac vice Appointed Anna Dorman for African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, and Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 79 | ORDER granting 53 Motion for Pro hac vice Appointed Rodkangyil Orion Danjuma for African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, and Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 80 | ORDER granting 52 Motion for Pro hac vice Appointed Benjamin Leon Berwick for African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, and Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 10/21/2024. (jlan) (Entered: 10/21/2024) |
| 10/21/2024 | 81 | NOTICE of Appearance by Richard Dellheim on behalf of United States of America (Dellheim, Richard) (Entered: 10/21/2024) |
| 10/22/2024 | 82 | ORDERED that Defendants Motion for Extension of Page Limit for a Consolidated Opposition Brief (Dkt. 74) is GRANTED. Defendants will submit a Consolidated Opposition Brief that will not exceed 45 pages. Signed by District Judge Patricia Tolliver Giles on 10/22/2024. (Sbro, ) (Entered: 10/22/2024) |
| 10/22/2024 | 83 | NOTICE of Appearance by Erika L. Maley on behalf of Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein (Maley, Erika) (Entered: 10/22/2024) |
| 10/22/2024 | 84 | NOTICE of Appearance by Graham Keith Bryant on behalf of Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein (Bryant, Graham) (Entered: 10/22/2024) |
| 10/22/2024 | 85 | Motion to appear Pro Hac Vice by Charles J. Cooper and Certification of Local Counsel Thomas J. Sanford Filing fee $ 75, receipt number AVAEDC-9805715. by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/22/2024) |
| 10/22/2024 | 86 | Motion to appear Pro Hac Vice by Bradley L. Larson and Certification of Local Counsel Thomas J. Sanford Filing fee $ 75, receipt number AVAEDC-9805749. by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/22/2024) |
| 10/22/2024 | 87 | Motion to appear Pro Hac Vice by Joseph O. Masterman and Certification of Local Counsel Thomas J. Sanford Filing fee $ 75, receipt number AVAEDC-9805761. by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald |

| | | W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/22/2024) |
|---|---|---|
| 10/22/2024 | 88 | ORDER granting 85 Motion for Pro hac vice Appointed Charles Justin Cooper for Georgia Alvis-Long,Charles Justin Cooper for Commonwealth of Virginia,Charles Justin Cooper for Rosalyn R. Dance,Charles Justin Cooper for Donald W. Merricks,Charles Justin Cooper for Jason Miyares,Charles Justin Cooper for John O'Bannon,Charles Justin Cooper for Virginia State Board of Elections,Charles Justin Cooper for Matthew Weinstein. Signed by District Judge Patricia Tolliver Giles on 10/22/2024. (swil) (Entered: 10/22/2024) |
| 10/22/2024 | 89 | ORDER granting 86 Motion for Pro hac vice Appointed Bradley L. Larson for Georgia Alvis-Long,Bradley L. Larson for Susan Beals,Bradley L. Larson for Commonwealth of Virginia,Bradley L. Larson for Rosalyn R. Dance,Bradley L. Larson for Donald W. Merricks,Bradley L. Larson for Jason Miyares,Bradley L. Larson for John O'Bannon,Bradley L. Larson for Virginia State Board of Elections,Bradley L. Larson for Matthew Weinstein. Signed by District Judge Patricia Tolliver Giles on 10/22/2024. (swil) (Entered: 10/22/2024) |
| 10/22/2024 | 90 | ORDER granting 87 Motion for Pro hac vice Appointed Joseph O'meara Masterman for Georgia Alvis-Long,Joseph O'meara Masterman for Susan Beals,Joseph O'meara Masterman for Commonwealth of Virginia,Joseph O'meara Masterman for Rosalyn R. Dance,Joseph O'meara Masterman for Donald W. Merricks,Joseph O'meara Masterman for Jason Miyares,Joseph O'meara Masterman for John O'Bannon,Joseph O'meara Masterman for Virginia State Board of Elections,Joseph O'meara Masterman for Matthew Weinstein. Signed by District Judge Patricia Tolliver Giles on 10/22/2024. (swil) (Entered: 10/22/2024) |
| 10/22/2024 | 91 | NOTICE by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights *of Supplemental Authority* (Attachments: # 1 Exhibit A- Excerpts from Preliminary Injunction Hearing Transcript, # 2 Exhibit B- ACIJ v. Allen Preliminary Injunction Order)(Ports, Shanna) (Entered: 10/22/2024) |
| 10/22/2024 | 92 | Memorandum in Opposition re 26 MOTION for Preliminary Injunction filed by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Attachments: # 1 Exhibit Declaration of Ashley Coles, # 2 Exhibit Declaration of Steve Kiski, # 3 Exhibit Declaration of Graham Bryant, # 4 Exhibit Ex. A to Bryant Decl., # 5 Exhibit Ex. B to Bryant Decl., # 6 Exhibit Ex. C to Bryant Decl., # 7 Exhibit Ex. D to Bryant Decl., # 8 Exhibit Ex. E to Bryant Decl., # 9 Exhibit Ex. F to Bryant Decl., # 10 Exhibit Ex. G to Bryant Decl., # 11 Exhibit Ex. H to Bryant Decl., # 12 Exhibit Ex. I to Bryant Decl., # 13 Exhibit Ex. J to Bryant Decl.)(Maley, Erika) (Entered: 10/22/2024) |
| 10/22/2024 | 93 | MOTION for Leave to File *Amicus Brief* by Public Interest Legal Foundation. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Supplement Corporate Financial Disclosure)(Adams, John) (Entered: 10/22/2024) |
| 10/23/2024 | 94 | NOTICE of Appearance by Charles E. James, Jr on behalf of Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein (James, Charles) (Entered: 10/23/2024) |
| 10/23/2024 | 95 | MOTION for Electronic Device Application by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Attachments: # 1 Exhibit)(James, Charles) (Entered: 10/23/2024) |

| 10/23/2024 | 96 | MOTION for Electronic Device Application by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Attachments: # 1 Exhibit Request for Authorization)(Sanford, Thomas) (Entered: 10/23/2024) |
| --- | --- | --- |
| 10/23/2024 | 97 | ORDER that the 75 Motion for Leave for Expert Witness to Appear Virtually is **GRANTED**. Pltfs' expert witness, Dr. McDonald, may testify remotely at the hearing to be held on 10/24/2024. Pltfs are **DIRECTED** to ensure that, if they intend to refer to exhibits during Dr. McDonald's testimony, that Mr. McDonald has copies of said exhibits. Pltfs are further **DIRECTED** to provide the appropriate equipment to facilitate the remote testimony. Pltfs must fill out the "Request for Authorization to Bring Electronic Device(s) into the United States District Court for the Eastern District of Virginia" form on the Court's website. Defts may raise any objections to Dr. McDonald's testimony at said hearing. Signed by District Judge Patricia Tolliver Giles on 10/23/24. (pmil, ) (Entered: 10/23/2024) |
| 10/23/2024 | 98 | TRANSCRIPT of proceedings held on 10/21/24 (Motion for Expedited Discovery), before Judge William B. Porter. Court Reporter Rhonda Montgomery, Telephone number 703-299-4599. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have thirty (30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after ninety (90) calendar days. The policy is located on our website at www.vaed.uscourts.gov . Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 11/22/2024. Redacted Transcript Deadline set for 12/23/2024. Release of Transcript Restriction set for 1/21/2025.(Montgomery, Rhonda) (Entered: 10/23/2024)** |
| 10/23/2024 | 99 | MOTION for Electronic Device Application by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Exhibit Request for Authorization)(Ports, Shanna) (Entered: 10/23/2024) |
| 10/23/2024 | 100 | Memorandum *Reply in Support of Motion for Preliminary Injunction* filed by United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Jhaveri, Sejal) (Entered: 10/23/2024) |
| 10/23/2024 | 101 | NOTICE of Appearance by Steven Eric Gordon on behalf of United States of America (Gordon, Steven) (Entered: 10/23/2024) |
| 10/23/2024 | 102 | MOTION for Electronic Device Application by United States of America. (Remlinger, Brian) (Entered: 10/23/2024) |
| 10/23/2024 | 103 | REPLY to Response to Motion re 26 MOTION for Preliminary Injunction filed by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Exhibit AA- Supplemental Porte Declaration)(Ports, Shanna) (Entered: 10/23/2024) |
| 10/23/2024 | 104 | ORDER granting 96 Motion for Electronic Device Application. Signed by District Judge Patricia Tolliver Giles on 10/23/24. (pmil, ) (Entered: 10/24/2024) |
| 10/23/2024 | 105 | ORDER granting 99 Motion for Electronic Device Application. Signed by District Judge Patricia Tolliver Giles on 10/23/24. (pmil, ) (Entered: 10/24/2024) |

| | | |
|---|---|---|
| 10/23/2024 | 106 | ORDER granting 95 Motion for Electronic Device Application. Signed by District Judge Patricia Tolliver Giles on 10/23/24. (pmil, ) (Entered: 10/24/2024) |
| 10/24/2024 | 107 | ORDER granting 102 Motion for Electronic Device Application. Signed by District Judge Patricia Tolliver Giles on 10/24/24. (pmil, ) (Entered: 10/24/2024) |
| 10/24/2024 | 108 | EXHIBIT *(s) BB, CC, and DD to Plaintiffs' Reply Brief* by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights.. (Attachments: # 1 Exhibit CC-Diaz Tavera Declaration, # 2 Exhibit DD- Dorman Declaration)(Ports, Shanna) (Entered: 10/24/2024) |
| 10/24/2024 | 109 | ORDER that the Public Interest Legal Foundation, Inc.'s 93 Motion for Leave to File Amicus Curiae Brief is **DENIED** (see Order for details). Signed by District Judge Patricia Tolliver Giles on 10/24/24. (pmil, ) (Entered: 10/24/2024) |
| 10/24/2024 | 110 | Minute Entry for proceedings held before District Judge Patricia Tolliver Giles: Motion Hearing held on 10/24/2024. Appearances of Counsel for Plaintiffs and Counsel for Defendants.<br>Preliminary matters and Objections discussed.<br>Plaintiffs Oral Motion to Admit Exhibits - a redacted, purged list and 3 declarations (white notebook). The Court recesses to review new exhibits. Court resumes. Objections heard and Taken Under Advisement. (Re: Exhibits BB, CC, DD)<br>No Objection of the Defendants to the redacted, purged list - Received and Admitted and labeled as Exhibit EE.<br>Defendants object to the Declaration and Proposed Testimony of Plaintiffs Witness Michael McDonald - Court Reserves Ruling as to this Objection and allowing argument of Defendants first, the Court then ruling after argument.<br>Plaintiffs Oral Motion to Admit Under Seal a Flash Drive and 2 voter file snapshots.<br>Plaintiffs and Defendants Rest/Evidence concluded (Plaintiffs will not be calling witness Michael McDonald).<br>Pltfs Exhibits BB, CC, DD Declarations, Pltfs Exhibit EE Redacted, Purged List, Pltfs Exhibit FF Under Seal Flash Drive All Received and Admitted.<br>RE: 26 MOTION for Preliminary Injunction filed by League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights, African Communities Together, League of Women Voters of Virginia and 9 (24cv1807) MOTION for Preliminary Injunction by United States of America -<br>MOTIONS ARGUED AND TAKEN UNDER ADVISEMENT.<br>Court adjourns at 4:14 p.m. and **Case/Motion Hearing CONTINUED to 10/25/2024 at 09:30 AM** in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles as to 26 MOTION for Preliminary Injunction and 9 (24cv1807) MOTION for Preliminary Injunction by United States of America. (Attachments: # 1 Exhibit EE - filed in open court) Court Reporter: S. Wallace (pmil, ) (Entered: 10/24/2024) |
| 10/25/2024 | 111 | Minute Entry for proceedings held before District Judge Patricia Tolliver Giles: Motion Hearing held on 10/25/2024.<br>Appearances of Counsel for Plaintiffs and Counsel for Defendants.<br>RE: 26 MOTION for Preliminary Injunction filed by League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights, African Communities Together, League of Women Voters of Virginia and 9 (1:24cv1807) MOTION for Preliminary Injunction by United States of America - MOTIONS GRANTED IN PART AND DENIED IN PART - ORDER TO FOLLOW.<br>Defendants Oral Motion to Stay Injunction - DENIED.<br>Court Reporter: S. Wallace (pmil, ) (Entered: 10/25/2024) |

| 10/25/2024 | [112](#) | ORDER that Pltfs' [26](#) , [9](#) (1:24cv1807) Motions for Preliminary Injunction are **GRANTED in part** and **DENIED in part**; the Commonwealth of Virginia, the Virginia State Board of Elections, and Susan Beals, John O'Bannon, Rosalyn Dance, Georgia Alvis-Long, Donald Merricks, and Matthew Weinstein in their official capacities, along with their agents, are enjoined from continuing any systematic program intended to remove the names of ineligible voters from registration lists less than 90 days before the November 5, 2024, federal General Election, although this does not preclude removal of names from the official list of voters at the request of the registrant, by reason of criminal conviction or mental incapacity (as provided by Virginia law), individual correction, or by reason of the death of the registrant (see Order for additional directives and details); the Motions for Preliminary Injunction (Dkt. 26; Civil Action No.l:24-cv-1807, Dkt. 9) are **DENIED** in all other respects; this injunction expires on the day after the 2024 General Election. Signed by District Judge Patricia Tolliver Giles on 10/25/24. (pmil, ) (Entered: 10/25/2024) |
|---|---|---|
| 10/25/2024 | [113](#) | NOTICE OF INTERLOCUTORY APPEAL as to [112](#) Order on Motion for Preliminary Injunction,,,, by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. Filing fee $ 605, receipt number AVAEDC-9814209. (Maley, Erika) (Entered: 10/25/2024) |
| 10/25/2024 | [114](#) | Transmission of Notice of Appeal to US Court of Appeals re [113](#) Notice of Interlocutory Appeal, (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov). (jlan) (Entered: 10/25/2024) |
| 10/25/2024 | [115](#) | USCA 4th Circuit Case Number 24-2071 for [113](#) Notice of Interlocutory Appeal, filed by Rosalyn R. Dance, Jason Miyares, Matthew Weinstein, John O'Bannon, Virginia State Board of Elections, Commonwealth of Virginia, Donald W. Merricks, Susan Beals, Georgia Alvis-Long. (jlan) (Entered: 10/25/2024) |
| 10/27/2024 | [116](#) | ORDER of USCA as to [113](#) Notice of Interlocutory Appeal, filed by Rosalyn R. Dance, Jason Miyares, Matthew Weinstein, John O'Bannon, Virginia State Board of Elections, Commonwealth of Virginia, Donald W. Merricks, Susan Beals, Georgia Alvis-Long. Appellants' motion for a stay of the district court's preliminary injunction pending appeal is DENIED in all respects except for paragraph 7 of the district court's order, where it is GRANTED. Appellants' request for an administrative stay is denied as moot (see Order for further details). (swil) (Entered: 10/28/2024) |
| 10/30/2024 | [117](#) | Consent MOTION for Extension *of Time to Respond to Complaints and File a Consolidated Brief* by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Attachments: # [1](#) Exhibit Proposed Order) (Sanford, Thomas) (Entered: 10/30/2024) |
| 10/31/2024 | [118](#) | ORDERED that the Motion (Dkt. 117) is GRANTED; and it is further ORDERED that Defendants shall file responsive pleadings in the above consolidated actions and respond to the Organizational Plaintiffs First Amended Complaint and the United States Complaint by November 21, 2024 (See Order for further details). Signed by District Judge Patricia Tolliver Giles on 10/31/2024. (Sbro, ) (Entered: 10/31/2024) |
| 11/14/2024 | [119](#) | TRANSCRIPT of proceedings for dates of 10-24-24, before Judge Patricia Tolliver Giles, re [113](#) Notice of Interlocutory Appeal, [115](#) USCA Case Number, Court Reporter/Transcriber Scott Wallace, Telephone number 202 277-3739. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the** |

| | | |
|---|---|---|
| | | **public without redaction after 90 calendar days. The policy is located on our website at** www.vaed.uscourts.gov *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/16/2024. Redacted Transcript Deadline set for 1/14/2025. Release of Transcript Restriction set for 2/12/2025.(wallace, scott) (Entered: 11/14/2024)** |
| 11/14/2024 | [120](#) | TRANSCRIPT of proceedings for dates of 10-25-24, before Judge Patricia Tolliver Giles, re [113](#) Notice of Interlocutory Appeal, [115](#) USCA Case Number, Court Reporter/Transcriber Scott Wallace, Telephone number 202 277-735. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at** www.vaed.uscourts.gov *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/16/2024. Redacted Transcript Deadline set for 1/14/2025. Release of Transcript Restriction set for 2/12/2025.(wallace, scott) Modified text on 11/26/2024 (jlan) (Entered: 11/14/2024)** |
| 11/21/2024 | [121](#) | MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 11/21/2024) |
| 11/21/2024 | [122](#) | Memorandum in Support re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 11/21/2024) |
| 11/25/2024 | | Notice of Correction: Filing user notified to file a Notice of Hearing or Notice of Waiver of Oral Argument re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* (Sbro, ) (Entered: 11/25/2024) |
| 11/27/2024 | [123](#) | Notice of Hearing Date set for January 16, 2025 re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* (Maley, Erika) (Entered: 11/27/2024) |
| 12/02/2024 | | Set Deadline as to [121](#) MOTION to Dismiss for Failure to State a Claim and for lack of jurisdiction. Motion Hearing set for 1/16/2025 at 10:00 AM in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles. (triv) (Entered: 12/02/2024) |
| 12/03/2024 | [124](#) | Motion to appear Pro Hac Vice by Katherine Hamilton and Certification of Local Counsel Shanna Ports Filing fee $ 75, receipt number AVAEDC-9878531. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 12/03/2024) |
| 12/03/2024 | [125](#) | ORDER granting [124](#) Motion for Pro hac vice Appointed Katherine Hamilton for African Communities Together,Katherine Hamilton for League of Women Voters of Virginia,Katherine Hamilton for League of Women Voters of Virginia Education Fund,Katherine Hamilton for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 12/3/2024. (swil) (Entered: 12/04/2024) |

| 12/09/2024 | [126](#) | NOTICE of Appearance by Matthew J. Mezger on behalf of United States of America (Mezger, Matthew) (Entered: 12/09/2024) |
| 12/20/2024 | [127](#) | RESPONSE in Opposition re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 12/20/2024) |
| 12/20/2024 | [128](#) | RESPONSE in Opposition re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by United States of America. (Attachments: # [1](#) Exhibit 1 - Alabama Hearing Transcript)(Muench, Kevin) (Entered: 12/20/2024) |
| 12/20/2024 | [129](#) | Consent MOTION for Extension of Time to File Response/Reply as to [128](#) Response in Opposition to Motion, [127](#) Response in Opposition to Motion, by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 12/20/2024) |
| 12/20/2024 | [130](#) | ORDERED that the parties' Consent Motion for Extension of Time to File Response/Reply (Dkt. 129) is GRANTED. Defendants will file their reply brief by January 9, 2025. Signed by District Judge Patricia Tolliver Giles on 12/20/2024. (jlan) (Entered: 12/20/2024) |
| 01/09/2025 | [131](#) | REPLY to Response to Motion re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 01/09/2025) |
| 01/09/2025 | [132](#) | REPLY to Response to Motion re [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction (Amended)* filed by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 01/09/2025) |
| 01/10/2025 | [133](#) | ORDER that the hearing on Defts' [121](#) MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* is **TERMINATED**; the parties confer and then re-notice the hearing for either January 30, January 31, February 7, or February 14, 2025. Signed by District Judge Patricia Tolliver Giles on 01/10/25. (pmil, ) (Entered: 01/10/2025) |
| 01/14/2025 | [134](#) | ORDER of USCA as to [113](#) Notice of Interlocutory Appeal, filed by Rosalyn R. Dance, Jason Miyares, Matthew Weinstein, John O'Bannon, Virginia State Board of Elections, Commonwealth of Virginia, Donald W. Merricks, Susan Beals, Georgia Alvis-Long. Appellants move to dismiss their interlocutory appeal of the district court's preliminary injunction order as moot. Appellees agree that this appeal is moot and should be dismissed. The district court's preliminary injunction expired, by its own terms, on November 6, 2024. Accordingly, we agree that this appeal is moot, and we grant Appellants motion to dismiss the appeal as moot. See Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri, 361 U.S. 363, 367 (1960). Appellants further move this court to vacate the district court's order granting a preliminary injunction and this court's October 27, 2024, order denying in part and granting in part their motion for a stay of the preliminary injunction pending appeal. Appellees oppose the motion to vacate. Where, as here, the mooted appeal is of a preliminary injunction in an ongoing case in the district court, and the orders that Appellants seek to vacate have no preclusive effect, it is generally sufficient to dismiss the appeal without vacating the orders. See Fleet Feet, Inc. v. NIKE, Inc., 986 F.3d 458, 466-67 (4th Cir. 2021). After reviewing the parties submissions, we find no good reason in this case to depart from the general rule. |

**JA33**

| | | Accordingly, we deny Appellants motion to vacate preliminary orders. (Sbro, ) (Entered: 01/14/2025) |
|---|---|---|
| 01/14/2025 | 135 | USCA JUDGMENT as to 113 Notice of Interlocutory Appeal, filed by Rosalyn R. Dance, Jason Miyares, Matthew Weinstein, John O'Bannon, Virginia State Board of Elections, Commonwealth of Virginia, Donald W. Merricks, Susan Beals, Georgia Alvis-Long. In accordance with the decision of this court, this appeal is dismissed as moot. This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41. (Sbro, ) (Entered: 01/14/2025) |
| 01/16/2025 | 136 | Notice of Hearing Date set for January 31, 2025 re 121 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* (Maley, Erika) (Entered: 01/16/2025) |
| 01/17/2025 | | Set Deadline as to 121 MOTION to Dismiss for Failure to State a Claim and for lack of jurisdiction. Motion Hearing set for 1/31/2025 at 10:00 AM in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles. (triv) (Entered: 01/17/2025) |
| 01/24/2025 | 137 | MOTION for Electronic Device Application *for Hearing on January 31, 2025* by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 01/24/2025) |
| 01/27/2025 | 138 | ORDER denying 137 Motion for Electronic Device Application (See Order for details). Signed by District Judge Patricia Tolliver Giles on 1/27/2025. (kgall) (Entered: 01/27/2025) |
| 01/28/2025 | 139 | NOTICE of Voluntary Dismissal by United States of America (Jhaveri, Sejal) (Entered: 01/28/2025) |
| 01/29/2025 | 140 | So Ordered re 139 Notice of Voluntary Dismissal without prejudice filed by United States of America. Signed by District Judge Patricia Tolliver Giles on 1/29/2025. (Sbro, ) (Entered: 01/29/2025) |
| 01/31/2025 | 141 | Minute Entry for proceedings held before District Judge Patricia Tolliver Giles: Motion Hearing held on 1/31/2025. Appearance of counsel. Defendants' 121 Motion to Dismiss the Organizational Plaintiffs' First Amended Complaint and the United States of Americas Complaint - Argued and taken under advisement. If the defendant elects to submit a short supplemental brief on the one issue raised, it should be filed within 10 days and plaintiffs will have an opportunity to respond. (Court Reporter: S. Wallace)(tarm) (Entered: 01/31/2025) |
| 02/24/2025 | 142 | Motion to appear Pro Hac Vice by Kunal Dixit and Certification of Local Counsel Shanna Ports Filing fee $ 75, receipt number AVAEDC-10024714. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 02/24/2025) |
| 02/25/2025 | 143 | Motion to appear Pro Hac Vice by Lucas Della Ventura and Certification of Local Counsel Shanna Ports Filing fee $ 75, receipt number AVAEDC-10026882. by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 02/25/2025) |
| 02/25/2025 | 144 | ORDER granting 142 Motion for Pro hac vice Appointed Kunal Dixit for African Communities Together,Kunal Dixit for League of Women Voters of Virginia,Kunal Dixit for League of Women Voters of Virginia Education Fund,Kunal Dixit for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 2/25/2025. (swil) (Entered: 02/26/2025) |

| | | |
|---|---|---|
| 02/26/2025 | 145 | ORDER granting 143 Motion for Pro hac vice Appointed Lucas Della Ventura for Georgia Alvis-Long,Lucas Della Ventura for League of Women Voters of Virginia,Lucas Della Ventura for League of Women Voters of Virginia Education Fund,Lucas Della Ventura for Virginia Coalition for Immigrant Rights. Signed by District Judge Patricia Tolliver Giles on 2/26/2025. (swil) (Entered: 02/26/2025) |
| 02/28/2025 | 146 | NOTICE by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights *of Supplemental Authority* (Attachments: # 1 Exhibit A- Mi Familia Vota v. Fontes 9th Cir. Opinion)(Ports, Shanna) (Entered: 02/28/2025) |
| 03/04/2025 | 147 | Response to 146 NOTICE, filed by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 03/04/2025) |
| 03/10/2025 | 148 | USCA Mandate re 113 Notice of Interlocutory Appeal- The judgment of this court, entered January 14, 2025, takes effect today. This constitutes the formal mandate of this court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. (Sbro, ) (Entered: 03/10/2025) |
| 03/28/2025 | 149 | MOTION to Withdraw as Attorney *Ezra D. Rosenberg* by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 03/28/2025) |
| 03/28/2025 | 150 | NOTICE by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights *of Attorney Screening* (Attachments: # 1 Affidavit Attestation of Robert Weiner, # 2 Affidavit Attestation of Edward Caspar)(Ports, Shanna) (Entered: 03/28/2025) |
| 03/28/2025 | 151 | ORDERED that the Motion is granted; and it is further ORDERED that Ezra D. Rosenberg is granted leave to withdraw as counsel for Plaintiffs re 149 Motion to Withdraw as Attorney. Attorney Ezra David Rosenberg terminated. Signed by US Magistrate Judge William B. Porter on 3/28/2025. (Sbro, ) (Entered: 03/28/2025) |
| 04/04/2025 | 152 | TRANSCRIPT of proceedings held on 1-31-25, before Judge Patricia Tolliver Giles, Court Reporter/Transcriber Scott Wallace, Telephone number 202 277-3739. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/5/2025. Redacted Transcript Deadline set for 6/4/2025. Release of Transcript Restriction set for 7/3/2025.(wallace, scott) (Entered: 04/04/2025)** |
| 08/12/2025 | 153 | MEMORANDUM OPINION. Signed by District Judge Patricia Tolliver Giles on 8/12/2025. (Sbro, ) (Entered: 08/13/2025) |
| 08/12/2025 | 154 | ORDERED that Defendants' Motion to Dismiss (Dkt. 121) is GRANTED in part and DENIED in part; and it is further ORDERED That the motion is GRANTED as to Count III and DENIED in all other respects. Count III is DISMISSED. Signed by District Judge Patricia Tolliver Giles on 8/12/2025. (Sbro, ) (Entered: 08/13/2025) |
| 08/19/2025 | 155 | MOTION to Withdraw as Attorney by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, |

| | | |
|---|---|---|
| | | Virginia State Board of Elections, Matthew Weinstein. (Maley, Erika) (Entered: 08/19/2025) |
| 08/19/2025 | 156 | NOTICE of Appearance by Kevin Michael Gallagher on behalf of Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein (Gallagher, Kevin) (Entered: 08/19/2025) |
| 08/19/2025 | 157 | ORDERED that the Motion is granted; and it is further ORDERED that Erika L. Maley is granted leave to withdraw as counsel for Defendants. Signed by US Magistrate Judge William B. Porter on 8/19/2025. (Sbro, ) (Entered: 08/20/2025) |
| 08/20/2025 | 158 | MOTION to Withdraw as Attorney *Lucas Della Ventura* by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 08/20/2025) |
| 08/20/2025 | 159 | ORDERED that the Motion is GRANTED; and it is further ORDERED that Lucas Della Ventura is granted leave to withdraw as counsel for Plaintiffs re 158 Motion to Withdraw as Attorney. Attorney Lucas Della Ventura terminated. Signed by US Magistrate Judge William B. Porter on 8/21/2025. (Sbro, ) (Entered: 08/21/2025) |
| 08/26/2025 | 160 | ANSWER to Complaint by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein.(Sanford, Thomas) (Entered: 08/26/2025) |
| 09/05/2025 | 161 | MOTION to Withdraw as Attorney by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 09/05/2025) |
| 09/05/2025 | 162 | MOTION to Withdraw as Attorney by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (James, Charles) (Entered: 09/05/2025) |
| 09/08/2025 | 163 | ORDER granting 161 MOTION to Withdraw as Attorney; and it is further ORDERED that Kunal Dixit is granted leave to withdraw as counsel for Plaintiffs. Signed by US Magistrate Judge William B. Porter on 9/8/2025. (Dest) (Entered: 09/08/2025) |
| 09/08/2025 | 164 | ORDER granting 162 MOTION to Withdraw as Attorney; and it is further ORDERED that Charles E. James, Jr., is granted leave to withdraw as counsel for Defendants. Signed by US Magistrate Judge William B. Porter on 9/8/2025. (Dest) (Entered: 09/08/2025) |
| 09/11/2025 | 165 | NOTICE OF INTERLOCUTORY APPEAL as to 153 Memorandum Opinion, 154 Order, by Georgia Alvis-Long, Susan Beals, Commonwealth of Virginia, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Virginia State Board of Elections, Matthew Weinstein. Filing fee $ 605, receipt number AVAEDC-10458709. (Gallagher, Kevin) (Entered: 09/11/2025) |
| 09/12/2025 | 166 | MOTION to Stay *Pending Interlocutory Appeal* by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Sanford, Thomas) (Entered: 09/12/2025) |
| 09/15/2025 | 167 | Transmission of Notice of Appeal to US Court of Appeals re 165 Notice of Interlocutory Appeal, (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Sbro, ) (Entered: 09/15/2025) |
| 09/17/2025 | 168 | USCA Case Number 25-2108 Fourth Circuit, Case Manager R. Phillips for 165 Notice of Interlocutory Appeal, filed by Rosalyn R. Dance, Jason Miyares, Matthew Weinstein, |

| | | John O'Bannon, Virginia State Board of Elections, Commonwealth of Virginia, Donald W. Merricks, Susan Beals, Georgia Alvis-Long. (Sbro, ) (Entered: 09/17/2025) |
|---|---|---|
| 09/22/2025 | 169 | REPORT of Rule 26(f) Planning Meeting by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 09/22/2025) |
| 09/24/2025 | 170 | SCHEDULING ORDER: Initial Pretrial Conference set for 10/29/2025 at 11:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. Discovery due by 2/13/2026. Final Pretrial Conference set for 2/18/2026 at 10:00 AM in Alexandria Courtroom 601 before District Judge Patricia Tolliver Giles. Signed by District Judge Patricia Tolliver Giles on 09/24/2025. (Attachments: # 1 Magistrate Consent Form, # 2 Pretrial Notice) (jlan) (Entered: 09/24/2025) |
| 09/26/2025 | 171 | RESPONSE in Opposition re 166 MOTION to Stay *Pending Interlocutory Appeal* filed by African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 09/26/2025) |
| 10/01/2025 | 172 | MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs* by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Brief in Support of Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs, # 2 Exhibit A - Second Amended Complaint)(Ports, Shanna) (Entered: 10/01/2025) |
| 10/02/2025 | 173 | REPLY to Response to Motion re 166 MOTION to Stay *Pending Interlocutory Appeal* filed by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/02/2025) |
| 10/06/2025 | 174 | ORDERED that Defendants must inform the Court by 5:00 p.m. on October 8, 2025, whether Defendants consent to the Motion and relief sought; and it is further ORDERED that if Defendants do not consent, Defendants must respond to the Motion by 5:00 p.m. on October 10, 2025; any reply by Plaintiff must be filed by 12:00 p.m. on October 15, 2025; and the Court will set oral argument for 10:00 a.m. on October 17, 2025. Signed by US Magistrate Judge William B. Porter on 10/6/2025. (Dcrow, ) (Entered: 10/07/2025) |
| 10/08/2025 | 175 | NOTICE by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein re 174 Order, 172 MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs (Notice of Defendants' Position)* (Sanford, Thomas) (Entered: 10/08/2025) |
| 10/08/2025 | 176 | Waiver of re 166 MOTION to Stay *Pending Interlocutory Appeal (Waiver of Oral Argument)* by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein (Sanford, Thomas) (Entered: 10/08/2025) |
| 10/10/2025 | 177 | RESPONSE in Opposition re 172 MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs* filed by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/10/2025) |
| 10/14/2025 | | Set Hearing as to 172 MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs*. Motion Hearing set for 10/17/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (Dcrow, ) (Entered: 10/14/2025) |

| 10/15/2025 | 178 | REPLY to Response to Motion re 172 MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs* filed by African Communities Together, League of Women Voters of Virginia, League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights. (Ports, Shanna) (Entered: 10/15/2025) |
| 10/17/2025 | 179 | ORDERED that the Motion is GRANTED; and it is further ORDERED that Plaintiffs are granted leave to file an amended complaint as a new docket entry on or before October 24, 2025 re 172 Motion for Leave to File. Signed by US Magistrate Judge William B. Porter on 10/17/2025. (Sbro, ) (Entered: 10/17/2025) |
| 10/17/2025 | 180 | Minute Entry for proceedings held before US Magistrate Judge William B. Porter:Motion Hearing held on 10/17/2025 re 172 MOTION for Leave to File *Second Amended Complaint and Add Party Plaintiffs* filed by League of Women Voters of Virginia Education Fund, Virginia Coalition for Immigrant Rights, African Communities Together, League of Women Voters of Virginia. Plaintiff appeared through Katherine Hamilton, Brent Ferguson and Shanna Ports. Defendant appeared through Kevin Gallagher and Brad Lawson. The parties made arguments to the Court. The motion was granted. See order (Dkt. 179 ). (Tape #FTR.)(Dcrow, ) (Entered: 10/21/2025) |
| 10/22/2025 | 181 | REPORT of Rule 26(f) Planning Meeting by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Donald W. Merricks, Jason Miyares, John O'Bannon, Matthew Weinstein. (Sanford, Thomas) (Entered: 10/22/2025) |
| 10/23/2025 | 182 | AMENDED COMPLAINT *SECOND Amended Complaint* against All Defendants, filed by League of Women Voters of Virginia Education Fund, African Communities Together, League of Women Voters of Virginia, Virginia Coalition for Immigrant Rights.(Ports, Shanna) (Entered: 10/23/2025) |
| 10/28/2025 | | Initial Pretrial Conference set for 10/29/2025 at 11:00 AM in Alexandria Remote before US Magistrate Judge William B. Porter. (Per WBP chambers) (Dcrow, ) (Entered: 10/28/2025) |
| 10/29/2025 | 183 | Minute Entry for proceedings held before US Magistrate Judge William B. Porter: Initial Pretrial Conference held on 10/29/2025. Counsels for the Plaintiff and Defendant appeared. The parties discuss the plan with the Court. Order to follow. (Tape #FTR.) (Dcrow, ) (Entered: 10/29/2025) |
| 10/29/2025 | 184 | Order Rule 16(b) Scheduling Order - Pursuant to the Rule 16(b) Conference<br>1. The September Plan is rejected. The October Plan is incorporated into this order as amended, and this Order will control to the extent of its application in this order unless modified by the Court.<br>2. Discovery must proceed as to all parties and all claims that have not been stayed as a matter of law by Defendants interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. Within 10 days from the date on which the Fourth Circuit resolves Defendants interlocutory appeal, the parties must meet and confer and submit a status report on the then-state of discovery and the discovery that needs to be completed consistent with the Fourth Circuit's resolution of the interlocutory appeal.<br>3. All discovery must be concluded by February 13, 2026.<br>4. All Fed. R. Civ. P. 26(a)(1) disclosures must be completed by November 7, 2025.<br>(See order for further details). Signed by US Magistrate Judge William B. Porter on 10/29/2025. (Dcrow, ) (Entered: 10/29/2025) |
| 11/06/2025 | 185 | MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Jason Miyares, John O'Bannon, J. Chapman Petersen, Christopher P. Stolle. (Sanford, Thomas) (Entered: 11/06/2025) |

| 11/06/2025 | 186 | Memorandum in Support re 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Jason Miyares, John O'Bannon, J. Chapman Petersen, Christopher P. Stolle. (Sanford, Thomas) (Entered: 11/06/2025) |
|---|---|---|
| 11/07/2025 | | Notice of Correction: The filing user has been notified to file a Notice of Hearing or Notice of Waiver of Oral Argument re 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* (Sbro, ) (Entered: 11/07/2025) |
| 11/11/2025 | 187 | Notice of Hearing Date set for 12/18/2025 re 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* (Sanford, Thomas) (Entered: 11/11/2025) |
| 11/12/2025 | | Set Deadline as to 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction*. Motion Hearing set for 12/18/2025 at 10:00 AM in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles. (triv) (Entered: 11/12/2025) |
| 11/14/2025 | 188 | TRANSCRIPT of proceedings held on 10-17-25, before Judge William B. Porter, Court Reporter/Transcriber Scott Wallace, Telephone number 202 277-3739. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/15/2025. Redacted Transcript Deadline set for 1/14/2026. Release of Transcript Restriction set for 2/12/2026.(wallace, scott) (Entered: 11/14/2025)** |
| 11/20/2025 | 189 | RESPONSE in Opposition re 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by African Communities Together, League of Women Voters of Virginia, Rina Shaw, Genet Shiferaw, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Exhibit A - NVRA Notice Letter)(Ports, Shanna) (Entered: 11/20/2025) |
| 11/26/2025 | 190 | REPLY to Response to Motion re 185 MOTION to Dismiss for Failure to State a Claim *and for lack of jurisdiction* filed by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Jason Miyares, John O'Bannon, J. Chapman Petersen, Christopher P. Stolle. (Sanford, Thomas) (Entered: 11/26/2025) |
| 11/26/2025 | 191 | NOTICE by Georgia Alvis-Long, Susan Beals, Rosalyn R. Dance, Jason Miyares, John O'Bannon, J. Chapman Petersen, Christopher P. Stolle *(Notice of Constitutional Question)* (Sanford, Thomas) (Entered: 11/26/2025) |
| 12/05/2025 | 192 | MOTION for Extension *of Time to File Expert Disclosures* by African Communities Together, League of Women Voters of Virginia, Rina Shaw, Genet Shiferaw, Virginia Coalition for Immigrant Rights. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Ports, Shanna) (Entered: 12/05/2025) |
| 12/05/2025 | 193 | Notice of Hearing Date set for 12/12/2025 re 192 MOTION for Extension *of Time to File Expert Disclosures* (Ports, Shanna) (Entered: 12/05/2025) |
| 12/08/2025 | | Set Deadline as to 192 MOTION for Extension *of Time to File Expert Disclosures*. Motion Hearing set for 12/12/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (triv) (Entered: 12/08/2025) |
| 12/08/2025 | 194 | Accordingly, the Court hereby GRANTS in part and DENIES in part the 192 Motion and ORDERS as follows:<br>1. The Court cancels the hearing scheduled for December 12, 2025, because oral |

| | | |
|---|---|---|
| | | argument will not aid in the decisional process.<br>2. The parties must complete all discovery, including expert depositions, by February 13, 2026.<br>(See order for further details). Signed by US Magistrate Judge William B. Porter on 12/8/2025. (Dcrow, ) (Main Document 194 replaced on 12/9/2025) (swil, ). (Entered: 12/09/2025) |
| 12/08/2025 | 195 | ORDER that the hearing scheduled for 12/18/2025 on Defts' 185 MOTION to Dismiss for Failure to State a Claim and for lack of jurisdiction is **TERMINATED**. The Court will resolve the Motion (Dkt. 185) on the papers (see Order for details) Signed by District Judge Patricia Tolliver Giles on 12/08/25. (pmil, ) (Entered: 12/09/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

<table>
<tr><td>

VIRGINIA COALITION FOR
IMMIGRANT RIGHTS; LEAGUE OF
WOMEN VOTERS OF VIRGINIA;
LEAGUE OF WOMEN VOTERS OF
VIRGINIA EDUCATION FUND; AFRICAN
COMMUNITIES TOGETHER,

  *Plaintiffs*,

   v.

SUSAN BEALS, in her official capacity as
Virginia Commissioner of Elections; JOHN
O'BANNON, in his official capacity as
Chairman of the State Board of Elections;
ROSALYN R. DANCE, in her official
capacity as Vice-Chairman of the State Board
of Elections; GEORGIA ALVIS-LONG, in
her official capacity as Secretary of the State
Board of Elections; DONALD W.
MERRICKS and MATTHEW WEINSTEIN,
in their official capacities as members of the
State Board of Elections; and JASON
MIYARES, in his official capacity as Virginia
Attorney General,

  *Defendants*.

</td><td>

Case No. 1:24-cv-01778-PTG-WBP

</td></tr>
</table>

<u>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

   Plaintiffs Virginia Coalition for Immigrant Rights ("VACIR"), League of Women Voters of

Virginia and League of Women Voters of Virginia Education Fund (together "LWVVA" or "the

League"), and African Communities Together ("ACT") bring this action against Susan Beals, in

her official capacity as Virginia Commissioner of Elections; the Virginia State Board of Elections

Members, in their official capacities; and Jason Miyares, in his official capacity as Virginia Attorney General, and allege the following:

## **INTRODUCTION**

1.      The right to vote is fundamental and foundational to American democracy. Every American citizen has the right to vote, regardless of where they were born. This action challenges a voter purge effort (the "Purge Program") that patently violates Congress's framework for protecting these fundamental rights through the National Voter Registration Act ("NVRA"). Less than 60 days ago, Defendants announced the latest version of an effort to implement an ongoing program to systematically remove certain voters from the rolls. But federal law mandates that no such voter cancelation or list maintenance programs may be conducted during the 90-day "quiet period" before an election. Congress prohibited such programs from occurring during this period to protect voter registration lists from the inevitable chaos of potentially inaccurate removals. Nevertheless, Defendants brazenly intensified their removal program the very day the quiet period commenced. Even the best designed list maintenance system undertaken with the best of intentions would be barred by federal law when so dangerously close to an election. That is reason alone to enjoin the continued operation of Defendants' Purge Program.

2.      Moreover, Defendants' Purge Program is far from such a well-designed, well-intended list maintenance effort. It is an illegal, discriminatory, and error-ridden program that has directed the cancelation of voter registrations of naturalized U.S. citizens and jeopardizes the rights of countless others. In a purported effort to flag potential noncitizens, Defendants' Purge Program relies on out-of-date information provided to the Department of Motor Vehicles, and perhaps other sources, *stretching back twenty years*. The State knows or should know that countless individuals who obtained drivers' licenses while legal permanent residents have become naturalized citizens,

many even registering to vote during naturalization ceremonies. But Defendants make no effort to conduct any individualized analysis. Instead, they have classified any person who has ever indicated they were a noncitizen as presumptively ineligible to vote unless they receive and respond to a State missive within fourteen days and provide *more* evidence of their citizenship. This violates the NVRA in various ways, including the requirement that list maintenance programs be uniform and nondiscriminatory. Finally, Defendants have conducted their Purge Program under a shroud of secrecy and obfuscation, refusing to provide information or documentation about their system as it has unfolded. The NVRA mandates that states must be transparent about their voter removal programs, even when undertaken outside of the quiet period, far more so when conducted on the eve of a major election.

3.    On August 7, 2024, only 90 days before the upcoming November 5 general election and 45 days before the start of early in-person voting, Virginia Governor Glenn Youngkin issued Executive Order 35 ("E.O. 35"), which provided instructions for the Purge Program of alleged noncitizens, relying on Va. Code § 24.2-427.[1] The Purge Program requires the Commissioner of the Department of Elections ("ELECT") to certify to the governor that it has procedures in place to make daily updates to the statewide voter registration list to "[r]emove individuals who are unable to verify that they are [U.S.] citizens to the Department of Motor Vehicles[.]" E.O. 35 at 3-4; *see also* Va. Code § 24.2-427(B)-(C).

---

[1] Although E.O. 35 claims to order the implementation of Va. Code § 24.2-429, the process described in E.O. 35 more closely aligns with Va. Code § 24.2-427. *See* E.O. 35 at 4 (Aug. 7, 2024), *available at* https://www.governor.virginia.gov/media/governorvirginiagov/governor-of-virginia/pdf/eo/EO-35-Comprehensive-Election-Security-Ensuring-Legal-Voters-and-Accurate-Counting---vF---8.7.24.pdf. Plaintiffs therefore presume E.O. 35 intended to cite Va. Code § 24.2-427, but, either way, the Purge Program violates the National Voter Registration Act for the reasons stated herein.

JA43

4.      The Purge Program demands the expedition of interagency data sharing between the Department of Motor Vehicles ("DMV") and ELECT via a daily file of all alleged "non-citizens transactions, including addresses and document numbers." E.O. 35 at 4. ELECT is then required to make daily updates to the voter rolls by comparing "the list of individuals who have been identified as noncitizens to the list of existing registered voters[.]" E.O. 35 at 3-4.  Once ELECT has identified these alleged noncitizens, ELECT sends the data to county registrars and directs them to "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days" of sending the notice, and ultimately cancel the voter's registration if the registrar's office does not receive this affirmation. *Id.*; *see also* Va. Code § 24-2.427(B)-(C).

5.      The Purge Program also directs counties to refer voters removed for alleged noncitizenship to Commonwealth Attorneys for criminal investigation and potential prosecution. E.O. 35 at 4. Some counties have also elected to refer those voters to Defendant Attorney General Miyares.

6.      The Purge Program by design and in implementation threatens the voting rights of eligible Virginia voters who are naturalized citizens. The Purge Program, ordered by Governor Youngkin and implemented by Defendants, affirmatively directs state agencies to identify and purge voters on a systematic and ongoing basis—including during the immediate lead up to the 2024 General Election—in direct violation of the 90-day quiet period mandated by the National Voter Registration Act ("NVRA"). 52 U.S.C. § 20507(c)(2)(A).

7.      Despite Plaintiffs' multiple requests, including through a letter from VACIR sent August 20, 2024, and a letter sent from VACIR and LWVVA on October 3, and in violation of the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i), Defendant Beals has thus far provided little information related to the Purge Program, including

refusing to provide the identities of the persons subject thereto. As a result, Plaintiffs have not been able to determine conclusively who has been identified for removal or who has been removed. What is clear from Plaintiffs' investigation and the clear directives in E.O. 35 is that the Purge Program relies on erroneous data—from the DMV and perhaps other sources—that includes both naturalized and U.S.-born U.S. citizens and is ongoing during the 90-day quiet period.

8.      The Purge Program systematically removes Virginians from the voter rolls shortly before the November 2024 general election based solely on the fact that they were at one point identified as a potential noncitizens—according to databases from the DMV or other sources— even if they have since become naturalized citizens and lawfully registered to vote or even if they are U.S.-born citizens who were mistakenly identified as noncitizens.

9.      Governor Youngkin's ordered Purge Program, by design, identifies and classifies based on national origin without considering naturalized citizenship status. It then relies on that classification to mark individuals for removal from the voter rolls. The data and methodology that forms the basis of the Purge Program discriminates based on national origin and predictably sweeps in naturalized citizens. Many naturalized citizens have had interactions with the DMV prior to becoming a citizen. That is because all naturalized citizens were once legal permanent residents, and legal permanent residents are permitted to obtain driver's licenses and other forms of state identification, which can remain valid for up to eight years.

10.     E.O. 35 claimed that Virginia has made "unprecedented strides in improving…protection against non-citizen registration," but evidence overwhelmingly shows that noncitizen registration and voting is vanishingly rare in Virginia and across the United States, and voter purges aimed at *alleged* noncitizens primarily prevent *eligible* naturalized citizens from casting ballots.

**JA45**

11.    In its implementation, the Purge Program arbitrarily sweeps in both naturalized citizens and U.S.-born citizens not targeted by the program. While U.S.-born citizens would only be marked as noncitizens in DMV data due to user error in mistakenly checking the wrong box or leaving a box unchecked during electronic transactions with the DMV, the Purge Program has also erroneously removed from the voter rolls at least some eligible voters who are U.S.-born citizens.

12.    Plaintiffs are nonprofit organizations whose missions are to help eligible Virginians register and vote and to provide services to Virginia's immigrant communities, including by providing education and assistance to Virginia's naturalized citizens in voter registration and voting. The organizations' members include naturalized and U.S.-born eligible U.S. citizens whose registrations are at risk under the Purge Program.

13.    Va. Code Ann. § 24.2-427(C) and the Purge Program harm Plaintiffs VACIR, LWVVA, and ACT directly because, instead of registering additional new voters and providing programs for Virginia's immigrant community, they have and will continue to spend time and money (1) identifying new citizens, including those who have been targeted for removal or purged; (2) educating the public, in particular new citizens, on how to respond to being targeted for removal and ensuring that they remain registered or, if they were purged, how to reregister; (3) assisting new citizens who have been targeted for removal with defending their registrations and right to vote; (4) ensuring that any voters who are affected by the Purge Program who are required to vote using a provisional ballot have their votes counted. It further harms Plaintiffs because they have members who are naturalized citizens. Enjoining the Purge Program is necessary to end these harms to Plaintiffs.

14.    Va. Code Ann. § 24.2-427(C) and the Purge Program violate the NVRA because they (1) constitute systematic voter list maintenance within 90 days preceding a federal election;

6

**JA46**

(2) discriminatorily identify naturalized citizens for removal and are not being carried out uniformly across local jurisdictions; and (3) require voters to provide additional proof of U.S. citizenship not required by the National Mail Voter Registration Application or voter registration applications at the DMV and public assistance agencies in order to remain registered. *See* 52 U.S.C. §§ 20504(c), 20505(a), 20506(a), 20507(b). Defendant Beals has further violated the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i), by refusing to provide Plaintiffs with the list of voters identified as potential noncitizens within a reasonable amount of time despite having those records in her office's possession. Plaintiffs therefore respectfully request that the Court declare the Purge Program unlawful, enjoin Defendants from implementing the Purge Program, restore all unlawfully removed voters to the rolls and provide public and individualized notice thereof, produce the list of voters identified as potential noncitizens, and afford Plaintiffs all other just and proper relief.

## JURISDICTION AND VENUE

15.     This action is brought pursuant to 52 U.S.C. § 20510(b), which provides that "[a] person who is aggrieved by a violation of [the NVRA]…may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."

16.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1357 because the claims in the action arise under the laws of the United States, as well as under 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction to grant declaratory and injunctive relief and all other forms of relief available under federal law, including 28 U.S.C. §§ 2201 and 2202.

17.     This Court has personal jurisdiction over the Defendants, who are all elected or appointed officials and citizens of Virginia.

**JA47**

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants engage in their official duties in this District, because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because at least one Defendant resides in this District and all Defendants are Virginia residents.

## PARTIES

### Plaintiffs

19.    Plaintiff **Virginia Coalition for Immigrant Rights** is a multi-racial and multi-ethnic coalition of member organizations that exists to win dignity, power, and quality of life for all immigrant and refugee communities. They seek to create a Virginia where immigrant and refugee communities have full access to family, civic, economic, and social life.

20.    VACIR is comprised of 49 standing member organizations, including legal services providers, civil rights groups, and labor unions, each of which themselves work to support the immigrant community in Virginia through a variety of programs, including by assisting with voter registration and education for eligible naturalized citizens.[2] VACIR unifies those organizations and

---

[2] As of the filing of this Complaint, VACIR standing member organizations are ACLU People Power – Fairfax; ACLU of Virginia; African Communities Together; American Jewish Committee; AYUDA; Bread for the World; Centreville Immigration Forum; Church World Service; Coalition of Asian Pacific Americans of Virginia; Congregation Action Network; Cornerstone; Domestic Workers Alliance; Dream Project; Dreamers Mothers In Action; Edu Futuro; EMGAGE; Fuego Coalition; Hamkae Korean Community Center; Hispanic Organization of Leadership and Action; Jewish Community Relations Council; Just Neighbors; Korean American Association of Northern Virginia; Latina Institute for Reproductive Justice; League of United Latin America Citizens; Legal Aid Justice Center; Multicultural Community Center; Neighbor's Keeper; New Virginia Majority Education Fund; Northern Virginia Affordable Housing Alliance; NoVA Labor; Progress Virginia; Sacred Heart Catholic Community Center; SEIU 512; SEIU 32BJ; Shirlington Employment and Education Center; Sin Barreras; Tenants and Workers United; The Commonwealth Institute for Fiscal Analysis; Unitarian Universalist for Social Justice; United Food and Commercial Workers Local 400; Virginia Civic Engagement Table; Virginia Coalition of Latino Organizations; Virginia Immigration Intercollegiate Alliance; Virginia Interfaith Center for Public Policy; Virginia League of Planned Parenthood; Virginia League of Women Voters; Virginia Organizing; Virginia Poverty Law Center; and Voices for Virginia's Children.

supports them in achieving their shared goals, including by providing mini-grants to members to operate programs directed at assisting with voter registration and education for eligible naturalized citizens.

21.     The Purge Program has harmed and will continue to harm VACIR and its members in various ways. VACIR has had to divert significant resources away from its core activities including removing language barriers to obtain government assistance, oversight of immigration detention facilities, providing support for community oversight to the Temporary Protected Status program, advocacy activities related to expanding state programs affecting immigrant communities including Medicare expansion, and providing support for community mobilization around general voter registration efforts for New Americans, and toward responding to and attempting to mitigate the effects of E.O. 35 and the Purge Program in erroneously removing eligible voters from the rolls and intimidating eligible naturalized citizens from participating in voter registration and voting. VACIR's response efforts are ongoing and include investigating the Purge Program through submitting public records requests and spending thousands of dollars to cover the costs of production, engaging in direct multi-lingual public education and outreach to naturalized citizen voters about maintaining their voter registration and re-registering if they have been removed through the Purge Program, and supporting its members to adjust and redirect general community voter registration and outreach programs toward specifically responding to E.O. 35 and the Purge Program, including through educating and assisting naturalized citizen voters with checking their voter registration status and how to re-register if they have been removed.

22.     A number of VACIR's member organizations are membership organizations themselves whose members include substantial numbers of naturalized citizens, including

EMGAGE, African Communities Together, SEIU 32BJ, Hamkae Center, Latina Institute for Reproductive Justice-Virginia, Domestic Workers Alliance, NoVA Labor, and Tenants and Workers United. These organizations' naturalized citizen members are at particular risk of being purged because they may have previously self-identified as noncitizens with the Virginia DMV while applying for a driver's license and then later registered to vote through another means after obtaining their citizenship. As a direct result of E.O. 35 and the Purge Program, these members must now constantly re-check their registration status, may be forced to provide additional documentation to vote, may be intimidated from registering to vote or voting due to the Purge Program and the explicit public threat of investigation or prosecution in E.O. 35, and face other burdens due to the Purge Program.

23.     A number of VACIR's member organizations have also been directly harmed by being forced to divert resources away from core activities including providing direct support and assistance to community members through a variety of programs and toward responding to and attempting to mitigate the effects of E.O. 35 and the Purge Program in erroneously removing eligible voters from the rolls and intimidating eligible naturalized citizens from participating in voter registration and voting.

24.     Plaintiffs **League of Women Voters of Virginia and League of Women Voters Education Fund,** formed under Section 501(c)(4) and 501(c)(3) of the Internal Revenue Code, respectively, are nonpartisan, nonprofit, membership organizations that seek to encourage informed and active participation in government, work to increase understanding of major public policy issues, and influence public policy through education and advocacy. LWVVA is a state League of the national League of Women Voters, which was founded in 1920 as an outgrowth of the struggle to win voting rights for women, has more than 500,000 members and supporters, and

is organized in more than 750 communities in all 50 states and the District of Columbia. LWVVA has approximately 2,000 members across the state of Virginia. Some of LWVVA's members are naturalized citizens.

25.    LWVVA is comprised of dues-paying members who volunteer in Virginia communities to provide voter services. LWVVA has no paid employees or staff involved with the operation of the League. Through its volunteer leaders, LWVVA provides regular training to its members and to its nonpartisan partners to assist Virginians, including those who are naturalized citizens, in getting registered, voting, and confirming their registration status. LWVVA has also arranged required Virginia training for third party voter registration for its members and nonpartisan partner organizations. LWVVA does this work as a part of its mission to protect the right to vote for Virginia voters and considers its work registering voters, encouraging them to vote, and confirming their registration to be an expression of those core values. LWVVA uses voter registration assistance as a part of a larger dialogue about a citizen's voter registration, voting plan, and the importance of voter turnout: the goal is to ensure all eligible Virginia voters are registered to vote, have a plan to vote, and can and do actually vote.

26.    E.O. 35 and the Purge Program have harmed and will continue to harm the League and its members in various ways. First, the League has diverted and will continue to divert resources to counteract the harms created by the Purge Program. At the most consequential period of time for the League's core mission activities, the League first had to use its resources to rapidly understand the impact of E.O. 35 and its effect on Virginia voters. When the League learned of the Purge Program's identification of eligible Virginian voters for removal, the League had to expend its resources to counteract the immediate confusion and misinformation created by the Purge Program. The broadest way of doing so without amplifying false claims of noncitizen voting has

been to expand announcements for all Virginians to check their registration, even those who have no changes in their voter profile. The Purge Program has forced the League to both broaden these "check your registration" efforts beyond its previously targeted audience and to expand its focus on naturalized citizens. For instance, the League has already spent at least $600 to create, translate into multiple languages, and distribute a public service announcement (PSA) throughout the state reminding voters of their right to vote and instructing them to check that their registration is valid before Election Day. The League created and distributed the PSA in direct response to the Purge Program, to ensure that all Virginia voters—including voters that the League has registered and voters who are League members—are registered and are able to vote on Election Day, in furtherance of the League's goals of registering eligible voters and ensuring all eligible voters can vote. In direct response to the Purge Program, the League also increased its budget for digital media impressions on mobile devices by $2,000. These PSAs were necessary because the Purge Program has deregistered thousands of Virginians, including Virginians eligible to vote, and has unquestionably intimidated many more naturalized Virginians who are now less likely to vote for fear of criminal investigation and prosecution. Therefore, the Purge Program will decrease the number of registered voters and decrease voter turnout, directly harming the League's mission of increasing the number of registered voters and increasing voter turnout. The PSA was necessary to ameliorate those harms.

27. Separately, the League has devoted and will continue to devote resources and members' time to counteract the effects of the Purge Program, such as by helping members and registered voters determine whether they remain eligible and by helping voters who are purged restore their eligibility. This includes direct outreach and public outreach to naturalized citizens through media, such as the League President's September interview at Spanish speaking radio

station WRKE 100.3 LP-FM. The League is further burdened by diverting its coordination resources with other non-profits towards understanding and addressing the effects of E.O. 35 rather than coordinating on core voter assistance programs. Absent such diversion, the League would spend its money and member time on getting out the vote for the 2024 general election and planning its advocacy activities for the next year. It would also hold more voter registration drives.

28.     Aside from resource diversion, the Purge Program directly harms the League's mission. When voters are unlawfully purged, it decreases the number of voters in Virginia, contrary to the League's mission of increasing the number of registered voters and voter turnout. When voters are intimidated or must take additional steps to remain registered, it harms the League's mission of ensuring that voting is easy and open for all eligible Virginians.

29.     The Purge Program also harms the League's members. The League's membership includes naturalized citizens, and those members are at particular risk of being purged because they may have previously self-identified as noncitizens with the Virginia DMV. Those members must constantly re-check their registration status, may need to provide additional documentation to vote, are intimidated by the Purge Program and the threat of investigation or prosecution, and face other burdens due to the Purge Program.

30.     Further, Commissioner Beals's refusal to release information about the Purge Program, including the list of voters who have been removed on the basis of the Purge Program harms LWVVA's mission. Because LWVVA cannot contact the voters who have been removed on the basis of the Purge Program—including any LWVVA members—LWVVA cannot further its goals by ensuring all eligible voters targeted by the Purge Program are registered to vote.

31.     Plaintiff **African Communities Together** is a nonpartisan, nonprofit membership organization of African immigrants fighting for civil rights, opportunity, and a better life for

African immigrants and their families. Founded in 2013, ACT empowers African immigrants to integrate socially, advance economically, and engage civically. ACT assists African immigrants in obtaining critical services, provides resources and infrastructure for community and leadership development, and supports community members to engage in civic life, including through education and assistance with voter registration and voting. ACT provides multilingual assistance to African immigrants related to immigration, jobs, civic participation, and other needs.

32.     ACT has approximately 12,460 members nationally, with approximately 1,079 residing in Virginia. Many of ACT's members are naturalized citizens. ACT's members pay voluntary membership dues. They participate in monthly membership meetings, leadership committees and trainings, issue-specific campaign committees, civic engagement. They also engage in public advocacy through collective actions and personal storytelling, volunteer work through community-focused programs, and many attend a national membership convention.

33.     ACT is operating a robust voter engagement program in Virginia with the goal of connecting with 85,000 registered voters in African immigrant communities in 2024. This program consists of six full-time paid staff, including a lead organizer, three field organizers, and two phone-bank leads, as well as ACT members who contribute on a volunteer basis. The program provides multilingual education and assistance with all aspects of voting and encourages voters to participate through outreach and engagement about the important role voting plays in shaping the opportunities and issues facing African immigrant communities.

34.     The Purge Program operated by Defendants has harmed and will continue to harm ACT and its members in various ways. ACT has had and continues to divert its staff and resources from other core activities toward attempting to mitigate the harms to its members and to Virginia's African immigrant community caused by E.O. 35 and the Purge Program. This has required

redirecting its voter engagement program by developing and producing new public education materials, revising the resources and scripts used by canvassers and phone bankers, and re-training paid staff and volunteers in order to support voters who may have been sent a removal notice or removed from the rolls by educating and assisting them in maintaining their voter registration and re-registering if necessary, as well as reassure voters about their eligibility and mitigate any intimidating effect related to the threat of referral to law enforcement and criminal investigation and prosecution as laid out in E.O. 35. Many ACT members who are naturalized citizens may have been sent a removal notice, removed from the rolls, or are at heightened risk of imminent removal due to having obtained a driver's license prior to becoming a citizen and having yet to update their DMV records.

**Defendants**

35.    Defendant **Susan Beals** is the Virginia Commissioner of Elections. The Commissioner of Elections is the "principal administrative officer" of the Department of Elections, Va. Code § 24.2-102(B), and "the chief state election officer responsible for the coordination of state responsibilities under the National Voter Registration Act," *id*. § 24.2-404.1. Defendant Beals is also responsible for ensuring the implementation of the Purge Program by "certify[ing] in writing to the Governor" that the Purge Program's requirements are being met. E.O. 35 at 3. As the head of the Department of Elections, she is also responsible for generating the Purge Program's daily list of voters alleged to be noncitizens. *Id.* at 4. Defendant Beals is sued in her official capacity.

36.    Defendant **John O'Bannon** is the Chairman of the State Board of Elections ("the Board"); **Rosalyn R. Dance** is the Vice-Chairman of the Board; **Georgia Alvis-Long** is the Secretary of the Board; and **Donald W. Merricks** and **Matthew Weinstein** are members of the

Board (collectively "State Board of Election Members"). They are all sued in their official capacities. "The State Board, through the Department of Elections, shall supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Code § 24.2-103(A). It is the duty of the Board to "make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." *Id*.

37.    Defendant **Jason Miyares** is the Attorney General of Virginia. Under Virginia law, the Attorney General has "full authority to do whatever is necessary or appropriate to enforce the election laws or prosecute violations thereof." Va. Code § 24.2-104(A); E.O. 35 at 4. Defendant Miyares endorsed the Purge Program, claiming credit for E.O. 35's original announced purge of 6,303 alleged noncitizens from the voter rolls.[3] Registrars and County Electoral Boards have since referred to Defendant Miyares for criminal investigation and possible criminal prosecution additional individuals whose voter registration was cancelled because of the Purge Program. He is sued in his official capacity.

## **FACTUAL ALLEGATIONS**

**I.       The Purge Program and Governor Youngkin's Announcement of E.O. 35**

38.    Governor Youngkin announced E.O. 35 on August 7, 2024—exactly 90 days before the 2024 General Election on November 5 and 45 days before the start of early in-person voting. E.O. 35. With this timing, every subsequent voter removal is necessarily within the NVRA's "quiet period."

---

[3] Jason Miyares (@JasonMiyaresVA), X (Aug. 7, 2024, 1:57 PM), https://perma.cc/6JGJ-KLJD ("6,303. That's the number of noncitizens identified and removed from Virginia's voting rolls under our watch. I'm proud of my office's work to help ensure election integrity.").

39.     In his August announcement, Governor Youngkin was clear that the Purge Program had already begun, explaining that between January 2022 and July 2024, 6,303 voters were removed from the voter rolls based on DMV data shared with ELECT. E.O. 35 at 2. He also explained that the Program uses a systematic, ongoing process saying, "We verify the legal presence and identity of voters using DMV data and other trusted data sources to **update our voter rolls daily**, not only adding new voters, but **scrubbing the lists** to remove those that should not be on it, like…non-citizens that have accidentally or maliciously attempted to register."[4]

40.     The Purge Program is intended to and does operate systematically: it requires "daily updates" to cancel the voter registrations of individuals identified as potential non-U.S. citizens based on faulty and outdated data without a meaningful and individualized inquiry into its accuracy. *See* E.O. 35 at 3-4.

41.     Section 7.3 of the 2021 MOU indicates that a successful "match" between a record in Virginia's voter file and a record in the DMV database requires an exact match of Social Security Number, first name, last name, and date of birth. In the event a registrant does not provide a Social Security Number, then DMV matches on first name, last name, and date of birth.

42.     ELECT operators are given little, if any, guidance or criteria directing how to determine if a purported "match" between the records in the voter file and DMV database is accurate or false based on other information available to the operator. The Voter Registration List Maintenance Department of Motor Vehicles: Full SBE & Noncitizens Standard Operating Procedures (SOP) Section 4.1 merely states, "[t]he GR reviews the match to determine if the non-

---

[4] *Governor Glenn Youngkin Issues Executive Order to Codify Comprehensive Election Security Measures to Protect Legal Voters and Accurate Counts*, Office of the Governor (Aug. 7, 2024), https://www.governor.virginia.gov/newsroom/news-releases/2024/august/name-1031585-en.html (emphasis added).

citizen and registered voter identified by VERIS is the same person" without any further explanation or elaboration.

43.     In the event a DMV record indicating that an individual is a non-citizen matches to a record in Virginia's voter file, an "Affirmation of United States Citizenship form" must be sent to a registrant along with a letter entitled "Notice of Intent to Cancel." That letter informs the voter that "[w]e have received information that you indicated on a recent DMV application that you are not a citizen of the United States."

44.     Upon information and belief, neither the DMV, ELECT, nor county officials take any action to verify the veracity of the information suggesting an individual flagged through the Purge Program is in fact a noncitizen prior to sending the 14-day notice and initiating the removal process, instead putting the burden entirely on the voter to re-affirm their citizenship or face removal.

45.     If the registrant affirmatively responds and mails the local registrar a completed Affirmation of Citizenship form within 14 days, then the registrant is marked as confirming their citizenship and the registrant is removed from the list of flagged individuals, which state officials describe as the "Declared Non-Citizen Hopper."

46.     With respect to people who do not return the Affirmation of Citizenship form, the Notice of Intent to Cancel provides that "[i]f you do not respond within 14 days, you will be removed from the list of registered voters."

47.     The Purge Program further requires that registrars "immediately notify the Commonwealth's Attorney for their jurisdiction of this alleged unlawful conduct." E.O. 35 at 4.

## II.        Implementation of the Purge Program

48.      Virginians have been removed from the rolls in the 90-day "quiet period" as a result of the Purge Program, and more will be removed until it is enjoined.

49.      ELECT has confirmed that it and registrars are daily receiving "non-citizen data" from the DMV and daily "[r]emoving individuals who declare or provide documentation indicating non-citizenship status and who do not respond to an affirmation of citizenship notice." Ex. 1. Indeed, ELECT and the DMV entered a new Memorandum of Understanding on September 3, 2024, ensuring the daily data exchanges will occur. Ex. 2.

50.      Counties are using these daily updates from ELECT to remove Virginians from the voter rolls. For example, Arlington, Fairfax, and Loudoun Counties have all followed ELECT's instructions and cancelled the registrations of voters as a result of the Purge Program. Exs. 3, 4, 5. Loudoun County confirmed eight cancellations in August for alleged noncitizenship, Ex. 6 at 9, and Fairfax confirmed 49 cancellations as a result of the Purge Program, Ex. 5 at 7.

51.      The 49 voter registration cancellations in Fairfax County were all due to a failure of the voter to reply affirming their citizenship within 14 days of the notice being sent. Originally, 66 voters were identified and noticed as alleged noncitizens, but 17 voters responded confirming their citizenship "and re-registered within the 14-day requirement." Ex. 5 at 7. A member of the Fairfax County Electoral Board acknowledged that "his understanding was that many of these individuals are citizens who inadvertently checked the wrong box or did not check any box for the citizenship question on the DMV website" but also noted that registrars are unable to do research into the source of the noncitizen DMV demarcation because "the local election offices have 'no way of knowing' how the individual answered the DMV citizenship question." Ex. 5 at 7.

52.    Arlington and Loudoun Counties also all referred alleged noncitizen voters to the Commonwealth Attorneys for their jurisdictions for criminal investigation and potential prosecution. Exs. 3, 5. Arlington County has also referred alleged noncitizens to Defendant Attorney General Miyares for investigation and potential prosecution. Ex. 3.

53.    During a September 30, 2024, Board of Elections hearing, Prince William Registrar Eric Olsen indicated that he has been asking registrants to re-verify that they are U.S. citizens even if they have previously returned an Affirmation of United States Citizenship Form to his office.

54.    At the September 30 meeting, Mr. Olsen said: "[w]e looked at 162 individuals that were listed as noncitizens in the VERIS system. Forty-three of those have voted. We looked at all forty-three of those. Every single one of them had verified their citizenship previously. Some by as many as five times. All had Social Security Numbers. And we had to cancel them because of state protocol, but we also didn't see any issue that they had done anything illegal."[5]

## III.    The Purge Program's Impact on Naturalized Citizens

55.    On information and belief, the Purge Program has resulted and will continue to result in the cancellation of the voter registration of naturalized U.S. citizens. Even though naturalized citizens have the same fundamental right to vote as U.S.-born citizens, the Purge Program systematically jeopardizes the voting rights of naturalized citizen voters. The Purge Program requires naturalized citizens to provide further citizenship verification to stay on the rolls or, if they do not do so within 14 days, confirms their removal and refers them for criminal investigation and prosecution.

---

[5] A recording of Mr. Olsen's statement is available at https://www.youtube.com/watch?v=Zr0LSt3xwCk (29:00).

56.    Data from U.S. Citizenship and Immigration Services (USCIS) shows that thousands of Virginia residents are naturalized every year. In Fiscal Year 2023, the most recent full year for which state-specific data is available, 24,100 Virginia residents became naturalized citizens.[6] Naturalization applications generally increase in advance of general elections,[7] and, according to USCIS data last updated on August 12, 2024, there were still an estimated 270,588 lawful permanent residents in Virginia eligible to naturalize.[8]

57.    The Census Bureau has found that roughly 61% of naturalized citizens are registered to vote.[9]

58.    To become a naturalized citizen, a person must first be a lawful permanent resident (often colloquially called a "green card holder") for years. The sole exceptions are for a small number of people who become naturalized citizens due to certain service in the U.S. military or who were previously noncitizen nationals of the United States because they were born in certain U.S. territories. For that reason, all (or virtually all) naturalized citizens in Virginia lived in the United States for years before they were citizens, as noncitizens and lawful permanent residents.[10]

---

[6]    *Naturalization Statistics*, USCIS, https://www.uscis.gov/citizenship-resource-center/naturalization-statistics (last updated May 9, 2024).

[7]    *U.S. Naturalization Policy* 16-17, Congressional Research Service (Apr. 15, 2024), https://crsreports.congress.gov/product/pdf/R/R43366.

[8]    *Eligible to Naturalize Dashboard*, USCIS (Aug. 12, 2024), https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data/eligible-to-naturalize-dashboard.

[9]    *Voting and Registration in the Election of November 2022,* Table 11, U.S. Census Bureau (Apr. 2023), https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-586.html.

[10]    In addition, some children born outside the U.S. who were legal permanent residents become U.S. citizens by operation of law, in what is called "derived citizenship." These children are not required to go through the naturalization process or obtain any documentation when they become citizens. When they turn 18, they can register to vote if they are otherwise eligible. Individuals with derived citizenship were typically children when at least one parent became a naturalized citizen. *See Policy Manual, Chapter 4 - Automatic Acquisition of Citizenship after Birth (INA 320)*, USCIS, https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-4. Derived citizens are subject to the same unlawful practices as naturalized citizens under the Purge Program, and the

59. Virginia drivers' licenses, permits, and special identification cards are available to citizens and noncitizens alike including legal permanent residents, "conditional resident alien[s]," approved applicants for asylum, and entrants into the United States in refugee status. Va. Code § 46.2-328.1(A). Those forms of identification can remain valid during the applicant's authorized stay in the United States, up to the legal limit of eight years. *Id*. at §§ 46.2-328(B); 330(A).

60. Because a person must ordinarily be a lawful permanent resident for years before becoming a naturalized citizen, and because a lawful permanent resident may obtain a driver's license, permit, or special identification card in Virginia, it is extremely likely that many naturalized citizen residents of Virginia had a noncitizen exchange with the DMV prior to naturalization.

61. This means that an individual could obtain a driver's license or form of identification as a non-U.S. citizen and subsequently become a U.S. citizen and lawfully register to vote—for example by using a paper voter registration form at their naturalization ceremony— without updating their DMV record to reflect their citizen status. *See* Va. Code §§ 46.2-328.1(A), 330(A). Under these circumstances, the DMV's records would still indicate that an eligible voter was not a U.S. citizen at the time they obtained their identification, thereby improperly and erroneously triggering the removal process.

62. Some individuals may have interactions with the DMV that do not result in their citizenship information being corrected or updated in the database, which increases the likelihood that the citizenship information contained in the DMV database is outdated for some individuals.

---

claims regarding the unlawfulness of the Purge Program with respect to naturalized citizens in this lawsuit apply equally to derived citizens—since they, too, were previously legal permanent residents and could have interacted with the DMV before becoming citizens.

63.     The DMV does not require people to show additional proof of citizenship or lawful residence when they renew their drivers' licenses (so long as they showed such proof since 2004 for legal permanent residents or 2020 for asylees or refugees).[11] Thus citizens who became naturalized *over the last twenty years* would likely not have updated citizenship documents on file with the DMV if they obtained a driver's license before their naturalization. The Purge Program directly threatens the voting rights of these citizens.

64.     Upon information and belief, eligible voters often mistakenly leave a box empty or check the wrong box during electronic transactions with the DMV in a way that indicates they are not a citizen despite having already confirmed their citizenship while registering to vote, thereby improperly and erroneously triggering the removal process. Ex. 5 at 7. This can impact naturalized citizens as well as U.S.-born U.S. citizens.

65.     Further, naturalized citizens in Virginia overwhelmingly come from communities of color that have historically been subject to discrimination in the exercise of their voting rights. For instance, in fiscal year 2022, the top five countries of origin for the 27,324 naturalized Virginia residents were: India (2,060), Afghanistan (1,803), Pakistan (1,357), Philippines (1,356), and El Salvador (1,685).[12]

66.     In other states, state officials have created similar legally flawed programs in reliance on information provided when an individual obtained a driver's license. In each of those cases, public reporting and lawsuits have uncovered that the programs targeted naturalized citizens.

---

[11] *Virginia's Legal Presence Law*, Virginia Department of Motor Vehicles, available at https://www.dmv.virginia.gov/licenses-ids/id-cards/legal-presence (last accessed Oct. 3, 2024).
[12] *Profiles on Naturalized Citizens*, U.S. Dep't of Homeland Sec., Office of Homeland Sec. Statistics, https://ohss.dhs.gov/topics/immigration/naturalizations/profiles-naturalized-citizens.

67.     Registration is the largest obstacle to voting in the United States. H.R. Rep. No. 103-9, at 3 (1993) ("Public opinion polls, along with individual testimony . . . indicate that failure to become registered is the primary reason given by eligible citizens for not voting. It is generally accepted that over 80 percent of those citizens who are registered vote in Presidential elections.").

68.     In passing the NVRA, Congress acknowledged that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

69.     On information and belief, Defendants have not taken any meaningful steps to ensure that individuals flagged by the Purge Program are not in fact U.S. citizens, even though (1) DMV data regarding citizenship is known to be outdated and unreliable as an indicator of current citizenship status, and (2) noncitizen designation or transactions in the DMV data are often the sole criterion to trigger voter registration cancellation.

70.     Because the Purge Program by design singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens, the Purge Program discriminates based on national origin and against naturalized citizens.

71.     Beyond its patent violation of the NVRA's quiet period, Virginia's Purge Program subjects naturalized citizens who have previously attested to their U.S. citizenship under penalty of perjury—as all other Virginia voters do—to a duplicative, arbitrary, and discriminatory process to remain registered and vote. Giving voters less than two weeks to complete that process (including the time it takes to receive, complete and mail back the form) exacerbates the burdens

24

**JA64**

imposed by the Purge Program. The deadline increases the likelihood that U.S. citizens are removed from the voter rolls by this process even though they are eligible to vote.

## IV.    The Purge Program's Impact on U.S.-Born Citizens

72.    On information and belief, the Purge Program has resulted and will continue to result in the cancellation of the voter registration of U.S.-born citizens. Individuals interacting with the DMV through electronic transactions often mistakenly select the wrong box in fields prompting the individual to indicate whether they are a U.S. citizen.

73.    At least some individuals who are U.S. citizens mistakenly check the box indicating they are not a citizen, which would result in the individual being flagged in the DMV's noncitizens transactions list.

74.    Because the Purge Program requires the DMV to transmit the list of noncitizen transactions to ELECT on a daily basis, DMV staff may not be able to identify and correct any user errors by U.S. citizens mistakenly indicating they are not a citizen prior to transmitting the list to ELECT, leading to these citizens being erroneously identified to ELECT as potential noncitizens.

## V.    Plaintiffs' Thwarted Effort to Obtain Information from the State

75.    On August 20, 2024, Plaintiff VACIR sent a letter to Defendant Beals, Defendant Miyares, the DMV, and the Office of the Governor requesting copies of all records relating to the removal from the voter registration rolls of Virginia registered voters on the basis that they have been identified as a potential "non-citizen." Ex. 7. The request was made pursuant to the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i). Defendant Beals made only a limited initial production of responsive records, despite a September

9 meeting with Defendant Beals's staff and numerous emails discussing the specific records responsive to the request.

76.     On October 3, 2024, Plaintiffs VACIR and LWVVA sent a letter entitled "Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents" to Defendants Beals and Miyares. Ex. 8. That letter, sent pursuant to the NVRA (52 U.S.C. § 20510(b)(2)), informed Defendants Beals and Miyares that the Purge Program violates the three provisions of the NVRA listed in Counts One through Three, *infra*. The letter also demanded records pursuant to 52 U.S.C. § 20507(i)(1), including, among other things: individualized voter information for voters affected by the Purge Program; instructions provided to Boards of Registrars regarding implementation of E.O. 35; and communications between Defendant Beals and Defendant Miyares regarding the Purge Program. ELECT responded to that letter on October 7, 2024, asserting that its "established voter list maintenance processes comply with all applicable state and federal laws" and that it will provide the list of individuals cancelled due to being declared a non-citizen within 90 days from the date of VACIR's August request. Ex. 9.

## CLAIMS

### COUNT ONE
**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(c)(2)(A)**
(*Ex parte Young*, 52 U.S.C. § 20510)
All Plaintiffs Against All Defendants

77.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

78.     The NVRA requires that Virginia complete "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" "not later than 90 days prior to the date of a[n] . . . election for Federal office." 52 U.S.C. § 20507(c)(2)(A). This provision, called the "90-Day Provision," means that Virginia may not take

26

**JA66**

any steps to implement any program to systematically remove voters within the 90-day period before the date of a general election—the "quiet period."

79.     The Purge Program violates the NVRA's 90-Day Provision because it (1) is a program with the purpose of systematically removing voters from the rolls and (2) has not been completed before the 90-day quiet period before the 2024 general election and was not completed before the 90-day quiet period before the 2024 primary elections.

80.     The NVRA provides that "[i]f the violation occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State…before bringing a civil action." 52 U.S.C. § 20510(b)(3). By its own terms, the Purge Program is ongoing, with potential purges occurring daily, all within 30 days before the November 5, 2024 election for Federal office. E.O. 35 at 3-4. Plaintiffs can, therefore, bring a civil action without notice to Virginia's chief election official.

## COUNT TWO
**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(b)(1)**
(*Ex parte Young*, 52 U.S.C. § 20510)
All Plaintiffs Against All Defendants

81.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

82.     The NVRA requires that voter list maintenance programs be "uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1).

83.     Va. Code Ann. § 24.2-427(C) and the Purge Program violate the NVRA's requirement that voter list maintenance programs be "uniform" and "nondiscriminatory" because they identify registered voters based on national origin and type of citizenship status. Because Defendants' Purge Program is triggered by DMV data indicating a voter had previously been identified as a noncitizen, the Purge Program is directed at individuals who were formerly

27

**JA67**

noncitizens versus U.S.-born, citizens. It inevitably and predictably (indeed, by design) identifies and places burdens on citizens born outside the United States whom Defendants know or should know may be naturalized.

84.     The NVRA provides that "[i]f the violation occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State…before bringing a civil action." 52 U.S.C. § 20510(b)(3). By its own terms, the Purge Program is ongoing, with potential purges occurring daily, all within 30 days before the November 5, 2024 election for Federal office. E.O. 35 at 3-4. Plaintiffs can, therefore, bring a civil action without notice to Virginia's chief election official.

## COUNT THREE
**Violation of the National Voter Registration Act, 52 U.S.C. §§ 20508(b)(1), 20505(a)(1)-(2)**
(*Ex parte Young*, 52 U.S.C. § 1983)
All Plaintiffs Against All Defendants

85.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

86.     The NVRA limits proof of citizenship to an attestation under penalty of perjury that the registrant is a U.S. citizen. *See Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013); *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); 52 U.S.C. §§ 20505(a)(1)-(2), 20508(b)(2)(A)-(B).

87.     The NVRA provides that a state voter registration form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. §§ 20505(a)(1)-(2), 20508(b)(1). Under the NVRA, a state voter registration form "shall include a statement that (A) specifies each eligibility

requirement (including citizenship); (B) contains an attestation that the applicant meets each such requirement; and (C) requires the signature of the applicant, under penalty of perjury." *Id.* §§ 20505(a)(1)-(2), 20508(b)(2); *see also id.* § 20504(c).

88.     By requiring certain voters to reaffirm their U.S. citizenship to remain registered, Va. Code Ann. § 24.2-427(C) and the Purge Program violate the NVRA's command that voters need only complete a voter registration form to be a registered voter in federal elections.

89.     By inserting an additional requirement that certain voters provide additional citizenship information about themselves as part of the State's DMV data checks and motor voter forms, Va. Code Ann. § 24.2-427(C) and the Purge Program also violates the NVRA's long-established principle that states may not add unnecessary voter registration requirements at any stage of the registration process by inserting an additional requirement that certain voters provide additional citizenship information about themselves as part of the State's DMV data checks and motor voter forms.

90.     The NVRA provides that "[i]f the violation occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State…before bringing a civil action." 52 U.S.C. § 20510(b)(3). By its own terms, the Purge Program is ongoing, with potential purges occurring daily, all within 30 days before the November 5, 2024 election for Federal office. E.O. 35 at 3-4. Plaintiffs can, therefore, bring a civil action without notice to Virginia's chief election official.

### COUNT FOUR
**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(i)**
(*Ex parte Young*, 52 U.S.C. § 1983)
All Plaintiffs Against Defendant Beals

91.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

92.     The Public Disclosure of Voter Registration Activities provision of the NVRA provides that states "shall maintain for at least 2 years and shall make available for public inspection… all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1). The Public Disclosure Provision covers individualized records for registered voters subject to removal programs. *See PILF v. N.C. State Board of Elections*, 996 F.3d 257 (4th Cir. 2021); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *see also* 52 U.S.C. 20507(i)(2).

93.     Defendant Beals has thus violated the Public Disclosure of Voter Registration Activities provision of the NVRA by refusing to provide Plaintiffs with the list of voters identified as potential noncitizens within a reasonable time period despite having those records in her office's possession at the time Plaintiff VACIR requested these records on August 20 and when Plaintiffs VACIR and LWVVA requested records on October 3.

94.     Defendant Beals's and her office's continuing refusal to provide the requested records up to and including the time of filing of this lawsuit—which now falls within the 30-day period prior to a federal election within which aggrieved parties have immediate standing to sue to vindicate their rights under the NVRA, 52 U.S.C. § 20510(b)(3)—is certainly unlawful and the requested records must now be produced immediately.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

a.      Declare that Va. Code Ann. § 24.2-427(C) and Defendants' Purge Program violate the NVRA;

b.      Declare that Defendant Beals's failure to produce records requested by Plaintiff VACIR on August 20, 2024, and by Plaintiffs VACIR and LWVVA on October 3, 2024, violate the Public Disclosure Provision of the NVRA;

c.      Preliminarily and permanently enjoin Defendants from implementing Va. Code Ann. § 24.2-427(C) and the Purge Program and from cancelling any voter's registration as part of the Purge Program or on the basis of failing to respond to a notice letter issued as a result of the implementation of the Purge Program;

d.      Order Defendants Beals and State Board of Election Members to instruct all Virginia county registrars to place back on the rolls in active status any persons whose voter registration was cancelled or marked inactive as part of the Purge Program, except for any voter who responded to a notice letter by affirming that they are not a U.S. citizen, and instruct that all impacted voters should be allowed to cast regular ballots if they appear at the polls so long as they are otherwise eligible to do so;

e.      Order Defendants Beals and State Board of Election Members to instruct all Virginia county registrars to send letters to affected voters retracting the notice letters already sent out on the basis of the Purge Program;

f.      Order all Defendants to take all such steps and instruct Virginia county registrars to take all such steps as are necessary to alert the public and all individuals who were sent notice

letters as a result of the implementation of the Purge Program that the notice letters sent pursuant to the Purge Program are being rescinded, that all eligible voters whose voter registration was cancelled or marked inactive due to the Purge Program may vote in the November 2024 general election, and that all eligible voters whose voter registration was cancelled or marked inactive due to the Purge Program are on the voter rolls and need not re-register to vote;

g.   Order Defendants Beals and State Board of Election Members to retract all referrals made to Virginia law enforcement for investigation or prosecution of individuals made based on the Purge Program;

h.   Order all Defendants to take all such steps as are necessary and instruct Virginia county registrars to take all such steps as are necessary to alert the public and all individuals whose voter registration was cancelled or marked inactive due to the Purge Program that no voter will be criminally investigated or prosecuted on the basis of the Purge Program, absent specific, individualized information that they have violated a law;

i.   Order all Defendants to provide Plaintiffs with all records concerning the implementation of the Purge Program, including, but not limited to, the lists of the names and addresses and other individualized data available of all persons to whom removal notice were sent and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made, as well as the lists of the names and addresses and all other individualized data available of all persons who have been subject to investigation for alleged violations of law as a result of the Purge Program and all records related to such investigations;

j.   Award Plaintiffs their costs and reasonable attorneys' fees in this action;

k.   Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

l.     Grant Plaintiffs such other relief as this Court may deem just and proper.

Date: October 15, 2024                               Respectfully submitted,

                                                    /s/ Shanna Ports
                                                    Shanna Ports (VSB No. 86094)
Ezra D. Rosenberg*                                  Danielle Lang**
Ryan Snow*                                          Kevin Hancock**
Javon Davis*                                        Brent Ferguson**
LAWYERS' COMMITTEE FOR CIVIL RIGHTS                 Simone Leeper*
UNDER LAW                                           CAMPAIGN LEGAL CENTER
1500 K Street, NW, Ste. 900                         1101 14th Street NW, Suite 400
Washington, DC 20005                                Washington, DC 20005
(202) 662-8600                                      Tel: (202) 736-2200
erosenberg@lawyerscommittee.org                     Fax: (202) 736-2222
rsnow@lawyerscommittee.org                          sports@campaignlegalcenter.org
jdavis@lawyerscommittee.org                         dlang@campaignlegalcenter.org
                                                    khancock@campaignlegalcenter.org
                                                    bferguson@campaignlegalcenter.org
                                                    sleeper@campaignlegalcenter.org


Orion Danjuma*                                      John Powers*
John Paredes*                                       Hani Mirza*
THE PROTECT DEMOCRACY PROJECT, INC.                 ADVANCEMENT PROJECT
82 Nassau Street, # 601                             1220 L Street Northwest, Suite 850
New York, NY 10038                                  Washington, D.C. 20005
Telephone: (202) 579-4582                           (202) 728-9557
orion.danjuma@protectdemocracy.org                  jpowers@advancementproject.org
john.paredes@protectdemocracy.org                   hmirza@advancementproject.org


Benjamin L. Berwick*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582                                      *Attorneys for Plaintiffs Virginia Coalition for*
ben.berwick@protectdemocracy.org                    *Immigrant Rights, the League of Women Voters*
                                                    *of Virginia, the League of Women Voters of*
                                                    *Virginia Education Fund, and African*
                                                    *Communities Together*
Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.                 *Motion for pro hac vice participation*
200 Pennsylvania Ave. NW, Suite # 163               *forthcoming.*
Washington, DC 20006                                ***Motion for pro hac vice participation*
Telephone: (202) 579-4582                           *pending*
anna.dorman@protectdemocracy.org

**JA73**

## CERTIFICATE OF SERVICE

I certify that on October 15, 2024, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to any counsel of record. Plaintiffs' Counsel will also send courtesy copies to attorneys at the Virginia Attorney General's Office who have met with Plaintiffs' counsel regarding this matter.

/s/ Shanna Ports
Shanna Ports

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| VIRGINIA COALITION FOR<br>    IMMIGRANT RIGHTS, *et al.*, )<br>)<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>SUSAN BEALS, )<br>*in her official capacity as Virginia* )<br>    *Commissioner of Elections, et al.*, )<br>    *Defendants.* )<br>) | Civil Action No. 1:24-cv-1778 (PTG/WBP) |

VIRGINIA COALITION FOR
    IMMIGRANT RIGHTS, *et al.*, )
)
)
*Plaintiffs*, )
)
v. )    Civil Action No. 1:24-cv-1778 (PTG/WBP)
)
SUSAN BEALS, )
*in her official capacity as Virginia* )
    *Commissioner of Elections, et al.*, )
    *Defendants.* )
)

**\*\*\***

UNITED STATES OF AMERICA, )
)
*Plaintiff*, )
)
v. )    Civil Action No. 1:24-cv-1807 (PTG/WBP)
)
COMMONWEALTH OF VIRGINIA, *et al.*, )
    *Defendants.* )
)
)

## <u>ORDER</u>

This matter is before the Court on its own initiative. On October 16, 2024, this Court entered an Order directing the parties in each case, *Virginia Coalition for Immigrant Rights, et al., v. Susan Beals, et al.,* Civil Action No. 1:24-cv-1778 (Dkt. 40), and *United States of America v. Commonwealth of Virginia, et al.*, Civil Action No. 1:24-cv-1807 (Dkt. 7), to show cause by noon on Friday, October 18, 2024, as to why these cases should not be consolidated pursuant to Federal Rule of Civil Procedure 42(a). No party has filed any pleading indicating such cause. Accordingly, it is hereby

**ORDERED** that

- *Virginia Coalition for Immigrant Rights, et al., v. Susan Beals, et al.,* Civil Action No. 1:24-cv-1778, and *United States of America v. Commonwealth of Virginia, et al.,* Civil Action No. 1:24-cv-1807, are consolidated;

- *Virginia Coalition for Immigrant Rights, et al., v. Susan Beals, et al.,* Civil Action No. 1:24-cv-1778 is designated as the lead case. Documents should bear both case numbers and need only be filed in the lead case.

The Clerk is **DIRECTED** to enter this Order on both dockets.

Entered this *18*th day of October, 2024.
Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| VIRGINIA COALITION FOR<br>   IMMIGRANT RIGHTS, *et al.*, | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-1778 (PTG/WBP) |
| | ) | |
| SUSAN BEALS, | ) | |
| *in her official capacity as Virginia* | ) | |
|    *Commissioner of Elections, et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-1807 (PTG/WBP) |
| | ) | |
| COMMONWEALTH OF VIRGINIA, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on Motions for Preliminary Injunction (Dkt. 26; Civil Action No. 1:24-cv-1807, Dkt. 9) filed by the Virginia Coalition for Immigrant Rights, the League of Women Voters of Virginia, the League of Women Voters of Virginia Education Fund, African Communities Together, and the United States ("Plaintiffs").

To receive a preliminary injunction, Plaintiffs bear the burden of establishing: (1) they are likely to succeed on the merits of the case; (2) they are likely to suffer irreparable harm in the

1

absence of injunctive relief; (3) the balance of equities tips in their favor; and (4) an injunction would be in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Roe v. Dept. of Defense*, 947 F.3d 207, 219 (4th Cir. 2020).

For the reasons stated in open court, the Court finds that Plaintiffs have established the four elements of the *Winter* test for preliminary injunctive relief.

Accordingly, it is hereby

1.      **ORDERED** that Plaintiffs' Motions for Preliminary Injunction (Dkt. 26; Civil Action No. 1:24-cv-1807, Dkt. 9) are **GRANTED in part** and **DENIED in part**; it is further

2.      **ORDERED** that the Commonwealth of Virginia, the Virginia State Board of Elections, and Susan Beals, John O'Bannon, Rosalyn Dance, Georgia Alvis-Long, Donald Merricks, and Matthew Weinstein in their official capacities ("Defendants"), along with their agents, are enjoined from continuing any systematic program intended to remove the names of ineligible voters from registration lists less than 90 days before the November 5, 2024, federal General Election, although this does not preclude removal of names from the official list of voters at the request of the registrant, by reason of criminal conviction or mental incapacity (as provided by Virginia law), individual correction, or by reason of the death of the registrant; and it is further

3.      **ORDERED** that Defendants and their agents restore voter registration of registrants cancelled pursuant to Defendants' Program after August 7, 2024, unless the registrant (1) subsequently submits a voter removal request, or (2) is subject to removal by reason of criminal conviction or mental incapacity (as provided by Virginia law), or by reason of the death of the registrant; it is further

4.      **ORDERED** that within five (5) days of this Order, Defendants and their agents issue guidance to county registrars in every local jurisdiction in Virginia to immediately restore

2

the voter registration records of registrants removed pursuant to Defendants' Program, so long as those individuals (1) did not subsequently submit a voter removal request, or (2) are not subject to removal by reason of criminal conviction or mental incapacity (as provided by Virginia law), or by reason of the death of the registrant; it is further

5.    **ORDERED** that within five (5) days of this Order, Defendants and their agents provide a remedial mailing to each registrant described in Paragraph 3:

    a.  Informing the registrant that their voter registration has been restored to the voter rolls;

    b.  Explaining that the registrant may cast a regular ballot on Election Day in the same manner as other eligible voters;

    c.  Advising the registrant that cancellation of their registration pursuant to the purported noncitizen removal program after August 7, 2024, does not in itself establish that they are ineligible to vote or subject to criminal prosecution or any other penalty for registering to vote or for voting; and

    d.  Advising registrants who are not U.S. citizens that they remain ineligible to cast a ballot in Virginia elections; it is further

6.    **ORDERED** that within five (5) days of this Order, Defendants and their agents shall:

    a.  Post template copies of the remedial mailing described in Paragraph 5, along with a copy of this Order, on the website of the Virginia Department of Elections; and

    b.  Issue a press release in the customary manner of the Department of Elections that announces this Court's Order; it is further

3

7.      **ORDERED** that within five (5) days of this Order, Defendants and their agents make all reasonable and practicable efforts to educate local officials, poll workers, and the general public on Defendants' program, the restoration of the voter registrations of impacted voters, and the ability of impacted voters to cast a regular ballot without submitting supplemental paperwork or documentation.  Such efforts shall include the tracking of poll worker training in all 95 counties and independent cities in the Commonwealth concerning cessation of the purported noncitizen removal program and the remedial actions required by this Order; it is further

8.      **ORDERED** that within five (5) days of this Order, Defendants shall submit to this Court under seal a report detailing every voter registration cancelled on or after August 8, 2024, to the present.  That report shall include the voter's full name (including first, middle, and last names and any suffixes), address, voter identification number, social security number (if available), driver's license number (if available), date of voter registration, date of cancellation, and reason for cancellation; it is further

9.      **ORDERED** that Defendants' authority or ability to cancel the voter registration of noncitizens through individualized review is not limited by this Order.  Nor does this Order limit Defendants' authority or ability to investigate noncitizens who register to vote or who vote in Virginia's elections.  The preliminary injunction applies only to Defendants' systematic Program which occurred after August 7, 2024; it is further

10.     **ORDERED** that the Motions for Preliminary Injunction (Dkt. 26; Civil Action No. 1:24-cv-1807, Dkt. 9) are **DENIED** in all other respects; and it is further

11.     **ORDERED** that this injunction expires on the day after the 2024 General Election.

Entered this 25th day of October, 2024.
Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

4

**JA80**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF VIRGINIA EDUCATION FUND; AFRICAN COMMUNITIES TOGETHER, | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-1778 |
| SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; DONALD W. MERRICKS and MATTHEW WEINSTEIN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General, | |
| *Defendants*. | |
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-1807 |
| COMMONWEALTH OF VIRGINIA; VIRGINIA STATE BOARD OF ELECTIONS; and SUSAN BEALS, in her official capacity as Commissioner of Elections, | |
| *Defendants*. | |

## NOTICE OF APPEAL PURSUANT TO 28 U.S.C. § 1292(a)(1)

JA81

Pursuant to 28 U.S.C. § 1292(a)(1), all defendants in these consolidated cases appeal to the United States Court of Appeals for the Fourth Circuit from the order granting in part the plaintiffs' motions for preliminary injunctions entered on October 25, 2024. *See* Dkt. 112 at 2 ("ORDERED that Plaintiffs' Motions for Preliminary Injunction (Dkt. 26; Civil Action No. l:24-cv-1807, Dkt. 9) are GRANTED in part and DENIED in part"); 28 U.S.C. § 1292(a)(1) ("[T]he courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions").

Dated: October 25, 2024

**RESPECTFULLY SUBMITTED,**

**COMMONWEALTH OF VIRGINIA; VIRGINIA STATE BOARD OF ELECTIONS; SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **DONALD W. MERRICKS** and **MATTHEW WEINSTEIN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:   */s/ Erika L. Maley*
           Erika L. Maley (VSB #97533)
           *Solicitor General*

JA82

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman (*Pro Hac Vice*)
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
cooper@cooperkirk.com


*Counsel for Defendants*

Jason S. Miyares
   *Attorney General*
Thomas J. Sanford (VSB #95965)
   *Deputy Attorney General*
Erika L. Maley (VSB #97533)
   *Solicitor General*
Graham K. Bryant (VSB #90592)
   *Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on October 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

<u>   /s/ Erika L. Maley   </u>
*Solicitor General*
*Counsel for the Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 1:24-cv-01778** |
| **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** | ) ) ) | |
| **Defendants.** | ) | |
| **The United States of America,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 1:24-cv-01807** |
| **The Commonwealth of Virginia, et al.,** | ) ) ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION TO DISMISS THE ORGANIZATIONAL
PLAINTIFFS' FIRST AMENDED COMPLAINT AND THE
UNITED STATES OF AMERICA'S COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants the Commonwealth of Virginia, the Virginia State Board of Elections, Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Donald W. Merricks, Matthew Weinstein, and Jason Miyares, by counsel, respectfully move this Court to dismiss the Organizational Plaintiffs' First Amended Complaint and the United States of America's Complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. In support, Defendants rely on the Memorandum in Support filed herewith and the authorities and evidence cited therein.

Dated: November 21, 2024

Respectfully submitted,

**COMMONWEALTH OF VIRGINIA;
VIRGINIA STATE BOARD OF ELECTIONS;
SUSAN BEALS**, in her official capacity as Virginia
Commissioner of Elections; **JOHN O'BANNON**,
in his official capacity as Chairman of the State
Board of Elections; **ROSALYN R. DANCE**, in her
official capacity as Vice-Chairman of the State
Board of Elections; **GEORGIA ALVIS-LONG**, in
her official capacity as Secretary of the State Board
of Elections; **DONALD W. MERRICKS** and
**MATTHEW WEINSTEIN**, in their official
capacities as members of the State Board of
Elections; and **JASON MIYARES**, in his official
capacity as Virginia Attorney General

By:   */s/ Erika Maley*

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman (*Pro Hac Vice*)
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants the Commonwealth of
Virginia, the Virginia State Board of
Elections, Susan Beals, John O'Bannon,
Rosalyn R. Dance, Georgia Alvis-Long,
Donald W. Merricks, Matthew Weinstein, and
Jason Miyares*

Jason S. Miyares
*Attorney General*
Thomas J. Sanford (VSB #95965)
*Deputy Attorney General*
Erika L. Maley (VSB #97533)
*Solicitor General*
Graham K. Bryant (VSB #90592)
*Deputy Solicitors General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

2
**JA86**

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on November 21, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

  <u>   */s/ Erika Maley*   </u>

Erika L. Maley (VSB #97533)

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

VIRGINIA COALITION FOR
IMMIGRANT RIGHTS; LEAGUE OF
WOMEN VOTERS OF VIRGINIA;
LEAGUE OF WOMEN VOTERS OF
VIRGINIA EDUCATION FUND; AFRICAN
COMMUNITIES TOGETHER,

     *Plaintiffs*,

       v.

SUSAN BEALS, in her official capacity as
Virginia Commissioner of Elections; JOHN
O'BANNON, in his official capacity as
Chairman of the State Board of Elections;
ROSALYN R. DANCE, in her official
capacity as Vice-Chairman of the State
Board of Elections; GEORGIA ALVIS-LONG, in
her official capacity as Secretary of the State
Board of Elections; DONALD W.
MERRICKS and MATTHEW WEINSTEIN,
in their official capacities as members of the
State Board of Elections; and JASON
MIYARES, in his official capacity as Virginia
Attorney General,

     *Defendants*.

Case No. 1:24-cv-01778 (Lead)
Case No. 1:24-cv-01807
Judge Patricia Tolliver Giles

<u>**PRIVATE PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 2

I.      Statutory Framework and Factual Background ................................... 2

II.     Procedural Background ....................................................................... 4

LEGAL STANDARD ....................................................................................... 6

ARGUMENT .................................................................................................... 7

I.      Plaintiffs' claims are not jurisdictionally barred. ............................. 7

        A.      Plaintiffs have Article III standing. ...................................... 7

        B.      Plaintiffs' 90-Day Provision claim is not moot. .................. 13

        C.      Defendants are proper parties to this lawsuit. ...................... 15

II.     Plaintiffs have sufficiently stated their claims. ............................ 19

        A.      Plaintiffs have sufficiently stated that Defendants systematically purged voters in
                violation of the 90-Day Provision of the NVRA. ................ 19

                i.      Defendants' removals within the 90-Day Provision were systematic ....... 19

                ii.     The 90-Day Provision protects the voters removed by Defendants' Purge
                        Program. ................................................................... 20

        B.      Plaintiffs have sufficiently stated that Defendants' Purge Program is nonuniform
                and discriminatory in violation of the NVRA .......................... 22

        C.      Plaintiffs have sufficiently stated that Defendants' Purge Program violates the
                NVRA's command that voters need only complete a voter registration form to be
                a registered voter in federal elections. ............................... 23

        D.      Plaintiffs have sufficiently stated that Defendants have violated the Public
                Disclosure of Voter Registration Activities Provision of the NVRA. ................. 27

                i.      The claim for records under the NVRA is not moot. ............................... 27

                ii.     The NVRA public disclosure provision covers voter information in
                        databases. ............................................................. 29

CONCLUSION .................................................................................................. 30

CERTIFICATE OF SERVICE ........................................................................ 32

CERTIFICATE OF COMPLIANCE ............................................................... 33

i

**JA89**

## TABLE OF AUTHORITIES

**Cases**                                                     **Page**

*Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024) ("*ACIJ*") ........................22

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ..........................10

*Allco Finance Limited v. Klee*, 861 F.3d 82 (2d Cir. 2017) ........................27

*American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024) ........................10

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) ................................12, 20, 21

*Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013) ("*ITCA*") ....................24, 25, 26, 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................2, 6, 19

*Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013) ........................17

*Bowsher v. Synar*, 478 U.S. 714 (1986) ........................13

*Caicedo v. DeSantis*, No. 6:23-cv-2303, 2024 WL 4729160 (M.D. Fla. Nov. 8, 2024) ................. 8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................12

*Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989) ........................16

*Commodity Futures Trading Commission v. Board of Trade of City of Chicago*, 701 F.2d 653 (7th Cir. 1983) ........................13

*CSX Transportation, Inc. v. Board of Public Works of State of West Virginia*, 138 F.3d 537 (4th Cir. 1998) ........................16

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) ........................17

*Democratic Party of Virginia v. Brink*, 599 F. Supp. 3d 346 (E.D. Va. 2022) ........................11

*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ........................11

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021) ........................18

*Evans v. United States*, 105 F.4th 606 (4th Cir. 2024) ........................6

*Ex parte Young*, 209 U.S. 123 (1908) ........................16, 17, 18

*FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007) ("*WRTL*") ........................13, 14, 28

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ........................24, 26

ii

**JA90**

*Florida State Conference of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) .....................12

*Food and Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ("*AHM*") ............................................................................7, 8

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000) ...........................................10

*Get Loud Arkansas v. Thurston*, No. 5:24-cv-5121,
2024 WL 4142754 (W.D. Ark. Sept. 9, 2024) ...........................................................8

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ..................................................6

*Greater Birmingham Ministries v. Secretary of State of Alabama*,
105 F.4th 1324 (11th Cir. 2024) ...........................................................................29

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ...............................................7

*Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018) .......................................23

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ..................................................6

*Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298 (2012) ..................28

*La Union Del Pueblo Entero v. Abbott*, No. 5:21-cv-0844,
2024 WL 4488082 (W.D. Tex. Oct. 11, 2024) ...........................................................8

*Lighthouse Fellowship Church v. Northam*, 20 F.4th 157 (4th Cir. 2021) .........................14

*Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011) ........................................................14, 15

*March for Our Lives Idaho v. McGrane*, No. 1:23-cv-00107,
2024 WL 4226912 (D. Idaho Sep. 17, 2024) ........................................................8, 10

*Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077 (D. Ariz. 2023) .............................21, 23

*National Association for the Advancement of Colored People v. State of Alabama ex rel.
Patterson*, 357 U.S. 449 (1958) .........................................................................11

*National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) .........................11

*North Carolina Right to Life Committee Fund for Independent Political Expenditures v. Leake*,
524 F.3d 427 (4th Cir. 2008) .............................................................................14

*North Carolina State Conference of the NAACP v. North Carolina State Board of Elections*,
No. 1:16-CV-1274, 2016 WL 6581284 (M.D.N.C. Nov. 6, 2016) ...................................20

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ..................22, 29

*Public Interest Legal Foundation v. Bellows*, 92 F.4th 36 (1st Cir. 2024) .........................30

*Public Interest Legal Foundation v. Chapman*, 595 F. Supp. 3d 296 (M.D. Pa. 2022) .............30

iii

**JA91**

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
996 F.3d 257 (4th Cir. 2021) ...........................................................................6, 27

*Pulsifer v. United States*, 601 U.S. 124 (2024) .........................................................21

*Republican National Committee v. North Carolina State Board of Elections*,
120 F.4th 390 (4th Cir. 2024) ............................................................................8, 9

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .....13

*Schneider v. Rusk*, 377 U.S. 163 (1964) .......................................................................1

*Secretary of the Interior v. California*, 464 U.S. 312 (1984) .......................................13

*Sharma v. Hirsch*, 121 F.4th 1033 (4th Cir. 2024) .....................................................14

*South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) .........17

*Tennessee Conference of the National Association for the Advancement of Colored People v. Lee*,
105 F.4th 888 (6th Cir. 2024) ..............................................................................9

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)................................23

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002) ..........15

*Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071,
2024 WL 4601052 (4th Cir. Oct. 27, 2024) ..............................................5, 19, 21

*Beals v. Virginia Coalition for Immigrant Rights*, No. 24A407,
2024 WL 4608863 (slip op.) (U.S. Oct. 30, 2024)....................................................6

*Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014 (D.N.M. 2024)............................30

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ..........................................18

*Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008) ..........................................................6

**Statutes and Codes**

52 U.S.C. § 20501 .........................................................................................................2

52 U.S.C. § 20505(a)(1)-(2).......................................................................................2, 23

52 U.S.C. § 20507 ......................................................................................................2, 21

52 U.S.C. § 20507(a) .....................................................................................................21

52 U.S.C. § 20507(a)(3)..................................................................................................21

52 U.S.C. § 20507(b)(1) .............................................................................................2, 22

52 U.S.C. § 20507(c)(2)(A).....................................................................................2, 20, 21

iv

52 U.S.C. § 20507(i) ........................................................................2

52 U.S.C. § 20507(i)(1) ..................................................................29

52 U.S.C. § 20508(b)(1) ............................................................24, 25

52 U.S.C. § 20510(b)(3) ..................................................................4

Va. Code § 24.2-104(A) .................................................................18

Va. Code § 24.2-104.1 ...................................................................18

Va. Code § 24.2-410.1(A) ...........................................................3, 14

Va. Code § 24.2-427(B)(iii) ..............................................................3

Va. Code § 24.2-427(C) ..............................................................4, 17

**Other Authorities**

Complaint, *United States v. The Commonwealth of Virginia*, No. 24-cv-01807
(E.D. Va. Oct. 11, 2024) ..............................................................12

Emergency Application for Stay, *Beals v. Virginia Coalition for Immigrant Rights*, No. 24A407
(U.S. Oct. 28, 2024) ...................................................................3, 4

H.R. Rep. No. 103-9 (1993) ......................................................20, 22

S. Rep. No. 103-6 (1993) .........................................................20, 22

# INTRODUCTION

The right to vote is fundamental and foundational to American democracy, and American citizens hold that right in equal measure regardless of where they were born. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964). In passing the National Voter Registration Act (NVRA), Congress sought to protect that fundamental right, in particular defending it against voter registration and list maintenance programs that threaten to exclude eligible voters from the ballot box and/or operate in a nonuniform or discriminatory manner. Defendants are operating such a program that is systematically purging eligible voters from Virginia's voter rolls based on state statute and an executive order (hereinafter collectively the "Purge Program"). Virginia Coalition for Immigrant Rights (VACIR); League of Women Voters of Virginia and League of Women Voters of Virginia Education Fund (LWVVA); and African Communities Together (ACT) (hereinafter "Plaintiffs") challenged Defendants' Purge Program, alleging that it violates the NVRA's framework for protecting the fundamental right to vote.

Defendants now ask that this Court dismiss Plaintiffs' claims, arguing that they are jurisdictionally barred and that Plaintiffs have failed to state a claim on the merits. Because Plaintiffs have Article III standing, Plaintiffs' claims are not moot, and Defendants are proper parties to this lawsuit, Plaintiffs' claims are not jurisdictionally barred. Plaintiffs have also sufficiently stated their claims that Defendants have systematically purged voters in violation of the NVRA's 90-Day Provision and will continue to do so; that the Purge Program is nonuniform and discriminatory in violation of the NVRA; that the Purge Program violates the NVRA's command that voters need only complete a voter registration form to be a registered voter in federal elections; and that Defendants violated the NVRA's Public Disclosure Provision. Defendants' factual assertions to the contrary on all these claims are inappropriate for consideration of this

1

**JA94**

motion, for which the Court must take as true the allegations in Plaintiffs' complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should deny Defendants' motion in its entirety.

## BACKGROUND

### I.　Statutory Framework and Factual Background

The United States Congress enacted the National Voter Registration Act of 1993 to protect and promote the "fundamental right" to vote. 52 U.S.C. §§ 20501 *et seq*. The NVRA contains several key provisions at issue here. First, the 90-Day Provision prohibits systematic voter purges on the eve of an election because they could strip eligible citizens of their fundamental right to vote. 52 U.S.C. § 20507(c)(2)(A). Second, the NVRA requires that all voter list maintenance programs "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id*. § 20507(b)(1). Third, states must "accept and use" the federal voter registration form and a state equivalent, and those forms may only require information that "is necessary to enable" an assessment of an applicant's eligibility. *Id*. §§ 20505(a)(1)-(2), 20508(b)(1). These provisions are intended to "increase the number of eligible citizens who register to vote in elections for Federal office," to protect "the integrity of the electoral process," and ensure the maintenance of "accurate and current voter registration rolls." 52 U.S.C. § 20501(b). Fourth, the NVRA's Public Disclosure of Voter Registration Activities Provision requires that states "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

The Virginia Code provides that general registrars shall cancel the registrations of all persons who are known not to be U.S. citizens by reasons of report from the Department of Motor Vehicles (DMV) or from the Department of Elections (ELECT) based on information received

2

from the Systematic Alien Verification for Entitlements Program (SAVE). Va. Code § 24.2-427(B)(iii). Virginia law also requires the DMV to provide to ELECT on a monthly basis a list of people "who have indicated a noncitizen status." Va. Code § 24.2-410.1(A). On August 7, 2024, the beginning of the 90-Day pre-election period for the 2024 General Election, Governor Youngkin announced Executive Order 35 (E.O. 35), which mandates a departure from the list maintenance procedures established by the Virginia Code. ECF 26-4. E.O. 35 directs the DMV to "expedite the interagency data sharing with [ELECT] of noncitizens by generating a *daily* file of all noncitizen transactions." *Id.* at 4.

The precise design, structure, and operation of Defendants' Purge Program remains unknown, as does the extent of the Program's effect on Virginia voters. Throughout this litigation, Defendants have sought to avoid revealing details about the Program, including which types of registrants the Program captures and how the removal process operates.[1] According to Defendants, they implemented voter purge processes, including an "ad-hoc" removal process and a daily data matching scheme, both outside and within the NVRA's 90-day window. The "ad-hoc" review purported to remove, after applying a SAVE search, voters who indicated citizenship in a DMV transaction but also had noncitizen documents on file. ECF 92-1 at 5. Separately, the daily removals ordered by E.O. 35 remove individuals who checked a box indicating noncitizenship during a DMV transaction. ECF 92-2 at 2-3. At the time E.O. 35 was adopted, the DMV stopped checking or verifying the status of people whose files have both an indication of noncitizenship (such as erroneously checking the noncitizenship box), as well as indications of citizenship. The

---

[1] Defendants' representations about the Program have sometimes been misleading. For example, defining individuals who *once* identified themselves as noncitizens, perhaps many years ago, as "self-identified noncitizens," regardless of whether they later affirmed citizenship, is deeply flawed. *See*, *e.g.*, ECF 122 at 1; Emergency Application for Stay at 1, *Beals v. VACIR*, No. 24A407 (U.S. Oct. 28, 2024).

result was that many registrants with contradictory indicators of citizenship were automatically subjected to the removal process. ECF 26-4 at 4; ECF 23 ¶ 44.

Once ELECT notifies a registrar that a registered voter is allegedly a noncitizen, the registrar performs no additional citizenship check—the registrar verifies only that the purported noncitizen is the same person as the one listed on the voter rolls. ECF 26-5 at 36-37. Indeed, Virginia law does not allow registrars to conduct any further inquiry into the individual's citizenship status.[2] When there is an identity match, the registrar sends a notice letter to each matched voter stating that they have been identified as a potential noncitizen. ECF 120 at 10. The notices direct the recipient that they have 14 days to respond by completing and attaching an attestation of citizenship. *Id.* If the person does not respond, the registrar can manually cancel that person's registration starting 14 days from the date the letter was mailed by the registrar. *Id.* The person is automatically canceled and removed from the voter rolls by the Virginia Election and Registration Information System (VERIS) after 21 days. *Id.* From the start of the 90-day pre-election period on August 7, 2024 until October 21, 2024—the date on which Defendants provided the Purge List to Plaintiffs—over 1,600 voters were purged. *See* ECF 110-1.

## II.    Procedural Background

Plaintiffs filed their complaint on October 7, 2024, the first day permissible under the NVRA's 30-day preelection period. *See* 52 U.S.C. § 20510(b)(3); ECF 1. Plaintiffs filed an emergency motion for expedited discovery the day after the complaint, and eight days later, they amended their complaint and moved for a preliminary injunction. ECFs 4, 23, 26. This Court held

---

[2] Defendants have conceded no further inquiry is conducted. *See* Emergency Application for Stay at 7, *Beals v. Virginia Coalition for Immigrant Rights*, No. 24A407 (U.S. Oct. 28, 2024); ECF 119 at 95-97; ECF 92-1 at 2l; Va. Code § 24.2-427(C).

a hearing on the discovery motion and ordered Defendants to provide a list of alleged noncitizens removed pursuant to the Purge Program. ECF 72.

Following a full-day hearing, this Court granted a preliminary injunction on Plaintiffs' 90-day claim. ECF 120 at 24. This Court first held that "Plaintiffs [had] established organizational standing under *Havens Realty*, as well as *Hippocratic Medicine*" and that it is "likely that they are going to be able to establish associational standing as well." *Id.* at 6-7. The Court found that Plaintiffs showed a "likelihood of success by clear and convincing evidence," having demonstrated that "the Defendants' process is a program whose purpose is to systematically remove the names of ineligible voters which was continued or not completed later than 90 days before the general election." *Id.* at 13-14. Next, the Court found that Plaintiffs suffered irreparable harm from Defendants' Program, which "curtailed the right of eligible voters to cast their ballots in the same way as all other eligible voters." *Id.* at 20. Lastly, the Court determined that the balance of equities and the public interest favored Plaintiffs. *Id.* at 23-24.

Defendants asked this Court to stay its preliminary injunction and, after the Court denied their motion, filed an emergency stay motion with the Court of Appeals for the Fourth Circuit. A panel of the Fourth Circuit denied Defendants' stay motion almost entirely. The Court concluded that Defendants' Purge Program constitutes a "program" that "most certainly is" systematic, and that at least some "eligible citizens have had their registrations canceled and were unaware that this was even so." *See VACIR v. Beals*, No. 24-2071, 2024 WL 4601052, at *1–2 (4th Cir. Oct. 27, 2024) (internal quotations omitted). Subsequently, Defendants submitted an emergency motion to stay to the United States Supreme Court, which granted the motion pending "the disposition of the appeal in the United States Court of Appeals for the Fourth Circuit and disposition of a petition for

a writ of certiorari." *VACIR v. Beals*, No. 24A407, 2024 WL 4608863 (slip op. at 1) (U.S. Oct. 30, 2024) (mem.).

On November 21, 2024, Defendants filed their Motion to Dismiss and a Memorandum in Support of that motion. ECFs 121, 122.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In assessing a 12(b)(6) motion, the Court must "accept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Public Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 263 (4th Cir. 2021); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Likewise, under Rule 12(b)(1), "[w]hen a defendant makes a facial challenge to subject matter jurisdiction, . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation and citation omitted); *see also, e.g.*, *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024); *Wilson v. Johnson*, 535 F.3d 262, 264 (4th Cir. 2008).

## ARGUMENT

**I.     Plaintiffs' claims are not jurisdictionally barred.**

**A.     Plaintiffs have Article III standing.**

Plaintiffs have organizational and associational standing. As to the former, organizational plaintiffs suffer injury in their own right when defendants' "actions directly affect[] and interfere[] with [plaintiffs'] core business activities." *FDA v. All. for Hippocratic Med.* (*AHM*), 602 U.S. 367, 395 (2024). In *Havens Realty Corp. v. Coleman*, for example, the Supreme Court found injury because the challenged racial steering practices "perceptibly impaired" the plaintiff organization's housing counseling services. 455 U.S. 363, 379 (1982).

Like the plaintiffs in *Havens Realty*, Plaintiffs here provide counseling—*voting* counseling, in the form of voter registration assistance and voter engagement efforts. And, as Plaintiffs have alleged, the Purge Program "directly affect[s] and interfere[s] with" those core organizational activities, *AHM*, 602 U.S. at 395, including by requiring Plaintiffs to identify and reregister purged voters and ensure previously active voters remain active and registered. *See* ECF 23 ¶¶ 21–23, 26–27, 34; ECF 26-24 (Porte Decl.) ¶¶ 2, 5–25; ECF 26-25 (Traore Decl.) ¶¶ 12–16; ECF 26-23 (Sarmiento Decl.) ¶¶ 5, 12. For example, as a direct response to the Purge Program, LWVVA has had to dedicate more resources to "'check your registration' efforts" targeted at naturalized citizens, "distribute a public service announcement (PSA) throughout the state . . . instructing [voters] to check that their registration is valid before Election Day," and expend resources on "helping members and registered voters determine whether they remain eligible and by helping voters who are purged restore their eligibility." ECF 23 ¶¶ 26–27. ACT has similarly expended its resources "producing new public education materials," "revising the resources and scripts used by canvassers and phone bankers," and "re-training paid staff and volunteers" to assist purged voters

7

and help them re-register if necessary. *Id.* ¶ 34. And Plaintiffs' injury goes further still: No amount of resources will allow Plaintiffs to ensure that all the individuals they have helped register and encouraged to vote will remain able to do so under the Purge Program. *See* ECF 23 ¶¶ 26, 30; ECF 26-24 (Porte Decl.) ¶¶ 27, 29, 39; ECF 26-25 (Traore Decl.) ¶¶ 17, 19–21; ECF 26-23 (Sarmiento Decl.) ¶¶ 18–19. For those reasons, courts routinely recognize that policies that directly impair voter registration also harm organizations that provide voter registration assistance.[3]

*AHM* did not abrogate *Havens Realty* in the way Defendants imagine. *See* ECF 122 at 15-17. In fact, *AHM* expressly re-affirmed the core of *Havens Realty*: that plaintiff organizations have standing when a defendant's actions "perceptibly impair[]" their core organizational activities "with the consequent drain on the organization's resources." *Havens Realty*, 455 U.S. at 379; *see AHM*, 602 U.S. at 395. The *AHM* plaintiffs, by contrast, incurred no similar injury. They alleged only that they had incurred costs by "advocat[ing] against the defendant's actions," *AHM*, 602 U.S. at 394, but not that those actions "imposed any similar impediment" to their core organizational activities, *id.* at 395. *AHM* Plaintiffs were just "concerned bystanders" without a concrete stake in the dispute. *Id.* at 382. In other words, *AHM* merely clarified that, absent an impairment of core organizational activities as in *Havens Realty*, plaintiffs had done nothing more than "assert standing simply because they object to [defendant's] actions." *Id.* at 394.

The Fourth Circuit recently foreclosed Defendants' proposed reading of *AHM*. In *Republican National Committee v. North Carolina State Board of Elections*, the Court explained

---

[3] This includes numerous court findings since the *AHM* decision. *See, e.g.*, *Get Loud Ark. v. Thurston*, No. 5:24-cv-5121, 2024 WL 4142754, at *13 (W.D. Ark. Sept. 9, 2024); *March for Our Lives Idaho v. McGrane*, No. 1:23-cv-00107, 2024 WL 4226912, at *5–6 (D. Idaho Sep. 17, 2024); *La Union Del Pueblo Entero v. Abbott*, No. 5:21-cv-0844, 2024 WL 4488082, at *35–36 (W.D. Tex. Oct. 11, 2024), *stayed on other grounds by* 119 F.4th 404 (5th Cir. 2024); *Caicedo v. DeSantis*, No. 6:23-cv-2303, 2024 WL 4729160, at *4–5 (M.D. Fla. Nov. 8, 2024).

that alleged non-compliance with a federal voter-registration law "directly affected and interfered with" the core organizational activities of "counseling interested voters and volunteers on election participation," because the alleged inaction forced plaintiffs to "divert significantly more of their resources into combatting election fraud" and "frustrated their organizational and voter outreach efforts." 120 F.4th 390, 397 (4th Cir. 2024) (internal citations and quotation marks omitted). In light of *AHM* and prior Fourth Circuit precedent, the *North Carolina State Board of Elections* court distinguished between an "uncompelled choice to expend resources" "not [made] in response to a threat to the organization's core mission," which cannot establish standing, and resource expenditures necessary to continue conducting core organizational activities, which can. *Id.* at 396–97. Defendants elide that critical distinction altogether, instead reading *AHM* to mean that resource diversion is categorically irrelevant to organizational standing and reading *Havens* (in light of *AHM*) as limited to "lying to the plaintiff's employees." ECF 122 at 16–17. Far from it. *AHM* simply confirms the commonsense notion that "Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *N.C. State Bd. of Elections*, 120 F.4th at 409 (Diaz, J., concurring) (quoting *AHM*, 602 U.S. at 381). And *AHM* "did not question—and, indeed, approvingly cited—many other cases in which the Court has allowed 'unregulated' parties to sue a defendant even though the defendant's conduct harmed those parties indirectly." *Tenn. Conf. of NAACP v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024).

Defendants also argue that Plaintiffs lack organizational standing to bring Count Three, which alleges that the Purge Program violates the NVRA's requirement that states "accept and use" certain voter registration forms. ECF 122 at 38. But Plaintiffs have standing to bring this claim as well. Plaintiffs' core organizational activities include multi-lingual efforts to "educat[e] and assist[]

9

**JA102**

naturalized citizen voters with checking their voter registration status and how to re-register if they have been removed." ECF 23 ¶ 21; *see id.* ¶ 33. Helping voters navigate this additional (and unlawful) requirement of the re-registration process is necessarily part of the impairment imposed by the Purge Program that Plaintiffs have alleged. *See March for Our Lives Idaho*, 2024 WL 4226912, at *5–6 (finding voter-assistance organization had organizational standing to challenge law imposing additional registration requirements). That re-registration process, and its harms, remain ongoing, *see generally* ECF 122 at 5–7, even sweeping in voters who have already "verified their citizenship previously," ECF 23 ¶ 54.

Plaintiffs also have associational standing, because at least one member has standing in their own right, and organizations have standing to sue on behalf of their members. *See Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 181 (2000). As previously submitted materials show, at least one member of Plaintiff League of Women Voters of Virginia, who does not wish to be named, appears on the Purge List and was removed from the voting rolls pursuant to Defendants' Purge Program. ECF 103-1 (Suppl. Porte Decl.) ¶¶ 3–5; *see* ECF 103 at 16. A purged voter, whose fundamental right to vote has been directly impaired by removal from the voter rolls and referral for investigation, would undoubtedly have standing. Even Defendants do not deny that having a member who appears on the Purge List would establish associational standing with respect to Counts One and Two, but they contend the individual must be named. ECF 122 at 12. But public disclosure is neither necessary nor prudent here. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015) (*Alabama*); *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) (concluding that there is no "requirement that an organizational plaintiff identify affected members by their legal names"). While Defendants rely on *Summers v. Earth Island Institute*, *see* ECF 122 at 12, "*Alabama* moderates [*Summers*] slightly in that a

prominent political organization need not identify individual members so long as a reasonable inference can be drawn that such individuals exist," especially where defendants have not factually challenged the existence of such persons. *Democratic Party of Va. v. Brink*, 599 F. Supp. 3d 346, 355 n.10 (E.D. Va. 2022) (citing *Alabama*, 575 U.S. at 270). At no point—not during the preliminary injunction proceedings and not in their motion to dismiss briefing—have Defendants challenged the Supplemental Porte Declaration's confirmation that a LWVVA member was purged.

Given that Plaintiffs brought this suit in part to protect their members from Defendants' threats of prosecution and attendant intimidation, *see* ECF 23 ¶¶ 5, 22, 26, 29, 34, it is unsurprising that affected individuals do not wish to be identified by name. The value of disclosure should be weighed against the "repressive effect" that public disclosure of membership might have. *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) (requiring "balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party" in pseudonymous litigation context); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015), *abrogated on other grounds by Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165 (9th Cir. 2024) ("Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured."). And whatever the value of disclosure when particular facts about an individual member might bear on standing, that value is minimal when, as here, all the relevant facts—namely, that the individual is a member of the organization and that they were purged pursuant to the Purge Program—have already been alleged. *See* ECF 122 at 13 (suggesting

11

that Plaintiffs needed to have alleged its "members were removed pursuant to Virginia's noncitizen removal process" to establish standing). The costs of disclosure, by contrast, are significant. *See, e.g.*, ECF 26-25 (Traore Decl.) ¶ 11 (describing risk of "doxxing, harassment, intimidation, or other adverse ramifications" from membership disclosure).

The many naturalized-citizen members in Plaintiff organizations' ranks further bolsters associational standing because those members also face threatened harm—such as removal from the voter rolls and referral for investigation—due to the Purge Program, *see* ECF 23 ¶¶ 22, 24, 29, 32, 34, including an identified member.[4] Indeed, the Eleventh Circuit recognized, that the "risk of false positives and mismatches" in voter registration removals creates a "realistic danger" that organizational plaintiffs' naturalized-citizen members will be erroneously swept up by such programs, conferring associational standing on behalf of naturalized-citizen members. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014). And there, as here, Defendants have "not offered to refrain from similar programs within the 90–day window in the future," *id.* at 1343, and in fact describe the Purge Program as ongoing, *see* ECF 122 at 5–7, amplifying the risk of future harm. Nor is this harm speculative: both the mechanism of harm—errors and mismatches—and the threatened result—purging naturalized citizens—are actually occurring and entirely traceable to Defendants' actions. *See* ECF 26-1 at 17–19; ECF (McDonald Decl.) 26-2 at 4, 7–9; *see also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163–64 (11th Cir. 2008) (distinguishing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on that basis in the context of a similar voter purge program).[5]

---

[4] Plaintiffs can provide the name of a naturalized-citizen member of LWVVA, who is willing to be named, under seal with this Court or pursuant to a protective order if necessary. Defendants have indicated they are open to the same. *See* ECF 119 at 11:5–12.

[5] In any event, the presence of the United States as a Plaintiff, whose standing no party disputes, is sufficient to establish standing for Private Plaintiffs' 90-Day Provision claim. *See* ECF 23 ¶¶

12

**B.      Plaintiffs' 90-Day Provision claim is not moot.**

Defendants incorrectly contend that Plaintiffs' 90-Day Provision claim is moot, since the 2024 elections are over. *See* ECF 122 at 17. Though the 2024 elections have indeed passed, Defendants have repeatedly asserted that they have removed voters during the 90-day periods prior to federal elections for many years and election cycles. *See* ECF 122 at 2. Thus, Plaintiffs challenge a longstanding and ongoing policy of violating federal law, albeit one that bars action during certain cyclical periods of time. Since Defendants make no claim of cessation of that policy, they cannot reasonably claim mootness simply because we are not presently within a 90-day quiet period. *See, e.g.*, *Commodity Futures Trading Comm'n v. Bd. of Trade of City of Chicago*, 701 F.2d 653, 655 (7th Cir. 1983) (explaining that the passage of the challenged delivery cycle did not moot the case, since Plaintiffs sought "a broader injunction" that would affect future delivery cycles as well).

In any event, this Court retains jurisdiction over the 90-Day Provision claim because it "fit[s] comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc.* (*WRTL*), 551 U.S. 449, 462 (2007). That exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quotations omitted). The Fourth Circuit has explained that "[e]lection-related disputes qualify as 'capable of repetition' when there is a

---

85–90; Complaint, *United States v. The Commonwealth of Virginia*, No. 24-cv-01807, ¶ 61 (E.D. Va. Oct. 11, 2024). "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006). That remains true of parties to consolidated cases. *See Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984) (applying same principle in litigation "instituted through separate but similar complaints"); *Bowsher v. Synar*, 478 U.S. 714, 715 (1986) (same).

13

**JA106**

reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2024) (quotations omitted). "[T]he Supreme Court has repeatedly instructed that the exception is especially appropriate when mootness would have otherwise been the result of a completed election cycle." *Id.*; *see also Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011); *N.C. Right to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435 (4th Cir. 2008).

That exception unmistakably applies here, because there is a reasonable expectation that Plaintiffs will suffer injury during future quiet periods.[6] Importantly, the Fourth Circuit has made clear that "reasonable expectation" in this context does not require anything approaching certainty. For instance, "an ex-candidate's claims may be capable of repetition, yet evading review" even if she does not allege an intent to run for office, since she "'[ran] for office before and may well do so again.'" *N.C. Right to Life*, 524 F.3d at 435-36 (quoting *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991)). That standard is easily met here, because there is every reason to believe the Purge Program will continue in future quiet periods: A statute requires some version of the Program to be carried out, Va. Code § 24.2-410.1(A); Defendants have repeatedly argued that the 90-Day Provision allows the Program to continue during the quiet period; they have not offered to halt purges during future quiet periods; and the accelerated purge required by E.O. 35 is ongoing.

---

[6] Defendants do not dispute that the "challenged action [was] in its duration too short to be fully litigated prior to cessation or expiration," *WRTL*, 551 U.S. at 462, and the Fourth Circuit has not focused on the duration inquiry in election-related cases. *See Sharma*, 121 F.4th at 1039 n.1; *Lux*, 651 F.3d at 401. Even if it were relevant here, there is no question that the duration of Defendants' action during the previous 90-day quiet period was too short to be fully litigated. *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021) ("Notably, the Supreme Court has found a period of as long as two years too short to complete judicial review in the context of the exception for wrongs capable of repetition yet evading review.").

Defendants assert that the exception does not apply because it is unclear whether Plaintiffs' members will be purged during the next quiet period. *See* ECF 122 at 18. But that improperly narrows the inquiry—the exception applies not just if a specific member might be purged, but if there is a reasonable expectation that the challenged provision will be applied in a way that harms the Plaintiff organizations. *See, e.g.*, *Lux*, 651 F.3d at 401. As explained in detail above, any extension of the Purge Program into the next quiet period will harm Plaintiffs in all the ways Plaintiffs were harmed by the previous quiet period purge. *See* Part I.A., *supra*. And even if Defendants were correct that the inquiry were limited to future harms to members, the exception would nonetheless apply. Defendants' Purge Program has *already* ensnared at least one of Plaintiffs' members, and it has targeted some of the same naturalized citizens more than once. In fact, it has required some individuals to verify their citizenship as many as five times. ECF 23 ¶ 54. Contrary to their contentions then, the erroneous removal of some of Plaintiffs' members during future quiet periods hardly requires a "specula[tive]" "series of events." ECF 122 at 18. Rather, where, as here "repeated conduct is before the court in the present, the prospect of future repetition becomes all the more likely." *Sharma*, 121 F.4th at 1039 n.1.

## C.    Defendants are proper parties to this lawsuit.

Under *Ex parte Young*, when a plaintiff seeks injunctive relief to remedy an ongoing violation of federal law and names as defendant a state official who has "some connection" to enforcement of the challenged law, the state official is not entitled to sovereign immunity. 209 U.S. 123, 158, 161 (1908). In determining whether *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261,

296 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646.

Here, the *Ex parte Young* exception to sovereign immunity applies because, despite Defendants' claims to the contrary, *see* ECF 122 at 19, Plaintiffs' 90-Day Provision claim challenges and seeks prospective relief from an ongoing Purge Program that will continue to improperly remove voters from the rolls within 90 days before every federal election until the Program is enjoined. ECF 23 ¶¶ 48, 78-79; *id.* at 31 ¶¶ (c), (h), (i), (l). The language of the Amended Complaint and the circumstances make this clear. For example, the Amended Complaint alleges both that voters were removed from the rolls in the previous 90-day quiet period, and that more will continue to be removed until the law is enjoined. *Id.* ¶ 48. And the statute allowing for such removals—which Defendants argue may be applied during the 90-day quiet period—will continue to operate, unless repealed. Based on that concern, Plaintiffs did not only seek a preliminary injunction; they seek a *permanent* injunction that will prevent Virginia's Purge Program from operating just before *any* federal election. ECF 23 at 31 ¶ (c). Plaintiffs also seek prospective relief requiring Defendants ELECT and the Board to instruct local election officials to "place back on the rolls in active status" voters removed by the Purge Program, including voters removed within 90 days before any federal election. ECF 23 at 31; *see, e.g.*, *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989) (former state employee's challenge of his termination satisfied *Ex parte Young* because loss of benefits of employment caused ongoing harm and employee requested injunctive remedy of reinstatement); *see also, e.g.*, *CSX Transp., Inc. v. Bd. of Pub. Works*, 138 F.3d 537, 541 (4th Cir. 1998).[7] Defendants ignore all of those portions of

---

[7] Should this Court find that the relief sought is insufficiently prospective to satisfy *Ex parte Young*, Plaintiffs will seek leave to amend their complaint to address the issue.

Plaintiffs' complaint and can cite no comparable case in which a court held that a similarly-situated plaintiff had failed to meet *Ex parte Young*'s requirement.[8]

Defendants also claim, under the Fourth Circuit's "special relation" test for *Ex parte Young*, that the Attorney General is not a proper party to the lawsuit because he "has nothing to do with" the Purge Program.[9] ECF 122 at 19. But importantly, the Fourth Circuit's "special relation" test does not require the connection between a state official and a challenged process to "be *qualitatively* special; rather, 'special relation' under *Ex parte Young* [serves] as a measure of *proximity to* and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) (emphasis in original). As *Ex parte Young* explains, in determining whether a state official is a proper defendant, "the important and material fact" is "that the state officer, by virtue of his office, has some connection with the enforcement of the act[;]" and whether the connection "arises out of the general law, or is specially created by the act itself, is not material so long as it exists." 209 U.S. at 157.

The Attorney General satisfies the Fourth Circuit's "special relation" test. As alleged in the Amended Complaint, the Attorney General has helped implement the Purge Program, claimed credit for E.O. 35's announced purge of 6,303 voters, actively investigates for prosecution voters purged through the Program, and receives referrals from counties—like Arlington County and

---

[8] Indeed, the relevant cases, including those relied on by Defendants, involve one-time events that are unlikely to recur, unlike here. *See* ECF 122 at 19. In *DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999), the plaintiff's claim alleged that a university president unlawfully excluded her from a gubernatorial debate; the Court found the plaintiff's allegation that the same thing could happen in a future election mere "conjecture." *Id*. at 505; *see also Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (holding that claim for monetary relief was barred by the Eleventh Amendment, but claim for reinstatement of employment was not).

[9] Defendants improperly confine what constitutes as the Purge Program to only the text of Va. Code § 24.2-427(C). The Purge Program includes the process outlined in E.O. 35, and Va. Code § 24.2-427(C) only constitutes one aspect of it. ECF 23 ¶¶ 1-14; ECF 26-4.

17

**JA110**

others—to investigate and prosecute voters purged by the Program.[10] ECF 23 ¶ 37; ECF 26-4 at 3.

Moreover, as alleged in the Amended Complaint and highlighted in E.O. 35, Virginia law gives the Attorney General "full authority to do whatever is necessary or appropriate to enforce the election laws or prosecute violations thereof." Va. Code § 24.2-104(A); ECF 26-4 at 4; *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535, 544 (2021) (category of state officials that may be sued under *Ex parte Young* includes those "who may or must take enforcement actions" with respect to the challenged law). The Attorney General also has the authority to "commence a civil action . . . for appropriate relief" "[w]henever the Attorney General has reasonable cause to believe that a violation of an election law has occurred[.]" Va. Code § 24.2-104.1. As the Fourth Circuit noted, the Attorney General's "authority to seek *prospective* relief" may provide "an adequate connection between the [a]ttorney [g]eneral and the enforcement of the [a]ct to permit . . . suit under *Ex parte Young*." *Doyle v. Hogan*, 1 F.4th 249, 257 (4th Cir. 2021) (emphasis in original).

---

[10] Defendants claim in a footnote that the Attorney General cannot redress Plaintiffs' injuries for the same reasons they claim the Attorney General is not a proper party under *Ex parte Young*. In making these arguments, Defendants ignore Plaintiffs' clear and concise requests for injunctive relief seeking to: permanently enjoin the Attorney General from implementing a Purge Program he has admitted his office plays a role in; instruct voters harmed by the Purge Program that they will not be criminally investigated or prosecuted solely based on being flagged by that error-ridden and unlawful Program; and provide Plaintiffs with records concerning the implementation of the Purge Program. ECF 23 at 31 ¶¶ (c), (h), (i), (l). Defendants also imply that Plaintiffs' requested relief improperly restrains the Attorney General's administration of state criminal laws, even though Plaintiffs' requested relief is precisely crafted only to enjoin criminal investigation and prosecution solely based on a voter being referred by Defendants' unlawful Purge Program, and the requested relief acknowledges the Attorney General's authority to investigate or prosecute a voter based on information showing that they have violated a law. ECF 23 at 31 ¶ (h).

II.     **Plaintiffs have sufficiently stated their claims.**

A.     **Plaintiffs have sufficiently stated that Defendants systematically purged voters in violation of the 90-Day Provision of the NVRA.**

Plaintiffs have alleged facts sufficient to show that Defendants have engaged in a systematic Purge Program impacting persons protected by the NVRA. As this Court has already found, Defendants' Program is systematic, is not based on individualized determination, and has resulted in the improper removal of eligible voters from the voter rolls. ECF 120 at 14-17. All of this is clearly laid out in the operative complaint. ECF 23 ¶¶ 8-11, 55. Thus, under the NVRA's 90-Day Provision, Plaintiffs have included "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation and quotations omitted). For the purposes of this motion, it is unnecessary to again rebut all of Defendants' statutory arguments, but those arguments also lack merit.

*i.     Defendants' removals within the 90-Day Provision were systematic.*

As the Fourth Circuit concluded, the Purge Program is systematic: it "does not require communication with or particularized investigation into any specific individual. Rather, the inclusion of a person's name on a list electronically compared to other agency databases is enough for removal from the voter rolls." *VACIR v. Beals*, 2024 WL 4601052, at *1-3; ECF 23 ¶¶ 39-43. Defendants appear to assert that because they initially collect data from individual transactions, any subsequent data matching process should be considered individualized. ECF 122 at 32-33. But as the Amended Complaint alleges, the Purge Program systematically selects voters for removal

19

**JA112**

based on a mass database matching exercise. ECF 23 ¶¶ 40-44. Defendants' Program amounts to "simply checking data fields, matching in mass." ECF 120 at 16.[11]

Defendants also point to the NVRA's legislative history to extrapolate what Congress meant by "systematic." ECF 122 at 34. But the material they rely on is unhelpful—while the reports indicate that activities "*such as* a mailing or a door to door canvas" would violate the 90-Day Provision, H.R. Rep. No. 103-9, at 16 (1993) (emphasis added), S. Rep. No. 103-6, at 32 (1993), that certainly does not imply that Virginia's own mass mailing is permissible. In any event, consistent with the plain meaning of "systematic" and that same legislative history, courts have uniformly held that mass mailing to affected voters does not make the process "individualized." *See, e.g.*, *Arcia*, 772 F.3d at 1344; ECF 91-1 at 9; *N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, No. 1:16-CV-1274, 2016 WL 6581284, at *6-7 (M.D.N.C. Nov. 6, 2016).

### ii.    *The 90-Day Provision protects the voters removed by Defendants' Purge Program.*

The plain language of the 90-Day Provision states in simple terms that programs like Defendants' are prohibited: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). As this Court noted, "the only exceptions" to that prohibition include removals at "the request of the registrant," "by reason of criminal conviction or mental incapacity," or due to "the death of the registrant." ECF 120 at 14. The 90-Day Provision is designed not to protect ineligible voters—be they noncitizens or nonresidents—but the *eligible* voters ensnared in

---

[11] Defendants concede that they perform no individualized investigation into the citizenship status of removed individuals. *See* ECF 120 at 16; ECF 122 at 33. The only process resembling individualized investigation is limited to identification purposes. *Id.*

systematic list maintenance prior to an election. *See* 52 U.S.C. § 20507. As Plaintiffs have alleged, the Purge Program was a "program" that "systematically removed" the names of both eligible and ineligible voters from the voter rolls within the meaning of § 20507(c)(2)(A), and no exceptions apply. ECF 23 ¶¶ 2-8.

Defendants' suggested reading of the 90-Day Provision is "inconsistent with Congress' intent" to protect eligible voters from erroneous last-minute purges and indeed would circumvent that purpose entirely. ECF 120 at 17. Defendants argue that, because the NVRA's General Removal Provision prohibits removal of "registrants" unless an enumerated exception applies and because none of those exceptions relate to noncitizenship, the term "registrants" and the 90-Day Provision's separate reference to "ineligible voters" cannot be read to include noncitizens. Reading otherwise, they claim, would "prohibit[] States from *ever* removing noncitizens from their rolls." *See* ECF 122 at 26; 52 U.S.C. § 20507(a)(3). However, no court or state, including the parties and courts in this case, has concluded that the NVRA disallows states from ever removing noncitizens.[12] And Congress' decision to use different words in the 90-Day and General Removal provisions is a strong reason to conclude that they should be given different meanings. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024).

Furthermore, Defendants' reading of the NVRA would permit states to remove any eligible citizens so long as the states used the correct pretense of suspected noncitizenship or any other category that fits Defendants "*ab initio*" construction. ECF 122 at 24. This statutory construction has been rejected by this Court, the Fourth Circuit, and established jurisprudence in the federal courts. *See* ECF 120 at 17-18; *VACIR v. Beals*, 2024 WL 4601052; *Arcia*, 772 F.3d at 1348; *Mi*

---

[12] This is likely because the word "registrant" refers only to an "eligible applicant" who submitted a "valid voter registration form," (*see* 52 U.S.C. § 20507(a)), a description that does not apply to noncitizens.

*Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1093 (D. Ariz. 2023); *Ala. Coal. for Immigrant Justice v. Allen* (*ACIJ*), No. 2:24-cv-1254, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024).

**B.    Plaintiffs have sufficiently stated that Defendants' Purge Program is nonuniform and discriminatory in violation of the NVRA.**

Plaintiffs have stated a plausible claim for relief on their claim that the Purge Program is nonuniform and discriminatory in violation of 52 U.S.C. § 20507(b)(1). ECF 23 ¶¶ 2, 9, 14, 55-71, 83. "The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'" *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (*quoting* 52 U.S.C. § 20501(a)). The NVRA sought to eliminate non-uniform, discriminatory practices such as "selective purging of the voter rolls" with a specific concern that "[s]uch processes must be structured to prevent abuse which has a *disparate impact* on minority communities." S. Rep. No. 103-6, at 3, 18 (emphasis added); *see also* H. Rep. No. 103-9, at 15. Voter list maintenance programs must accordingly be applied uniformly throughout the jurisdiction and cannot discriminatorily single out specific subsets of voters, such as voters born outside the United States (i.e., naturalized citizens), for purging under the NVRA. 52 U.S.C. § 20507(b)(1).

Plaintiffs have alleged more than enough factual content to allow the Court to draw the reasonable inference that Defendants' Purge Program discriminates based on national origin and thus also citizenship classification. The Purge Program "by design singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens." ECF 23 ¶¶ 70-71; *see also* ECF 23 ¶ 69 ("[N]oncitizen designation or transactions in the DMV data are often the sole criterion to trigger voter registration

22

**JA115**

cancellation.").[13] The Program is therefore exactly the sort of discriminatory, selective purge that federal courts have repeatedly held violates the NVRA's uniform and nondiscriminatory provision. *See, e.g.*, *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 999 (D. Ariz. 2024) (where "[o]nly naturalized citizens would be subject to scrutiny," law had "non-uniform and discriminatory impact on naturalized citizens"); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (selective purge that swept in "primarily newly naturalized citizens" likely violated the NVRA's uniform and nondiscriminatory requirement). And, because Plaintiffs have alleged facts sufficient to show that the Purge Program classifies individuals on the basis of naturalized citizenship status and national origin, Plaintiffs need not otherwise demonstrate discriminatory intent: such a policy is flatly unlawful under the NVRA. *See, e.g.*, *Florida*, 870 F. Supp. 2d 1346; *Mi Familia Vota*, 719 F. Supp. 3d at 999.

Defendants' citation to *Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018), is inapposite: there, the state defended the non-uniform and discriminatory effects of its purge by arguing that plaintiffs had not brought a claim under § 20507(b)(1). Here, there is no dispute that Plaintiffs have brought such a claim. *Compare Husted*, 584 U.S. at 809 (Sotomayor, J., dissenting) (describing state's position at oral argument) *with* ECF 23 ¶¶ 81-84.

### C. Plaintiffs have sufficiently stated that Defendants' Purge Program violates the NVRA's command that voters need only complete a voter registration form to be a registered voter in federal elections.

Count Three alleges that the Purge Program violates Sections 6 and 9 of the NVRA. Section 6 requires states to "accept and use" the federal voter registration form (Federal Form) and its state equivalent (State Form). 52 U.S.C. § 20505(a)(1)-(2). Section 9 provides that those forms may

---

[13] Plaintiffs' factual assertions about the Program's operation, not Defendants', are accepted as true in assessing the Motion.

require "*only*" information that "is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id*. § 20508(b)(1) (emphasis added). Defendants maintain that no voter removal program can ever violate Sections 6 and 9, because they govern the registration process. ECF 122 at 39-41. But that ignores Plaintiffs' allegations about potential procedural hurdles the Purge Program erects during the initial registration process. *See* ECF 23 ¶ 89; note 17, *infra*. And more broadly, Supreme Court precedent and common sense demonstrate the flaw in Defendants' reasoning: a voter purge that renders registration forms functionally useless conflicts with the scheme Congress designed in Sections 6 and 9 of the NVRA. Because Plaintiffs have plausibly alleged that Virginia's Purge Program does just that, dismissal is inappropriate here, where discovery has not yet revealed the nature and scope of the Purge Program's operation.[14]

In *Arizona v. Inter Tribal Council of Arizona* (*ITCA*), the Supreme Court held that Section 6 of the NVRA requires that states use the Federal Form "as a complete and sufficient registration application" for federal elections; states may not erect additional barriers to registration. 570 U.S. 1, 9 (2013). Thus, the Court invalidated an Arizona law requiring registration applicants to provide documentary proof of citizenship (DPOC), because it was preempted by the NVRA's requirement that Arizona "accept and use" the Federal Form, which did not require DPOC. *Id*. at 20.

Therefore, under *ITCA*, Virginia's Purge Program is preempted by the NVRA if it "conflicts with the NVRA's mandate that [Virginia] 'accept and use' the Federal Form." *Id*. at 9. If there is a conflict, "the state law, so far as the conflict extends, ceases to be operative." *Id*. (quotations omitted); *see also Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016) (holding that Kansas' DPOC

---

[14] Defendants make a separate standing argument regarding Count Three, *see* ECF 122 at 38, which is addressed in Part I.A., pp. 9-10, *supra*.

requirement was preempted by Section 5 of the NVRA and concluding that "[t]he Elections Clause does not require Congress to expressly foreclose such modifications by the states").

Here, Plaintiffs allege that the Purge Program conflicts with Sections 6 and 9 because Virginia does not in fact "accept and use" the Federal or State Form "as a complete and sufficient registration application." *ITCA*, 570 U.S. at 9. For certain voters, Defendants require applicants to complete additional paperwork before allowing them to vote. *See* ECF 23 ¶¶ 88-89; *see also id*. ¶¶ 2, 39.[15] That additional requirement means that a registration form is not "a complete and sufficient registration application," and the Purge Program therefore conflicts with the NVRA, undercutting Congress' purpose of guaranteeing registration with a simple, single form.[16]

Defendants now assert that as long as they *nominally* accept the Federal and State Forms and place voters on a registration list, they can never violate Sections 6 and 9. ECF 122 at 39-40.[17] But that proves far too much—under that reading of the law, any state could avoid the requirements of Section 6 and 9 by accepting forms from all voters, then immediately purging every voter who had not cleared some additional hurdle, such as submitting DPOC. But states are not allowed to

---

[15] As noted above, in addition to Count Three's allegations related to voter removals, *see* ECF 23 ¶ 88, the Amended Complaint also alleges that Defendants require applicants to submit "additional citizenship information about themselves as part of the State's DMV data checks and motor voter forms." ECF 23 ¶ 89. That is supported by E.O. 35's directive for the DMV to "verify applicants' . . . legal status" using the SAVE and Social Security Administration databases when issuing a new credential. ECF 26-4 at 4. At this point—before any discovery has begun—it is unclear what additional steps applicants must take in relation to the database checks required by E.O. 35, demonstrating that dismissal is inappropriate here.

[16] That additional information is also more than what "is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," as determined by the Election Assistance Commission. 52 U.S.C. § 20508(b)(1).

[17] Notably, even if Defendants' theory were correct, it would not resolve Count Three as applied to the alleged practice of requiring additional information at the time of registration. *See* note 15, *supra*; ECF 23 ¶ 89; ECF 26-4 at 4 (requiring DMV to perform SAVE and Social Security database checks when issuing new credentials). For that reason alone, dismissal of Count Three is inappropriate.

circumvent federal law by relabeling their processes, and there is simply no question that such a system would conflict with the NVRA's requirement that the forms serve as a complete and sufficient registration application. If such circumvention were allowed, "the Federal Form ceases to perform any meaningful function, and would be a feeble means of 'increas[ing] the number of eligible citizens who register to vote in elections for Federal office.'" *ITCA*, 570 U.S. at 13 (quoting 52 U.S.C. § 20501(b)(1));[18] *see also Fish*, 840 F.3d at 729 (refusing to "finely parse the [NVRA] for gaps or silences into which state regulation might fit" because doing so would allow state law to "fundamentally alter [its] structure and effect").

Defendants are wrong to maintain that this common-sense understanding of Sections 6 and 9 "would essentially prohibit states from *ever* removing *anyone* from the voter rolls." ECF 122 at 40. To the contrary, Sections 6 and 9 do not prohibit states from operating removal programs after they have, in good faith, accepted Federal and State Forms as "complete and sufficient registration application[s]." 570 U.S. at 9. The law merely prevents states from operating "removal" programs that in fact prevent the forms from serving their intended purpose. And the fact that Section 8 of the NVRA sets out removal processes for specific situations, *see* ECF 122 at 41, reinforces the point: Sections 6 and 9 do not prevent good-faith removal programs that comply with the law.

This all demonstrates that dismissal of Count Three is inappropriate here, before discovery has commenced. Plaintiffs have plausibly alleged that "the Federal Form ceases to perform any meaningful function" due to the Purge Program, and that the Program therefore conflicts with Sections 6 and 9 of the NVRA. *ITCA*, 570 U.S. at 13. Defendants respond by claiming that

---

[18] Defendants' contention that such a system is permissible is similar to Arizona's argument, rejected by the *ITCA* Court, that the NVRA "requires merely that a State receive the Federal Form willingly and use that form as one element in its (perhaps lengthy) transaction with a prospective voter." *Id*. at 9.

"Virginia's Notice of Intent to Cancel and accompanying attestation are not part of its initial registration process," ECF 122 at 40, but that factual assertion and other assurances that the Purge Program is a good-faith list maintenance effort cannot be accepted as true at this stage.[19] *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 97 (2d Cir. 2017) (asking whether plaintiffs "provide[d] factual allegations" that "might sustain a preemption claim"); *Pub. Int. Legal Found.*, 996 F.3d at 263 (explaining that court must "accept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor" when assessing a motion to dismiss).

### D. Plaintiffs have sufficiently stated that Defendants have violated the Public Disclosure of Voter Registration Activities Provision of the NVRA.

#### i. The claim for records under the NVRA is not moot.

In their pre-litigation notice letter and complaint, Plaintiffs requested numerous documents from Defendants to ascertain the nature and scope of their Purge Program, and to identify voters affected by it. While Defendants assert that Plaintiffs' claim is now moot because they have provided certain records, ECF 122 at 43, many of those requests have not been fulfilled, rendering their mootness claim meritless.

While Defendants fulfilled some of Plaintiffs' records requests after being forced to by court order, and subsequently provided the long list of affected voters after the 2024 election, they have yet to produce documents to which Plaintiffs are entitled under the NVRA's disclosure

---

[19] Defendants rely on another factual assertion when arguing that "the Notice of Intent to Cancel and accompanying attestation do not require anything different than the federal form, so there is no preemption issue." ECF 122 at 42. But even if that turns out to be true, it does not solve Defendants' problem—as explained herein, the Federal and State Forms are intended to simplify the registration process and serve "as a complete and sufficient registration application." 570 U.S. at 9. Requiring voters to complete additional forms that provide no new information undoubtedly conflict with that goal. Indeed, Defendants' claim that they are seeking no new information when contacting voters provides a strong indication that the Purge Program does nothing more than erect new burdens for targeted voters.

provision. Specifically, Defendants have not produced all records related to their implementation of the Purge Program, including records evidencing their process for identification and removal of voters identified; information concerning which voters responded to the notices of removal; and information regarding all persons who have been subject to investigations as a result of the Purge Program—information that is essential to understanding the Purge Program and for the Court to adjudicate the claims brought by Plaintiffs. A claim is moot "*only* when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *See Knox v. Service Employees*, 567 U.S. 298, 307 (2012) (emphasis added) (internal quotation marks omitted). Thus, Plaintiffs' records claim is not moot because the Court has the power to grant relief to Plaintiffs by ordering Defendants to produce those additional requested documents. *See id.*

Moreover, even with respect to the limited records that have been produced—the list of affected voters—Defendants' violation of the NVRA records provision is clearly subject to the capable of repetition yet evading review exception to the mootness doctrine. As explained in Part I.B., *supra*, the exception applies in cases where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *WRTL*, 551 U.S. at 450 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Given the tight 90-day timeline that NVRA claims operate under, and the related work that Plaintiffs do for each election, judicial efficiency is best served by adjudicating the merits of the case at this juncture. Holding otherwise would eviscerate the NVRA's records provision, paving the way for states to simply withhold records until the action becomes moot. Indeed, that is exactly what Virginia has attempted to do here and, absent relief from this Court, will be emboldened to do again, shielding illegal voter purges from scrutiny. ECF 26-15 at 6-7; ECF 23-9.

### ii. *The NVRA public disclosure provision covers voter information in databases.*

A practical reading of the NVRA, understanding advances in technology since it was enacted, shows that the digital systems Virginia uses for list maintenance are subject to records request claims. Defendants rely on a strained, overly-narrow reading of the NVRA to suggest that Plaintiffs have not properly pleaded their records claim, because they have not included a request to "photocopy" records or to review records via "in-person access to a file room in Richmond." ECF 122 at 43-45. To support their position, Defendants rely on *Greater Birmingham Ministries v. Secretary of State of Alabama*, 105 F.4th 1324 (11th Cir. 2024), an out of circuit case that does not create binding precedent. *Id*. But if Defendants' proposed reading of the NVRA were accepted, the NVRA's public records provision would be rendered useless in the modern age where states rely on digital databases to carry out list maintenance. In any event, Defendants have not argued (nor could they) that they have made the requested records available for public inspection in lieu of electronic production. As such, Defendants' arguments about what means of disclosure would be adequate under the NVRA are premature at the motion to dismiss stage.

The NVRA requires states to disclose "all records" related to any effort by the state to ensure "the accuracy and currency" of voter registration lists. *See* 52 U.S.C. § 20507(i)(1). As the Fourth Circuit has recognized in the context of interpreting the NVRA's public disclosure provision, "the use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *See Project Vote/Voting for Am., Inc.*, 682 F.3d at 336 ("[T]he fact that [Section 8(i)(1)] very clearly requires that 'all records' be disclosed brings voter registration applications within its reach.") (quotations omitted). Consistent with this, numerous courts have concluded that voter databases are subject to the public records disclosure provision, because the information housed in those databases is "the output and end result" of voter list registration and

maintenance activities and therefore "plainly relates" to said activities. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024) (holding that the database used by Maine to carry out its voter list registration and maintenance activities was subject to disclosure under the NVRA); *see also, e.g.*, *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1218 (D.N.M. 2024) (finding that New Mexico violated the NVRA's Public Inspection Provision by not disclosing voting records held in a state database); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022) (finding that Congress intended the NVRA's disclosure obligations to reach a broad array of activities and programs and Pennsylvania's registration database is in the universe of disclosable records). This Court, consistent with circuit precedent broadly interpreting the NVRA's public disclosure provision, should do the same. Accordingly, the request to dismiss or limit the public records disclosure claim should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Date: December 20, 2024                    Respectfully submitted,

Ryan Snow*
Javon Davis*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street, NW, Ste. 900
Washington, DC 20005
(202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

/s/ Shanna Ports
Shanna Ports (VSB No. 86094)
Danielle Lang*
Brent Ferguson*
Simone Leeper*
Katherine Hamilton*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sports@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

30

**JA123**

Orion Danjuma*
John Paredes*
THE PROTECT DEMOCRACY PROJECT, INC.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.
200 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
anna.dorman@protectdemocracy.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs Virginia Coalition for
Immigrant Rights, the League of Women Voters
of Virginia, the League of Women Voters of
Virginia Education Fund, and African
Communities Together*

*Admitted pro hac vice*

31

**JA124**

**CERTIFICATE OF SERVICE**

I certify that on December 20, 2024, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to any counsel of record.

/s/ Shanna Ports
Shanna Ports

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum conforms to the typeface and page limitations set out in Local Civil Rule 7(F)(3).

/s/ Shanna Ports
Shanna Ports

33

**JA126**

FILED: January 14, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

No. 24-2071
(1:24-cv-01778-PTG-WBP)
(1:24-cv-01807-PTG-WBP)

—————————

VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF
WOMEN VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF
VIRGINIA EDUCATION FUND; AFRICAN COMMUNITIES
TOGETHER; UNITED STATES OF AMERICA,

Plaintiffs - Appellees,

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of
Elections; JOHN O'BANNON, in his official capacity as Chairman of the
State Board of Elections; ROSALYN R. DANCE, in her official capacity as
Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in
her official capacity as Secretary of the State Board of Elections; DONALD
W. MERRICKS, in his official capacity as a member of the State Board of
Elections; MATTHEW WEINSTEIN, in his official capacity as a member of
the State Board of Elections; JASON MIYARES, in his official capacity as
Virginia Attorney General; COMMONWEALTH OF VIRGINIA; VIRGINIA
STATE BOARD OF ELECTIONS,

Defendants - Appellants.

**JA127**

---

### O R D E R

---

Appellants move to dismiss their interlocutory appeal of the district court's preliminary injunction order as moot. Appellees agree that this appeal is moot and should be dismissed. The district court's preliminary injunction expired, by its own terms, on November 6, 2024. Accordingly, we agree that this appeal is moot, and we grant Appellants' motion to dismiss the appeal as moot. *See Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960).

Appellants further move this court to vacate the district court's order granting a preliminary injunction and this court's October 27, 2024, order denying in part and granting in part their motion for a stay of the preliminary injunction pending appeal. Appellees oppose the motion to vacate. Where, as here, the mooted appeal is of a preliminary injunction in an ongoing case in the district court, and the orders that Appellants seek to vacate have no preclusive effect, it is generally sufficient to dismiss the appeal without vacating the orders. *See Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 466-67 (4th Cir. 2021). After reviewing the parties' submissions, we find no good reason in this case to depart from the general rule. Accordingly, we deny Appellants' motion to vacate preliminary orders.

Entered at the direction of the panel: Chief Judge Diaz, Judge Thacker, and Judge Heytens.

For the Court

/s/ Nwamaka Anowi, Clerk

FILED: January 14, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 24-2071
(1:24-cv-01778-PTG-WBP)
(1:24-cv-01807-PTG-WBP)

———————————

VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN
VOTERS OF VIRGINIA; LEAGUE OF WOMEN VOTERS OF VIRGINIA
EDUCATION FUND; AFRICAN COMMUNITIES TOGETHER; UNITED
STATES OF AMERICA

           Plaintiffs - Appellees

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections;
JOHN O'BANNON, in his official capacity as Chairman of the State Board of
Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of
the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity
as Secretary of the State Board of Elections; DONALD W. MERRICKS, in his
official capacity as a member of the State Board of Elections; MATTHEW
WEINSTEIN, in his official capacity as a member of the State Board of Elections;
JASON MIYARES, in his official capacity as Virginia Attorney General;
COMMONWEALTH OF VIRGINIA; VIRGINIA STATE BOARD OF
ELECTIONS

           Defendants - Appellants

———————————

J U D G M E N T

———————————

**JA130**

In accordance with the decision of this court, this appeal is dismissed as moot.

This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ NWAMAKA ANOWI, CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-1778 (PTG/WBP) |
| SUSAN BEALS *in her official capacity as Virginia Commissioner of Elections, et al.,* | |
| *Defendants*. | |
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Case No. 1:24-cv-1807 (PTG/WBP) |
| COMMONWEALTH OF VIRGINIA, *et al.*, | |
| *Defendants*. | |

**NOTICE OF VOLUNTARY DISMISSAL**

Pursuant to Fed. R. Civ. P. 41(a)(1)(A), the United States of America respectfully gives notice that it dismisses *United States v. Commonwealth of Virginia, et al.*, No. 1:24-cv-1807.

Date:  January 28, 2025

Respectfully submitted,

KATHLEEN WOLFE
Acting Assistant Attorney General
Civil Rights Division

ERIK S. SIEBERT
United States Attorney
Eastern District of Virginia

*/s/ Sejal Jhaveri*
R. TAMAR HAGLER
RICHARD A. DELLHEIM
SEJAL JHAVERI
KEVIN MUENCH
BRIAN REMLINGER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W
Washington, D.C. 20530
Tel:     (202) 305-7376
Email: sejal.jhaveri@usdoj.gov

*/s/ Matthew J. Mezger*
MATTHEW J. MEZGER
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:     (703) 299-3741
Fax:     (703) 299-3983
Email:  Matthew.Mezger@usdoj.gov

ZACHARY T. LEE
Acting United States Attorney
Western District of Virginia

*/s/ Zachary T. Lee*
United States Attorney
United States Attorney's Office
Western District of Virginia
255 West Main Street
Charlottesville, VA 22902
Tel:     (434) 293-4283
Email: Zachary.Lee@usdoj.gov

JA133

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

VIRGINIA COALITION FOR         )
    IMMIGRANT RIGHTS, *et al.*,     )
                             )
        *Plaintiffs*,          )
                             )
        v.                 )   Civil Action No. 1:24-cv-1778 (PTG/WBP)
                             )
SUSAN BEALS,                 )
*in her official capacity as Virginia*   )
   *Commissioner of Elections, et al.*,  )
                             )
        *Defendants*.       )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendants' Motion to Dismiss. Dkt. 121. Plaintiffs Virginia Coalition for Immigrant Rights ("VACIR"), League of Women Voters of Virginia and League of Women Voters of Virginia Education Fund (together "LWVVA" or "the League"), and African Communities Together ("ACT") (collectively, "Plaintiffs") filed this civil action against Defendants Susan Beals, in her official capacity as Virginia Commissioner of Elections; John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Donald W. Merricks, and Matthew Weinstein (collectively, "Virginia State Board of Elections Members"), in their official capacities; and Jason Miyares, in his official capacity as Attorney General of Virginia. Dkt. 23 ("Am. Compl.").

Plaintiffs allege that Defendants have violated several provisions of the National Voter Registration Act ("NVRA"): (1) Section 8(c)(2)(A), the 90-Day or Quiet Period Provision; (2) Section 8(b)(1), the Uniform and Nondiscriminatory Provision; (3) Section 5, the Accept and Use Provision; and (4) Section 8(i), the Public Disclosure Provision. Am. Compl. ¶¶ 77-94. At the outset, Defendants challenge justiciability. Defendants contend that: (1) Plaintiffs lack standing; (2) the Quiet-Period Provision claim is now moot; (3) the claims against Defendants generally are barred by sovereign immunity and *Ex parte Young*; and (4) specifically, Attorney General Jason

Miyares is not a proper party to this action under *Ex parte Young*. Dkt. 122 at 11-22. In the alternative, Defendants argue that Plaintiffs have failed to state a claim. *Id.* at 22-23. This matter was fully briefed, and the Court heard oral argument. Dkts. 122, 127, 131, 132, 141. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

## I.   **BACKGROUND**

The following facts, taken from the Amended Complaint, are accepted as true for the purposes of this Motion:[1]

On August 7, 2024, exactly ninety days before the November 5, 2024 federal general election, "Virginia Governor Glenn Youngkin issued Executive Order 35 ("E.O. 35")," which instructed the Commissioner of the Department of Elections ("ELECT") to certify that procedures regarding daily updates to voter lists would be in place. Dkt. 26, Ex. 4 at 3; Am. Compl. ¶ 3. E.O. 35 directed ELECT to compare lists of individuals flagged as having inconsistent DMV records against the list of existing registered voters. Dkt. 26, Ex. 4 at 4. Once ELECT identifies a match between the lists, a local registrar is required "[to] notify any matches" that their registration will be canceled "unless they affirm their citizenship within 14 days." *Id.*; Am. Compl. ¶¶ 3-4. Plaintiffs define this procedure as the "Purge Program." Am. Compl. ¶¶ 3-4.

The Purge Program "affirmatively directs state agencies to identify and purge voters on a systematic and ongoing basis—including during the immediate lead up to the 2024 General Election." *Id.* ¶ 6. "The Purge Program systematically remove[d] Virginians from the voter rolls shortly before the November 2024 general election based solely on the fact that they were at one point identified as a potential noncitizens [sic]—according to databases from the DMV or other

---

[1] In considering a motion to dismiss for failure to state a claim, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

sources." *Id.* ¶ 8. Voters were removed from the rolls "even if they have since become naturalized citizens and lawfully registered to vote." *Id.* ¶ 41. Because the Purge Program relies on records of DMV transactions, it specifically affects naturalized citizens. *Id.* ¶ 9. In order to become a naturalized citizen, a non-citizen must first become a legal permanent resident. *Id.* Legal permanent residents often transact with the DMV before becoming a citizen because they can obtain driver's licenses or other forms of identification which "remain valid for up to eight years." *Id.* ¶¶ 9-10. For this reason, "the Purge Program sweeps in . . . naturalized citizens." *Id.* ¶ 11.

Plaintiff VACIR is a non-profit organization, "comprised of 49 standing member organizations, including legal services providers, civil rights groups, and labor unions, each of which themselves work to support the immigrant community in Virginia through a variety of programs, including by assisting with voter registration and education for eligible naturalized citizens." *Id.* ¶ 20. VACIR's core activities include: (1) "removing language barriers to obtain government assistance[;]" (2) "oversight of immigration detention facilities[;]" and (3) "providing support for community mobilization around general voter registration efforts for New Americans." *Id.* ¶ 21. In addition, "VACIR's member organizations are membership organizations themselves whose members include substantial numbers of naturalized citizens." *Id.* ¶ 22. As a consequence of E.O. 35, VACIR "engag[ed] in direct multi-lingual public education and outreach to naturalized citizen voters about maintaining their voter registration and re-registering if they ha[d] been removed through the Purge Program" and "redirect[ed] general community voter registration and outreach programs toward specifically responding to E.O. 35 and the Purge Program." *Id.* ¶ 21.

Plaintiffs League of Women Voters of Virginia and League of Women Voters Education Fund "are nonpartisan, nonprofit, membership organizations." *Id.* ¶ 24. LWVVA's mission is to "increas[e] the number of registered voters and increas[e] voter turnout." *Id.* ¶¶ 25-26. The Purge Program "forced [LWVVA] to both broaden [its] 'check your registration' efforts beyond its

previously targeted audience and to expand its focus on naturalized citizens." *Id.* ¶ 26. LWVVA also has naturalized citizen members. *Id.* ¶ 29.

Plaintiff African Communities Together "is a nonpartisan, nonprofit membership organization of African immigrants." *Id.* ¶ 31. ACT's core activities include "assist[ing] African immigrants in obtaining critical services, provid[ing] resources and infrastructure for community and leadership development, and support[ing] community members to engage in civic life, including through education and assistance with voter registration and voting." *Id.* In 2024, ACT "operat[ed] a robust voter engagement program in Virginia." *Id.* ¶ 33. The Purge Program required ACT to redirect "its voter engagement program by developing and producing new public education materials, revising the resources and scripts used by canvassers and phone bankers, and re-training paid staff and volunteers in order to support voters." *Id.* ¶ 34. ACT also has members who are naturalized citizens. *Id.*

On August 20, 2024, seventy-seven days before the November 5, 2024 federal general election, Plaintiffs VACIR and LWVVA sent a letter to Defendant Beals, Defendant Miyares, the DMV, and the Office of the Governor requesting records pursuant to the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i). *Id.* ¶¶ 7, 25, 75. Specifically, they requested records "relating to the removal from the voter registration rolls of" those who have been identified as potential non-citizens. *Id.* ¶ 75; Dkt. 23, Ex. 7. The NVRA confers a private right of action on any "person aggrieved by a violation of this chapter" to seek injunctive or declaratory relief: (1) upon notice to the chief election official of the State involved if it has not been corrected within 90 days after receipt of the notice or within 20 days after receipt of the notice and the violation occurred within 120 days before a federal election; or (2) if the violation occurred within 30 days before a federal election. 52 U.S.C. § 20510(b)(1)-(3).

4

JA137

On October 3, 2024, thirty-one days before the November 5, 2024 federal general election, Plaintiffs VACIR and LWVVA, pursuant to 52 U.S.C. § 20510(b)(2), sent Defendants this notice, stating that the Purge Program violated the NVRA. Am. Compl. ¶ 7; Dkt. 23, Ex. 8. On October 15, 2024, Plaintiffs VACIR, LWVVA, and ACT filed an Amended Complaint (Dkt. 23) as well as a Motion for Preliminary Injunction (Dkt. 26).[2]  Plaintiffs define the Purge Program as "the program under which Defendants have systematically removed Virginia registered voters from its voter registration list on the purported basis of non-citizenship and includes implementation of Va. Code Ann. § 24.2-427(C)." Dkt. 26, Ex. 27 at 2 n.1. On October 24 and October 25, 2024, this Court held a hearing on the motion for preliminary injunction. Dkts. 110-11.

On October 25, 2024, the Court ruled from the bench, granting in part and denying in part Plaintiffs' motion. Dkts. 111-12. The Court enjoined Defendants from "continuing any systematic program intended to remove the names of ineligible voters from registration lists less than 90 days before the November 5, 2024, federal General Election." Dkt. 112 ¶ 2. The Court also ordered Defendants to restore the registrations of all voters who had their registrations cancelled pursuant to Defendants' program after August 7, 2024. *Id.* ¶ 3.

On October 25, 2024, Defendants filed a notice of interlocutory appeal to the Fourth Circuit as to the Court's Order and filed a motion to stay this Court's Order. Dkt. 113. On October 27, 2024, the Fourth Circuit denied Defendants' motion to stay in all respects except as to paragraph 7 of this Court's Order. Dkt. 116. On October 30, 2024, the Supreme Court granted Defendants'

---

[2] On October 18, 2024, this Court consolidated the instant action with *United States v. Commonwealth of Virginia et al.*, Civ. Action No. 1:24-cv-1807, leaving this action as the lead case. Dkt. 65. On January 28, 2025, the United States filed a Notice of Voluntary Dismissal for its action, *United States v. Commonwealth of Virginia, et al.*, No. 1:24-cv-1807. Dkt. 139. Therefore, this opinion only addresses the remaining Plaintiffs' claims.

motion for stay. Order Granting Stay, *Beals et al. v. Va. Coal. for Immigrant Rts., et al.*, 2024 WL 4608863, at *1 (Oct. 30, 2024).

## II.    STANDARD OF REVIEW

### A.    12(b)(1) Motion to Dismiss

Federal district courts are courts of limited subject matter jurisdiction as "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). As the Fourth Circuit has recognized, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3) (providing that the court may dismiss for lack of subject matter jurisdiction at "any time")).

"Standing 'is a threshold jurisdictional question' that ensures a suit is 'appropriate for the exercise of the [federal] courts' judicial powers.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (alteration in original) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)). "The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]," which are discussed below. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When assessing whether the complaint alleges facts upon which jurisdiction can be based, the district court must treat the facts alleged in the complaint as true and grant the motion under Rule 12(b)(1) if the complaint fails to allege sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### B.    12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility requirement mandates that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (first quoting *Iqbal*, 556 U.S. at 679; and then quoting *Twombly*, 550 U.S. at 557). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III.    DISCUSSION

*12(b)(1) Subject Matter Jurisdiction*

### A.    Standing

In its oral ruling on the motion for preliminary injunction, the Court found that Plaintiffs had organizational standing.[3] Dkts. 111, 120 ("Prelim. Inj. Tr.") 6:12-14. The Court also determined that Plaintiffs likely have associational standing because they have identified a member of their organizations who would have standing to sue. Prelim. Inj. Tr. 7:16-20. The Court granted Plaintiffs' preliminary injunction only as to Count I—Quiet Period Provision of the NVRA, 52 U.S.C. § 20507(c)(2)(A). *Id.* 12:1-4, 13:8-19. Here, on a motion to dismiss, Plaintiffs must establish that they have standing to sue for each of their asserted violations of the NVRA. *Davis v. FEC*, 554 U.S. 724, 734 (2008). Accordingly, the Court will address each of the remaining counts in turn.

---

[3] At that stage, the United States was also a plaintiff in this action. The Court found there was no question that the United States had standing. Prelim. Inj. Tr. 6:9-11.

As stated above, in addition to Count I, Plaintiffs raise the following claims: (1) Count II—Uniform and Nondiscriminatory Provision of the NVRA, 52 U.S.C. § 20507(b)(1); (2) Count III—Accept and Use Provision of the NVRA, 52 U.S.C. §§ 20508(b)(1), 20505(a)(1)-(2); and (3) Count IV—Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i). Am. Compl. ¶¶ 81-94. With the exception of Count IV—Public Disclosure Provision, Counts II and III are based on the same conduct: Defendants' implementation of the Purge Program. *Id.* ¶¶ 81-90. In this case, the Court finds that Plaintiffs have standing based on either theory of direct organizational standing or associational standing under Article III of the Constitution. *See N.C. State Conf. of NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393, 399 (M.D.N.C. 2017).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. A plaintiff must show that (1) she has suffered or will suffer an injury in fact; (2) that the injury was caused or will be caused by the defendant; and (3) that the injury likely would be redressed by the requested judicial relief. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("*Hippocratic Med.*") (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). If the plaintiff is an organization, it may also "sue on [its] own behalf for injuries [it has] sustained" so long as it meets the same injury in fact, causation, and redressability standards which apply to individuals. *Id.* at 393-394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). An organizational plaintiff also has standing to sue on behalf of one of its members who was harmed, commonly understood as associational or representational standing. *Hippocratic Med.*, 602 U.S. at 393-96. In general, the standing inquiry focuses on the defendant's challenged conduct. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

With respect to organizational standing, Defendants do not challenge whether Plaintiffs' injury was caused by Defendants' conduct or whether their injury can be redressed by a favorable decision. Defendants only challenge whether Plaintiffs have suffered an injury in fact. Dkt. 122

at 14-17. An organization has standing to sue on its own behalf when the defendant's actions interfere with the organization's "core business activities." *Hippocratic Med.*, 602 U.S. at 395. An organization cannot, however, "spend its way into standing by expending money to gather information and advocate against [a] defendant's action." *Id.* at 394. However, "when an action perceptibly impairs an organization's ability to carry out its mission and consequently drains . . . the organization's resources," the organization can establish an injury in fact. *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (quoting *Havens Realty Corp.*, 455 U.S. at 379) (citation modified); *N.C. All. for Retired Ams. v. Hirsch*, 2024 WL 3507677, at *6 (E.D.N.C. July 19, 2024). The Fourth Circuit recognizes a difference between a choice to expend resources in response to threats to the organization's core mission and expending resources merely because an organization disagrees with a policy choice. *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 395-96, 409 (4th Cir. 2024).

Plaintiffs argue that they have standing because their core activities include voting counseling and efforts to assist naturalized citizens in checking voter registration and getting them to re-register; Defendants' program necessarily impairs these efforts. Dkt. 127 at 7, 9-10. This Court agrees. Indeed, as the Court stated in its preliminary injunction ruling, Plaintiffs have sufficiently alleged that the Purge Program has directly affected and interfered with their core mission and activities. Prelim. Inj. Tr. 7:1-25.

Lead Plaintiff VACIR attests that as an umbrella foundation for several smaller immigrant rights groups, each of its members has been harmed by the Purge Program. Dkt. 26, Ex. 23 ("VACIR Decl.") ¶¶ 5-6. Plaintiff LWVVA attests that the Program has made it difficult to provide clear and updated information regarding voter rolls and voter registration while also making it harder for them to focus on increasing voter turnout and participation in favor of monitoring registration status. Dkt. 26, Ex. 24 ("LWVVA Decl.") ¶¶ 26-29. Plaintiff ACT attests

9

that the Purge Program interfered with their entire voter outreach strategy for the upcoming election, forcing them to refocus on maintaining the voter registration status of their members rather than on promoting greater voter participation. Dkt. 26, Ex. 25 ("ACT Decl.") ¶¶ 14-17. ACT also identified "voter access and participation" as "central to its mission." *Id.* ¶ 5. ACT had to divert resources away from supporting its core activities to address the impacts of E.O. 35. *Id.* ¶ 19. Therefore, Defendants' program interferes with ACT's core mission of increasing voter access and participation and LWVVA's core activities of increasing voter turnout and participation. This analysis does not change with respect to Counts II and III since Defendants' alleged failure to comply with the Accept and Use Provision and Uniform and Nondiscriminatory Provision harm Plaintiffs in the same way.

*RNC v. North Carolina State Board of Elections* is squarely on point. 120 F.4th 390 (4th Cir. 2024). There, the Fourth Circuit found that the plaintiffs' asserted injury, caused by the North Carolina Board of Elections' alleged violation of the Help America Vote Act of 2002, was sufficient to allege organizational standing. *Id.* at 398. Specifically, the plaintiffs alleged that their core mission was "organizing lawful voters and encouraging them to support Republican candidates at all levels of government," and that they "expend[ed] significant time and resources fighting for election security and voting integrity across the nation." *Id.* at 397. The State Boards' alleged violation impaired this core mission and forced them to divert more resources to combat election fraud, frustrating their voter outreach efforts. *Id.* Moreover, the Fourth Circuit considered *Hippocratic Med* to arrive at its conclusion. *Id.* (citing 602 U.S. 367 (2024)). Thus, Plaintiffs are correct that a diversion of resources is clearly sufficient to allege organizational standing so long as it is the consequence of harm done to a plaintiff's core activities.

Here, Plaintiffs allege much the same injuries as the *RNC* plaintiffs. Plaintiffs assert that Defendants' violations of the NVRA impair their core mission of providing voting counseling,

voter outreach, among other initiatives, which consequently force them to divert their resources to re-register voters. Am. Compl. ¶¶ 26, 34; Dkt. 26, Ex.1 at 24. Defendants argue that Plaintiffs must allege direct harm to pre-existing core activities, but this is not what the Fourth Circuit explicitly said. Dkt. 132 at 4-5. The Fourth Circuit required no more than what Plaintiffs allege here to establish organizational standing for the *RNC* plaintiffs. Thus, this Court declines to require more of Plaintiffs.[4]

Even if the test required Plaintiffs to allege direct harm to pre-existing core activities, Plaintiffs have sufficiently alleged that Defendants' program has stymied their "organizational and voter outreach efforts" because they have to re-train staff and volunteers and expend more resources encouraging and educating voters on how to check their registration. *RNC*, 120 F.4th at 397. There is no meaningful distinction between "diverting more resources to combat election fraud" and diverting resources to retrain staff to counsel voters who were at risk of being purged or educating voters about checking their registration status. *Id.* In *RNC* and in this case, the plaintiffs alleged that some "action[] or inaction" of the state board of elections impacted their core mission and activities. *Id.* at 396-97. Therefore, Plaintiffs have sufficiently alleged they have sustained an injury in fact to establish organizational standing under both Supreme Court and Fourth Circuit precedent.

This Court also finds that Plaintiffs have sufficiently alleged that Defendants' conduct caused their injuries. If Defendants' program had not removed voters from the rolls, Plaintiffs would not have had to, among other things, divert resources by educating voters and retraining staff to ensure their members and other voters re-registered or remained registered. Because

---

[4] The Court notes that Judge Diaz's concurrence in *RNC* does suggest that he would apply a "stricter view" of organizational standing. *See* 120 F.4th at 410-11 (collecting cases from other courts that have expressed wariness that diverting resources is enough).

Plaintiffs seek a declaration that the Virginia statute and Defendants' Purge Program violated the NVRA and to permanently enjoin Defendants from implementing this Program in the future, this Court is therefore capable of redressing their injury.

As stated above, Plaintiffs have established organizational standing. But even if they had not, they also have associational standing. Defendants argue that Plaintiffs do not have associational standing because they have not disclosed the identities of any of their members who were harmed by Defendants' program. Dkt. 122 at 11-14. Plaintiffs contend that they need not disclose the identity of a member who was harmed by Defendants' program if the individual's interest in anonymity outweighs the public's interest in disclosure and prejudice to the opposing party. Dkt. 127 at 10-12.

Neither party is exactly correct. "A plaintiff can establish 'representational standing' to sue on its members' behalf when '(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit.'" *N.C. State Conf. of the NAACP*, 283 F. Supp. 3d at 399-400 (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). The Fourth Circuit only requires that an organization specifically allege that "one identified member had suffered or would suffer harm." *Id.*

Here, the parties appear to dispute whether Plaintiffs have identified a member with standing to sue in their own right. Plaintiff LWVVA attests that it has identified a member who was harmed by Defendants' program and thus has associational standing. Dkt. 103, Ex. 1 ("Porte Decl.") ¶ 3. Defendants insist that Plaintiffs must identify their member by their legal name. Dkt 132 at 2-3. To support their position, Defendants rely on *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 114 (2d Cir. 2024) ("*Do No Harm I*") (concluding that on a motion for preliminary injunction "a

12

plaintiff association seeking to establish standing on the basis of injuries to its members identify at least one injured member by name best aligns with Supreme Court precedent"). However, their reliance is misplaced.

It is worth noting that the plaintiff in that case was seeking a preliminary injunction—which is not the current posture of this case. Moreover, *Do No Harm I* was recently vacated and remanded by the Second Circuit. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109 (2d Cir. 2025) ("*Do No Harm II*") (per curiam). In *Do No Harm II*, the court reheard the case and concluded that the district court erred in dismissing the entire complaint merely because an organizational plaintiff failed to establish standing sufficient to secure a preliminary injunction. 126 F.4th at 121-22. In reversing the dismissal, the Second Circuit noted that at the pleading stage—as on a motion to dismiss—general allegations would suffice. *Id.* The Second Circuit also noted that "[i]t is well settled that 'a plaintiff's burden to demonstrate standing increases over the course of litigation.'" *Id.* at 119 (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)) (citation modified). This is because, in the Second Circuit, "a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." *Id.* (quoting *Cacchillo*, 638 F.3d at 404). However, "[t]he burden for establishing standing at the dismissal stage is lower." *Id.* at 114. Thus, the Second Circuit agreed with the plaintiffs that at the pleading stage general factual allegations are sufficient. *Id.*

Neither party has offered Fourth Circuit authority on this point. Defendants argue that without the anonymous member's name they have no way to determine "whether she was on the voter rolls in the first place, was removed from the voter rolls during the quiet period or reregistered to vote after being removed." Dkt. 132 at 2. However, this inquiry is inappropriate at the pleading stage, as it does not address whether Plaintiffs have sufficiently pled facts to establish associational standing. Relatedly, Defendants do not directly or factually challenge LWVVA's affidavit

attesting that one of their members has been harmed.

With respect to Plaintiffs' arguments about anonymity, Plaintiffs also offer out-of-circuit authority to support their proposition that public disclosure of their member's name is unnecessary. *See American Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024). In that case, which concerned a motion for preliminary injunction, the Eleventh Circuit held that an organizational plaintiff was not required to identify affected members by their legal names to establish its standing. *Id.* at 773. In doing so, the court relied on a Fourth Circuit decision addressing individual standing. *Id.* (citing in *B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021)). Indeed, in *B.R.*, the Fourth Circuit reasoned that an individual plaintiff had standing to sue despite not initially disclosing her name because "what she alleged was real" and showed that "she possessed the kind of personal stake necessary for standing—i.e., that she suffered a concrete and particularized injury caused by the defendants and redressable by the court." 17 F.4th at 493-94 (citation modified). Moreover, unlike *Do No Harm*, the challenge to the *B.R.* plaintiff's standing occurred at the pleading stage. To the extent Plaintiffs' burden is higher to secure a preliminary injunction, *American Alliance for Equal Rights* suggests that even on a motion for preliminary injunction, a failure to identify members by name may not be a threat to standing. In any event, this Court is persuaded that, at this stage, it is not necessary that an organizational plaintiff alleging associational standing disclose the identity of the specific member that was harmed as long as they allege a sufficient injury to a member.

For the reasons stated above, Plaintiffs have sufficiently alleged that they have organizational and associational standing to assert their claims as to Counts II and III. With respect to Count IV, the Court also finds that Plaintiffs VACIR and LWVVA have organizational standing. Plaintiffs submitted the notice they sent to Defendants regarding Defendants' failure to comply with the statute and provide responsive documents. VACIR Decl. ¶¶ 17, 20; Dkt. 26, Ex. 16.

14

Since the statute requires such disclosure, Plaintiffs VACIR and LWVVA have sufficiently alleged that they have suffered an injury in fact, caused by Defendants, which this Court may redress in ordering Defendants' compliance.

**B.    *Ex parte Young***

Before reaching the merits of Plaintiffs' remaining counts, Defendants raise two challenges to the suit under the Eleventh Amendment and *Ex parte Young*. 209 U.S. 123 (1908). First, Defendants contend that state sovereign immunity shields Defendants from suit because Plaintiffs no longer allege an *ongoing* violation of federal law. Dkt. 132 at 8 (citing *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018)). Second, Defendants argue that Attorney General Miyares is not a proper party to the suit because he bears no special relation to the law at issue. *Id.* at 10. The Court addresses each of these arguments in turn.

The Court finds that Plaintiffs have sufficiently alleged an ongoing violation of federal law to support an action under *Ex parte Young*. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)) (citation modified). Defendants argue that Plaintiffs seek injunctive relief for conduct that occurred entirely in the past. Dkt. 132 at 8. Plaintiffs contend that the relief they seek is sufficiently prospective because they seek a permanent injunction to prevent the Purge Program from ever being implemented before a federal election and to place removed voters back on the rolls. Dkt. 127 at 16.

According to Defendants, "the possibility of future injury in this context is insufficient to 'establish an ongoing violation of federal law to qualify for relief under *Ex parte Young*.'" Dkt.

15

132 at 8 (citing *Allen*, 895 F.3d at 355). The test, however, is not as simple as it may appear. What matters is whether a plaintiff seeks to remedy ongoing harm, not just whether the challenged action occurred in the past. Indeed, the Fourth Circuit has held that "a future injunction is not made retrospective merely because it recognizes that an ongoing violation of law is the result of a past wrong." *CSX Transp., Inc. v. Bd. of Pub. Works of State of W.Va.*, 138 F.3d 537, 541 (4th Cir. 1998) (citing *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989)).

Plaintiffs note that Defendants' authority involved "one-time events that are unlikely to recur." Dkt. 127 at 17 n.8. Thus, Defendants' reliance on *DeBauche v. Trani* and *Allen v. Cooper* is misplaced. 191 F.3d 499 (4th Cir. 1999); 895 F.3d 337 (4th Cir. 2018). The *DeBauche* plaintiff sought to prevent his future exclusion from debates, and the *Allen* plaintiff sought to prevent North Carolina from further infringing their copyrights. *DeBauche*, 191 F.3d at 505; *Allen*, 895 F.3d at 354-55. In both cases, the Fourth Circuit essentially concluded that the plaintiffs' fears amounted to conjecture and were not ongoing violations. In *DeBauche*, the defendants' actions were a one-time event, and the Court found it unlikely that the defendant, a university president, would exclude plaintiff from a subsequent gubernatorial debate. 191 F.3d at 505. In *Allen*, North Carolina had concededly stopped infringing on the plaintiff's copyright by removing the allegedly infringing materials. 895 F.3d at 354-55.

Here, Defendants' program is neither a one-time event, nor have the removed voters been reinstated. As Plaintiffs note, Defendants' program includes "the process outlined in E.O. 35, and Va. Code § 24.2-427(C)," and they seek to prevent its implementation before any future federal election. Dkt. 127 at 17 n.9. To the extent Defendants believe their program is lawful, the possibility that they will continue to operate their program is far less speculative and moves toward a certainty. As Plaintiffs allege, individuals removed from the voter rolls through the Purge Program remain removed unless they received and responded to Defendants' Notice of Intent to

16

**JA149**

Cancel.[5] Am. Compl. ¶¶ 43-44, 46. To the extent citizens were systematically removed from these rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law. *Id.* ¶¶ 48, 78-79; Dkt. 127 at 16.

Moreover, the Fourth Circuit has already held that requesting the injunctive remedy of reinstatement in the employment context satisfies *Ex parte Young*. *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989); *CSX Transp., Inc.*, 138 F.3d at 541. Reinstating voters' registration is similarly prospective. Dkt. 127 at 16 (citing *Coakley*, 877 F.2d at 305, 306 n.2 and *CSX Transp., Inc.*, 138 F.3d at 541). Further, a permanent injunction would prevent voters who were removed and re-registered from being removed all over again ahead of the next federal general election. Therefore, the Court finds that Plaintiffs have sufficiently alleged an ongoing violation of federal law sufficient to sustain an action under *Ex parte Young*.

As for the propriety of the Attorney General in this suit, Defendants argue that he is not a proper party to this suit because "the Attorney General has no role 'in deciding' who is a noncitizen who must be removed from the voter rolls or 'in executing that' removal." Dkt. 132 at 10 (quoting *King v. Youngkin*, 122 F.4th 539, 548 (4th Cir. 2024)). According to Defendants, because the Attorney General has not acted or threatened to enforce the laws at issue, he bears no special relation to them. *Id.* In contrast, Plaintiffs argue that the Attorney General is a proper party because Virginia law grants him the authority to enforce, investigate, and prosecute violations of the election laws. Dkt. 127 at 17-18; *see also* Va. Code Ann. § 24.2-104(A). Moreover, Plaintiffs assert that because the Attorney General is authorized to bring a civil action for violations of the elections law, he has the authority to seek prospective relief which provides a connection between

---

[5] Voters who realized they were removed in time to re-register may have done so.

the Attorney General and the act's enforcement. Dkt. 127 at 18 (citing *Doyle v. Hogan*, 1 F.4th 249, 257 (4th Cir. 2021)).

This Court agrees with Plaintiffs. Under *Ex parte Young*, to sue a state officer, there must be a "'special relation between the officer being sued and the challenged' government action." *King v. Youngkin*, 122 F.4th 539, 548 (4th Cir. 2024) (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)). "A 'special relation' requires both 'proximity to and responsibility for the challenged state action.'" *Id.* "The officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Id.* at 549 (quoting *Doyle*, 1 F.4th at 255). Virginia Code § 24.2-104(A) grants the Attorney General the full authority to enforce the election laws and prosecute violations thereof. Defendants draw the challenged action too narrowly by focusing on whether the Attorney General makes the determination to remove voters from the rolls. After ELECT and the registrars forwards the names of voters who were removed, the Attorney General then chooses whether to investigate and prosecute the referrals. Va. Code Ann. §§ 24.2-104, 24.2-1019. Thus, the Attorney General unambiguously has the authority to enforce the law or practice Plaintiffs challenge.

In *King v. Youngkin*, the Court excused Virginia's governor from suit because the power to restore someone's right to vote was not the same as deciding "who to disenfranchise or executing that disenfranchisement." 122 F.4th at 548-49. The Fourth Circuit concluded that under Virginia's constitution, being convicted of a felony automatically made someone ineligible to vote without action from the governor or secretary. *Id.* In *Doyle v. Hogan*, the Fourth Circuit excused the Governor, Secretary, and Attorney General because under the relevant statute, none of them had the authority to decide whether to bring a disciplinary proceeding. 1 F.4th 249, 256 (4th Cir. 2021). Specifically, the Attorney General lacked a special relationship because the Attorney General did not have control over "enforcing the Act." *Id.*

18

Here, Plaintiffs seek to prevent the Attorney General from conducting investigations based off the referrals from the Purge Program and by extension civil actions against those referred. Am. Compl. at 31-32 ¶¶ (c), (h), (i), (l); Dkt. 127 at 18 n.10. Under Virginia law, neither ELECT nor local registrars have the power to conduct investigations or initiate a civil action, but the Attorney General can decide whether to take action regarding ELECT referrals. Va. Code. §§ 24.2-404.4, 24.2-104, 24.2-104.1. As the Fourth Circuit noted in *Doyle*, the requisite enforcement authority can "come from the 'particular act' being challenged, a more general law providing enforcement authority, or 'the general duties of the officer.'" 1 F.4th at 255 (quoting *Ex parte Young*, 209 U.S. at 157-58).[6] Based on Plaintiffs' claims, the Attorney General has "some connection with the enforcement of the act." *Id.* at 254-55. Accordingly, this Court finds that the Attorney General is a proper party to this suit.

After determining that Plaintiffs have sufficiently alleged organizational and associational standing, that the instant suit is not barred by sovereign immunity against Defendants, and that the Attorney General is a proper party to this litigation, the Court turns to whether Plaintiffs have alleged sufficient facts to plausibly state their claims.

*12(b)(6) Failure to State a Claim*

### C.    Count I—Quiet Period Provision

Plaintiffs have stated a claim for violation of the Quiet Period Provision of the NVRA. 52 U.S.C. § 20507(c)(2)(A). As a preliminary matter, now that the 2024 federal general election day has passed, Defendants argue that Plaintiffs' claims are now moot. Dkt. 122 at 17. In addition,

---

[6] In *Doyle*, the Fourth Circuit suggested that the authority to seek prospective relief may "provide an adequate connection between the Attorney General and the enforcement of the Act to permit suit under *Ex parte Young*." 1 F.4th at 257. In the end, *Doyle* did not definitively answer that question. Nonetheless, this Court finds it is unnecessary to address it because Plaintiffs have alleged the referrals and investigations are ongoing and that is part of the conduct they seek to enjoin.

19

Defendants argue that the exception to mootness requires a reasonable expectation that the same party will once again be subject to the same harm. *Id.* at 18. Moreover, Defendants reason that in order for their members to be subjected to the same harm, they would have to "check the wrong box at the DMV once more" or not appear in the SAVE database and not return the Notice of Intent to Cancel. Dkt. 132 at 7. Plaintiffs contend that in the Fourth Circuit, reasonable expectation does not require certainty and thus, to the extent that Defendants' program is carried out as Plaintiffs allege, their members very well could be erroneously removed from the voter rolls again. Dkt. 127 at 14. This Court agrees with Plaintiffs.

Article III requires that a case or controversy remain live for the Court to retain subject-matter jurisdiction over the suit. *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). One exception to this requirement is for disputes "capable of repetition, yet evading review." *Id.* "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "The second prong of the 'capable of repetition' exception requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" *Id.* at 463 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)). In the Fourth Circuit, "[e]lection-related disputes qualify as 'capable of repetition' when 'there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles.'" *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2024) (quoting *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011)) (citation modified).

The Amended Complaint alleges that Defendants' program erroneously removes citizens from the voter rolls because they once filled out a DMV record that indicated they were not a citizen, despite other documentation indicating that they are a citizen. Am. Compl. ¶¶ 60-64.

Plaintiffs attest that their affected member had even voted previously but was nonetheless removed. Porte Decl. ¶ 4. The Court is not persuaded by Defendants' self-serving and circuitous argument that because the member voted in the past "without an issue" makes the likelihood that the same harm will recur speculative. Dkt. 132 at 7. Accepting Plaintiffs' allegations as true, Defendants offer no reason why, if Defendants were to renew their program before a subsequent federal election cycle, the program would not affect this same member again.[7]

As for Plaintiffs' organizational standing, Defendants argue that Plaintiffs' efforts to combat the program in this iteration would not be duplicated. Dkt. 122 at 17-18. This Court disagrees. If Defendants implemented their program again, Plaintiffs would still need to divert resources to training staff and conducting outreach to once again ensure that their registered members successfully re-register and monitor their registration status. Indeed, as stated above, Plaintiffs have every reason to anticipate that they would need to support the member that was removed in a future election. Thus, Plaintiffs would be harmed in the same or similar manner. Therefore, there is a reasonable expectation that Defendants' Purge Program will be applied against Plaintiffs as an organization or as representatives again. Plaintiffs' injuries meet the exception for mootness, because they are capable of repetition yet evading review. Accordingly, this Court finds their Quiet Period Claim is not moot.[8]

Turning to the substance of Defendants' arguments regarding the Quiet Period Provision, Defendants first re-raise their argument that Plaintiffs have failed to state a claim for violation of

---

[7] Even assuming that this program was conducted in prior elections, Defendants offer no explanation for why Plaintiff LWVVA's member would be removed only in this cycle or any reason to believe that the problem would not recur in a subsequent cycle.

[8] Defendants do not appear to challenge the duration requirement of the exception. This being an election case, the Court is satisfied that Defendants' actions as alleged are short enough in duration to escape review.

the Quiet Period Provision because their program was not systematic. Dkt. 122 at 32. According to Defendants, the Purge Program is individualized because it "focuses narrowly on specific individuals who have declared themselves to be noncitizens and involves contacting each such individual—twice." *Id.* at 22-23. The Court disagrees.

The Quiet Period Provision provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). This Court already ruled that Plaintiffs have demonstrated a high likelihood of success on the merits as to this claim when it granted Plaintiffs' preliminary injunction. Dkts. 111, 112. This would not have been possible if Plaintiffs had not stated a claim as a matter of law. Again, this Court rejects Defendants' contention. Because Plaintiffs allege that Defendants' program "does not require communication with or particularized investigation into any specific individual," Plaintiffs have sufficiently alleged that Defendants' program is systematic. *VACIR v. Beals*, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024). The Fourth Circuit has affirmed that "[a] process is systematic if it uses a 'mass computerized data-matching process' to identify and confirm names for removal without 'individualized information or investigation.'" *Id.* (quoting *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014)). As this Court has already stated, because Plaintiffs allege that Defendants' program involves little more than comparing ELECT lists against the voter rolls and matching names and identities, Defendants' program is necessarily systematic.

Defendants also re-raise the same statutory interpretation argument they presented to this Court on the motion for preliminary injunction. Dkt. 122 at 24. Defendants assert that the Quiet Period Provision does not apply to non-citizens because they were never eligible applicants and, in turn, could never become a "registrant" or "voter" within the meaning of the statute. *Id.* In

22

Defendants' view, the Quiet Period Provision cannot include noncitizens because then States would be prevented from ever removing them from the rolls. *Id.* at 27. This Court still finds these arguments unpersuasive and also adopts the Fourth Circuit's rejection of them. The Fourth Circuit reasoned that Defendants' contentions: (1) collapse distinctions between "voters" and "eligible voters[;]" (2) assumes "different words in different provisions" have the same meaning; and (3) ignores the plain meaning of the word "registrant." *VACIR*, 2024 WL 4601052, at *2 (defining registrant as one that registers or is registered). In sum, Defendants' argument "violates basic principles of statutory construction by focusing on a differently worded statutory provision that is not at issue here and proposing a strained reading of the Quiet Period Provision to avoid rendering that other provision absurd or unconstitutional." *Id.* at *1.

Although the Supreme Court granted Defendants' motion for a stay, without the Supreme Court's reasoning, it does not follow that the Court necessarily repudiated the Fourth Circuit's reasoning.[9] This Court declines to overread the Supreme Court's decision. Moreover, it bears repeating that the word "registrant" does not appear in the provision at issue. For the second time, the Court rejects Defendants' tortured reading. Thus, this Court still concludes that Plaintiffs have sufficiently pled a violation of the Quiet Period Provision and denies Defendants' Motion to Dismiss as to Count I.

### D.    Count II—Uniform and Nondiscriminatory Provision

Count II alleges that Defendants' Purge Program has violated the NVRA because it is discriminatory. Am. Compl. ¶¶ 81-84. Plaintiffs allege that Defendants' Purge Program "by design singles out individuals who were once identified in DMV records as noncitizens and

---

[9] Indeed, it appears that, at best, the Supreme Court merely preferred the case go through the litigation and appeal process while staying this Court's Order in the interim. Order Granting Stay, *Beals v. VACIR*, 24-2071 (Oct. 30, 2024).

subjects them to scrutiny not generally faced by U.S.-born citizens." Dkt. 127 at 22 (quoting Am. Compl. ¶¶ 60, 70-71). As a result, it discriminates against naturalized citizens. In their Motion, Defendants contend that Plaintiffs have conceded that Defendants' process is not discriminatory because their process applies to anyone who "self-identifies" as a non-citizen, rather than applying solely based on national origin. Dkt. 132 at 11. They argue that their process classifies individuals based on the documents they present indicating citizenship, and it is not a proxy for national origin because non-citizens cannot legally vote. *Id.* at 12.

The "uniform" and "nondiscriminatory" provision of the NVRA requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). The statute does not explicitly define nondiscriminatory, nor does it appear to require discriminatory *intent* in assessing whether a program or activity is discriminatory. *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 999 (D. Ariz. 2024) ("*Mi Familia Vota I*"), and *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012), both recognized that programs which had a discriminatory *impact* on naturalized citizens likely violated the NVRA's uniform and non-discriminatory requirements. Indeed, the Ninth Circuit recently held that Arizona's program violated Section 8(b) of the NVRA because its "citizenship checks" are "'likely to have a discriminatory impact on [naturalized] citizens.'" *Mi Familia Vota v. Fontes*, 129 F.4th 691, 714-15 (9th Cir. 2025) ("*Mi Familia Vota II*") (quoting *Florida*, 870 F. Supp. 2d at 1350).

At this stage, the Court accepts Plaintiffs' allegations as true. *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 263 (4th Cir. 2021). To the extent Plaintiffs allege that Defendants' program "singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens," they have

24

**JA157**

sufficiently alleged that the Purge Program discriminates based on national origin and against naturalized citizens. Am. Compl. ¶ 70. Specifically, Plaintiffs allege that naturalized citizens are more likely to have a "noncitizen exchange with the DMV prior to naturalization," and persons who naturalize would not necessarily have updated documents on file with the DMV. *Id.* ¶ 60. Rather than challenge Plaintiffs' allegation about the accuracy and adequacy of Defendants' process, Defendants focus on framing the program as applying to anyone who "self-identifies" as a non-citizen.

Yet, Plaintiffs also allege that this program applies to citizens "who have previously attested to their U.S. citizenship under penalty of perjury" but have also at one point checked a box indicating that they may have been a non-citizen. *Id.* ¶ 71. Thus, Defendants' program flags registrations for cancellation who have indicated that they *may have been* a non-citizen at some point but otherwise attested to being a citizen. Because Plaintiffs have alleged that naturalized citizens, people who were at one-point non-citizens, are more likely to have their registrations flagged for cancellation, Plaintiffs have alleged Defendants' program has a discriminatory impact.[10]

As Plaintiffs contend, they are not required to allege facts sufficient to demonstrate discriminatory intent. Contrary to Defendants' assertion, *Husted v. A. Philip Randolph Institute* did not concern the Uniform and Nondiscriminatory Provision of § 20507(b)(1) because "respondents did not assert a claim under that provision." 584 U.S. 756. 779 (2018). Thus, that case offers no clarity on what Plaintiffs must allege here. Indeed, although the Supreme Court noted that Justice Sotomayor did not identify evidence of discriminatory intent to support her

---

[10] Even when facing higher burdens, plaintiffs have shown that similar programs were discriminatory and in violation of the NVRA. *Mi Familia Vota I* was decided on a motion for summary judgment and *United States v. Florida* on a motion for temporary restraining order. 719 F. Supp. 3d at 999; 870 F. Supp. 2d at 1350.

argument in dissent, this acknowledgment does not indicate that a showing of discriminatory intent is required under § 20507(b)(1). *Id.* Moreover, Defendants have not cited any other authority suggesting that a plaintiff must allege discriminatory intent to sufficiently state a claim under this provision. To the contrary, as stated *supra*, other courts have found discriminatory impact to be sufficient. *See Mi Familia Vota I*, 719 F. Supp. 3d at 999; *Florida*, 870 F. Supp. 2d at 1350. This Court finds these cases to be persuasive. Therefore, Plaintiffs have sufficiently stated a claim for violation of the Uniform and Nondiscriminatory Provision of the NVRA and so Defendants' Motion to Dismiss as to Count II is denied.

### E. Count III—Accept and Use Provision

Count III alleges that by requiring certain voters to reaffirm their citizenship, Defendants are violating the NVRA's directive that voters need only complete a voter registration form to be registered for federal elections. Am. Compl. ¶ 88. According to Plaintiffs, this violates the "accept and use" provision. 52 U.S.C. §§ 20505(a)(1)-(2) ("Section 6"), 20508(b)(1) ("Section 9").

Defendants contend that Plaintiffs fail to state a claim for violations of Sections 6 and 9 of the NVRA as a matter of law. Specifically, they argue that voter registration and list maintenance are distinct processes, and Sections 6 and 9 of the NVRA only govern registration. Dkt. 132 at 13; *see also* 52 U.S.C. §§ 20505(a)(1)-(2), 20508(b)(1). Defendants assert that Plaintiffs allege "Defendants improperly remove persons from the rolls, not that they fail to register them in the first place." Dkt. 132 at 14. Furthermore, according to Defendants, Plaintiffs' allegation about this additional requirement is conclusory and unsupported given Plaintiffs' allegation that the DMV data checks "occur after a person has been registered to vote." *Id.* In response, Plaintiffs contend that they have stated a claim because they allege that Defendants' program essentially requires applicants to "complete additional paperwork before allowing them to vote." Dkt. 127 at 25 (citing Am. Compl. ¶¶ 2, 39, 88-89). The Court agrees with Defendants.

26

The NVRA sets forth restrictions and requirements for States to follow when establishing procedures to register people to vote in federal elections. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013) ("*ITCA*"). The NVRA's stated purposes are:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

Specifically, Section 6 of the NVRA provides that "[e]ach State shall accept and use the mail voter registration application form prescribed by the Federal Election Commission . . . for the registration of voters in elections for Federal office." 52 U.S.C. § 20505(a)(1). Section 9 states that the mail voter registration form "may require only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1).

In *ITCA*, the Supreme Court held that states subject to the NVRA may not impose greater requirements than those provided by the federal Registration Form. 570 U.S. at 15. However, the completion of a federal form does not guarantee that an applicant will be registered. *Id.* A state may nevertheless deny registration if they possess information "establishing the applicant's ineligibility." *Id.* (quotations omitted). Plaintiffs read *ITCA* to require that states may operate any removal programs only after they have, in good faith, accepted federal and state Forms as "complete and sufficient registration application[s]." Dkt. 127 at 24 (citing *ITCA*, 570 U.S. at 9). Plaintiffs submit that finding otherwise would allow states to circumvent the NVRA "by relabeling

27

their processes." *Id.* at 26. In addition, they contend that Defendants "factual assertion and other assurances" that their program is "a good-faith list maintenance effort cannot be accepted as true." *Id.* at 27.

Neither party offers clear authority on how narrowly or broadly courts have construed the Accept and Use Provision at this stage. *ITCA*, however, is not helpful here because it concerned a straightforward challenge to whether Arizona's evidence of citizenship requirement *prior* to registration violated the accept and use requirement. 570 U.S. at 15. Likewise, Plaintiffs' reliance on *Fish v. Kobach* also misses the mark as it concerned Section 5 of the NVRA. Dkt. 127 at 24-25 (citing 840 F.3d 710, 737 (10th Cir. 2016)). Section 5 provides a "state motor voter form 'may require only the minimum amount of information necessary' for state officials to carry out their eligibility-assessment and registration duties." *Fish*, 840 F.3d at 733 (quoting § 20504(c)(2)(B)). In *Fish*, the Tenth Circuit established a presumption that an attestation requirement is the minimum information necessary to register an applicant. *Id.* at 737. In both of these cases, the Supreme Court and Tenth Circuit seem to refer to these provisions of the NVRA as regulating the registration process. *See id.* at 745 ("Congress intended that the motor voter form would—at least presumptively—constitute the beginning and the end of the registration process."); *ITCA*, 570 U.S. at 9-10 ("[The Accept and Use Provision] might mean that a State must accept the Federal Form as a complete and sufficient registration application; or . . . that the State is merely required to receive the form willingly and use it somehow in its voter registration process.").

Although Plaintiffs are right to be wary of a process that would erode the purpose of the Accept and Use Provision, Defendants have the better argument. These provisions specifically concern aspects of the registration process. 52 U.S.C. §§ 20505(a)(1), 20508(b)(1). The NVRA explicitly prescribes a process that allows states to remove voters from the voter rolls, which Plaintiffs accept. 52 U.S.C. §§ 20507(c), (d). *ITCA* also counsels that the Accept and Use

Provision requires that States accept and use the Federal Form as a "complete and sufficient *registration application*." 570 U.S. at 9, 15 (emphasis added). Plaintiffs do not allege that Defendants' program prevented individuals from properly registering to vote in the first instance. In Plaintiffs' view, Defendants' process creates an unnecessary voter registration requirement in the registration process. Am. Compl. ¶ 89. But Plaintiffs do not allege facts demonstrating how Defendants' program is part of the registration process. They allege that Defendants' program removes voters from the voter rolls at some indeterminate point after registering.[11] *Id.* ¶¶ 40-47, 88.

Critically, Plaintiffs' own allegations seem to admit a distinction. Plaintiffs allege that Defendants do not "verify the veracity of the information" they receive "prior to . . . initiating the *removal* process." *Id.* ¶ 44 (emphasis added). The inescapable conclusion is that in order to appear on the rolls, the Commonwealth would have needed to accept the voter's registration. Because Plaintiffs have not sufficiently alleged that the Purge Program interferes with the registration process, this Court finds that Plaintiffs have failed to allege facts sufficient to state a claim for violation of the Accept and Use Provision of the NVRA.[12] Therefore, the Court dismisses Count III.

## F.      Count IV—Public Disclosure Provision

Count IV claims that Defendants have violated the Public Disclosure Provision of the

---

[11] Although Plaintiffs specifically allege that operating the Purge Program after the Quiet Period violates the Quiet Period Provision, Counts II and III allege that the Program, as described, violates the respective NVRA provisions whether conducted inside or outside of the Quiet Period.

[12] Plaintiffs contend that this Court should not dismiss this claim before discovery because discovery would reveal more information about how Defendants' program operates. Dkt. 127 at 24. Since Plaintiffs do not allege that Defendants' program prevents voters from registering in the first instance and offer no other authority supporting Plaintiffs' reading, this Court still finds that Plaintiffs' allegations are insufficiently pled to state a claim for a violation of the Accept and Use Provision.

NVRA because they failed to provide the documents Plaintiffs are entitled to under the statute. *Id.* ¶¶ 91-94. As another preliminary matter, Defendants first argue that Count IV is moot. Defendants assert that they have already provided the documents they were required to provide under the statute and which Plaintiffs requested on the face of their Complaint. Dkt. 122 at 42-43. Plaintiffs assert that this claim is not moot because Defendants have yet to produce or otherwise make available:

> all records related to their implementation of the Purge Program, including records evidencing their process for identification and removal of voters identified; information concerning which voters responded to the notices of removal; and information regarding all persons who have been subject to investigations as a result of the Purge Program.

Dkt. 127 at 28. Moreover, Plaintiffs contend that their claim is not moot because it also fits the capable of repetition yet evading review exception, and to hold otherwise would allow states "to simply withhold records until the action becomes moot." *Id.* This Court agrees with Plaintiffs. The Public Disclosure Provision provides:

> [e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

A claim is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (citation modified). This claim is not moot to the extent that Plaintiffs seek a declaratory judgment that Defendants' failure to provide these records for public inspection when statutorily required violated this provision. This claim is also not moot because Plaintiffs plainly identify the additional records they seek in their Prayer for Relief. Am. Compl. at 31-32. Plaintiffs note that

Defendants have failed to produce "*all* records related to their implementation of the Purge Program." Dkt. 127 at 28. Therefore, Plaintiffs' claim cannot be moot because certain records remain outstanding. To the extent this Court may further order Defendants to make these records available, this Court is capable of granting Plaintiffs relief.

As to the merits of Plaintiffs' claim, Defendants next argue that Plaintiffs' claim exceeds the scope of "public inspection of records" because they seek *electronic* production of these records. Dkt. 122 at 43-44. Defendants also note that it is undisputed that they provided: (1) a "list of voters identified as potential noncitizens[;]" (2) "the entire list of instances of removals since January of 2022 until the issuance of Executive Order 35[;]" and (3) "the entire Virginia Voter File snapshot through October 21, 2024." *Id.* at 43. Therefore, Defendants contend that Plaintiffs are now in possession of any lists they requested.

With respect to Defendants' contention that Plaintiffs are not entitled to electronic production, Plaintiffs assert that any discussion of the means of disclosure is premature at this stage as Defendants have not argued that "they have made all requested records available for public inspection." Dkt. 127 at 29. Plaintiffs contend that the Public Disclosure provision of the NVRA is broad in that it covers "'all records' related to any effort by the state to ensure the 'accuracy and currency' of voter registration lists." *Id.* (citing 52 U.S.C. § 20507(i)(1)). The Court agrees with Plaintiffs. The Fourth Circuit has approved of Plaintiffs' reading that "all records" is broad and even the neighboring provision of the statute fails to limit the content or type of records it covers. *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336-38 (4th Cir. 2012). Because Plaintiffs allege that (1) Defendants failed to initially make these records available upon request on August 20, 2024, and on October 3, 2024, and (2) Plaintiffs have requested all records concerning the implementation of the Purge Program, some of which are still outstanding, Plaintiffs have sufficiently stated a claim for violation of the Public Disclosure Provision of the NVRA. The

31

Court denies Defendants' motion as to Count IV.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction is **GRANTED** in part and **DENIED** in part. The motion is granted as to Count III and denied in all other respects. Count III is dismissed.

A separate order will issue.

Entered this 12th day of August, 2025.
Alexandria, Virginia

_____
Patricia Tolliver Giles
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| VIRGINIA COALITION FOR     ) <br>     IMMIGRANT RIGHTS *et al.*,     ) <br>     ) <br>     *Plaintiffs*,     ) <br>     ) <br>     v.     ) <br>     ) <br> SUSAN BEALS,     ) <br> *in her official capacity as Virginia*     ) <br>     *Commissioner of Elections, et al.*,     ) <br>     ) <br>     *Defendants*.     ) | Civil Action No. 1:24-cv-1778 (PTG/WBP) |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 121) is **GRANTED** in part and

**DENIED** in part; and it is further

**ORDERED** that the motion is **GRANTED** as to Count III and **DENIED** in all other

respects. Count III is **DISMISSED**.

Entered this *12* day of August, 2025.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:24-cv-01778** |
| ) | |
| **Susan Beals, in her official capacity as** ) | |
| **Virginia Commissioner of Elections, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle,[1] J. Chapman Petersen, and Jason Miyares (collectively, "Defendants"), in their official capacities and by and through their counsel, make the following assertions, admissions, denials, and defenses in answer to the claims brought against them by Virginia Coalition for Immigrant Rights ("VACIR"), League of Women Voters of Virginia ("LWVVA"), League of Women Voters of Virginia Education Fund ("LWVVEF"), and African Communities Together ("ACT") (collectively, "Plaintiffs") in the First Amended Complaint.

## INTRODUCTION

1.      Defendants deny the existence of a "Purge Program" and the allegation that they "brazenly intensified" any such program. Defendants admit that Governor Youngkin issued Executive Order 35 on August 7, 2024. Defendants state that Executive Order 35 speaks for itself and deny any allegation inconsistent with the same. The remaining allegations in paragraph 1 are

---

[1] Defendants Stolle and Petersen have been automatically substituted for Donald W. Merricks and Matthew Weinstein pursuant to Federal Rule of Civil Procedure 25(d).

**JA167**

Plaintiffs' legal conclusions to which no answer is required; however, to the extent a response is required, Defendants deny these allegations.

2.     Defendants deny the existence of a "Purge Program." Defendants deny the allegations in the first, second, third, fifth, sixth, and eighth sentences of paragraph 2. Defendants lack sufficient information to admit or deny the allegations in the fourth sentence of paragraph 2; however, to the extent a response is required, Defendants deny these allegations. The remaining allegations in paragraph 2, including in sentences seven and nine, are Plaintiffs' legal conclusions to which no answer is required; however, to the extent a response is required, Defendants deny these allegations.

3.     Defendants deny the existence of a "Purge Program." Defendants admit that Governor Youngkin issued Executive Order 35 on August 7, 2024. To the extent that paragraph 3 quotes from the executive order and the statutes it references, Defendants state that those sources speak for themselves and deny any allegation inconsistent with the same.

4.     Defendants deny the existence of a "Purge Program." To the extent that paragraph 4 cites and quotes Executive Order 35, Defendants state that Executive Order 35 speaks for itself and deny any allegations inconsistent with the same.

5.     Defendants deny the existence of a "Purge Program." To the extent that paragraph 5 references Executive Order 35, Defendants admit that the executive order includes the following lines: "*Code of Virginia* § 24.2-1019 additionally requires said registrars to immediately notify the Commonwealth's Attorney for their jurisdiction of this alleged unlawful conduct. Additionally, the Office of the Attorney General has full authority to enforce election laws pursuant to *Code of Virginia* § 24.2-104." Defendants state that Executive Order 35 and the statutes it references speak

2

for themselves and deny any allegation inconsistent with the same. Defendants admit that some counties have notified the Office of the Attorney General of the referenced persons.

6. Defendants deny the existence of a "Purge Program." Defendants deny the allegations in paragraph 6. Additionally, many of the allegations in paragraph 6 are Plaintiffs' legal conclusions to which no answer is required; however, to the extent a response is required, Defendants deny these allegations.

7. Defendants acknowledge receiving the letters dated August 20, 2024, and October 3, 2024. Defendants deny the remainder of the allegations in paragraph 7.

8. Defendants deny the allegations in paragraph 8.

9. Defendants deny the allegations in the first three sentences of paragraph 9. Defendants lack sufficient information to admit or deny the allegations in the final two sentences of paragraph 9; however, to the extent a response is required, Defendants deny these allegations.

10. Defendants state that the quotation from Executive Order 35 speaks for itself and deny the remaining allegations in paragraph 10.

11. Defendants deny the allegations in paragraph 11.

12. Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 12 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

13. Defendants deny the existence of a "Purge Program." Defendants deny that any such program or Va. Code § 24.2-427(C) harms VACIR, LWVVA, or ACT. Defendants deny the last sentence of paragraph 13. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 13 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

3

**JA169**

14.     Defendants deny the existence of a "Purge Program." The allegations in paragraph 14 are Plaintiffs' legal conclusions to which no answer is required; however, to the extent that a response is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

15.     The allegations in paragraph 15 are Plaintiffs' legal conclusions to which no answer is required.

16.     The allegations in paragraph 16 are Plaintiffs' legal conclusions to which no answer is required.

17.     Defendants admit that they are elected or appointed officials of Virginia. The remainder of the allegations in paragraph 17 constitute Plaintiffs' legal conclusions to which no answer is required.

18.     The bulk of the allegations in paragraph 18 are Plaintiffs' legal conclusions to which no answer is required. Defendants admit that at least one Defendant resides in the Eastern District of Virginia and that they are Virginia residents and engage in their official duties in the Eastern District of Virginia.

## PARTIES

19.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 19 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

20.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 20 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

21.    Defendants deny the existence of a "Purge Program" and that any such program has harmed VACIR and its members. Defendants further deny the stated "effects" of Executive Order 35 and any such program alleged in the second sentence of paragraph 21. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 21 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

22.    Defendants deny the existence of a "Purge Program." Defendants lack sufficient information to form a belief as to the truth of the factual allegations in the first sentence of paragraph 22 and as to actions the alleged members may have previously taken in the second sentence of paragraph 22 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations. Defendants deny the remaining allegations in paragraph 22.

23.    Defendants deny the existence of a "Purge Program" and the alleged effects of any such program, including that any such program has harmed VACIR's member organizations. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 23 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

24.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 24 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

25.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 25 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

26.     Defendants deny the existence of a "Purge Program" and that any such program or Executive Order 35 harms the League and its members or "created" harms, confusion, or misinformation. Defendants further deny that the League was "forced" or "had to" take any action. Defendants deny the last three sentences of paragraph 26. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 26 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

27.     Defendants deny the existence of a "Purge Program" and that the League is "burdened" by any such program. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 27 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

28.     Defendants deny the existence of a "Purge Program" and that any such program harms the League's mission. Defendants deny that voters were intimidated or unlawfully removed. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 28 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

29.     Defendants deny the allegations in paragraph 29, except Defendants lack sufficient information to form a belief as to the truth of the factual allegation in paragraph 29 that the League's membership includes naturalized citizens and neither admit nor deny that allegation; however, to the extent that a response is required to that allegation, Defendants deny the allegation.

30.     Defendants deny the allegations in the first sentence of paragraph 30 and the existence of a "Purge Program." Defendants lack sufficient information to form a belief as to the

truth of the remaining factual allegations in paragraph 30 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

31.  Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 31 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

32.  Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 32 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

33.  Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 33 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

34.  Defendants deny the existence of a "Purge Program" and that any such program or Executive Order 35 harms ACT or its members. Defendants further deny that ACT "has had" to or been "required" to take any action. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 34 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

35.  Defendants admit that Susan Beals is the Virginia Commissioner of Elections and was sued in her official capacity. Defendants deny the existence of a "Purge Program." Defendants state that the quotations from the Virginia Code and Executive Order 35 speak for themselves and deny any allegation inconsistent with the same.

36.  Defendants admit that John O'Bannon is the Chairman of the State Board of Elections. Defendants admit that Rosalyn Dance is the Vice-Chairman of the Board. Defendants admit that Georgia Alvis-Long is the Secretary of the Board. Defendants deny that Donald W.

Merricks and Matthew Weinstein are members of the Board of Elections. Defendants admit that they were sued in their official capacities. Defendants state that Plaintiffs' quotations of the Virginia Code speak for themselves and deny any allegation inconsistent with the same.

37.     Defendants admit that Jason Miyares is the Attorney General of Virginia and that he was sued in his official capacity. Defendants deny that Attorney General Miyares "endorsed the Purge Program, claiming credit for E.O. 35's original announced purge of 6,303 alleged noncitizens from the voter rolls." Defendants admit that the Office of the Attorney General has been notified of some persons for potential investigation. Defendants state that Plaintiffs' quotation of the Virginia Code speaks for itself and deny any allegation inconsistent with the same.

## FACTUAL ALLEGATIONS

38.     Defendants admit that Governor Youngkin issued Executive Order 35 on August 7, 2024. Defendants admit that August 7 is 90 days before November 5. Defendants admit that August 7 was 45 days before early voting started for the 2024 elections. The remainder of the allegations in paragraph 38 are Plaintiffs' legal conclusions to which no answer is required; however, to the extent a response is required, Defendants deny these allegations.

39.     Defendants deny the existence of a "Purge Program." Defendants further state that Executive Order 35 speaks for itself and deny any allegation inconsistent with the same.

40.     The bulk of the allegations in paragraph 40 are Plaintiffs' legal conclusions to which no answer is required; however, to the extent a response is required, Defendants deny these allegations. To the extent that paragraph 40 cites and quotes Executive Order 35, Defendants state that Executive Order 35 speaks for itself and deny any allegations inconsistent with the same.

41.     Defendants deny the allegations in paragraph 41.

8

**JA174**

42.     Defendants deny the allegations in paragraph 42. To the extent that Plaintiffs quote from The Voter Registration List Maintenance Department of Motor Vehicles: Full SBE & Noncitizens Standard Operating Procedures, Defendants state that the document speaks for itself and deny any allegations inconsistent with the same.

43.     Defendants deny that noncitizens who are improperly placed on the voter rolls are "registrants" or "voters" but otherwise admit the allegations in paragraph 43; however, to the extent that Plaintiffs quote from a Notice of Intent to Cancel, Defendants state that the document speaks for itself and deny any allegations inconsistent with the same.

44.     Defendants deny the allegations in paragraph 44.

45.     Defendants deny that a person who receives a Notice of Intent to Cancel only has 14 days to respond before having his registration cancelled. Defendants otherwise admit the allegations in paragraph 45.

46.     To the extent that Plaintiffs quote from a Notice of Intent to Cancel, Defendants state that the document speaks for itself and deny any allegations inconsistent with the same.

47.     Defendants deny the existence of a "Purge Program." Defendants further state that Executive Order 35 speaks for itself and deny anything inconsistent with the same.

48.     Defendants deny the allegations in paragraph 48.

49.     Defendants state that the sources cited and quoted in paragraph 49 speak for themselves and deny any allegations inconsistent with the same.

50.     Defendants deny the existence of a "Purge Program." Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 50 and neither admit nor deny them.

51.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 51 and neither admit nor deny them. The statement from a "member of the Fairfax County Electoral Board" speaks for itself and Defendants deny any allegation inconsistent with the same.

52.     Defendants admit that Arlington County notified the Attorney General's office of noncitizens on the voter rolls. Defendants lack sufficient information to form a belief as to whether any referrals were made to local Commonwealth's Attorneys and neither admit nor deny that allegation.

53.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 53 and neither admit nor deny them.

54.     Defendants state that Mr. Olson's statement speaks for itself and deny any allegation inconsistent with the same.

55.     Defendants deny the allegations in paragraph 55.

56.     Defendants admit that thousands of persons in Virginia are naturalized every year. Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 56 and neither admit nor deny them.

57.     Defendants state that the cited source from the Census Bureau speaks for itself and deny any allegation inconsistent with the same.

58.     The bulk of the allegations in paragraph 58 are Plaintiffs' legal conclusions to which no answer is required. However, to the extent that an answer is required, Defendants lack sufficient information to form a belief as to the truth of any factual allegations in paragraph 58 and neither admit nor deny them.

59.    The allegations in paragraph 59 are Plaintiffs' legal conclusions to which no answer is required. However, to the extent that an answer is required, Defendants state that the cited sections of the Code of Virginia speak for themselves and deny any allegations inconsistent with the same.

60.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 60 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

61.    Defendants deny the allegations in paragraph 61.

62.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 62 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

63.    Defendants admit the allegations in the first sentence of paragraph 63. Defendants deny the remaining allegations in paragraph 63.

64.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 64 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

65.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 65 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

66.    Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 66 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

67.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 67 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations. Defendants further state that the quote from H.R. Rep. No 103-9 in paragraph 67 speaks for itself.

68.     Defendants state that the quote from the National Voter Registration Act in paragraph 68 speaks for itself and deny anything inconsistent with the same.

69.     Defendants deny the allegations in paragraph 69.

70.     Defendants deny the allegations in paragraph 70.

71.     Defendants deny the allegations in paragraph 71.

72.     Defendants deny the allegations in paragraph 72.

73.     Defendants lack sufficient information to form a belief as to the truth of the factual allegations in paragraph 73 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

74.     Defendants deny the existence of a "Purge Program." Defendants lack sufficient information to form a belief as to the truth of the remaining factual allegations in paragraph 74 and neither admit nor deny them; however, to the extent that a response is required, Defendants deny the allegations.

75.     Defendants admit VACIR sent a letter on August 20, 2024. Defendants state that the letter referenced in the first sentence of paragraph 75 speaks for itself and deny anything inconsistent with the same. The allegation in the second sentence of paragraph 75 is Plaintiffs' legal conclusion to which no answer is required. To the extent an answer is required, the National Voter Registration Act speaks for itself, and Defendants deny any allegation inconsistent with the

same. Defendants deny that Defendant Beals's production was "limited" but admit the meeting and email communications referenced in the third sentence of paragraph 75.

76.    Defendants admit to receiving the letter described in paragraph 76 and that ELECT responded to it on October 7, 2024. Defendants further state that the letter and ELECT's response both speak for themselves.

## CLAIMS

## COUNT ONE

77.    Defendants adopt and incorporate by reference their answers to the allegations set forth herein.

78.    The allegations in paragraph 78 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants state that the National Voter Registration Act speaks for itself and deny any allegation inconsistent with the same.

79.    The allegations in paragraph 79 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants deny the existence of a "Purge Program" and that any such program violates the National Voter Registration Act.

80.    The allegations in paragraph 80 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants state that the National Voter Registration Act and Executive Order 35 speak for themselves and deny any allegation inconsistent with the same.

## COUNT TWO

81.    Defendants adopt and incorporate by reference their answers to the allegations set forth herein.

82.    The allegations in paragraph 82 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants state that the National Voter Registration Act speaks for itself and deny any allegation inconsistent with the same.

83.    The allegations in paragraph 83 are Plaintiffs' legal conclusions to which no answer is required; to the extent that an answer is required, Defendants deny the allegations.

84.    The allegations in paragraph 84 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants state that the National Voter Registration Act and Executive Order 35 speak for themselves and deny any allegation inconsistent with the same.

<u>**COUNT THREE**</u>

85.    Defendants adopt and incorporate by reference their answers to the allegations set forth herein.

86.    Defendants do not respond to the allegations under Count III because it has been dismissed. To the extent that any response could be required, Defendants state that the allegations in this paragraph are Plaintiffs' legal conclusions to which no answer is required.

87.    Defendants do not respond to the allegations under Count III because it has been dismissed. To the extent that any response could be required, Defendants state that the allegations in this paragraph are Plaintiffs' legal conclusions to which no answer is required.

88.    Defendants do not respond to the allegations under Count III because it has been dismissed. To the extent that any response could be required, Defendants state that the allegations in this paragraph are Plaintiffs' legal conclusions to which no answer is required.

89.     Defendants do not respond to the allegations under Count III because it has been dismissed. To the extent that any response could be required, Defendants state that the allegations in this paragraph are Plaintiffs' legal conclusions to which no answer is required.

90.     Defendants do not respond to the allegations under Count III because it has been dismissed. To the extent that any response could be required, Defendants state that the allegations in this paragraph are Plaintiffs' legal conclusions to which no answer is required.

## COUNT IV

91.     Defendants adopt and incorporate by reference their answers to the allegations set forth herein.

92.     The allegations in paragraph 92 are Plaintiffs' legal conclusions to which no answer is required. To the extent an answer is required, Defendants state that the National Voter Registration Act speaks for itself and deny any allegation inconsistent with the same.

93.     The allegations in paragraph 93 are Plaintiffs' legal conclusions to which no answer is required; to the extent that an answer is required, Defendants deny the allegations.

94.     The allegations in paragraph 94 are Plaintiffs' legal conclusions to which no answer is required; to the extent that an answer is required, Defendants deny the allegations.

## PRAYER FOR RELIEF

a.  Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph A of the Prayer for Relief.

b.  Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph B of the Prayer for Relief.

c.  Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph C of the Prayer for Relief.

15

**JA181**

    d.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph D of the Prayer for Relief.

    e.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph E of the Prayer for Relief.

    f.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph F of the Prayer for Relief.

    g.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph G of the Prayer for Relief.

    h.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph H of the Prayer for Relief.

    i.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph I of the Prayer for Relief.

    j.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph J of the Prayer for Relief.

    k.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph K of the Prayer for Relief.

    l.   Defendants deny that Plaintiffs are entitled to any of the relief requested in Paragraph L of the Prayer for Relief.

Except as otherwise expressly stated above, Defendants deny each allegation in the Amended Complaint. Defendants also deny that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

95.    Sovereign immunity bars this lawsuit.

16

### Second Affirmative Defense

96.    Plaintiffs lack standing to bring this suit.

### Third Affirmative Defense

97.    Plaintiffs' claims are moot.

### Fourth Affirmative Defense

98.    Plaintiffs' complaint fails to state a claim upon which relief can be granted.

### Fifth Affirmative Defense

99.    Plaintiffs are not entitled to equitable relief.

Defendants reserve the right to amend their responses in this Answer and to set forth any additional defenses which may come to light or otherwise reveal themselves in the course of litigation, including during discovery and at trial.

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice, deny Plaintiffs' Prayer for Relief, and grant any and all other relief deemed just and proper.

Dated: August 26, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

17

**JA183**

By:    */s/ Thomas J. Sanford*

        Thomas J. Sanford (VSB #95965)
         *Deputy Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)**
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Not a D.C. Bar Member; practice limited to matters
in federal forums.

*Counsel for Defendants Susan Beals, John
O'Bannon, Rosalyn R. Dance, Georgia Alvis-
Long, Christopher P. Stolle, J. Chapman
Petersen, and Attorney General Jason
Miyares*

Jason S. Miyares
   *Attorney General*
Kevin M. Gallagher (VSB #87548)
   *Solicitor General*
Graham K. Bryant (VSB #90592)
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us
TSanford@oag.state.va.us

18

**JA184**

**<u>CERTIFICATE OF SERVICE</u>**

THIS IS TO CERTIFY that on August 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

*/s/ Thomas J. Sanford*
Thomas J. Sanford (VSB #95965)
*Deputy Attorney General*

19

**JA185**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

VIRGINIA COALITION FOR IMMIGRANT
RIGHTS, et al.,

      *Plaintiffs*,

v.

SUSAN BEALS, in her official capacity as
Virginia Commissioner of Elections, et al.,

      *Defendants*.

Case No. 1:24-cv-1778

## **<u>NOTICE OF APPEAL</u>**

Notice is hereby given that all Defendants in the above-captioned matter[1] appeal to the United States Court of Appeals for the Fourth Circuit from the Opinion dated August 12, 2025 (ECF 153) and Order dated August 12, 2025 (ECF 154) denying Defendants' assertion of sovereign immunity as raised in Defendants' Motion to Dismiss the Organizational Plaintiffs' First Amended Complaint (ECF 121).

This appeal is taken pursuant to the collateral order doctrine under 28 U.S.C. § 1291.

---

[1] Defendants Christopher P. Stolle and J. Chapman Petersen have been automatically substituted as defendants for Donald W. Merricks and Matthew Weinstein pursuant to Federal Rule of Civil Procedure 25(d).

Dated: September 11, 2025

**RESPECTFULLY SUBMITTED,**

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE** and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:    */s/ Kevin M. Gallagher*
       Kevin M. Gallagher (VSB #87548)
        *Solicitor General*

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
cooper@cooperkirk.com

*Counsel for Defendants*

Jason S. Miyares
   *Attorney General*
Thomas J. Sanford (VSB #95965)
   *Deputy Attorney General*
Graham K. Bryant (VSB #90592)
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on September 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

<u>/s/ Kevin M. Gallagher</u>
Kevin M. Gallagher (VSB #87548)
 *Solicitor General*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 1:24-cv-01778** |
| **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** | ) ) ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION
OF THEIR INTERLOCUTORY APPEAL**

Defendants respectfully move this Court to stay proceedings in this case pending resolution of Defendants' sovereign-immunity appeal.[1] The notice of appeal has automatically divested this Court of jurisdiction over the Attorney General with respect to all Counts in the Amended Complaint and over all Defendants with respect to Count I. A stay of proceedings on Counts II and IV, in addition to the automatic stay created by the notice of appeal, would promote judicial economy by avoiding piecemeal discovery. The Court possesses inherent authority to manage its docket in an efficient manner and should exercise that authority here. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

**BACKGROUND**

In October 2024, Plaintiffs filed this lawsuit to challenge Virginia's removal of noncitizens from the voter rolls and alleged refusal to provide information about such removals. See Amended

---

[1] Defendants Christopher P. Stolle and J. Chapman Petersen have been automatically substituted as defendants for Donald W. Merricks and Matthew Weinstein pursuant to Federal Rule of Civil Procedure 25(d).

1

**JA189**

Compl. ECF No. 23. The Amended Complaint contained four Counts. Count I alleged that Virginia's purportedly systematic removal of noncitizens within 90 days of a federal election violated the National Voter Registration Act's (NVRA) quiet-period provision.[2] 52 U.S.C. § 20507(c)(2)(A). Count II alleged that Virginia's process for removing noncitizens, as codified in Va. Code § 24.2-427(C), ran afoul of the NVRA's requirement that voter-roll-maintenance programs be "nondiscriminatory," which applies at all times and not just during the 90 days before a federal election. 52 U.S.C. § 20507(b)(1). Count III claimed that the alleged removal of noncitizens for the failure to respond to a notice of intent to cancel amounted to a failure to "accept and use" the federal registration form, in contravention of the NVRA's requirements. *Id.* § 20505(a)(1). In each of these counts, Plaintiffs focused on Governor Youngkin's Executive Order No. 35 rather than the underlying and longstanding statutory processes. Count IV alleged that Virginia had not turned over documents that the Plaintiffs maintained they were entitled to under the NVRA's public-inspection provision. *Id.* § 20507(i).

Plaintiffs moved for a preliminary injunction on Counts I and II weeks before the 2024 election. ECF No. 26. After a hearing, this Court granted the injunction exclusively on Count I, ECF No. 112, and the Fourth Circuit denied a stay pending appeal, see *Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052 (Oct. 27, 2024). The Supreme Court, however, granted a materially identical motion and stayed the injunction. *Virginia Coalition for Immigrant Rights v. Beals*, 603 U.S. __, 2024 WL 4608863 (slip op. at 1) (2024) (mem.). The injunction expired the day "after the 2024 General Election." ECF No. 112 at 4.

---

[2] The United States originally joined the Plaintiffs on Count I, but later voluntarily dismissed its lawsuit. ECF No. 140.

Defendants then moved to dismiss the Amended Complaint both on threshold jurisdictional grounds and for the failure to state a claim. ECF No. 121. Most relevant here, Defendants maintained that sovereign immunity bars the bulk of this lawsuit. The Attorney General does not play a role in enforcement of the challenged provisions or the relevant Executive Order, so the *Ex parte Young* exception that Plaintiffs depend upon to bring this action is unavailable against him as to any count. ECF No. 122 at 19–22. Likewise, because the quiet period for the 2024 election is over, Plaintiffs could not point to an "ongoing" violation by the Commissioner of Elections, members of the Board of Elections, or the Attorney General that would allow Plaintiffs to use the *Ex parte Young* exception as to any Defendant for Count I. *Id.* at 19 (quoting *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013)).

On August 13, 2025, this Court entered an opinion granting the motion to dismiss in part and denying it in part. ECF Nos. 153, 154. The Court rejected all of Defendants' threshold arguments, including sovereign immunity as to both the Attorney General and the remaining Defendants. ECF No. 153 at 7–19. On the merits, the Court dismissed Count III, but the other three Counts survived. *Id.* at 19–32. The parties held a discovery conference, as required by Rule 26(f), on September 8, 2025. The parties reached agreement on many matters at the conference. But the parties could not come to an agreement with respect to discovery and the briefing timelines for any summary-judgment motions. During the conference, Defendants notified Plaintiffs that they were considering an appeal on sovereign-immunity grounds and asked whether Plaintiffs would consider agreeing to stay discovery until the appeal was resolved. Plaintiffs declined.

On September 11, 2025, Defendants noticed an interlocutory sovereign-immunity appeal for the Attorney General on all Counts and an interlocutory sovereign-immunity appeal for the

**JA191**

remaining Defendants on Count I. See ECF No. 165. Defendants now move to stay all proceedings pending the resolution of the sovereign-immunity appeal.

## ARGUMENT

This Court should stay proceedings pending the resolution of Defendants' interlocutory appeal for two reasons. First, at a minimum, this Court must stay proceedings under all Counts against the Attorney General and also stay proceedings on Count I against all Defendants. Supreme Court and Fourth Circuit precedent are clear that a notice of appeal divests a district court of jurisdiction, including the jurisdiction to conduct pre-trial proceedings. ECF No. 165. Second, because this Court no longer has jurisdiction over Count I or the Attorney General, it would be a waste of judicial resources to proceed with discovery on the remaining Counts. This Court has inherent authority to manage its docket, and it can use that authority to stay further proceedings. *Landis*, 299 U.S. at 254.

## I.    Defendants' interlocutory appeal of this Court's denial of sovereign immunity divests the Court of jurisdiction

An order denying sovereign immunity is an immediately appealable collateral order. See *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Industrial Servs. Group, Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023). And it is "a longstanding tenet of American procedure" that an "appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). When that divestment of jurisdiction occurs, "the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." *Id.* at 738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a

4

notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.").

This Court has correctly applied this principle in the context of an interlocutory appeal challenging the denial of sovereign immunity. See *Glover v. Hryniewich*, 438 F. Supp. 3d 625, 643–44 (E.D. Va. 2020). In *Glover*, the Court denied a city defendant's assertion of sovereign immunity. See *id.* at 643–44. The city then sought a stay based on its impending interlocutory appeal challenging that denial, arguing that the filing of the notice of appeal would divest the Court of jurisdiction under *Griggs*. *Id.* at 644. The Court agreed and stayed the case, holding "that it lacks jurisdiction to proceed to trial during the pendency of the City's interlocutory appeal." *Id.* at 645. This Court has held the same in the context of foreign sovereign immunity. See *France.com, Inc. v. French Republic*, No. 1:18-cv-460, 2020 WL 8172981, at \*4 (E.D. Va. Feb. 20, 2020) (staying the case because the "Court no longer asserts jurisdiction over the question of sovereign immunity" after defendants filed an interlocutory appeal challenging denial of immunity).

Because a notice of appeal divests the district court of jurisdiction, this Court has no power to proceed on the aspects of the ruling that have been appealed. Specifically, this Court has no jurisdiction over the Attorney General as to any count and no jurisdiction over Commissioner Beals and members of the Board of Elections with respect to Count I. Discovery on these matters cannot proceed until the Fourth Circuit decides whether these Defendants are immune from suit. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 144–45.

## II.    This Court should enter a stay as to the limited aspects of the case over which it retains jurisdiction while Defendants pursue their interlocutory appeal

Although this Court lacks jurisdiction to proceed on Count I and against the Attorney General on all Counts, Defendants acknowledge there is no *mandatory* stay for Counts II and IV against Commissioner Beals and the members of the Board of Elections. See *Marrese*, 470 U.S. at

379 (staying only the parts of the case relevant to the appeal). But proceeding with piecemeal discovery would waste judicial resources and serve no beneficial purpose. See *Coinbase*, 599 U.S. at 743. This Court should thus stay *all* the proceedings until the appeal is resolved.

This Court will typically consider three factors when exercising its inherent power to stay proceedings: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Redding v. Mayorkas*, No. 1:23-cv-1325, 2024 WL 663038, at *3 (E.D. Va. Feb. 5, 2024) (brackets and internal quotation marks omitted). These factors support staying the entire case while Defendants' sovereign-immunity appeal plays out.

First, judicial economy would be served by granting a stay. See *Coinbase*, 599 U.S. at 743 ("[A]llowing a case to proceed simultaneously in the district court and the court of appeals creates the possibility that the district court will waste scarce judicial resources."). While the sovereign-immunity appeal is pending, Plaintiffs will be unable to take any discovery into the Attorney General. See *id.* (explaining that one purpose of divesting the district court of jurisdiction is to prevent discovery). Nor will they be able to take discovery into any Defendant with respect to the quiet-period provision. *Id.* The only discovery available would be related to Counts II and IV, and even then only as to the defendant members of the Board of Elections and Commissioner Beals. See *Marrese*, 470 U.S. at 379. If Defendants win the appeal, then the issues in this case will be significantly narrowed, conserving judicial resources. If Defendants lose but discovery had not been stayed, then this Court would need to reopen discovery to allow inquiry into Count I for Commissioner Beals and the members of the Board of Elections and Counts I, II, and IV for the Attorney General. This kind of duplicative discovery schedule would waste valuable resources of both the parties and the Court. In a similar vein, creating separate rounds of discovery would not

produce any efficiencies or accelerate resolution of this matter. While Defendants' sovereign immunity appeal is pending, this Court cannot proceed to summary judgment or trial on Count I or any claims against the Attorney General. See Part I, *supra*. Thus, even if the parties completed some discovery now, they would still have to wait for resolution of the appeal and potentially additional discovery before taking any further action in the case.

Conducting discovery immediately, especially on an accelerated timeline as Plaintiffs propose, would also risk wasting judicial resources because there is an impending gubernatorial election in Virginia. Plaintiffs' claims are heavily focused on Executive Order No. 35. See, *e.g.*, Am. Compl. ¶¶ 3, 4, 5, 7, 10, 21, 22, 23, 26, 27, 34, 35, 37, 38, 39, 40, 47, 76, 80, 84, 90 & n.1 (citing or discussing Executive Order No. 35). But due to the Constitution of Virginia's prohibition on Governors serving consecutive terms, Va. Const. art. V, § 1, there will inherently be a new Governor of Virginia starting in mid-January 2026. As a result, the relevant Executive Order may be altered, amended, revised, expanded, or otherwise modified. If that occurs, additional discovery may be necessary. By contrast, a stay would permit discovery to proceed in a more concrete setting and prevent the possible duplication of efforts.

Second, Defendants would also suffer hardship if they are not granted a stay. *Redding*, 2024 WL 663038, at *3; *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013). Virginia's 2025 general election will take place on November 4, 2025, and Commissioner Beals and the members of the Board of Elections are hard at work preparing for that election. "High ranking government officials," like the Defendants here, "have greater duties and time constraints than" typical defendants, and as other courts have recognized, their "time is very valuable." *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). Being forced into burdensome—and ultimately repetitive—discovery would distract from their duties and harm the Commonwealth of

Virginia's efforts to run an efficient and fair election. See, *e.g.*, *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (per curiam) ("Obviously, high-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency."); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("[T]he executive branch's execution of the laws" would "be crippled if courts" could "unnecessarily burden [officials] with compelled depositions.").

Third, although Plaintiffs would experience some delay in litigating Counts II and IV, that delay would not "prejudice" them. *Redding*, 2024 WL 663038, at *3. Count II alleges that Virginia's process for removing noncitizens from the voter rolls fails the NVRA's requirement that roll-maintenance programs be "nondiscriminatory." 52 U.S.C. § 20507(b)(1). Despite the fact that Virginia has been openly removing noncitizens from its voter rolls under Va. Code § 24.2-427(C) since Governor Kaine signed the law in 2006, Plaintiffs waited until 2024 to sue. Given Plaintiffs' 18-year delay to sue over a statute that they claim is preempted, Plaintiffs have little basis for opposing a limited stay in the interests of judicial economy. Likewise, Plaintiffs would suffer no harm from waiting to resolve Count IV, which only seeks documents. Plaintiffs have already been provided with most, if not all, of the documents in question through voluntary disclosures or the expedited discovery that preceded the preliminary injunction hearing. Moreover, as this matter remains in its early stages with discovery having not yet commenced, a stay will not disrupt any ongoing efforts.

## CONCLUSION

For the foregoing reasons, the Court should stay all proceedings pending resolution of Defendants' interlocutory appeal.

**JA196**

Dated: September 12, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:   */s/ Thomas J. Sanford*
    Thomas J. Sanford (VSB #95965)
        *Deputy Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Joseph O. Masterman *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
    *Attorney General*
Kevin M. Gallagher (VSB #87548)
    *Solicitor General*
Graham K. Bryant (VSB #90592)
    *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
TSanford@oag.state.va.us
SolicitorGeneral@oag.state.va.us

9

**JA197**

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on September 12, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

_/s/ Thomas J. Sanford_
Thomas J. Sanford (VSB #95965)
*Deputy Attorney General*

10

**JA198**

## APPEAL TRANSMITTAL SHEET (non-death penalty)

| | | |
|---|---|---|
| **Transmittal to 4CCA of notice of appeal filed**: 09/11/25 | **District:**  EDVA | **District Case No.:**  1:24-cv-01778-PTG-WBP |
| ___ First NOA in Case | **Division:**  Alexandria | **4CCA No(s). for any prior NOA:**  24-2074 |
| ✓ Subsequent NOA-same party | **Caption:** | **4CCA Case Manager:** |
| ___ Subsequent NOA-new party | Virginia Coalition for Immigrant Rights | Emily Borneisen |
| ___ Subsequent NOA-cross appeal | v. | |
| ___ Paper ROA    ___ Paper Supp. | Susan Beals et al | |
| Vols: _____ | | |
| Other: | | |

**Exceptional Circumstances:** ___ Bail   ✓ Interlocutory   ___ Recalcitrant Witness   ___ Other _____

| | |
|---|---|
| **Confinement**-Criminal Case: | **Fee Status:** |
| ___ Death row-use DP Transmittal | ___ No fee required (USA appeal)   ✓ Appeal fees paid in full   ___ Fee not paid |
| ___ Recalcitrant witness | **Criminal Cases:** |
| ___ In custody | ___ District court granted & did not revoke CJA status (continues on appeal) |
| ___ On bond | ___ District court granted CJA & later revoked status (must pay fee or apply to 4CCA) |
| ___ On probation | ___ District court never granted CJA status (must pay fee or apply to 4CCA) |
| **Defendant Address**-Criminal Case: | **Civil, Habeas & 2255 Cases:** |
| | ___ Court granted & did not revoke IFP status (continues on appeal) |
| | ___ Court granted IFP & later revoked status (must pay fee or apply to 4CCA) |
| | ✓ Court never granted IFP status (must pay fee or apply to 4CCA) |
| **District Judge:**  Patricia Tolliver Giles | **PLRA Cases:** |
| | ___ Proceeded PLRA in district court, no 3-strike determination (must apply to 4CCA) |
| | ___ Proceeded PLRA in district court, determined to be 3-striker (must apply to 4CCA) |
| **Court Reporter** (list all):  FTR  Scott Wallace  Rhonda Montgomery | **Sealed Status** (check all that apply): |
| | ____ Portions of record under seal |
| | ____ Entire record under seal |
| | ____ Party names under seal |
| **Coordinator**: Judith Lanham | ____ Docket under seal |

| **Record Status for Pro Se Appeals** (check any applicable): | **Record Status for Counseled Appeals** (check any applicable): |
|---|---|
| ___ Assembled electronic record available upon request | ✓ Assembled electronic record available upon request |
| ___ Additional sealed record available upon request | ___ Additional sealed record available upon request |
| ___ Paper record or supplement available upon request | ___ Paper record or supplement available upon request |
| ___ No in-court hearings held | ___ No in-court hearings held |
| ___ In-court hearings held – all transcript on file | ___ In-court hearings held – all transcript on file |
| ___ In-court hearings held – all transcript not on file | ✓ In-court hearings held – all transcript not on file |
| ___ Other: | ___ Other: |

Deputy Clerk: S. Brown _____    Phone: 703-299-2100 _____    Date: 09/15/25 _____

10/2022

**JA199**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*, <br><br>     *Plaintiffs*, <br><br>        v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*, <br><br>     *Defendants*. | Case No. 1:24-cv-01778 <br> Judge Patricia Tolliver Giles |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING RESOLUTION OF THEIR INTERLOCUTORY APPEAL**</u>

**INTRODUCTION**

Plaintiffs urge this Court to deny in its entirety the Motion to Stay filed by Defendant Miyares and Defendants Beals, O'Bannon, Dance, Alvis-Long, Merricks, and Weinstein ("ELECT Defendants"). While an order denying sovereign immunity is an immediately appealable collateral order, this Court should certify Defendants' appeal as frivolous because it relies on a meritless challenge of the applicability of *Ex parte Young*; retain jurisdiction over all parties and counts; and proceed under the recently entered Scheduling Order, ECF No. 170. In the alternative, if this Court stays proceedings for Defendant Miyares on any counts and/or ELECT Defendants on Count I, Plaintiffs request that this Court deny Defendants' Motion to Stay as it applies to the remaining parties and claims, because the interests of judicial economy do not require a stay; because Defendants would face minimal hardship absence a stay, while Plaintiffs would be substantially prejudiced if a stay were granted; and because Defendants have not made a strong showing that they are likely to succeed on the merits and the public interest weighs against the stay.

1

# BACKGROUND

On October 7, 2024, Plaintiffs filed their complaint challenging Defendants' administration of an ongoing program to remove certain Virginia voters from the rolls (the "Purge Program") and their refusal to provide information regarding the program. *See* Am. Compl. ECF No. 23. Plaintiffs allege that Defendants' administration of the Purge Program violates several provisions of the National Voter Registration Act ("NVRA"), including provisions governing voter list maintenance and the public disclosure of related records. Am. Compl. ¶¶ 77-94, ECF No. 23.

On October 15, 2024, Plaintiffs moved for a preliminary injunction. ECF No. 26. After a hearing, this Court enjoined Defendants from "continuing any systemic program intended to remove the names of ineligible voters from registration lists less than 90 days before the November 5, 2024, federal General Election," ECF No. 112 at 2, and the Fourth Circuit denied stay pending appeal. *See Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052 (Oct. 27, 2024). On October 30, 2024, the Supreme Court granted Defendants' motion for stay. *Virginia Coalition for Immigrant Rights v. Beals*, 603 U.S. __, 2024 WL 4608863 (slip op. at 1) (2024) (mem.).

On November 21, 2024, Defendants moved to dismiss the Amended Complaint on jurisdictional grounds. ECF No. 121. Defendants argued that the claims against Defendants were generally barred by sovereign immunity and, specifically, that Attorney General Miyares is not a proper party to this action under *Ex parte Young*. ECF No. 122 at 19–22. On August 12, 2025, this Court entered an opinion granting the motion to dismiss in part and denying it in part. ECF Nos. 153, 154. This Court rejected each of Defendants' sovereign immunity arguments as to the Attorney General and the remaining Defendants. ECF No. 153 at 7–19.

The Parties held a Rule 26(f) conference on September 8, 2025, during which Defendants notified Plaintiffs that they were considering an appeal on sovereign-immunity grounds. On September 11, 2025, Defendants noticed an interlocutory sovereign-immunity appeal for the Attorney General on all Counts and an interlocutory sovereign-immunity appeal for the remaining Defendants as it relates to the removal of voters during the 90-Day or Quiet Period Provision prescribed by the NVRA. ECF No. 165. On September 12, 2025, Defendants filed a motion to stay proceedings pending the resolution of their interlocutory appeal. ECF No. 166.

**LEGAL STANDARD**

An order denying sovereign immunity is an immediately appealable collateral order and, "[g]enerally, the filing of a notice of appeal divests the district court of all jurisdiction in a case." *Mgmt. Sci. Am. Inc. v. McMuya*, 956 F.2d 1162 (4th Cir. 1992). However, "this rule does not apply where the district court has certified the appeal to be frivolous." *Id.*; *see also, e.g.*, *France.com, Inc. v. French Republic*, No. 1:18-cv-460, 2020 WL 8172981, at *4 n.2 (E.D. Va. Feb. 20, 2020) (quoting *Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167, 174 (E.D. Va. 1993), *aff'd*, 32 F.3d 77 (4th Cir. 1994)) (noting that the court was "cognizant" that even where "interlocutory appeal divests this Court of jurisdiction over the remaining matters[,] [t]his does not leave district courts at the mercy of defendants who file frivolous interlocutory appeals for tactical reasons"). The Supreme Court has acknowledged that the practice of certifying appeals as frivolous "enables the district court to retain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings." *Behrens v. Pelletier*, 516 U.S. 299, 310-311 (1996); *see also U.S. v. Modanlo*, 762 F.3d 403, 411 (4th Cir. 2014) (discussing whether an interlocutory or collateral order was "properly taken" or frivolous). The Fourth Circuit has indicated, in analogous contexts, that an interlocutory appeal is frivolous when it is meritless

3

**JA202**

and/or substantively inappropriate. *See, e.g.*, *Glob. Innovative Concepts, LLC v. Div. of Emergency Mgmt.*, No. 5:23-CV-69-FL, 2023 WL 8099111, at *2 (E.D.N.C. Nov. 21, 2023) (interpreting the Fourth Circuit's standard to require that the appeal be *either* meritless *or* substantively inappropriate, and providing a similar standard used across other jurisdictions); *Eckert Int'l, Inc.*, 834 F. Supp. at 174, *aff'd*, 32 F.3d 77 (4th Cir. 1994) (interpreting the Fourth Circuit's guidance to require both).

This Court has discretion to grant or deny a motion to stay for the claims not subject to interlocutory appeal on the denial of sovereign immunity. *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018). In determining whether to stay an order pending appeal, this Court typically considers at least three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and,] (3) potential prejudice to the non-moving party." *Simpson v. LLAB Trucking, Inc.*, No. 1:21-cv-00333, 2022 WL 2614876, at *1 (E.D. Va. Jan. 26, 2022). "In the event that there is a 'fair possibility' that granting a stay would 'work damage to someone else,' the moving party must 'make out a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Some courts also consider whether the movant has made a "strong showing that [he] is likely to succeed on the merits" and where "the public interest" lies. *See, e.g.*, *Courtemanche v. Motorola Sols., Inc.*, 783 F. Supp. 3d 527, 531-34 (D. Mass. 2025) (citing and assessing the four factors from *Nken v. Holder*, 556 U.S. 418, 434 (2009), when considering stay of proceedings pending Eleventh Amendment immunity appeal); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746-47 (2023) (discussing "the usual four-factor standard for a discretionary stay" and "the ordinary discretionary stay factors" in the context of assessing whether to create an automatic, rather than just discretionary, stay of proceedings).

4

**JA203**

**ARGUMENT**

I.     **This Court retains jurisdiction over all claims, because Defendants' interlocutory appeal is frivolous.**

The interlocutory appeal noticed by Defendants does not divest this Court of jurisdiction, because their claims of sovereign immunity are frivolous.[1] The standard for frivolity is exacting, but it is met here. As explained below, *Ex parte Young* plainly renders Defendants' claims of sovereign immunity meritless, and in contesting that determination, Defendants attempt to mask factual arguments as legal ones. Under *Ex parte Young*, "official-capacity suits seeking prospective relief for federal-law violations do not implicate sovereign immunity." *Jackson Creek Marine, LLC v. Maryland*, No. 24-1788, 2025 WL 2525855, at *7 (4th Cir. Sep. 3, 2025). "Rather than defining the nature of Eleventh Amendment immunity, *Young* and its progeny render the Amendment wholly inapplicable to a certain class of suits." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

An assessment under *Ex parte Young* is not complicated: In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). This Court conducted such a straightforward inquiry and easily found the claims against both Defendant Miyares and the ELECT Defendants are properly

---

[1] Defendants are incorrect in their claim that *Coinbase, Inc. v. Bielski* requires that this Court "must" stay proceedings while the interlocutory appeal is ongoing. ECF No. 166 at 4. In *Coinbase*, "[t]he sole question" was "whether a district court must stay its proceedings while the interlocutory appeal *on arbitrability* is ongoing." *Coinbase*, 599 U.S. at 740 (emphasis added). The Supreme Court found that a stay of proceedings would be necessary in that circumstance "because the question on appeal is whether the case belongs in arbitration or instead in the district court" and therefore "the entire case is essentially 'involved in the appeal.'" *Id*. at 741.

5

**JA204**

characterized as prospective, rendering the Eleventh Amendment wholly inapplicable and Defendants' claims of sovereign immunity frivolous. *See* ECF No. 153 at 15-17; *see also League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 742, 743-45 (N.D. Ohio 2006) (finding *Ex parte Young* sovereign immunity defense to be frivolous, and denying motion to stay pending interlocutory appeal); *see also Courtemanche*, 783 F. Supp. 3d at 532-33 (denying motion to stay pending interlocutory appeal on *Ex parte Young* after identifying that "the underlying issue in dispute is whether Plaintiffs sufficiently alleged the existence of valid prospective injunctive relief" and rejecting the movant's reliance on "cases involving qualified immunity, not sovereign immunity, to argue that it should be shielded from discovery"). Defendants' claim to the contrary is not only incorrect; it is obviously so, because it simply ignores portions of the complaint that seek prospective relief.

Defendants' reliance on *Glover v. Hryniewich*, 438 F. Supp. 3d 625 (E.D. Va. 2020), is misplaced. The *Glover* Court found that it lacked jurisdiction to proceed to trial during the pendency of an interlocutory appeal regarding *whether a municipality was an arm of the state*. *Id.* at 644-45. There was no claim in that case that *Ex parte Young* rendered Eleventh Amendment immunity inapplicable.[2]

The *Glover* Court also specifically noted that the interlocutory appeal in that matter was based solely on the application of the law to *undisputed facts*. 438 F. Supp. 3d at 645 n.14. Not so here, where Defendants' interlocutory appeal hinges on a factual disagreement regarding the nature of the challenged Purge Program and the relief sought by Plaintiffs. ECF No. 166 at 3. To the extent Defendants' arguments regarding immunity rest on facts that "are yet subject to genuine

---

[2] The same is, of course, true for the stay pending appeal for the assertion of foreign sovereign immunity in *France.com, Inc.*, 2020 WL 8172981, at *4.

**JA205**

dispute," this raises a question as to whether, "[b]ecause the court['s] immunity rulings below turn on genuineness, [the Fourth Circuit] lack[s] jurisdiction to consider them on an interlocutory appeal." *Al Shimari v. CACI Intern., Inc.*, 679 F.3d 205, 223 (4th Cir. 2012); *see also Behrens*, 516 U.S. at 311 (1996). The more likely implication, however, is that Defendants' interlocutory appeal improperly attempts to mask factual arguments—irrelevant at the Motion to Dismiss stage— as legal ones, further underscoring the frivolity of their appeal.

Defendants conflate the claims of sovereign immunity being raised by Defendant Miyares and the ELECT Defendants in the interlocutory appeal. The Court should decline to follow suit and instead consider Defendant Miyares' claim and ELECT Defendants' claim individually as it has before. Both claims are frivolous for the reasons stated above, *i.e.* that *Ex parte Young* renders the Eleventh Amendment wholly inapplicable when, as here, Plaintiffs seek relief against what they allege to be an ongoing violation of federal law. This conclusively establishes the frivolity of the ELECT Defendants' claim of sovereign immunity. Defendant Miyares' argument continues that *Ex parte Young* does not apply to him because he claims that he has no "special relation" to the challenged process. *See* ECF No. 122 at 19. But this argument, too, is meritless and substantively inappropriate, because, as this Court recognized, "the Attorney General *unambiguously* has the authority to enforce the law or practice Plaintiffs challenge." ECF No. 153 at 18 (emphasis added); ECF No. 127 at 17-18. The lack of merit in Defendants' claim is once again highlighted by their blindered disregard of Plaintiffs' complaint, including that "Plaintiffs seek to prevent *the Attorney General* from conducting investigations based off the referrals from the Purge Program and by extension civil actions against those referred." ECF No. 153 at 19

7

(emphasis added) (*citing* ECF No. 23 at 31-32 ¶¶ (c), (h), (i), (l)). Defendant Miyares' claim of sovereign immunity is, therefore, also frivolous.[3]

## II.  This Court should not grant a stay for the claims over which Defendants have not raised a sovereign immunity defense.

Regardless of whether the Court is divested of jurisdiction for the claims that are the subject of Defendants' interlocutory appeal, Defendants have not met their burden to justify a stay of proceedings for the remaining claims.

*First,* the interests of judicial economy do not require a stay. If this Court issues a stay of proceedings for the claims against Defendant Miyares alone, judicial economy would not be served by a stay of proceedings for the claims against the ELECT Defendants. As this Court found, Defendant Miyares is a proper party because he has "the requisite enforcement authority" to be subject to suit under *Ex parte Young*. ECF No. 153 at 19. However, Defendant Miyares claims that he "does not play a role in enforcement of the challenged provisions or the relevant Executive Order." ECF No. 166 at 3.  If Defendant Miyares is correct that his office has not yet exercised its enforcement authority under the Purge Program, discovery of the Attorney General should be limited. Staggered discovery, therefore, would not waste judicial resources.

Nor would judicial economy be served by staying proceedings on Counts II and IV, even if this Court issues a stay of proceedings against the ELECT Defendants on Count I. While they arise from the same Purge Program, Counts I and II vary in their elements, and discovery regarding the two claims will not be entirely duplicative. Furthermore, discovery regarding Count IV is likely to be very distinct from discovery regarding Count I, as it relates to the documents that have or

---

[3] To the extent this Court finds that Defendant Miyares' claim is not meritless and/or substantively inappropriate because of this additional element, that has no effect on ELECT Defendants' claim of sovereign immunity.

have not been provided in response to Plaintiffs' NVRA requests, rather than about the Purge Program itself. This Court has already issued a Scheduling Order as outlined *infra*. Judicial economy, therefore, will be served by ensuring discovery commences, to the greatest extent possible, and that it is carried out in keeping with the Court's Scheduling Order. Permitting discovery on Counts II and IV, therefore, would respect judicial economy.[4]

*Second*, Defendants face minimal hardship absent a stay. "The State and the public have no legitimate interest in the operation of a state law that is likely preempted by federal law." *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 397 (D. Md. 2022). And while Plaintiffs acknowledge the important role of election officials, Defendant Miyares and ELECT Defendants are not exempt from the requirements of litigation, nor would commencing discovery prevent them from doing their duties.

*Third*, in contrast, there is more than just a "fair possibility" that Plaintiffs, their members, and other eligible voters would be prejudiced if a stay were granted. *Simpson*, 2022 WL 2614876, at *1. The Court's recently issued Scheduling Order, ECF No. 170, orders that discovery be completed by February 13, 2026, with trial to be set within 4-8 weeks of February 18, 2026. The next federal election will take place on June 16, 2026, with absentee voting in person available beginning May 2, 2026, and the NVRA Quiet Period beginning on March 18, 2026. With the first of these election events less than six months away, strict adherence to the Court's ordered schedule

---

[4] Defendants also claim that conducting discovery will "risk wasting judicial resources because there is an impending gubernatorial election in Virginia" and that there is the possibility that EO 35, which makes up part of the Purge Program, "may be altered, amended, revised, expanded, or otherwise modified." ECF No. 166 at 7. It is always true that changes in the executive or legislative branches may result in changes to policies and law. The mere possibility, however, that *something* just *might* change does not transform the judicial branch into nothing more than a waiting room, where rights are violated without recourse in the lead-up to each election, in the name of "judicial efficiency."

9

**JA208**

will be necessary to give Plaintiffs an opportunity to have a remedy before the next federal election. Failure to receive such a remedy risks irreparable injury to Virginian voters' rights. In particular, allowing discovery to proceed on Count II, even if proceedings are stayed pending appeal for Count I, will help ensure this Court has a full record before it to assess the nonuniformity and discriminatory impact of the Purge Program.

*Fourth*, Defendants have not, and indeed cannot, make a strong showing that they are likely to succeed on the merits.[5] At the preliminary injunction stage, this Court "ruled that Plaintiffs have demonstrated a high likelihood of success on the merits as to" Count I. ECF No. 153 at 22. And this Court found that Plaintiffs had sufficiently stated claims for Counts I, II, and IV in its Order on Defendants' Motion to Dismiss, ECF No. 153.

*Finally*, a stay would not be in the public interest. The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "[direct] and damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012); 52 U.S.C. § 20501(a). Because of the fundamental interests at stake, the continuing nonuniform and discriminatory operation of the Purge Program, and the rapid approach of the next federal election, the public interest weighs in favor of allowing discovery and Plaintiffs' claims to move forward to the greatest extent possible.

---

[5] To the extent the Court is assessing the sovereign immunity defense for Defendant Miyares on all counts or the ELECT Defendants on Count I, Defendants have not made any showing, let alone a strong one, that this Court erred in finding that plaintiffs have sufficiently alleged an ongoing violation of federal law and sought prospective relief against the appropriate parties such that *Ex parte Young* has been satisfied.

Defendants have accordingly failed to meet their burden for this Court to exercise its discretion to stay proceedings against ELECT Defendants on Counts II and IV.[6]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay should be denied in its entirety; Plaintiffs respectfully request that this Court certify Defendants' interlocutory appeal as frivolous and retain jurisdiction over all Defendants on all counts. In the alternative, if this Court stays proceedings for Defendant Miyares on all counts and/or ELECT Defendants on Count I, Plaintiffs request that this Court deny Defendants' Motion to Stay as it applies to the remaining parties and claims, because Defendants have failed to make the strong showing required for this Court to exercise its discretion to issue a stay.

Date: September 26, 2025

Respectfully submitted,

Ryan Snow*
Javon Davis*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street, NW, Ste. 900
Washington, DC 20005
(202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

/s/ Shanna Ports
Shanna Ports (VSB No. 86094)
Danielle Lang*
Brent Ferguson*
Simone Leeper*
Katherine Hamilton*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sports@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

---

[6] For the same reasons, if this Court certifies either Defendant Miyares' appeal or the ELECT Defendants' appeal as frivolous, Defendants have not met the burden for this Court to exercise its discretion to stay proceedings against ELECT Defendants on Count I or against Defendant Miyares on any count.

11

**JA210**

Orion Danjuma*
John Paredes*
THE PROTECT DEMOCRACY PROJECT, INC.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

Benjamin L. Berwick*
Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

*Attorneys for Plaintiffs Virginia Coalition for Immigrant Rights, the League of Women Voters of Virginia, and African Communities Together*

*Admitted pro hac vice*

12

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2025, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to all counsel of record regarding this matter.

/s/ Shanna Ports
Shanna Ports

13

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum conforms to the typeface and page limitations set out in Local Civil Rule 7(F)(3).

<u>/s/ Shanna Ports</u>
Shanna Ports

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; AFRICAN COMMUNITIES TOGETHER, | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-01778 |
| | Judge Patricia Tolliver Giles |
| SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; CHRISOPHER P. STOLLE and J. CHAPMAN PETERSEN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General, | |
| *Defendants*. | |

<u>**MOTION FOR LEAVE TO FILE SECOND AMENDED**</u>
<u>**COMPLAINT AND ADD PARTY PLAINTIFFS**</u>

Pursuant to Fed. R. Civ. P. 15(a)(2) and Local Rule 7—and for the reasons explained in the

accompanying brief in support—Plaintiffs, by counsel, hereby move this Court to grant Plaintiffs

leave to file a Second Amended Complaint which includes the addition of two individual plaintiffs.

That proposed Second Amended Complaint is appended as Exhibit A to this motion, and Plaintiffs

are prepared to file it promptly if this motion is granted.[1]

Date: October 1, 2025                         Respectfully submitted,

                                              /s/ Shanna Ports
                                              Shanna Ports (VSB No. 86094)
Ryan Snow*                                    Danielle Lang*
Javon Davis*                                  Brent Ferguson*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS           Simone Leeper*
UNDER LAW                                     Katherine Hamilton*
1500 K Street, NW, Ste. 900                   CAMPAIGN LEGAL CENTER
Washington, DC 20005                          1101 14th Street NW, Suite 400
(202) 662-8600                                Washington, DC 20005
rsnow@lawyerscommittee.org                    Tel: (202) 736-2200
jdavis@lawyerscommittee.org                   Fax: (202) 736-2222

                                              sports@campaignlegalcenter.org
Orion Danjuma*                                dlang@campaignlegalcenter.org
John Paredes*                                 bferguson@campaignlegalcenter.org
THE PROTECT DEMOCRACY PROJECT, INC.           sleeper@campaignlegalcenter.org
82 Nassau Street, # 601                       khamilton@campaignlegalcenter.org
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org            John Powers*
john.paredes@protectdemocracy.org             Hani Mirza*
                                              ADVANCEMENT PROJECT
                                              1220 L Street Northwest, Suite 850
Benjamin L. Berwick*                          Washington, D.C. 20005
Anna Dorman*                                  (202) 728-9557
The Protect Democracy Project, Inc.           jpowers@advancementproject.org
15 Main Street, Suite 312                     hmirza@advancementproject.org
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org
anna.dorman@protectdemocracy.org

---

[1] Plaintiffs requested Defendants' position on this Motion just before 4:00 pm on September 30 and requested a response by 12:00 pm on October 1. Defendants' counsel responded: "Defendants are willing to consider your Motion for Leave to File Second Amended Complaint and Join Additional Party Plaintiffs. But Defendants cannot give their consent on such a short timeline and without a copy of the Proposed Second Amended Complaint. Please send a redlined copy of the Proposed Second Amended Complaint, and we will provide our position once we have had an opportunity to review it." Plaintiffs have provided Defendants with a redlined copy of the Proposed Second Amended Complaint and, after Defendants share their position, will file a subsequent notice either setting the motion for hearing or submitting the motion without a hearing.

*Attorneys for Plaintiffs Virginia Coalition for Immigrant Rights, the League of Women Voters of Virginia, African Communities Together, Rina Shaw, and Genet Shiferaw*

\*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I certify that on October 1, 2025, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will provide electronic copies to any counsel of record.


/s/ Shanna Ports
Shanna Ports

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; AFRICAN COMMUNITIES TOGETHER, <br><br> *Plaintiffs*, <br><br> v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; CHRISOPHER P. STOLLE and J. CHAPMAN PETERSEN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General, <br><br> *Defendants*. | Case No. 1:24-cv-01778 <br> Judge Patricia Tolliver Giles |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**LEAVE TO FILE SECOND AMENDED COMPLAINT AND**
**ADD PARTY PLAINTIFFS**

Pursuant to Local Rule 7, Plaintiffs respectfully submit this brief in support of their Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs. The proposed Second Amended Complaint, appended as Exhibit A, adds two individual plaintiffs, identifies specific impacted members of plaintiff organizations, and adds factual allegations about those individuals and members. Additionally, the Second Amended Complaint includes additional information on

1

organizational plaintiffs' activities since the First Amended Complaint was filed, as well as a summary of the information that Defendants have—and have not—provided since this Court's Order granting expedited discovery on October 21, 2024. ECF No. 72. The proposed Second Amended Complaint does not join additional defendants, add additional claims, or otherwise alter Plaintiffs' allegations about the Purge Program.

Under Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend a complaint] when justice so requires." In applying that rule, the Fourth Circuit has "often described [its] policy as one to 'liberally allow amendment.'" *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). That policy "furthers a wider federal policy of—when possible—resolving cases on the merits, instead of on technicalities." *MedCom Carolinas, Inc.*, 42 F.4th at 197. Accordingly, the Fourth Circuit has identified only three "justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile." *Id.*; *see Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). None apply here.

*First*, Defendants will not be prejudiced. Prejudice is best measured by "the time remaining between the amendment and a resolution of the case on the merits." *United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56, 61-62 (E.D. Va. 2016), *aff'd*, 866 F.3d 199 (4th Cir. 2017). While the 2024 General Election—and the nature of Defendants' last-minute Purge Program—necessitated the resolution of preliminary injunction and expedited discovery motions in October of last year, this case remains in its early stages. Discovery has just begun, and Defendants' Motion to Dismiss has recently been resolved, ECF No. 153. This matter "remains far from mature in terms of resolution." *United States ex rel. Carter*, 315 F.R.D. at 62.

Additionally, the proposed amendments do not impact the factual or legal conclusions of this Court's Opinion denying in part and granting in part Defendants' Motion to Dismiss, and there is no reason they should delay discovery. The primary changes involve adding individual plaintiffs, naming organizational members, and providing information about the same. Those allegations bolster, not undermine, this Court's conclusions, *see generally* ECF No. 153 at 7-15, and Defendants themselves have called for Plaintiffs to name members of organizational plaintiffs at risk of harm under the program. *See, e.g.*, ECF No. 119 at 13:16-24; ECF No. 122 at 12-13; ECF No. 131 at 2-3. The remaining changes provide additional factual information about the Purge Program. In short, Defendants will not be prejudiced by these amendments, and they should not necessitate the resolution of another motion to dismiss or delay discovery, which is in its early stages. The amendments would, however, aid this Court in adjudicating the merits of the case at summary judgment and/or at trial.

*Second*, Plaintiffs have not acted in bad faith. Since the Purge Program was announced, Plaintiffs and their counsel have worked expeditiously to gather facts about the Purge Program and to identify affected individuals. Those efforts have occurred against the backdrop of impacted voters being referred to the Attorney General for prosecution, ECF No. 26-4 at 4, and the risk of "doxxing, harassment, intimidation, or other adverse ramifications" from public disclosure, ECF No. 26-25 (Traore Decl.) ¶ 11; *see* ECF No. 127 at 11-12.

*Third*, amendment will not be futile. The Second Amended Complaint would further strengthen Plaintiffs' ability to demonstrate how the Purge Program operates and the harms that have resulted and continue to result from the Program. Adding individual plaintiffs will also ensure that those individuals can secure relief from the harms they have experienced and continue to face as a result of the program.

**JA220**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion.

Date: October 1, 2025

Respectfully submitted,

Ryan Snow*
Javon Davis*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street, NW, Ste. 900
Washington, DC 20005
(202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

Orion Danjuma*
John Paredes*
THE PROTECT DEMOCRACY PROJECT, INC.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
Anna Dorman*
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org
anna.dorman@protectdemocracy.org

/s/ Shanna Ports
Shanna Ports (VSB No. 86094)
Danielle Lang*
Brent Ferguson*
Simone Leeper*
Katherine Hamilton*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sports@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs Virginia Coalition for Immigrant Rights, the League of Women Voters of Virginia, African Communities Together, Rina Shaw, and Genet Shiferaw*

*Admitted pro hac vice*

4

**JA221**

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2025, I electronically filed the above document with the Clerk

of Court using the CM/ECF system, which will provide electronic copies to any counsel of record.


<u>/s/ Shanna Ports</u>
Shanna Ports

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| Virginia Coalition for Immigrant Rights, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al., | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 1:24-cv-01778

<u>**NOTICE REGARDING DEFENDANTS' POSITION**</u>

      Pursuant to the Court's Order (ECF No. 174), Defendants submit this notice to inform the Court that Defendants do not consent to Plaintiffs' Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs ("Motion"). As instructed by the Court, Defendants will file their response to the Motion by 5:00 p.m. on October 10, 2025.

Dated: October 8, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:    */s/ Thomas J. Sanford*
      Thomas J. Sanford (VSB #95965)
       *Deputy Attorney General*

1

**JA223**

Charles J. Cooper *(Pro Hac Vice)*

Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
  *Attorney General*
Kevin M. Gallagher (VSB #87548)
  *Solicitor General*
Thomas J. Sanford (VSB #95965)
  *Deputy Attorney General*
Graham K. Bryant (VSB #90592)
  *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us
TSanford@oag.state.va.us

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on October 8, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

   */s/ Thomas J. Sanford*
Thomas J. Sanford (VSB #95965)
  *Deputy Attorney General*

2

**JA224**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-01778 (PTG/WBP) |
| SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is Plaintiffs' Motion for leave to File Second Amended Complaint and Add Party Plaintiffs. ("Motion"; ECF No. 172.) For the reasons stated on the record at the hearing on October 17, 2025, which is available on the Court's recording system, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that Plaintiffs are granted leave to file an amended complaint as a new docket entry on or before October 24, 2025.

Entered this 17th day of October 2025.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia

**JA225**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| VIRGINIA COALITION FOR IMMIGRANT RIGHTS; LEAGUE OF WOMEN VOTERS OF VIRGINIA; AFRICAN COMMUNITIES TOGETHER; RINA SHAW; GENET SHIFERAW, <br><br>     *Plaintiffs*, <br><br>       v. <br><br> SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections; JOHN O'BANNON, in his official capacity as Chairman of the State Board of Elections; ROSALYN R. DANCE, in her official capacity as Vice-Chairman of the State Board of Elections; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections; CHRISTOPHER P. STOLLE and J. CHAPMAN PETERSEN, in their official capacities as members of the State Board of Elections; and JASON MIYARES, in his official capacity as Virginia Attorney General, <br><br>     *Defendants*. | Case No. 1:24-cv-01778 <br> Judge Patricia Tolliver Giles |

<u>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**</u>

Plaintiffs Virginia Coalition for Immigrant Rights ("VACIR"), League of Women Voters of Virginia ("LWVVA" or "the League"), African Communities Together ("ACT"), Rina Shaw, and Genet Shiferaw bring this action against Susan Beals, in her official capacity as Virginia Commissioner of Elections; the Virginia State Board of Elections Members, in their official

1

capacities; and Jason Miyares, in his official capacity as Virginia Attorney General, and allege the following:

## INTRODUCTION

1.      The right to vote is fundamental and foundational to American democracy. Every American citizen has the right to vote, regardless of where they were born. This action challenges a voter purge effort (the "Purge Program") that patently violates Congress's framework for protecting these fundamental rights through the National Voter Registration Act ("NVRA"). Exactly 90 days before General Election Day 2024, Defendants announced the latest version of an effort to implement an ongoing program to systematically remove certain voters from the rolls. But federal law mandates that no such voter cancelation or list maintenance programs be conducted during the 90-day "quiet period" before an election. Congress prohibited such programs from occurring during this period to protect voter registration lists from the inevitable chaos of potentially inaccurate removals. Nevertheless, Defendants brazenly intensified their removal program the very day the quiet period commenced. Even the best designed list maintenance system undertaken with the best of intentions would be barred by federal law when so dangerously close to an election. That is reason alone to permanently enjoin the continued operation of Defendants' Purge Program within 90 days of any federal election.

2.      Moreover, Defendants' Purge Program is far from such a well-designed, well-intended list maintenance effort. It is an illegal, discriminatory, and error-ridden program that has directed the cancelation of voter registrations of naturalized and U.S.-born citizens. In a purported effort to flag potential noncitizens, Defendants' Purge Program relies on out-of-date information provided to the Department of Motor Vehicles, and perhaps other sources, _stretching back twenty years_. The State knows or should know that countless individuals who obtained driver's licenses

while legal permanent residents have become naturalized citizens, many even registering to vote during naturalization ceremonies. But Defendants make no effort to conduct any individualized analysis. Instead, they have classified persons who have at some point indicated they were noncitizens as presumptively ineligible to vote unless they receive and respond to a State missive within fourteen days and provide *more* evidence of their citizenship. This violates the NVRA in various ways, including the requirement that list maintenance programs be uniform and nondiscriminatory. Finally, Defendants have conducted their Purge Program under a shroud of secrecy and obfuscation, refusing to provide information or documentation about their system as it has unfolded. The NVRA mandates that states must be transparent about their voter removal programs, even when undertaken outside of the quiet period, far more so when conducted on the eve of a major election.

3.      On August 7, 2024, only 90 days before the upcoming November 5 general election and 45 days before the start of early in-person voting, Virginia Governor Glenn Youngkin issued Executive Order 35 ("E.O. 35"), which provided instructions for the Purge Program of alleged noncitizens, relying on Va. Code § 24.2-427.[1] The Purge Program requires the Commissioner of the Department of Elections ("ELECT") to certify to the governor that there are procedures in place to make daily updates to the statewide voter registration list and "[r]emove individuals who are unable to verify that they are [U.S.] citizens to the Department of Motor Vehicles[.]" ECF No. 26-4 at 4-5; *see also* Va. Code § 24.2-427(B)-(C).

---

[1] The "Purge Program" as used herein refers to E.O. 35, Va. Code § 24.2-427, and actions taken to further Defendants' voter purge effort.

      Although E.O. 35 claims to order the implementation of Va. Code § 24.2-429, the process described in E.O. 35 more closely aligns with Va. Code § 24.2-427. *See* ECF No. 26-4 at 5. Plaintiffs therefore presume E.O. 35 intended to cite Va. Code § 24.2-427, but, either way, the Purge Program violates the National Voter Registration Act for the reasons stated herein.

3

**JA228**

4.      The Purge Program demands the expedition of interagency data sharing between the Department of Motor Vehicles ("DMV") and ELECT via a daily file of all alleged "non-citizens transactions, including addresses and document numbers." ECF No. 26-4 at 5. ELECT is then required to make daily updates to the voter rolls by comparing "the list of individuals who have been identified as non-citizens to the list of existing registered voters[.]" ECF No. 26-4 at 4-5. Once ELECT has identified these alleged noncitizens, ELECT sends the data to county registrars and directs them to "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days" of sending the notice, and ultimately cancel the voter's registration if the registrar's office does not receive this affirmation. *Id.*; *see also* Va. Code § 24-2.427(B)-(C).

5.      The Purge Program also directs counties to refer voters removed for alleged noncitizenship to Commonwealth Attorneys for criminal investigation and potential prosecution. ECF No. 26-4 at 5. Some counties have also elected to refer those voters to Defendant Attorney General Miyares.

6.      The Purge Program by design and in implementation threatens the voting rights of eligible Virginia voters who are naturalized citizens. The Purge Program, ordered by Governor Youngkin and implemented by Defendants, affirmatively directs state agencies to identify and purge voters on a systematic and ongoing basis—including during the immediate lead up to the 2024 General Election and future federal elections—in direct violation of the 90-day quiet period mandated by the NVRA. 52 U.S.C. § 20507(c)(2)(A).

7.      Despite Plaintiffs' multiple requests, including through a letter from VACIR sent August 20, 2024, and a letter sent from VACIR and LWVVA on October 3, and in violation of the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i), Defendant Beals has provided little information related to the Purge Program. Only through an

4

**JA229**

opposed expedited discovery motion and order, as well as a post-election response to VACIR's FOIA request did Defendant Beals provide the identities of the persons subject thereto. Although Plaintiffs still await the production of additional records they are entitled to under 52 U.S.C. § 20507(i)(1), what is already clear from Plaintiffs' and journalists' investigations and the clear directives in E.O. 35 is that the Purge Program relies on erroneous data—from the DMV and perhaps other sources—that includes both naturalized and U.S.-born U.S. citizens, was ongoing during the 90-day quiet period, and will continue removing eligible voters inside and outside the quiet period in the future.[2]

8.    The Purge Program systematically removes Virginians from the voter rolls solely on the fact that they were at one point identified as a potential noncitizens—according to databases from the DMV or other sources—even if they have since become naturalized citizens and lawfully registered to vote or even if they are U.S.-born citizens who were mistakenly identified as noncitizens.

9.    Governor Youngkin's ordered Purge Program, by design, identifies and classifies based on national origin without considering naturalized citizenship status. It then relies on that classification to mark individuals for removal from the voter rolls. The data and methodology that

---

[2] *See, e.g.*, Elizabeth Beyer et al., *Meet some Virginians who almost lost their right to vote after being declared 'noncitizens'*, Cardinal News (Oct. 25, 2024), https://perma.cc/28UY-JAXK; Jude Joffe-Block, *U.S. citizens are among the voters removed in Virginia's controversial purge*, National Public Radio (Oct. 30, 2024), https://perma.cc/EPU9-8ALW; Dave Ress, *'A Surprise to me' Virginia voter roll purge cuts nearly 300 in Richmond region*, Richmond Times-Dispatch (Nov. 1, 2024), https://perma.cc/UJV2-J78G; Jackie Benson, *'Why would they do that?' Decades-long resident learns he was purged from Virginia voter rolls*, NBC4 (Oct. 31, 2024), https://www.nbcwashington.com/news/local/why-would-they-do-that-decades-long-resident-purged-from-virginia-voter-rolls/3755997/; Evan Goodenow, *Virginia voter roll purge includes Loudoun residents who say they're eligible*, Loudon Times-Mirror (Oct. 31, 2024), https://perma.cc/2BKZ-YGEX; Rene Marsh, *US citizens caught in Virginia's voter purge aimed at noncitizens speak out*, CNN (Nov. 2, 2024), https://www.cnn.com/2024/11/02/politics/us-citizens-caught-in-virginias-voter-purge/index.html.

5

form the basis of the Purge Program discriminate based on national origin. Many naturalized citizens have had interactions with the DMV prior to becoming a citizen. That is because all naturalized citizens were once legal permanent residents, and legal permanent residents are permitted to obtain driver's licenses and other forms of state identification, which can remain valid for up to eight years.

10.     E.O. 35 claimed that Virginia has made "unprecedented strides in improving . . . protection against non-citizen registration," ECF No. 26-4 at 2, but evidence overwhelmingly shows that noncitizen registration and voting is vanishingly rare in Virginia and across the United States, and voter purges aimed at *alleged* noncitizens primarily prevent *eligible* naturalized citizens from casting ballots.

11.     In its implementation, the Purge Program arbitrarily sweeps in both naturalized citizens and U.S.-born citizens not targeted by the program. While U.S.-born citizens would only be marked as noncitizens in DMV data due to user error in mistakenly checking the wrong box or leaving a box unchecked during electronic transactions with the DMV, the Purge Program has also erroneously removed from the voter rolls at least some eligible voters who are U.S.-born citizens.

12.     Plaintiffs include nonprofit organizations whose missions are to help eligible Virginians register and vote and to provide services to Virginia's immigrant communities, including by providing education and assistance to Virginia's naturalized citizens in voter registration and voting. The organizations' members include naturalized and U.S.-born eligible U.S. citizens whose registrations are at risk under the Purge Program. Plaintiffs also include U.S. citizens who were erroneously purged by Defendants' Purge Program.

13.     The Purge Program, including E.O. 35 and Va. Code § 24.2-427(C), harm Plaintiffs VACIR, LWVVA, and ACT directly because, instead of registering additional new voters and

providing programs for Virginia's immigrant community, they have and will continue to spend time and money (1) identifying new citizens, including those who have been targeted for removal or purged; (2) educating the public, in particular new citizens, on how to respond to being targeted for removal and ensuring that they remain registered or, if they were purged, how to reregister; (3) assisting new citizens who have been targeted for removal with defending their registrations and right to vote; (4) ensuring that any voters who are affected by the Purge Program who are required to vote using a provisional ballot have their votes counted. It further harms Plaintiffs because they have members who are naturalized citizens. The Purge Program harms Plaintiffs Shiferaw and Shaw by improperly removing them from the voter rolls and putting their right to vote in future elections at risk.

14.     The Purge Program violates the NVRA because it constitutes systematic voter list maintenance within 90 days preceding a federal election, and discriminatorily identifies naturalized citizens for removal and is not being carried out uniformly. *See* 52 U.S.C. § 20507(b)(1), (c)(2)(A). Defendant Beals has further violated the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i), by refusing to provide Plaintiffs with the list of voters identified as potential noncitizens within a reasonable amount of time despite having had those records in her office's possession and continuing to withhold relevant information about the Purge Program. Plaintiffs therefore respectfully request that the Court declare the Purge Program unlawful, enjoin Defendants from implementing the Purge Program, restore all unlawfully removed voters to the rolls and provide public and individualized notice thereof, produce the requisite records under the Public Disclosure of Voter Registration Activities provision of the NVRA, and afford Plaintiffs all other just and proper relief.

## JURISDICTION AND VENUE

15.    This action is brought pursuant to 52 U.S.C. § 20510(b), which provides that "[a] person who is aggrieved by a violation of [the NVRA] . . . may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."

16.    This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1357 because the claims in the action arise under the laws of the United States, as well as under 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction to grant declaratory and injunctive relief and all other forms of relief available under federal law, including 28 U.S.C. §§ 2201 and 2202.

17.    This Court has personal jurisdiction over the Defendants, who are all elected or appointed officials and citizens of Virginia.

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants engage in their official duties in this District, because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because at least one Defendant resides in this District and all Defendants are Virginia residents.

## PARTIES

**Plaintiffs**

19.    Plaintiff **Virginia Coalition for Immigrant Rights** is a multi-racial and multi-ethnic coalition of member organizations that exists to win dignity, power, and quality of life for all immigrant and refugee communities. VACIR seeks to create a Virginia where immigrant and refugee communities have full access to family, civic, economic, and social life.

20.    VACIR is comprised of 49 standing member organizations, including legal services providers, civil rights groups, and labor unions, each of which themselves work to support the

8

**JA233**

immigrant community in Virginia through a variety of programs, including by assisting with voter registration and education for eligible naturalized citizens.[3] VACIR unifies those organizations and supports them in achieving their shared goals, including by providing mini-grants to members to operate programs directed at assisting with voter registration and education for eligible naturalized citizens.

21.    VACIR's member organizations include among their membership many naturalized citizens who are at risk of being purged by Defendants' Purge Program. K.V. is among those members. Ms. V. serves as the Executive Director of a member organization of VACIR. Ms. V. is a U.S citizen and a resident of Arlington. She was naturalized in September 2022 and registered to vote soon thereafter in time to vote in the 2022 federal election. Prior to naturalization, Ms. V. obtained a driver's license in Virginia. She continues to use that same license. Ms. V. has routinely voted in every federal election since she became a registered voter and she wants to vote in future elections.

---

[3] As of the filing of this Complaint, VACIR standing member organizations are ACLU People Power – Fairfax; ACLU of Virginia; African Communities Together; American Jewish Committee; AYUDA; Bread for the World; Centreville Immigration Forum; Church World Service; Coalition of Asian Pacific Americans of Virginia; Congregation Action Network; Cornerstone; Domestic Workers Alliance; Dream Project; Dreamers Mothers In Action; Edu Futuro; EMGAGE; Fuego Coalition; Hamkae Korean Community Center; Hispanic Organization of Leadership and Action; Jewish Community Relations Council; Just Neighbors; Korean American Association of Northern Virginia; Latina Institute for Reproductive Justice; League of United Latin America Citizens; Legal Aid Justice Center; Multicultural Community Center; Neighbor's Keeper; New Virginia Majority Education Fund; Northern Virginia Affordable Housing Alliance; NoVA Labor; Progress Virginia; Sacred Heart Catholic Community Center; SEIU 512; SEIU 32BJ; Shirlington Employment and Education Center; Sin Barreras; Tenants and Workers United; The Commonwealth Institute for Fiscal Analysis; Unitarian Universalist for Social Justice; United Food and Commercial Workers Local 400; Virginia Civic Engagement Table; Virginia Coalition of Latino Organizations; Virginia Community Health Worker Association; Virginia Immigration Intercollegiate Alliance; Virginia Interfaith Center for Public Policy; Virginia League of Planned Parenthood; Virginia League of Women Voters; Virginia Organizing; Virginia Poverty Law Center; and Voices for Virginia's Children.

22.     The Purge Program has harmed and will continue to harm VACIR and its members in various ways. VACIR has had to divert significant resources away from its activities including removing language barriers to obtain government assistance, oversight of immigration detention facilities, providing support for community oversight to the Temporary Protected Status program, advocacy activities related to expanding state programs affecting immigrant communities including Medicare expansion, and providing support for community mobilization around general voter registration efforts for New Americans. VACIR has instead had to divert those resources toward responding to and attempting to mitigate the effects of E.O. 35 and the Purge Program in erroneously removing eligible voters from the rolls and intimidating eligible naturalized citizens from participating in voter registration and voting. VACIR's response to the Purge Program is ongoing and includes investigating the Purge Program through submitting public records requests and spending thousands of dollars to cover the costs of production, engaging in direct multi-lingual public education and outreach to naturalized citizen voters about checking and maintaining their voter registration and re-registering if they have been removed through the Purge Program, and supporting its members to adjust and redirect general community voter registration and outreach programs toward specifically responding to E.O. 35 and the Purge Program, including through educating, identifying and assisting naturalized citizen voters with checking their voter registration status and how to re-register if they have been removed. VACIR has continued to conduct outreach to purged voters and its member organizations that serve populations that include purged voters or those in danger of being purged by Defendants' Program. Outreach to purged voters includes informing such voters about what happened to them, the current public understanding of the Purge Program, how their ability to vote may be affected in the future, and steps they can take to check their status and remain registered.

23.     A number of VACIR's member organizations are membership organizations themselves whose members include substantial numbers of naturalized citizens, including EMGAGE, African Communities Together, SEIU 32BJ, Hamkae Center, Latina Institute for Reproductive Justice-Virginia, Domestic Workers Alliance, NoVA Labor, and Tenants and Workers United. These organizations' naturalized citizen members are at particular risk of being purged because they may have previously self-identified as noncitizens with the Virginia DMV while applying for a driver's license and then later registered to vote through another means after obtaining their citizenship. As a direct result of E.O. 35 and the Purge Program, these members must now constantly re-check their registration status, may be forced to provide additional documentation to vote, may be intimidated from registering to vote or voting due to the Purge Program and the explicit public threat of investigation or prosecution in E.O. 35, and face other burdens due to the Purge Program.

24.     A number of VACIR's member organizations have also been directly harmed by being forced to divert resources away from core activities including providing direct support and assistance to community members through a variety of programs and toward responding to and attempting to mitigate the effects of E.O. 35 and the Purge Program in erroneously removing eligible voters from the rolls and intimidating eligible naturalized citizens from participating in voter registration and voting.

25.     Plaintiff **League of Women Voters of Virginia**, formed under Section 501(c)(3) of the Internal Revenue Code, is a nonpartisan, nonprofit, membership organization that seeks to encourage informed and active participation in government, work to increase understanding of major public policy issues, and influence public policy through education and advocacy. LWVVA is a state League of the national League of Women Voters, which was founded in 1920 as an

11

**JA236**

outgrowth of the struggle to win voting rights for women, has more than a million members and supporters, and is organized in more than 750 communities in all 50 states and the District of Columbia. LWVVA has approximately 2,000 members across the state of Virginia. Some of LWVVA's members are naturalized citizens. A.S. is one such member. Mrs. S. is a naturalized member of the League and is a resident of Fairfax County. Mrs. S. voted in the 2024 election and plans to vote in the future.

26.     LWVVA is comprised of dues-paying members who volunteer in Virginia communities to provide voter services. LWVVA has no paid employees or staff involved with the operation of the League. Through its volunteer leaders, LWVVA provides regular training to its members and to its nonpartisan partners to assist Virginians, including those who are naturalized citizens, in getting registered, voting, and confirming their registration status. LWVVA has also arranged required Virginia training for third party voter registration for its members and nonpartisan partner organizations. LWVVA does this work as a part of its mission to protect the right to vote for Virginia voters and considers its work registering voters, encouraging them to vote, and confirming their registration to be an expression of those core values. LWVVA uses voter registration assistance as a part of a larger dialogue about a citizen's voter registration, voting plan, and the importance of voter turnout: the goal is to ensure all eligible Virginia voters are registered to vote, have a plan to vote, and can and do actually vote.

27.     The Purge Program has harmed and will continue to harm the League and its members in various ways. First, the League has diverted and will continue to divert resources to counteract the harms created by the Purge Program. At the most consequential period of time for the League's core mission activities, the League first had to use its resources to rapidly understand the impact of E.O. 35 and its effect on Virginia voters. When the League learned of the Purge

Program's identification of eligible Virginian voters for removal, the League had to expend its resources to counteract the immediate confusion and misinformation created by the Purge Program. The broadest way of doing so without amplifying false claims of noncitizen voting was to expand announcements for all Virginians to check their registration, even those who have no changes in their voter profile. The Purge Program has forced the League to both broaden these "check your registration" efforts beyond its previously targeted audience and to expand its focus on naturalized citizens. For instance, the League has already spent at least $600 to create, translate into multiple languages, and distribute a public service announcement (PSA) throughout the state reminding voters of their right to vote and instructing them to check that their registration is valid before Election Day. The League created and distributed the PSA in direct response to the Purge Program, to ensure that all Virginia voters—including voters that the League has registered and voters who are League members—are registered and are able to vote on Election Day, in furtherance of the League's goals of registering eligible voters and ensuring all eligible voters can vote. In direct response to the Purge Program, the League also increased its budget for digital media impressions on mobile devices by $2,000. These PSAs were necessary because the Purge Program has deregistered thousands of Virginians, including Virginians eligible to vote, and has unquestionably intimidated many more naturalized Virginians who are now less likely to vote for fear of criminal investigation and prosecution. Following expedited discovery and FOIA responses from localities, the League sent approximately 7,000 postcards to registrants identified by the Commonwealth as being purged on the basis of noncitizenship, incurring over $4,000 in costs. The Purge Program has decreased and will continue to decrease the number of registered Virginia voters and decrease voter turnout, directly harming the League's mission of increasing the number

13

**JA238**

of registered voters and increasing voter turnout. The PSA was necessary to ameliorate those harms.

28.    Separately, the League has devoted and will continue to devote resources and members' time to counteract the effects of the Purge Program, such as by helping members and registered voters determine whether they remain eligible and by helping voters who are purged restore their eligibility. This includes direct outreach and public outreach to voters removed on the basis of alleged noncitizenship and naturalized citizens through media, such as the League President's September 2024 interview at Spanish speaking radio station WRKE 100.3 LP-FM. These efforts continue for future state and federal elections. The League has continued to conduct outreach to purged voters, informing such voters about what happened to them, the current public understanding of the Purge Program, how their ability to vote may be affected in the future, and steps they can take to check their status and remain registered. The League has dedicated and continues to dedicate its member resources to attending monthly county Electoral Board meetings across the Commonwealth to understand effects of the Purge Program in each locality, as well as to piece together how the Program works in order to then accurately educate and communicate with members, voters, and the public. And in the League's communications in the Commonwealth, the League must now consistently remind people to check their registration and answer subsequent questions about the problems created by the Purge Program. These communications are further complicated by the Purge Program, because the League must navigate talking about naturalized citizen disenfranchisement without frightening eligible voters into not voting.

29.    The League is further burdened by diverting its coordination resources with other non-profits towards understanding and addressing the effects of the Purge Program rather than coordinating on voter assistance programs. Absent such diversion, the League would spend its

money and member time on getting out the vote for general elections and planning its advocacy activities. It would also hold more voter registration drives.

30.     Aside from resource diversion, the Purge Program directly harms the League's mission. When voters are unlawfully purged, it decreases the number of voters in Virginia, contrary to the League's mission of increasing the number of registered voters and voter turnout. When voters are intimidated or must take additional steps to remain registered, it harms the League's mission of ensuring that voting is easy and open for all eligible Virginians.

31.     The Purge Program also harms the League's members. The League's membership includes naturalized citizens, and those members are at particular risk of being purged because they may have previously self-identified as noncitizens with the Virginia DMV. Those members must constantly re-check their registration status, may need to provide additional documentation to vote, are intimidated by the Purge Program and the threat of investigation or prosecution, and face other burdens due to the Purge Program.

32.     Further, Defendant Beals's refusal to release information about the Purge Program harms LWVVA's mission. LWVVA continues to be denied information essential to understanding and educating the public about the Purge Program and to properly assisting impacted voters. This lack of information is undermining the League's goal to ensure all eligible Virginia voters are registered to, can, and do vote.

33.     Plaintiff **African Communities Together** is a nonpartisan, nonprofit membership organization of African immigrants fighting for civil rights, opportunity, and a better life for African immigrants and their families. Founded in 2013, ACT empowers African immigrants to integrate socially, advance economically, and engage civically.  ACT assists African immigrants in obtaining critical services, provides resources and infrastructure for community and leadership

15

**JA240**

development, and supports community members to engage in civic life, including through education and assistance with voter registration and voting. ACT provides multilingual assistance to African immigrants related to immigration, jobs, civic participation, and other needs.

34.     ACT has approximately 12,460 members nationally, with approximately 1,079 residing in Virginia. Many of ACT's members are naturalized citizens. ACT's members pay voluntary membership dues. They participate in monthly membership meetings, leadership trainings, issue-specific campaign committees, and civic engagement. They also engage in public advocacy through collective actions and personal storytelling, volunteer work through community-focused programs, and many attend a national membership convention.

35.     ACT operates a robust voter engagement program in Virginia. The 2024 program targeted 85,000 registered voters in African immigrant communities, and consisted of six full-time paid staff, including a lead organizer, three field organizers, and two phone-bank leads, as well as ACT members who contribute on a volunteer basis. The 2025 program targets 30,000 registered voters in African immigrant communities and enlists over 300 volunteers in direct voter contact. ACT's voter engagement program provides multilingual education and assistance with all aspects of voting and encourages voters to participate through outreach and engagement about the important role voting plays in shaping the opportunities and issues facing African immigrant communities.

36.     The Purge Program operated by Defendants has harmed and will continue to harm ACT and its members in various ways. ACT has had and continues to divert its staff and resources from other core activities toward attempting to mitigate the harms to its members and to Virginia's African immigrant community caused by E.O. 35 and the Purge Program. This has required redirecting its voter engagement program by developing and producing new public education

materials, revising the resources and scripts used by canvassers and phone bankers, conducting direct outreach to ACT members identified on the removal lists obtained through expedited discovery and information requests, re-training paid staff and volunteers in order to support voters who may have been sent a removal notice or removed from the rolls by educating and assisting them in maintaining their voter registration and re-registering if necessary, as well as reassuring voters about their eligibility and mitigating any intimidating effect related to the threat of referral to law enforcement and criminal investigation and prosecution as laid out in E.O. 35. Efforts to educate, identify, and assist ACT members and the public removed or at risk of removal continue after the 2024 election and in anticipation of upcoming elections. Many ACT members who are naturalized citizens may have been sent a removal notice, removed from the rolls, or are at heightened risk of imminent removal due to having obtained a driver's license prior to becoming a citizen and having yet to update their DMV records.

37.     Plaintiff **Rina Mary Shaw** is a U.S.-born citizen and resident of Chesterfield, Virginia. Ms. Shaw was born and raised in Virginia and has been a resident in Virginia her entire life.

38.     Ms. Shaw registered to vote in 2020. She was a registered voter in September of 2024, planning to vote in the 2024 federal election, when she received a notice in the mail from Missy Vera, the General Registrar for Chesterfield County informing her of Chesterfield County's intention to remove her from the rolls because she was purportedly (and inaccurately) deemed to be a noncitizen. While Ms. Shaw returned an affirmation of citizenship to the Chesterfield Registrar within two weeks of receiving the notice, she was removed from the voter registration list anyway. She learned she had been purged from the voter rolls after a reporter from National Public Radio called her and informed her of her status. After calling the Chesterfield Registrar's

office and affirming, once again, that she is a U.S. citizen, Ms. Shaw was placed back on the rolls. After her removal and ensuing confusion, Ms. Shaw ultimately was able to cast her ballot. Ms. Shaw remains confused, anxious, and fearful that she will be purged from the voter rolls again before the next election and is concerned about whether she will be permitted to vote in the future.

39.     Plaintiff **Genet Shiferaw** is a U.S. citizen and a resident of Woodbridge, Prince William County, Virginia. Plaintiff Shiferaw was born in Ethiopia, sought asylum in the U.S. due to the political violence occurring in her country of birth in approximately 2006 and became a U.S. citizen in approximately 2012. Prior to naturalization, Ms. Shiferaw self-identified as a noncitizen when she obtained a Virginia resident identification card.

40.     Plaintiff Shiferaw registered to vote during her naturalization ceremony in Fairfax County, Virginia, where LWVVA regularly engages in voter registration drives, ECF No. 26-24 at 5, and voted for the first time in the 2012 presidential election. She planned and prepared to vote in the 2024 election. On Election Day, Ms. Shiferaw was informed she was not a registered voter and would have to use same-day registration to cast a provisional ballot. Ms. Shiferaw used same-day registration and submitted a provisional ballot on Election Day.

41.     Ms. Shiferaw was never notified why she was removed from the rolls and is concerned about whether her vote counted last November. When Ms. Shiferaw checked her voter registration status on the Virginia Department of Elections website in March 2025, there was no record that she was a registered voter or that she had voted in the November 2024 election. She called the office of the General Registrar and Director of Elections for Fairfax County and was told that she was a registered voter and that her vote was counted in the prior election, but the person on the phone directed her to the FOIA officer when she inquired if they could send her a record that her November 2024 ballot was counted. Ms. Shiferaw has since received her voter

registration card. Ms. Shiferaw is confused, worried, and fearful about whether her voter registration will be cancelled and whether she will be permitted to vote in the future. Ms. Shiferaw does not want to be put in the same position when she votes in the next federal election, uncertain of whether she was able to exercise her right to vote and whether her vote counted. She now faces additional burdens by being forced to re-check her registration status and is concerned about having to submit additional documentation. Faced with the public threat of investigation or improper prosecution by the Attorney General, Ms. Shiferaw is fearful about what might happen if she attempts to exercise her right to vote in the future.

**Defendants**

42.     Defendant **Susan Beals** is the Virginia Commissioner of Elections. The Commissioner of Elections is the "principal administrative officer" of the Department of Elections, Va. Code § 24.2-102(B), and "the chief state election officer responsible for the coordination of state responsibilities under the National Voter Registration Act," *id*. § 24.2-404.1. Defendant Beals is also responsible for ensuring the implementation of the Purge Program by "certify[ing] in writing to the Governor" that the Purge Program's requirements are being met. ECF No. 26-4 at 4. As the head of the Department of Elections, she is also responsible for generating the Purge Program's daily list of voters alleged to be noncitizens. *Id.* at 4. Defendant Beals is sued in her official capacity.

43.     Defendant **John O'Bannon** is the Chairman of the State Board of Elections ("the Board"); **Rosalyn R. Dance** is the Vice-Chairman of the Board; **Georgia Alvis-Long** is the Secretary of the Board; and **Donald W. Merricks** and **Matthew Weinstein** are members of the Board (collectively "State Board of Election Members"). They are all sued in their official capacities. "The State Board, through the Department of Elections, shall supervise and coordinate

the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections." Va. Code § 24.2-103(A). It is the duty of the Board to "make rules and regulations and issue instructions and provide information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." *Id.*

44.     Defendant **Jason Miyares** is the Attorney General of Virginia. Under Virginia law, the Attorney General has "full authority to do whatever is necessary or appropriate to enforce the election laws or prosecute violations thereof." Va. Code § 24.2-104(A); ECF No. 26-4 at 5. Defendant Miyares endorsed the Purge Program, claiming credit for E.O. 35's original announced purge of 6,303 alleged noncitizens from the voter rolls.[4] Registrars and County Electoral Boards have since referred to Defendant Miyares for criminal investigation and possible criminal prosecution of additional individuals whose voter registration was cancelled because of the Purge Program. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### I.     The Purge Program and Governor Youngkin's Announcement of E.O. 35

45.     Governor Youngkin announced E.O. 35 on August 7, 2024—exactly 90 days before the 2024 General Election on November 5 and 45 days before the start of early in-person voting. ECF No. 26-4. With this timing, every subsequent voter removal until Election Day was necessarily within the NVRA's quiet period. The same will be true during every 90-day period before subsequent federal elections.

---

[4] Jason Miyares (@JasonMiyaresVA), X (Aug. 7, 2024, 1:57 PM), https://perma.cc/6JGJ-KLJD ("6,303. That's the number of noncitizens identified and removed from Virginia's voting rolls under our watch. I'm proud of my office's work to help ensure election integrity.").

20

**JA245**

46.     In his August announcement, Governor Youngkin was clear that the Purge Program had already begun, explaining that between January 2022 and July 2024, 6,303 voters were removed from the voter rolls based on DMV data shared with ELECT. ECF No. 26-4 at 3. He also explained that the Program uses a systematic, ongoing process saying, "We verify the legal presence and identity of voters using DMV data and other trusted data sources to **update our voter rolls daily**, not only adding new voters, but **scrubbing the lists** to remove those that should not be on it, like . . . non-citizens that have accidentally or maliciously attempted to register."[5]

47.     The Purge Program is intended to and does operate systematically: it requires "daily updates" to cancel the voter registrations of individuals identified as potential non-U.S. citizens based on faulty and outdated data without a meaningful and individualized inquiry into its accuracy. *See* ECF No. 26-4 at 4-5.

48.     Section 7.3 of the 2021 MOU indicates that a successful "match" between a record in Virginia's voter file and a record in the DMV database requires an exact match of Social Security Number, first name, last name, and date of birth. ECF No. 26-3 at 8. In the event a registrant does not provide a Social Security Number, then DMV matches on first name, last name, and date of birth. *Id*.

49.     ELECT operators are given little, if any, guidance or criteria directing how to determine if a purported "match" between the records in the voter file and DMV database is accurate or false based on other information available to the operator. Voter Registration List Maintenance Department of Motor Vehicles: Full SBE & Non-Citizen Files Section 4.1 merely

---

[5] *Governor Glenn Youngkin Issues Executive Order to Codify Comprehensive Election Security Measures to Protect Legal Voters and Accurate Counts*, Office of the Governor (Aug. 7, 2024), https://perma.cc/DD7M-JGHZ (emphasis added).

states, "[t]he GR reviews the match to determine if the non-citizen and registered voter identified by VERIS is the same person" without any further explanation or elaboration. ECF No. 92-8 at 20.

50.    "In the event a DMV record indicating that an individual is a noncitizen matches to a record in Virginia's voter file, an 'Affirmation of United States Citizenship form' must be sent to a registrant along with a letter entitled 'Notice of Intent to Cancel.' That letter informs the voter that '[w]e have received information that you indicated on a recent DMV application that you are not a citizen of the United States.'" ECF No. 26-2 at 7.

51.    According to Defendants, neither the DMV, ELECT, nor county officials are required to take any action to verify the veracity of the information suggesting an individual flagged through the Purge Program is in fact a noncitizen prior to sending the 14-day notice and initiating the removal process, instead putting the burden entirely on the voter to re-affirm their citizenship or face removal.

52.    Defendants have stated that if the registrant affirmatively responds and mails the local registrar a completed Affirmation of Citizenship form within 14 days, and it is received and processed in time, then the registrant is removed from the list of flagged individuals, which officials describe as the "Declared Non-Citizen Hopper." ECF No. 26-2 at 7.

53.    "With respect to people who do not return the Affirmation of Citizenship form, the Notice of Intent to Cancel provides that '[i]f you do not respond within 14 days, you will be removed from the list of registered voters.'" ECF No. 26-2 at 7.

54.    The Purge Program further requires that registrars "immediately notify the Commonwealth's Attorney for their jurisdiction of this alleged unlawful conduct." ECF No. 26-4 at 5.

## II.     Implementation of the Purge Program

55.     Virginians were removed from the rolls in the 90-day "quiet period" as a result of the Purge Program, and more will be removed in future quiet periods until it is enjoined.

56.     ELECT has confirmed that it and registrars are daily receiving "non-citizen data" from the DMV and daily "[r]emoving individuals who declare or provide documentation indicating non-citizenship status and who do not respond to an affirmation of citizenship notice." ECF No. 23-1 at 2. Indeed, ELECT and the DMV entered a new Memorandum of Understanding on September 3, 2024, ensuring the daily data exchanges will occur. ECF No. 23-2.

57.     Counties are using these daily updates from ELECT to remove Virginians from the voter rolls. For example, Arlington, Fairfax, and Loudoun Counties have all followed ELECT's instructions and cancelled the registrations of voters as a result of the Purge Program. ECF Nos. 23-3, 23-4, 23-5. Loudoun County confirmed eight cancellations in August for alleged noncitizenship, ECF No. 23-6 at 9, and Fairfax confirmed 49 cancellations as a result of the Purge Program, ECF No. 23-5 at 8.

58.     The 49 voter registration cancellations in Fairfax County were all due to a failure of the voter to reply affirming their citizenship within 14 days of the notice being sent. Originally, 66 voters were identified and noticed as alleged noncitizens, but 17 voters responded confirming their citizenship "and re-registered within the 14-day requirement." ECF No. 23-5 at 8. A member of the Fairfax County Electoral Board acknowledged that "his understanding was that many of these individuals are citizens who inadvertently checked the wrong box or did not check any box for the citizenship question on the DMV website" but also noted that registrars are unable to do research into the source of the noncitizen DMV demarcation because "the local election offices

have 'no way of knowing' how the individual answered the DMV citizenship question." ECF No. 23-5 at 8.

59.     Arlington and Loudoun Counties also all referred alleged noncitizen voters to the Commonwealth Attorneys for their jurisdictions for criminal investigation and potential prosecution. ECF Nos. 23-3, 23-5. Arlington County has also referred alleged noncitizens to Defendant Attorney General Miyares for investigation and potential prosecution. ECF No. 23-3.

60.     During a September 30, 2024, Board of Elections hearing, Prince William Registrar Eric Olsen indicated that he has been asking registrants to re-verify that they are U.S. citizens even if they have previously returned an Affirmation of United States Citizenship Form to his office.

61.     At the September 30 meeting, Mr. Olsen said: "[w]e looked at 162 individuals that were listed as noncitizens in the VERIS system. Forty-three of those have voted. We looked at all forty-three of those. Every single one of them had verified their citizenship previously. Some by as many as five times. All had Social Security Numbers. And we had to cancel them because of state protocol, but we also didn't see any issue that they had done anything illegal."[6] ECF No. 26-2 at 10.

62.     According to Defendants, over 1,600 voters were removed on the basis of alleged noncitizenship between August 7, 2024 and October 21, 2024. ECF No. 110-1. Further, between January 2022 and July 2024, Defendants confirmed that they removed over 6,300 registrants on the basis of alleged noncitizenship. ECF No. 26-4 at 3.

63.     Defendants' Purge Program continues unabated as confirmed by county Electoral Board minutes. Every month, county Electoral Boards confirm the continuation of the program

---

[6] Prince William County Office of Elections, *PWC Electoral Board Meeting – September 30, 2024*, YouTube, at 00:29:00 (Sep. 30, 2024), https://www.youtube.com/watch?v=Zr0LSt3xwCk.

through cancelations on the basis of alleged noncitizenship and referrals to Commonwealth Attorneys.[7] Many of these cancellations continue despite piling public evidence and widespread acknowledgment of the error ridden Program. Just in the month of February, the Electoral Boards of Fairfax, Prince William County, and Arlington, spoke of the Program's errors. The Fairfax General Registrar reported that of the 26 cancellations sent by ELECT to Fairfax voters, seven were sent in error and one voter re-registered immediately indicating at least a 30% error rate.[8] Prince William General Registrar noted the cancellation of a U.S. born citizen that had lived in the county for over 14 years and an estimated a 50% Program error rate.[9] Meanwhile, the Arlington Electoral Board noted that when some registrants update their address at the DMV and are subsequently flagged for removal, the county does not receive the update address from the DMV and so the Program then sends the intent to cancel notice to the registrant's old address.[10]

---

[7] *See, e.g.*, Fairfax County Electoral Board Meeting Minutes (Feb. 6, 2025), https://www.fairfaxcounty.gov/elections/sites/elections/files/Assets/Documents/PDF/DRAFTMinutes%20-%20020625(v2).pdf; Loudon County February Electoral Board Meeting (Feb. 6, 2025), https://lfportal.loudoun.gov/LFPortalInternet/Browse.aspx?startid=308878&row=1&dbid=0 (9 reported cancellations); Arlington Elections Office, *Electoral Board Meeting – January 14, 2025*, YouTube, at 00:21:50-00:23:25 (Jan. 14, 2025), https://www.youtube.com/watch?v=XPf14fNfxlE; Prince William County Office of Elections, *PWC Electoral Board Meeting – February 5, 2025*, YouTube, at 1:04:00-1:09:00 (Feb. 5, 2025), https://www.youtube.com/watch?v=AQxAfumKVTQ.

[8] Fairfax County Electoral Board Meeting Minutes (Feb. 6, 2025), https://www.fairfaxcounty.gov/elections/sites/elections/files/Assets/Documents/PDF/DRAFTMinutes%20-%20020625(v2).pdf (In January "ELECT cancelled the registration records for 26 individuals identified as potential non-citizens. Of those 26, one re-registered after the cancellation, and seven were sent in error by ELECT").

[9] Prince William County Office of Elections, *PWC Electoral Board Meeting – February 5, 2025*, YouTube, at 1:04:00-1:09:00 (Feb. 5, 2025), https://www.youtube.com/watch?v=AQxAfumKVTQ.

[10] Arlington Elections Office, *Electoral Board Meeting – January 14, 2025*, YouTube, at 00:21:50-00:23:25 (Jan. 14, 2025), https://www.youtube.com/watch?v=XPf14fNfxlE.

### III.        The Purge Program's Impact on Naturalized Citizens

64.        The Purge Program has resulted and will continue to result in the cancellation of the voter registration of naturalized U.S. citizens. Even though naturalized citizens have the same fundamental right to vote as U.S.-born citizens, the Purge Program systematically jeopardizes the voting rights of naturalized citizen voters. The Purge Program requires naturalized citizens to provide further citizenship verification to stay on the rolls or, if they do not do so within 14 days, confirms their removal and refers them for criminal investigation and prosecution.

65.        Data from U.S. Citizenship and Immigration Services (USCIS) shows that thousands of Virginia residents are naturalized every year. In Fiscal Year 2024, the most recent full year for which state-specific data is available, 24,900 Virginia residents became naturalized citizens.[11] Naturalization applications generally increase in advance of general elections,[12] and, according to USCIS data, there are still an estimated 289,054 lawful permanent residents in Virginia eligible to naturalize.[13]

66.         The Census Bureau has found that roughly 61% of naturalized citizens are registered to vote.[14]

67.        To become a naturalized citizen, a person must first be a lawful permanent resident (often colloquially called a "green card holder") for years. The sole exceptions are for a small number of people who become naturalized citizens due to certain service in the U.S. military or

---

[11] *Naturalization Statistics*, USCIS (Jan. 24, 2025), https://perma.cc/ZB3M-XK7E (last visited Sep. 30, 2025).

[12] Holly Straut-Eppsteiner, Cong. Rsch. Serv., R43366, U.S. Naturalization Policy (2024).

[13] *Eligible to Naturalize Dashboard*, USCIS, https://perma.cc/244E-954Q (last visited Sep. 30, 2025).

[14] *Table 11: Reported Voting and Registration Among Native and Naturalized Citizens, by Race, and Region of Origin: November 2022*, U.S. Census Bureau (Apr. 2023), https://perma.cc/M4LR-2QY7 (last visited Sep. 30, 2025).

26

who were previously noncitizen nationals of the United States because they were born in certain U.S. territories. For that reason, all (or virtually all) naturalized citizens in Virginia lived in the United States for years before they were citizens, as noncitizens and lawful permanent residents.[15]

68.     Virginia drivers' licenses, permits, and special identification cards are available to citizens and noncitizens alike including legal permanent residents, "conditional resident alien[s]," approved applicants for asylum, and entrants into the United States in refugee status. Va. Code § 46.2-328.1(A). Those forms of identification can remain valid during the applicant's authorized stay in the United States, up to the legal limit of eight years. *Id.* at §§ 46.2-328(B); 330(A).

69.     Because a person must ordinarily be a lawful permanent resident for years before becoming a naturalized citizen, and because a lawful permanent resident may obtain a driver's license, permit, or special identification card in Virginia, it is extremely likely that many naturalized citizen residents of Virginia had a noncitizen exchange with the DMV prior to naturalization.

70.     This means that an individual could obtain a driver's license or form of identification as a non-U.S. citizen and subsequently become a U.S. citizen and lawfully register to vote—for example by using a paper voter registration form at their naturalization ceremony—without updating their DMV record to reflect their citizen status. *See* Va. Code §§ 46.2-328.1(A),

---

[15] In addition, some children born outside the U.S. who were legal permanent residents become U.S. citizens by operation of law, in what is called "derived citizenship." These children are not required to go through the naturalization process or obtain any documentation when they become citizens. When they turn 18, they can register to vote if they are otherwise eligible. Individuals with derived citizenship were typically children when at least one parent became a naturalized citizen. *See Policy Manual, Chapter 4 - Automatic Acquisition of Citizenship after Birth (INA 320)*, USCIS, https://perma.cc/BZZ6-M4QW (last visited Sep. 30, 2025). Derived citizens are subject to the same unlawful practices as naturalized citizens under the Purge Program, and the claims regarding the unlawfulness of the Purge Program with respect to naturalized citizens in this lawsuit apply equally to derived citizens—since they, too, were previously legal permanent residents and could have interacted with the DMV before becoming citizens.

330(A). Under these circumstances, the DMV's records would still indicate that an eligible voter was not a U.S. citizen at the time they obtained their identification, thereby improperly and erroneously triggering the removal process.

71.    Some individuals may have interactions with the DMV that do not result in their citizenship information being corrected or updated in the database, which increases the likelihood that the citizenship information contained in the DMV database is outdated for some individuals.

72.    The DMV does not require people to show additional proof of citizenship or lawful residence when they renew their drivers' licenses (so long as they showed such proof since 2004 for legal permanent residents or 2020 for asylees or refugees).[16] Thus citizens who became naturalized *over the last twenty years* would likely not have updated citizenship documents on file with the DMV if they obtained a driver's license before their naturalization. The Purge Program directly threatens the voting rights of these citizens.

73.    Upon information and belief, eligible voters often mistakenly leave a box empty or check the wrong box during electronic transactions with the DMV in a way that indicates they are not a citizen despite having already confirmed their citizenship while registering to vote, thereby improperly and erroneously triggering the removal process. ECF No. 23-5 at 7. This can impact naturalized citizens as well as U.S.-born U.S. citizens.

74.    Further, naturalized citizens in Virginia overwhelmingly come from communities of color that have historically been subject to discrimination in the exercise of their voting rights. For instance, in fiscal year 2022, the top five countries of origin for the 27,324 naturalized Virginia

---

[16] *Virginia's Legal Presence Law*, Virginia Department of Motor Vehicles, available at https://perma.cc/3HXX-8MFP (last visited Oct. 3, 2024).

residents were: India (2,060), Afghanistan (1,803), Pakistan (1,357), Philippines (1,356), and El Salvador (1,685).[17]

75.     In other states, state officials have created similar legally flawed programs in reliance on information provided when an individual obtained a driver's license. In each of those cases, public reporting and lawsuits have uncovered that the programs targeted naturalized citizens.

76.     Registration is the largest obstacle to voting in the United States. H.R. Rep. No. 103-9, at 3 (1993) ("Public opinion polls, along with individual testimony . . . indicate that failure to become registered is the primary reason given by eligible citizens for not voting. It is generally accepted that over 80 percent of those citizens who are registered vote in Presidential elections.").

77.     In passing the NVRA, Congress acknowledged that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

78.     Defendants have not taken effective steps to ensure that individuals flagged by the Purge Program are not in fact U.S. citizens, even though (1) DMV data regarding citizenship is known to be outdated and unreliable as an indicator of current citizenship status, and (2) noncitizen designation or transactions in the DMV data are often the sole criterion to trigger voter registration cancellation. Because the Purge Program by design singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens, the Purge Program discriminates based on national origin and against naturalized citizens.

---

[17] *Profiles on Naturalized Citizens*, U.S. Dep't of Homeland Sec., Office of Homeland Sec. Statistics, https://perma.cc/TH9Q-3S9P.

79.     Beyond its patent violation of the NVRA's quiet period, Virginia's Purge Program subjects naturalized citizens who have previously attested to their U.S. citizenship under penalty of perjury—as all other Virginia voters do—to a duplicative, arbitrary, and discriminatory process to remain registered and vote. Giving voters less than two weeks to complete that process (including the time it takes to receive, complete and mail back the form) exacerbates the burdens imposed by the Purge Program. The deadline increases the likelihood that U.S. citizens are removed from the voter rolls by this process even though they are eligible to vote.

80.     The increased likelihood of purging naturalized citizens combined with the failure of Defendants to verify citizenship before purging voters is confirmed by the numerous public statements made by naturalized citizens in Virginia confirming they received a cancellation notice or were removed from the rolls shortly before the November 2024 election.[18]

## IV.     The Purge Program's Impact on U.S.-Born Citizens

81.     The Purge Program has resulted and will continue to result in the cancellation of the voter registration of U.S.-born citizens,[19] such as Plaintiff Shaw. Individuals interacting with

---

[18] *See, e.g.*, Evan Goodenow, *Virginia voter roll purge includes Loudoun residents who say they're eligible*, Loudon Times-Mirror (Oct. 31, 2024), https://perma.cc/2BKZ-YGEX (Lorie Ann P. Hernandez and Ever A. Umana Monterrosa, both naturalized citizens); Madison Schlegel,  *voter in Hampton's experience to re-register*, 13 News Now (Nov. 1, 2024), https://perma.cc/AD6N-3J6X (Caroline Arthur, naturalized citizen); Rene Marsh and Danya Gainor, *US citizens caught in Virginia's voter purge aimed at noncitizens speak out*, CNN (Nov. 2, 2024), https://perma.cc/2XPU-QVSV (Rachel Xu, Fatima Bashir, Saule Bohoney, and Abdullah Al Mosawa, all naturalized citizens); Jude Joffee-Block, *U.S. citizens are among the voters removed in Virginia's controversial purge*, National Public Radio (Oct. 30, 2024), https://perma.cc/EPU9-8ALW (Carolina Diaz Tavera, naturalized citizen).

[19] *See, e.g.*, Elizabeth Beyer et al., *Meet some Virginians who almost lost their right to vote after being declared 'noncitizens'*, Cardinal News (Oct. 25, 2024), https://perma.cc/28UY-JAXK (Dennis Henson and Lawrence Otey, both U.S.-born citizens); Fox 5 DC Digital Team, *Woman born and raised in Virginia among 1,600 voter registrations canceled: 'I don't understand'*, Fox 5 (Oct, 29, 2024), https://perma.cc/GQ7H-ABMT (Shantae Martin, U.S.-born citizen); Jude Joffee-Block, *U.S. citizens are among the voters removed in Virginia's controversial purge*, National

the DMV through electronic transactions often mistakenly select the wrong box in fields prompting the individual to indicate whether they are a U.S. citizen.

82.     At least some individuals who are U.S. citizens mistakenly check the box indicating they are not a citizen, which would result in the individual being flagged in the DMV's noncitizens transactions list.

83.     Because the Purge Program requires the DMV to transmit the list of noncitizen transactions to ELECT on a daily basis, DMV staff may not be able to identify and correct any user errors by U.S. citizens mistakenly indicating they are not a citizen prior to transmitting the list to ELECT, leading to these citizens being erroneously identified to ELECT as potential noncitizens.

## V.     Plaintiffs' Thwarted Effort to Obtain Information from the State

84.     On August 20, 2024, Plaintiff VACIR sent a letter to Defendant Beals, Defendant Miyares, the DMV, and the Office of the Governor requesting copies of all records relating to the removal from the voter registration rolls of Virginia registered voters on the basis that they have been identified as a potential "non-citizen." ECF No. 23-7. The request was made pursuant to the Public Disclosure of Voter Registration Activities provision of the NVRA, 52 U.S.C. § 20507(i). Defendant Beals made only a limited initial production of responsive records, despite a September 9 meeting with Defendant Beals's staff and numerous emails discussing the specific records responsive to the request.

---

Public Radio (Oct. 30, 2024), https://perma.cc/EPU9-8ALW (Nadra Wilson and Rina Shaw, both U.S.-born citizens); Dave Ress, *'A Surprise to me' Virginia voter roll purge cuts nearly 300 in Richmond region*, Richmond Times-Dispatch (Nov. 1, 2024), https://perma.cc/UJV2-J78G (Eric Terrell,  Christine Rabassa, Rina Shaw, and McKenzie Puffenbarger, all U.S.-born citizens); Rene Marsh and Danya Gainor, *US citizens caught in Virginia's voter purge aimed at noncitizens speak out*, CNN (Nov. 2, 2024), https://perma.cc/E68A-3QMS (Nadra Wilson, U.S.-born citizen).

31

85.    On October 3, 2024, Plaintiffs VACIR and LWVVA sent a letter entitled "Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents" to Defendants Beals and Miyares. ECF No. 23-8. That letter, sent pursuant to the NVRA (52 U.S.C. § 20510(b)(2)), informed Defendants Beals and Miyares that the Purge Program violates the three provisions of the NVRA listed in Counts One through Three, *infra*. The letter also demanded records pursuant to 52 U.S.C. § 20507(i)(1), including, among other things: individualized voter information for voters affected by the Purge Program; instructions provided to Boards of Registrars regarding implementation of E.O. 35; and communications between Defendant Beals and Defendant Miyares regarding the Purge Program. ELECT responded to that letter on October 7, 2024, asserting that its "established voter list maintenance processes comply with all applicable state and federal laws" and that it will provide the list of individuals canceled due to being declared a non-citizen within 90 days from the date of VACIR's August request. ECF No. 23-9 at 2.

86.    Following submission of Plaintiffs' Complaint on October 7, 2024, and Motion for Expedited Discovery on October 8, 2024, Plaintiffs were granted Expedited Discovery on October 21, 2024, which included registration information for voter registration applicants denied registration based on alleged non-citizenship from August 7, 2024, to October 21, 2024. On November 20, ELECT provided a voter file of individuals cancelled on citizenship grounds between January 15, 2022, and August 20, 2024, in response to VACIR's NVRA information request. Defendant Beals continues to withhold several of the records VACIR requested in its August 20 information requestion and is entitled to pursuant to 52 U.S.C. § 20507(i)(1), including: communications between ELECT, county officials, and any third parties concerning the Purge Program, "data collected by the DMV that identifies non-citizens" as described in E.O. 35, records

32

evidencing all aspects of the process by which the DMV uses SAVE, records related to individuals who established their citizenship following receiving a notice, records related to any investigations into noncitizens for registering or voting, among other records. ECF No. 23-7 at 2.

## CLAIMS

### COUNT ONE
**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(c)(2)(A)**
(*Ex parte Young*, 52 U.S.C. § 20510)
All Plaintiffs Against All Defendants

87.    Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

88.    The NVRA requires that Virginia complete "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" "not later than 90 days prior to the date of a[n] . . . election for Federal office." 52 U.S.C. § 20507(c)(2)(A). This provision, called the "90-Day Provision," means that Virginia may not take any steps to implement any program to systematically remove voters within the 90-day period before the date of a general election—the quiet period.

89.    The Purge Program violates the NVRA's 90-Day Provision because it (1) is a program with the purpose of systematically removing voters from the rolls within 90 days of federal elections and (2) was not completed before the 90-day quiet period before the 2024 general election, was not completed before the 90-day quiet period before the 2024 primary elections, and will continue during the quiet periods preceding future federal elections.

90.    The NVRA provides that "[i]f the violation occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action." 52 U.S.C. § 20510(b)(3). By its own terms, the Purge Program is ongoing, with potential purges occurring daily. ECF No. 26-4 at 4-5. The

33

Complaint was filed within 30 days of the November 5, 2024 election for Federal office. Plaintiffs could, therefore, bring a civil action without notice to Virginia's chief election official.[20]

**COUNT TWO**
**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(b)(1)**
(*Ex parte Young*, 52 U.S.C. § 20510)
Plaintiffs VACIR, LWVVA, ACT, and Shiferaw Against All Defendants

91.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

92.     The NVRA requires that voter list maintenance programs be "uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1).

93.     The Purge Program violates the NVRA's requirement that voter list maintenance programs be "uniform" and "nondiscriminatory" because it identifies registered voters based on national origin and type of citizenship status. Because Defendants' Purge Program is triggered by DMV data indicating a voter had previously been identified as a noncitizen, the Purge Program is directed at individuals who were formerly noncitizens. It inevitably and predictably (indeed, by design) identifies and places burdens on citizens born outside the United States whom Defendants know or should know may be naturalized.

94.     The NVRA provides that "[i]f the violation occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action." 52 U.S.C. § 20510(b)(3). By its own terms,

---

[20] Because this amended complaint adds no new Defendants, and Defendants have been on notice of their violations of the NVRA, no additional NVRA notice is required for Plaintiffs to amend their complaint. *See e.g.*, *Delgado v. Galvin*, No. 12-CV-10872, 2014 WL 1004108, at *9 (D. Mass. Mar. 14, 2014) (permitting plaintiffs to amend complaint to "add additional factual allegations to the complaint concerning NVRA violations" without having to provide additional notice.) However, Plaintiffs Shaw and Shiferaw did, through counsel, send a Notice of Violation of National Voter Registration Act and Demand for Remediation and Documents on March 21, 2025.

the Purge Program is ongoing, with potential purges occurring daily. ECF No. 26-4 at 4-5. The Complaint was filed within 30 days of the November 5, 2024 election for federal office. Plaintiffs could, therefore, bring a civil action without notice to Virginia's chief election official.[21]

### COUNT THREE

95.     This Court dismissed Plaintiffs' Count Three in its August 12, 2025 Order on Defendants' Motion to Dismiss. ECF No. 154. Plaintiffs include Count Three here to keep consistent the reference to Plaintiffs' claims across this Court's record.

### COUNT FOUR

**Violation of the National Voter Registration Act, 52 U.S.C. § 20507(i)**
(*Ex parte Young*, 52 U.S.C. § 1983)
Plaintiffs VACIR and LWVVA Against Defendant Beals

96.     Plaintiffs reallege, as though fully set forth in this paragraph, all the allegations of this Complaint.

97.     The Public Disclosure of Voter Registration Activities provision of the NVRA provides that states "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1). The Public Disclosure Provision covers individualized records for registered voters subject to removal programs. *See Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *see also* 52 U.S.C. 20507(i)(2).

---

[21] *See* note 20, *supra*.

98.     Defendant Beals has thus violated the Public Disclosure of Voter Registration Activities provision of the NVRA by refusing to provide Plaintiffs with the list of voters identified as potential noncitizens within a reasonable time period despite having those records in her office's possession at the time Plaintiff VACIR requested these records on August 20 and when Plaintiffs VACIR and LWVVA requested records on October 3, and continuing to withhold additional responsive records in her office's possession.

99.     Defendant Beals's and her office's withholding of records prior to the election and continuing refusal to provide the requested records up to and including the time of filing of this amended complaint is certainly unlawful and the remaining requested records must be produced immediately.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

a.      Declare that Va. Code § 24.2-427(C), E.O. 35, and all aspects of Defendants' Purge Program violate the NVRA;

b.      Declare that Defendant Beals's failure to produce records requested by Plaintiff VACIR on August 20, 2024, and by Plaintiffs VACIR and LWVVA on October 3, 2024, violated the Public Disclosure Provision of the NVRA, and that Defendant Beals's continuing failure to produce remaining responsive records continues to violate the Public Disclosure Provision of the NVRA;

c.      Permanently enjoin Defendants from implementing Va. Code § 24.2-427(C), E.O.35, and all aspects of the Purge Program and from cancelling any voter's registration as part

36

**JA261**

of the Purge Program or on the basis of failing to respond to a notice letter issued as a result of the implementation of the Purge Program;

d.    Order Defendants Beals and State Board of Election Members to instruct all Virginia county registrars to place back on the rolls in active status any persons whose voter registration was cancelled or marked inactive as part of the Purge Program, except for any voter who responded to a notice letter by affirming that they are not a U.S. citizen, and instruct that all impacted voters should be allowed to cast regular ballots if they appear at the polls so long as they are otherwise eligible to do so;

e.    Order Defendants Beals and State Board of Election Members to instruct all Virginia county registrars to send letters to affected voters retracting the notice letters already sent out on the basis of the Purge Program;

f.    Order all Defendants to take all such steps and instruct Virginia county registrars to take all such steps as are necessary to alert the public and all individuals who were sent notice letters as a result of the implementation of the Purge Program that the notice letters sent pursuant to the Purge Program are being rescinded, that all eligible voters whose voter registration was cancelled or marked inactive due to the Purge Program may vote;

g.    Order Defendants Beals and State Board of Election Members to retract all referrals made to Virginia law enforcement for investigation or prosecution of individuals made based on the Purge Program;

h.    Order all Defendants to take all such steps as are necessary and to instruct Virginia county registrars to take all such steps as are necessary to alert the public and all individuals whose voter registration was cancelled or marked inactive due to the Purge Program that no voter will be

criminally investigated or prosecuted on the basis of the Purge Program, absent specific, individualized information that they have violated a law;

       i.      In the alternative, if the relief requested in subsections (c) to (h) above is not granted in its entirety, order all Defendants to cease implementation of the Purge Program within 90 days of any future federal election pursuant to 52 U.S.C. § 20507(c)(2)(A);

       j.      Order all Defendants to provide Plaintiffs with all records concerning the implementation of the Purge Program, including, but not limited to, the lists of the names and addresses and other individualized data available of all persons to whom removal notices were sent between January 15, 2022 and the date that inspection of the records is made, including information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made, records evidencing all aspects of the process by which the DMV uses SAVE, as well as the lists of the names and addresses and all other individualized data available of all persons who have been subject to investigation for alleged violations of law as a result of the Purge Program and all records related to such investigations;

       k.      Award Plaintiffs their costs and reasonable attorneys' fees in this action;

       l.      Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

       m.      Grant Plaintiffs such other relief as this Court may deem just and proper.

Date: October 23, 2025

Respectfully submitted,

/s/ Shanna Ports

Ryan Snow*
Javon Davis*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street, NW, Ste. 900
Washington, DC 20005

Shanna Ports (VSB No. 86094)
Danielle Lang*
Brent Ferguson*
Simone Leeper*
Katherine Hamilton*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400

38

(202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

Orion Danjuma*
John Paredes*
THE PROTECT DEMOCRACY PROJECT, INC.
82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org
anna.dorman@protectdemocracy.org

Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sports@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs Virginia Coalition for
Immigrant Rights, the League of Women Voters
of Virginia, African Communities Together,
Rina Shaw, and Genet Shiferaw*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on October 23, 2025 I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will provide electronic copies to any counsel of record.

/s/ Shanna Ports
Shanna Ports

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **Virginia Coalition for Immigrant Rights, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) ) | **Civil Action No. 1:24-cv-01778** |
| **Susan Beals, in her official capacity as Virginia Commissioner of Elections, et al.,** | ) ) ) | |
| **Defendants.** | | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

Charles J. Cooper *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
    *Attorney General*
Kevin Gallagher (VSB #87548)
    *Solicitor General*
Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*
Graham K. Bryant (VSB #90592)
    *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 3

   I.   Statutory framework and factual background ...................................... 3

   II.  Procedural background .......................................................................... 6

LEGAL STANDARD ........................................................................................... 8

   I.   Plaintiffs' claims are jurisdictionally barred ........................................ 8

       A.  Plaintiffs lack Article III standing to sue for alleged NVRA violations ...................... 8

           1.  Plaintiff Organizations lack standing. ........................................... 9

           2.  The Individual Plaintiffs Lack Standing ...................................... 14

       B.  Any Quiet Period Provision claim is moot ...................................... 15

       C.  Sovereign immunity also bars Plaintiffs' claim under the Quiet Period Provision and all claims against the Attorney General .............. 17

   II.  Plaintiffs' claims are insufficient as a matter of law ........................ 19

       A.  Defendants did not violate the NVRA's Quiet Period Provision ............. 20

           1.  The NVRA does not restrict removing noncitizens and other persons whose registrations were invalid *ab initio* ............ 20

           2.  Defendants' removal of noncitizens was "individualized" and not "systematic" ............................................................. 24

           3.  The Individual Plaintiffs lack a cause of action ......................... 26

       B.  Defendants' process for removing noncitizens is nondiscriminatory ......... 26

       C.  Plaintiffs' claim for information under the NVRA fails ...................... 28

CONCLUSION ................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Cooper,*
   895 F.3d 337 (4th Cir. 2018) ..............................................................18

*Allen v. Wright,*
   468 U.S. 737 (1984)...............................................................11, 16

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983)........................................................................27

*Arcia v. Florida Sec'y of State,*
   772 F.3d 1335 (11th Cir. 2024) ......................................................24

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
   570 U.S. 1 (2013)...................................................................23, 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................8

*Bland v. Roberts,*
   730 F.3d 368 (4th Cir. 2013) ..........................................................17

*Burdick v. Takushi,*
   504 U.S. 428 (1992)........................................................................27

*Children's Healthcare is a Legal Duty, Inc. v. Deters,*
   92 F.3d 1412 (6th Cir. 1996) ..........................................................18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)...................................................................8, 14

*Clapper v. Amnesty International USA,*
   568 U.S. 398 (2013)................................................................14, 15

*Coakley v. Welch,*
   877 F.2d 304 (4th Cir. 1989) ..........................................................18

*Columbia Gas Transmission, LLC v. Ott,*
   984 F. Supp. 2d 508 (E.D. Va. 2013) ...............................................8

*Crawford v. Marion County Election Board,*
   553 U.S. 181 (2008).......................................................................27

*Davis v. FEC,*
   554 U.S. 724 (2008)........................................................................8

*DeBauche v. Trani,*
    191 F.3d 499 (4th Cir. 1999) ................................................................17

*Doyle v. Hogan,*
    1 F.4th 249 (4th Cir. 2021) ............................................................18, 19

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ...........................................................................17

*Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.,*
    28 F.3d 1268 (D.C. Cir. 1994) ............................................................12

*FDA v. Alliance for Hippocratic Med.,*
    602 U.S. 367 (2024) ...........................................................11, 12, 13, 14

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ..........................................................................9, 16

*Goines v. Valley Cmty. Servs. Bd.,*
    822 F.3d 159 (4th Cir. 2016) ...............................................................5

*Greater Birmingham Ministries v. Secretary of State of Ala.,*
    105 F.4th 1324 (11th Cir. 2024) ...........................................3, 20, 29, 30

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) .......................................................................11, 13

*Husted v. A. Phillip Randolph Institute,*
    584 U.S. 756 (2018) .......................................................................25, 27

*Laird v. Tatum,*
    408 U.S. 1 (1972) ...............................................................................15

*Lane v. Holder,*
    703 F.3d 668 (4th Cir. 2012) .............................................................12

*Lewis v. Continental Bank Corp.,*
    494 U.S. 472 (1990) ...........................................................................16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .......................................................................11, 13

*Luna Perez v. Sturgis Pub. Schs.,*
    598 U.S. 142 (2023) ...........................................................................23

*McBurney v. Cuccinelli,*
    616 F.3d 393 (4th Cir. 2010) .............................................................18

*Merrill v. Milligan,*
142 S. Ct. 879 (2022) ......................................................................24

*Mi Familia Vota v. Fontes,*
129 F.4th 691 (9th Cir. 2025) ........................................... *passim*

*Mi Familia Vota v. Fontes,*
152 F.4th 1153 (9th Cir. 2025) ......................................... *passim*

*Moore v. Flagstar Bank,*
6 F. Supp. 2d 496 (E.D. Va. 1997) ...............................................11

*National Inst. of Health v. American Pub. Health Ass'n,*
145 S. Ct. 2658 (2025) ...................................................................24

*Ohio River Valley Environmental Coalition, Inc. v. Timmermeyer,*
66 Fed. Appx. 468 (4th. Cir. 2003) ................................................3

*Outdoor Amusement Bus. Ass'n v. DHS,*
983 F.3d 671 (4th Cir. 2020) ...........................................................9

*Plotkin v. Lehman,*
No. 98–1638, 178 F.3d 1285, 1999 WL 259669 (4th Cir. Apr. 30, 1999) ...............8

*Project Vote/Voting for Am., Inc. v. Long,*
682 F.3d 331 (4th Cir. 2012) .........................................................30

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) ...........................................................................24

*RNC v. North Carolina State Board of Elections,*
120 F.4th 390 (4th Cir. 2024) ..................................................13, 14

*Ross v. Reed,*
719 F.2d 689 (4th Cir. 1983) .........................................................16

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996) .........................................................................17

*Spencer v. Kemna,*
523 U.S. 1 (1998) ...........................................................................17

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) .........................................................................8

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ...................................................................9, 11

*Taubman Realty Grp. v. Mineta*,
   320 F.3d 475 (4th Cir. 2003) ...................................................................8

*Tennessee Conf. of the NAACP v. Lee*,
   105 F.4th 888 (6th Cir. 2024) ...............................................................12

*Tennessee Conf. NAACP v. Lee*,
   139 F.4th 557 (6th Cir. 2025) .................................................................3

*Trump v. Boyle*,
   145 S. Ct. 2653 (2025)...........................................................................24

*United States Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)................................................................................16

*Virginia Coalition for Immigrant Rights v. Beals*,
   2024 WL 4601052 (4th Cir. Oct. 27, 2024) ...........................................7

*Virginia Coalition for Immigrant Rights v. Beals*,
   603 U.S. __, 2024 WL 4608863 (Oct. 30, 2024) ...............................7, 24

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) .................................................................18

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)................................................................................15

*Wisconsin Right to Life v. FEC*,
   551 U.S. 449 (2007)................................................................................17

*Ex parte Young*,
   209 U.S. 123 (1908)................................................................................17

**Statutes**

52 U.S.C. § 207......................................................................................19

52 U.S.C. §§ 20501 *et seq*......................................................................3

52 U.S.C. § 20503....................................................................................4

52 U.S.C. § 20504....................................................................................4

52 U.S.C. § 20507............................................................................*passim*

52 U.S.C. § 20510..............................................................................26, 27

National Voter Registration Act of 1993 ................................................1

**JA271**

Va. Code § 24.2-404 ..................................................................................6, 26

Va. Code § 24.2-410.1 ......................................................................................5

Va. Code § 24.2-420.1 ......................................................................................6

Va. Code § 24.2-427 ...................................................................................6, 18

**Other Authorities**

*Eligible*, The American Heritage Dictionary, Houghton Mifflin Co. (2nd Coll. Ed. 1985) ........................................................................................................22

*Eligible*, The Compact Edition of the Oxford English Dictionary .................22

*Eligible*, Merriam-Webster, https://tinyurl.com/5c79v97t...........................22

Executive Order 35 ...........................................................................................6

Executive Order 53 ...........................................................................................6

Fed. R. Civ. P. 12 ..............................................................................................7

*Ineligible*, The American Heritage Dictionary .............................................22

Michael Herz, *Law Lags Behind: FOIA and Affirmative Disclosure of Information*, 7 Cardozo Pub. L., Pol'y & Ethics J. 577 (2009) ................29

*Photocopy*, The American Heritage Dictionary of the English Language (3d ed. 1992) ......................................................................................................30

*Voter*, The Compact Edition of the Oxford English Dictionary, Oxford University Press (1980) ..................................................................................................22

*Voter*, Merriam-Webster, https://tinyurl.com/2s32xcve ..............................22

vi

## INTRODUCTION

A handful of advocacy organizations and two individuals ask this Court to hold unlawful and permanently enjoin Virginia's processes for removing self-identified noncitizens from its voter rolls, particularly within the 90-day "quiet period" before a federal election. See 52 U.S.C. § 20507(c)(2)(A). This Court should dismiss the claims. Although some arguments Defendants raise for dismissal will be familiar to the Court, others (especially those relating to the individual plaintiffs) are new.

Plaintiffs' complaint should be dismissed for lack of jurisdiction. Even after amending their complaint for a second time, Plaintiffs have failed to identify a single person who was wrongly removed from the voter rolls and unable to vote. Plaintiffs have likewise failed to properly allege an injury in their capacities as organizations. Because the quiet period is over, there is no ongoing violation of federal law that would allow the Plaintiffs to invoke the *Ex parte Young* exception to the Commonwealth's sovereign immunity.

Plaintiffs' complaint also fails to state a claim on the merits. Pursuant to longstanding Virginia law, Virginia notifies noncitizens that they will be removed from the voter rolls after they expressly declare their noncitizen status on a Department of Motor Vehicles (DMV) form or when they self-identify as noncitizens in recently verified documentary proof on file with DMV. And before any individual is actually removed from the rolls, the local registrar sends the individual a notice advising him that he can remain registered to vote by returning an affirmation of citizenship in a pre-addressed mailer within 14 days.

Plaintiffs' central claim is that Virginia's removal of noncitizens within 90 days of a federal election violated the so-called "Quiet Period Provision" of the National Voter Registration Act of 1993 (NVRA), which prohibits States from "systematically" removing "ineligible voters" from

1

**JA273**

the voter rolls within 90 days of a federal election, with exceptions for certain properly registered voters who since became ineligible to vote, such as upon a voter's death or felony conviction. 52 U.S.C. § 20507(c)(2). Plaintiffs fail to state a claim, however, because the Quiet Period Provision does not apply at all to the removal of *noncitizens*—who have never been eligible to vote in the first place—from the rolls. See *Mi Familia Vota v. Fontes*, 129 F.4th 691, 756 (9th Cir. 2025) (Bumatay, J., dissenting). The plain meaning of the text of the Quiet Period Provision, confirmed by its structure and purpose, demonstrates that there are no temporal restrictions on when States may remove individuals who were never eligible to vote. The registrations of noncitizens, as well as others who were never eligible to become "registrants" or "voters" as those terms are used in the Act, were invalid *ab initio*. The NVRA's removal provisions thus do not apply to noncitizens, as six Judges on the Ninth Circuit recently concluded. See *Mi Familia Vota v. Fontes*, 152 F.4th 1153, 1166 (9th Cir. 2025) (Nelson, J., dissenting from the denial of rehearing en banc). Virginia's noncitizen removal process is also highly accurate—despite over a year of litigation, Plaintiffs have not identified a single citizen who was mistakenly removed from the rolls and unable to vote—and makes *individualized* eligibility determinations, not the kind of "systematic" determinations prohibited within the 90-day period.

This Court should also dismiss Count II. Virginia's use of Alien Identification Numbers to search the federal Systematic Alien Verification for Entitlements (SAVE) database does not discriminate against naturalized citizens. The NVRA's requirement that voter-roll maintenance be "nondiscriminatory" only prohibits (1) laws that discriminate against a protected class on their face, and (2) laws enacted with a discriminatory intent. 52 U.S.C. § 20507(b)(1). The term "nondiscriminatory" does not impose a disparate-impact standard. Finally, Plaintiffs also fail to state a claim under the public-inspection provision of the NVRA, as the only federal appellate

court to address that claim has concluded that States have no duty to "produce" documents under a statute that only allows those documents to be "inspect[ed]." See *Greater Birmingham Ministries v. Secretary of State of Ala.*, 105 F.4th 1324 (11th Cir. 2024).

Although this Court was unpersuaded by some of these arguments when directed against the First Amended Complaint, Defendants' positions have recently been endorsed by numerous judges. *Mi Familia Vota*, 129 F.4th at 714–15 (Bumatay, J., dissenting); *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc); *Tennessee Conf. NAACP v. Lee*, 139 F.4th 557 (6th Cir. 2025). Likewise, the Second Amended Complaint attempts to bolster Plaintiffs' claims by adding parties who can point to no injury and thus lack standing even under this Court's previous motion-to-dismiss ruling. And because Plaintiffs waited to file their Second Amended Complaint until after Defendants noticed their interlocutory appeal, Defendants once again move to dismiss the complaint to protect their sovereign immunity. Otherwise, the Fourth Circuit may conclude that the filing of the Second Amended Complaint moots Defendants' pending appeal from the denial of their motion to dismiss the First Amended Complaint. See, *e.g.*, *Ohio River Valley Environmental Coalition, Inc. v. Timmermeyer*, 66 Fed. Appx. 468, 472 (4th. Cir. 2003) (per curiam). This motion to dismiss the Second Amended Complaint is therefore necessary to protect Defendants' right to an interlocutory appeal of an adverse sovereign-immunity ruling.

## BACKGROUND

### I.    Statutory framework and factual background

Congress enacted the National Voter Registration Act in 1993 to promote eligible citizens' participation in federal elections. 52 U.S.C. §§ 20501 *et seq*; see *Mi Familia Vota*, 129 F.4th at 753–77 (Bumatay, J., dissenting) (describing the structure of the NVRA). The NVRA demands

"each State shall establish procedures to register to vote . . . by application made simultaneously with an application for a motor vehicle driver's license." 52 U.S.C. § 20503(a)–(a)(1); see generally *id.* § 20504. These procedures require that "each State shall . . . ensure that any *eligible applicant* is registered to vote in an election." *Id.* § 20507(a)–(a)(1) (emphasis added). "[I]f the *valid voter registration form* of the applicant is submitted to the appropriate State motor vehicle authority," then the applicant must be "registered," *id.* § 20507(a)(1)(A) (emphasis added), and added to the "list of eligible voters," *id.* § 20507(a)(3).

Along with requiring States to allow "eligible applicants" to "register[]," the NVRA imposes restrictions on removing such "registrants" from the rolls. 52 U.S.C. § 20507(a)(3). Under the NVRA's General Removal Provision, a person who is an "eligible applicant" and has submitted a "valid" registration form to vote "may not be removed from the official list of eligible voters except" in four enumerated circumstances: voter request, death of the voter, voter felony conviction or mental incapacity, and change in voter residence (if certain procedures are followed). *Id.* § 20507(a)(3)–(4).

The restrictions on removing "registrants" from the list of "eligible voters" are tighter close to federal elections. Section 8(c)(2), the NVRA's Quiet Period Provision, prohibits States from "systematically" removing "ineligible voters" from the rolls within 90 days of a federal election. *Id.* § 20507(c)(2)(A). It incorporates by cross-reference three of the four exceptions for removals under the General Removal Provision—voter request, death of the voter, and voter felony conviction or mental incapacity. *Id.* § 20507(c)(2).

To ensure that the Commonwealth's voter rolls remain accurate while also complying with the NVRA, Virginia amended its election laws in 2006 to require the Virginia DMV to send to the Virginia Department of Elections (ELECT) the information of any individual who declares himself

to be a noncitizen on a DMV form. Va. Code § 24.2-410.1. ELECT checks that person's information against the Virginia Election and Registration Information System (VERIS) to ensure that these self-declared noncitizens are not included on the voter rolls. Second Amended Complaint (SAC) ¶ 49 (ECF No. 182). As Plaintiffs allege, a match generally "requires an exact match of Social Security Number, first name, last name, and date of birth." *Id.* ¶ 48. Only if there is a match does ELECT forward the information to the local registrars, who then manually "reviews the match to determine if the non-citizen and registered voter identified by VERIS [are] the same person." *Id.* ¶ 49 (quotation marks omitted).

ELECT's general policy is to send local registrars only the records of persons who affirmatively and contemporaneously declare that they are not citizens on a DMV form. See ECF No. 23-1 (Letter from Commissioner Beals to Governor Youngkin) (requiring "declar[ations]" of noncitizenship).[1] It did, however, also previously work with the DMV in an ad hoc review of records to ensure that persons who engaged in DMV transactions within the prior year, and who had documents on file with DMV showing noncitizen status, were not improperly on the voter rolls. *Ibid.* To ensure that any individuals who had subsequently become naturalized citizens were not mistakenly removed, the DMV verified these individuals' information through the Department of Homeland Security's SAVE database. *Id.* at 2–3 ("DMV is conducting verification, using [SAVE], of applicants who present documents indicating legal presence (i.e., non-citizenship)"). The SAVE database shows whether a legal alien resident has subsequently obtained citizenship by searching that person's Alien Identification Number. Only those persons registered to vote who

---

[1] Rather than reattach exhibits, the Second Amended Complaint cross-references exhibits attached to the First Amended Complaint. See, *e.g.*, SAC ¶ 56. Defendants do the same. See, *e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (on a motion to dismiss, a court may consider "documents that are explicitly incorporated into the complaint by reference" and "those attached to the complaint as exhibits").

had noncitizen documents on file with the DMV and who also were confirmed as current noncitizens in a fresh SAVE search were transmitted to the local registrars for each jurisdiction to act upon as part of that review. *Ibid.*

When ELECT concludes that a person is not a citizen and is on the voter rolls, ELECT sends the person's information to the local general registrar for further individualized review. See SAC ¶¶ 49–50. Virginia law requires "general registrars to delete . . . the name of any voter who . . . is known not to be a United States citizen by reason of" that person's self-declaration of noncitizen status or "based on information received from the . . . SAVE Program." Va. Code § 24.2-404(A)(4); see *id.* § 24.2-427(C). If the registrar determines that the noncitizen and the registered voter are the same person, then the registrar will mail the individual a "Notice of Intent to Cancel" that individual's registration to vote. Va. Code § 24.2-427(C). Only if the individual fails to respond to the Notice of Intent to Cancel is he removed from the voter rolls. SAC ¶ 52. But that individual can still reregister to vote (including on election day) without needing to show any documentation; he can simply reregister. Va. Code § 24.2-420.1. Neither Governor Youngkin's Executive Order 35 (issued on August 7, 2024) nor Executive Order 53 (issued on September 12, 2025) created these longstanding statutory processes.

## II.    Procedural background

In October of 2024, Plaintiffs filed a complaint challenging the legality of Virginia's longstanding noncitizen removal process used to ensure that only American citizens are registered and able to vote.[2] See First Amended Compl. ¶¶ 1–14 (ECF No. 23). Plaintiffs alleged that Virginia's individualized process for removing noncitizens from its voter rolls, as required by

---

[2] The United States also filed a similar suit under the NVRA, which has since been voluntarily dismissed. ECF No. 140.

Virginia law, violates the NVRA by amounting to: (1) "systematic voter list maintenance within 90 days preceding a federal election"; (2) discrimination against naturalized citizens; and (3) an impermissible requirement that "voters . . . provide additional proof of U.S. citizenship" beyond that required in the NVRA's federal registration form. *Id.* ¶ 14. Plaintiffs also brought a claim that they are entitled to certain voting information under the NVRA's "public inspection" provision. See *ibid.*; 52 U.S.C. § 20507(i). They named as defendants Virginia Commissioner of Elections Susan Beals, the members of the Board of Elections, and Attorney General Jason Miyares (collectively "Defendants"). FAC ¶¶ 35–37.

Plaintiffs moved for a preliminary injunction on Counts I and II, which this Court granted only with respect to Count I. See ECF No. 112. The Fourth Circuit denied a stay pending appeal, see *Virginia Coalition for Immigrant Rights v. Beals*, 2024 WL 4601052 (4th Cir. Oct. 27, 2024), but the Supreme Court granted an identical motion, see *Virginia Coalition for Immigrant Rights v. Beals*, 603 U.S. __, 2024 WL 4608863 (Oct. 30, 2024) (mem.).

After the 2024 election passed, Defendants moved to dismiss the First Amended Complaint, but this Court denied the motion with respect to all Counts except Count III. ECF No. 153. Defendants noticed an interlocutory sovereign-immunity appeal with respect to all counts against the Attorney General and Count I as to all Defendants. ECF No. 165–66. That appeal is now pending. Plaintiffs then obtained leave to file a Second Amended Complaint over Defendants' opposition, which adds two new individuals as plaintiffs and adds facts related to Plaintiffs' earlier standing and *Ex parte Young* arguments. Defendants now move to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim. See Fed. R. Civ. P. 12(b)(1), (6).

## LEGAL STANDARD

Plaintiffs bear the burden of establishing subject-matter jurisdiction and standing. *Taubman Realty Grp. v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003). To survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). Although this Court rejected some of Defendants' arguments in its ruling on their previous motion to dismiss, ECF No. 153, the law-of-the-case doctrine does not forbid a district court from revisiting previous conclusions. *Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 523 (E.D. Va. 2013); *Plotkin v. Lehman*, No. 98–1638, 178 F.3d 1285, 1999 WL 259669, at *1 (4th Cir. Apr. 30, 1999) (per curiam).

## ARGUMENT

The Second Amended Complaint should be dismissed. Plaintiffs lacked standing at the outset of this case and still do. Even if they had standing, their quiet-period claim is moot and also barred by sovereign immunity. Finally, Plaintiffs cannot prevail on the merits because they fundamentally misunderstand how the relevant parts of the NVRA operate.

## I.     Plaintiffs' claims are jurisdictionally barred

### A.     Plaintiffs lack Article III standing to sue for alleged NVRA violations

No Plaintiff has standing to sue. Standing requires the plaintiff to demonstrate (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing is not dispensed in gross, which means that each plaintiff must establish standing for each claim and type of relief against each defendant. *Davis v. FEC*, 554 U.S. 724, 734 (2008). For prospective relief, the requisite harm must be ongoing or imminent. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983).

### 1.    Plaintiff Organizations lack standing.

A membership organization can establish Article III standing in two ways. It can show that at least one of its members has standing and that the organization can properly represent the member's interests (associational standing), or it can satisfy the traditional standing test itself (organizational standing). The Plaintiff Organizations here establish neither.

The Plaintiff Organizations lack associational standing. A membership organization "has associational standing when at least one of its 'identified' members 'would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Outdoor Amusement Bus. Ass'n v. DHS*, 983 F.3d 671, 683 (4th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

After over a year of litigation and even with the help of expedited discovery, the Plaintiff Organizations still have not identified a single member of any of their organizations that has standing. See *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Instead, Plaintiffs attempt to generate associational standing by asserting that they have many unnamed members who are naturalized citizens, see SAC ¶ 31, some of whom may have been erroneously removed from the voter rolls. Not only is this theory based on pure speculation, but it is also simply a reprisal of the probabilistic-standing theory that the Supreme Court rejected in *Summers*. See 555 U.S. at 498. In that case, the Supreme Court held that even if there were a "statistical probability" that one of the organization's roughly 700,000 members would suffer an injury in fact, Article III still required the organization to "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Id*. at 497–98 (emphasis added).

The new allegations in the Second Amended Complaint describing pseudonymous members of the Plaintiff Organizations are still inadequate to establish associational standing. SAC ¶¶ 21, 25. Plaintiffs now point out two individuals, using only their initials, who Plaintiffs allege are American citizens and are members of at least one Plaintiff Organization. SAC ¶¶ 21, 25. But Plaintiffs do *not* allege that those individuals have been removed from the voter rolls at any point. Not before the 2024 election and not after. They allege simply that "A.S." and "K.V." are naturalized citizens who are a member of the League of Women Voters of Virginia and the executive director of an unidentified "member organization of VACIR," respectively. *Id.* ¶¶ 21, 25. Plaintiffs do not state that A.S. or K.V. has suffered any sort of injury, such as being removed from the voter rolls and not being reinstated in time to vote. *Ibid.* To the contrary, Plaintiffs allege that K.V. has voted in the past without any issue. *Id.* ¶ 21 ("Ms. V. has routinely voted in every federal election since she became a registered voter."). The addition of A.S. and K.V. to the complaint does nothing but demonstrate that Plaintiffs cannot find even a single identifiable person harmed by Virginia's efforts to remove noncitizens from the voter rolls. This Court previously relied on a document attached to a reply brief—a declaration from Joan Porte, ECF No. 103-1—as establishing associational standing. That declaration described an alleged member of the League of Women Voters of Virginia who was purportedly improperly removed from the voter rolls within 90 days of the 2024 federal elections. ECF No. 153 at 12–13. This Court should no longer rely on that declaration. If the unnamed person described in the Porte Declaration actually had standing, Plaintiffs presumably would have included facts about that person in their Second Amended Complaint. Instead, they conspicuously left out any allegations about that person and instead included facts about two uninjured members. SAC ¶¶ 21, 25. Nor did Plaintiffs attach the Porte Declaration to their Second Amended Complaint or even reference it. See *Moore v. Flagstar Bank*,

6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (considering documents attached to a complaint at the motion-to-dismiss stage). Given that Plaintiffs made a deliberate choice not to rely on the unnamed person in the Porte Declaration, this Court should rule that Plaintiffs have failed to establish associational standing.[3]

Plaintiffs' failure to name a single member with standing, even after possessing the list of persons removed from the voter rolls for over a year, is unsurprising. As Defendants have maintained throughout this case, Virginia's practices for removing noncitizens from the voter rolls are accurate, and in the event there is a mistake, Virginia allows same-day reregistration. The only thing that Plaintiffs have shown to date is that the process works.

Plaintiffs likewise lack organizational standing. Organizations have standing "to sue on their own behalf for injuries they have sustained," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982), but they still must satisfy the same standards for injury-in-fact, causation, and redressability that apply to individuals, *id.* at 378–79. Doing so is "substantially more difficult" when it is a third party who the law is being enforced against, not the organization itself. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). In meeting this heightened burden, "an organization may not establish standing simply based on" harm to its interests, "because of strong opposition to the government's conduct" or by "expending money to gather information and advocate against the defendant's action." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

The Second Amended Complaint, like the first, establishes no more than abstract organizational interests and voluntary budgetary decisions based on those interests. *Ibid.* The harm

---

[3] Defendants maintain that associational standing requires the identity of the relevant member to be disclosed. See *Summers*, 555 U.S. at 499. But because Plaintiffs now have zero individuals who could plausibly have standing, that point is less relevant.

that the Plaintiff Organizations repeatedly and commonly allege is that they were forced to "divert significant resources" away from voter-outreach and other community-building activities and "toward . . . attempting to mitigate the effects" of the so-called "Purge Program" on third parties. SAC ¶¶ 22, 24, 36. But the Fourth Circuit has long held that an organization's "own budgetary choices" concerning the allocation of funds, such as "educating members, responding to member inquiries, or undertaking litigation in response to legislation," are not enough to establish an injury in fact. *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (quoting *Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994)); see also *Tennessee Conf. of the NAACP v. Lee*, 105 F.4th 888, 903 (6th Cir. 2024) (per curiam) (explaining that "the decision to spend money to minimize the alleged harms" to other parties caused by government action did not supply organizational standing). Likewise, the Supreme Court has recently reaffirmed that an organization cannot establish standing simply because it feels compelled "to inform the public" or third parties about what they perceive as government-inflicted harm. *Alliance for Hippocratic Med.*, 602 U.S. at 395.

Far from bolstering it, the additional allegations in the Second Amended Complaint only undermine the Plaintiff Organizations' organizational-standing claim. For instance, the League of Women Voters of Virginia now alleges that it "has dedicated and continues to dedicate its member resources to attending monthly county Electoral Board meetings across the Commonwealth to understand effects of the Purge Program in each locality, as well as to piece together how the Program works in order to then accurately educate and communicate with members, voters, and the public." SAC ¶ 28. But expanding resources to gather information and educate members of the community is exactly what *Alliance for Hippocratic Medicine* held was insufficient to confer standing. 602 U.S. at 394 (explaining that "engaging in public advocacy and public education"

cannot grant standing). And if mere efforts to "understand" a law and its effects are sufficient to establish standing, then every single person in the country has standing to challenge every law. SAC ¶ 28.

Plaintiffs rely on *Havens Realty Corp.*, 455 U.S. at 368, as did this Court when it denied the previous motion to dismiss, ECF No. 153 at 9. But "*Havens* was an unusual case" that courts should not "extend . . . beyond its context," *Alliance for Hippocratic Med.*, 602 U.S. at 396, and it cannot rescue the Plaintiff Organizations' deficient standing claims. The plaintiff in that case, a housing-counseling provider, sent employees commonly referred to as "testers" to determine whether a real estate company was falsely telling black renters that no units were available. *Havens Realty Corp.*, 455 U.S. at 366 & n.1, 368. The Supreme Court held that the employer plaintiff suffered an injury in fact because lying to its employee testers "perceptibly impaired [the plaintiff's] ability to provide counseling and referral services." *Id.* at 379. As the Supreme Court explained, lying to the plaintiff's employees "directly affected and interfered with [the plaintiff's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Alliance for Hippocratic Med.*, 602 U.S. at 395. That case thus dealt with a unique type of business injury and does not stand for the proposition that the diversion of resources based on an injury to a third party meets the "substantially more difficult" test to establish standing through an indirect harm. *Lujan*, 504 U.S. at 562. Indeed, because it was an employee of the organization in *Havens* that was discriminated against, that organization arguably did not even need to meet the heightened requirements to show standing through an injury to a third party.

In a similar vein, this Court relied on *RNC v. North Carolina State Board of Elections* in the previous motion-to-dismiss opinion, but that case is not dispositive. *RNC* held that an organization may have standing to challenge a law that directly harms its *already existing*

activities. 120 F.4th 390, 398 (4th Cir. 2024); see also *id.* at 410 (Diaz, J., concurring) ("[A]n organization 'must show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action.'").[4] The Plaintiff Organizations do not allege how removing noncitizens from the voter rolls harms their existing activities, besides from their own decisions to reallocate funds to help third parties.

### 2.    The Individual Plaintiffs Lack Standing

The Second Amended Complaint adds two individual plaintiffs—Rina Shaw and Genet Shiferaw—but neither has standing. Both Shaw and Shiferaw are allegedly citizens who were removed from the voter rolls. But the Second Amended Complaint also acknowledges that both were able to reregister to vote and cast a ballot in the 2024 election. SAC ¶¶ 38–41. Thus, even assuming that they previously suffered a cognizable injury from being mistakenly, and temporarily, removed from the voter rolls, that injury ceased when they were restored to the rolls in time to vote—long before they joined this case. It is black-letter law that a past injury is insufficient to state a claim for prospective relief. *Lyons*, 461 U.S. at 106.

Shaw and Shiferaw thus must rely on the allegation that they are "confused, anxious, and fearful that [they] will be purged from the voter rolls again." SAC ¶¶ 38, 41. But the Supreme Court has already rejected this kind of fear-based standing without an underlying injury that is ongoing or imminent. In *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), the Court held that fear of an injury does not establish standing unless the injury itself is "certainly

---

[4] This Court appeared to interpret Judge Diaz's concurrence as disagreeing with the majority opinion in *RNC* and advocating for a "'stricter view' of organizational standing" than the majority did. ECF No. 153 at 11 n.4. But Judge Diaz joined the majority in full and was referencing the "stricter view" of organizational standing that other district courts had applied after *Alliance for Hippocratic Medicine*. He was not arguing for a different standard than the majority applied.

impending." See *id.* at 410. Otherwise, the "fear[] of hypothetical future harm" could provide a backdoor to Article III standing even if the harm itself was insufficiently imminent. *Id.* at 416. Or, as the Supreme Court explained in *Laird v. Tatum*, 408 U.S. 1 (1972), "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* at 13–14.

Shaw and Shiferaw's alleged confusion, anxiety, and fear that they will be removed from the voter rolls is not caused by a "certainly impending" injury. *Clapper*, 568 U.S. at 410. They provide no evidence at all to support their claim that they may be mistakenly removed from the voter rolls before the 2026 federal election, much less in the 90 days before that election. To the contrary, that both acknowledge they are presently registered to vote undermines any claim that they might be removed from the rolls in the future. SAC ¶¶ 38, 41.

Further, Ms. Shiferaw lacks standing for another reason: she never alleges that she was removed during the quiet period or for being a purported noncitizen. She alleges that "[o]n Election Day, [she] was informed she was not a registered voter and would have to use same-day registration to cast a provisional ballot." SAC ¶ 40. The fact she *learned* on election day that she was not registered, however, says nothing about when she was removed from the voter rolls. Nor does the fact that she was removed indicate that she was removed for being a noncitizen. There is nothing in the Second Amended Complaint that even hints at the reason she was removed from the voter rolls. Without alleging "when" and "why," Shiferaw cannot establish standing for either Count I or Count II.

### B.    Any Quiet Period Provision claim is moot

Plaintiffs' claim that Virginia has violated the NVRA's Quiet Period Provision is moot, even if they had standing in the first place. The Constitution's "case-or-controversy requirement subsists through all stages of federal judicial proceedings . . . . [I]t is not enough that a dispute was

very much alive when suit was filed." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The plaintiff's stake in the lawsuit "must continue throughout its existence." *Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Therefore, if "intervening factual . . . events effectively dispel the case . . . the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983).

With the 2024 election in the rear-view mirror, Plaintiffs no longer have any stake in their quiet-period claims. Any harm to the organizations themselves from the removal of self-identified noncitizens from the voter rolls can no longer be linked to "allegedly unlawful conduct" by Defendants. *Allen*, 468 U.S. at 751. Any continuing effect on the "mission" of the organizations is now due to the removal process occurring *outside of* the 90-day quiet period. See 52 U.S.C. § 20507(c)(2)(A) (restricting removal only within 90 days of a federal election).

This Court previously held that the capable-of-repetition-yet-evading-review exception applied, ECF No. 153 at 20, but new facts undercut the assumption that Plaintiffs will once again be harmed. Most relevantly, Governor-elect Spanberger won the November election and will succeed Governor Youngkin by the time the next federal election is held in June of 2026. It is wholly speculative whether the Governor-elect will continue to implement what Plaintiffs call the "Purge Program." And even if Governor-elect Spanberger does continue to remove noncitizens from the voter rolls, it is unclear what that process will look like. Given these contingencies, and especially in light of Plaintiffs' focus on executive orders subject to future gubernatorial action, there is no longer a "reasonable expectation that the same complaining party will be subject to the same action again." *Wisconsin Right to Life v. FEC*, 551 U.S. 449, 462 (2007).[5]

---

[5] Because no member of the Plaintiff Organizations has standing in her own right, there is no need to discuss whether any individual members may be removed from the voter rolls once more. ECF No. 153 at 21 n.7.

### C.    Sovereign immunity also bars Plaintiffs' claim under the Quiet Period Provision and all claims against the Attorney General

States are generally immune from suit unless they consent or Congress has validly abrogated their sovereign immunity, neither of which has happened here. See *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 58 (1996). Sovereign immunity applies in full force to alleged past violations of law, even if an equitable remedy is sought. See *Edelman v. Jordan*, 415 U.S. 651, 666 (1974). The *Ex parte Young* exception to Defendants' constitutional immunity from suit can apply only to the extent that Plaintiffs seek relief that is both "prospective" and targeted against "*ongoing* violations of federal law." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (emphasis added); see *Ex parte Young*, 209 U.S. 123 (1908).

The conduct challenged by Plaintiffs in the Quiet Period Provision claim—initiating the removal of noncitizens from the rolls during the 90 days prior to the 2024 election—"occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). And to the extent that the ELECT Defendants continue to remove noncitizens from the voter rolls, their actions do not constitute an "ongoing" violation because those actions are not prohibited by the Quiet Period Provision.

Previously, this Court reasoned that placing a person back on the voter rolls could remedy an "ongoing" violation that occurred in the past, ECF No. 153 at 17, but no such persons are identified in the Second Amended Complaint. Without alleging the existence of an individual who would be placed back onto the rolls, Plaintiffs cannot rely on an analogy between reinstatement in the voting and employment context. See *ibid.*; *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989). And to the extent that this Court relied on the fact that Defendants may remove individuals during a quiet period *in the future* to establish an ongoing violation, that holding is in

tension with *Allen v. Cooper*, 895 F.3d 337 (4th Cir. 2018), which refused to "conflate[] the *Ex parte Young* exception with the doctrine of mootness." *Id.* at 355.

Further, sovereign immunity bars all claims—not just the quiet-period claim—against the Attorney General. The *Ex parte Young* exception applies only to officials who bear a "special relation" to "the challenged statute." *McBurney v. Cuccinelli*, 616 F.3d 393, 399, 402 (4th Cir. 2010) (quotation marks omitted). As this Circuit has explained, the "[g]*eneral authority* to enforce the laws of the state" is insufficient to satisfy the *Ex parte Young* exception to a State's sovereign immunity. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)). "[T]he officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021).

The Attorney General of Virginia plays no role in enforcing Va. Code § 24.2-427(C). That law requires the "*general registrar[s]*" to "mail notice promptly to all persons known by him not to be United States citizens by reason of a report from the Department of Motor Vehicles . . . or from the Department of Elections based on information received from the Systematic Alien Verification for Entitlements Program (SAVE Program)." *Ibid.* (emphasis added). It does not give the Attorney General any role to play in the removal of noncitizens from the voter rolls.

This Court previously held that the Attorney General is a proper party because he has "full authority to enforce the election laws," including criminal prosecution of individuals who unlawfully vote. ECF No. 153 at 18. The ability to prosecute voter fraud, however, does not make the Attorney General the proper *Ex parte Young* defendant for a suit under the Quiet Period Provision or nondiscrimination provision. 52 U.S.C. §§ 20507(c)(2)(A); 20507(b)(1). Both provisions regulate the *process* for removing individuals from the voter rolls but say nothing about

investigating individuals who vote illegally. Plaintiffs fail to actually identify the "the specific law" that the Attorney General would apply against them. *Doyle*, 1 F.4th at 254–55.[6]

## II.    Plaintiffs' claims are insufficient as a matter of law

Plaintiffs cannot state a claim. As a threshold matter, the NVRA's Quiet Period Provision does not apply to the removal of noncitizens from the voter rolls, just as it does not apply to the removal of minors or fictitious persons. As six judges on the Ninth Circuit have persuasively explained since Defendants filed their motion to dismiss the First Amended Complaint, the Quiet Period Provision only applies to the removal of *voters* who validly registered in the first place but who subsequently became ineligible, such as those who have since been convicted of a felony or have changed their residence. See *Mi Familia Vota*, 129 F.4th at 714–15 (Bumatay, J., dissenting); *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc). Plaintiffs' quiet period claims also fail because Virginia's process for removing noncitizens is a highly individualized process to update voter rolls, not a "systematic" program. 52 U.S.C. § 207(c)(2)(A). Far from the kind of bulk mailing and door-to-door canvassing that Congress contemplated as "systematic" programs, the Commonwealth's noncitizen removal process focuses narrowly on specific individuals who have declared themselves to be noncitizens and involves contacting each such individual—twice—to give the individual an opportunity to correct the record by affirming his citizenship.

The additional two NVRA claims also fail. The "nondiscriminatory" claim under 52 U.S.C. § 20507(b)(1) should be dismissed because the noncitizen removal process is facially neutral and

---

[6] This point is equally applicable on the merits of the claims against the Attorney General. For instance, the Quiet Period Provision states "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). It says nothing about investigations for unlawful voting.

not enacted with discriminatory intent. Likewise, the claim for information related to Virginia's process used to remove noncitizens from the voter rolls has been rejected by the only federal appellate court to address it. See *Greater Birmingham Ministries*, 105 F.4th at 1332.

### A.  Defendants did not violate the NVRA's Quiet Period Provision

Plaintiffs claim that Defendants violated the NVRA's Quiet Period Provision, which prohibits the removal of some classes of individuals from the voter rolls within 90 days of an election. See 52 U.S.C. § 20507(c)(2). Their claims fail for at least two reasons: first, the Quiet Period Provision does not apply to the removal of individuals who were never eligible to register in the first place, such as noncitizens; and second, Virginia's process was not "systematic" within the meaning of the provision.

#### 1.  The NVRA does not restrict removing noncitizens and other persons whose registrations were invalid *ab initio*

The NVRA's Quiet Period Provision does not apply to the removal of individuals, such as noncitizens, whose registrations were void *ab initio* and thus who were never eligible to vote in the first place. See *Mi Familia Vota*, 129 F.4th at 753 (Bumatay, J., dissenting). Virginia's removal of noncitizens within 90 days of the election therefore does not violate the provision.

The NVRA governs "the administration of voter registration for elections for Federal office." 52 U.S.C. § 20507(a). Section 8 provides that "State[s] shall . . . ensure that any *eligible applicant* is registered to vote." *Id.* § 20507(a)(1) (emphasis added). The instruction is simple: applicants who are "eligible" must be "registered" by the State. *Ibid.* The inverse is equally obvious: those who are not "eligible" shall not be "registered." *Ibid.*; see also *Mi Familia Vota*, 129 F.4th at 754 (Bumatay, J., dissenting).

Section 8 then provides various ways that an applicant with a "valid voter registration form" can register, such as through the DMV. See *id.* § 20507(a)(1)(A)–(D) (emphasis added).

Once the "eligible applicant['s]" "valid voter registration form" is accepted, the statute refers to him as a "registrant," and provides him certain protections from removal. See *id.* § 20507(a)(3); see also *Mi Familia Vota*, 129 F.4th at 754 (Bumatay, J., dissenting). Section 8 next provides, in the General Removal Provision, how a "registrant" can be permissibly removed from the list of "eligible voters." 52 U.S.C. § 20507(a)(3). The "name of a registrant may" be removed only in four enumerated circumstances: voluntary removal of the registrant, felony conviction or adjudication of mental incapacity, death of the registrant, or change in residence. *Id.* § 20507(a)(3)–(4).

The removal restrictions become stricter in the 90 days before a federal election. At that point, the Quiet Period Provision prohibits "systematic" removal programs targeting a subset of registrants: "ineligible voters." *Id.* § 20507(c)(2). Carved out of this prohibition, however, are three of the four exceptions from the General Removal Provision: request of the registrant, criminal conviction or mental incapacity, and death of the registrant. *Id.* § 20507(c)(2)(B).

In short, an "eligible applicant" becomes a "registrant" upon filing a "valid voter registration form," and is then protected from removal from the "list of eligible voters" unless such removal is pursuant to one of four enumerated exceptions. 52 U.S.C. § 20507(a)(1)(A)–(D). Within 90 days of an election, the rules get stricter, with the "systematic" removal of "ineligible voters" being prohibited, subject to three of the four exceptions. *Id.* § 20507(c)(2)(A). But the NVRA does not prohibit the removal from the voter rolls of persons, such as noncitizens and minors, who were never "eligible applicant[s]" to begin with and thus could not become "registrant[s]" or "voters" in the first place. *Id.* § 20507(a)(1), (3), (c)(2)(B); *Mi Familia Vota*, 129 F.4th at 755 (Bumatay, J., dissenting) ("[F]oreign citizens are excluded from the terms 'registrant[s],' 'eligible voters' and 'ineligible voters.'"). It follows that the Quiet Period Provision

does not cover noncitizens at all. Accordingly, Virginia's removal of noncitizens within 90 days of the election did not violate federal law. *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc) ("Ineligible voters . . . comprise individuals eligible to vote at the time of their registration who become ineligible to vote subsequently." (cleaned up)).

The plain text of the Quiet Period Provision confirms this logical chain. The term "voter," standing alone, excludes noncitizens. A "voter" is "one who has a right to vote." *Voter*, The Compact Edition of the Oxford English Dictionary, Oxford University Press (1980); see *Voter*, Merriam-Webster, https://tinyurl.com/2s32xcve (last accessed Nov. 6, 2025) (a person who "votes or has the legal right to vote"). The adjectives "eligible" or "ineligible" then divide the term "voters" into two subsets of "voters." An "eligible voter" is a person who is "qualified" to participate in a given election. *Eligible*, The American Heritage Dictionary, Houghton Mifflin Co. (2nd Coll. Ed. 1985); see *Eligible*, Merriam-Webster, https://tinyurl.com/5c79v97t (last accessed Nov. 6, 2025) (same); *Eligible*, The Compact Edition of the Oxford English Dictionary ("Fit or proper . . . for an office or position"). On the other hand, an "ineligible voter" is a person who had the "right to vote" but is "not qualified" in a given election. *Ineligible*, The American Heritage Dictionary. For example, a voter or registrant could become ineligible because he has moved away, been convicted of a felony, or been declared mentally incapacitated. See 52 U.S.C. § 20507(a)(3)(B), (a)(4)(B).[7]

---

[7] The argument that "voter" and "registrant" cannot be rough synonyms is unpersuasive: § 20507 uses the terms interchangeably. *Compare, e.g.*, 52 U.S.C. § 20507(a)(3) (referring to when a "registrant" may "be removed" from the "list of eligible voters") and (a)(4) (referring to when "ineligible voters" may be removed from the "list of eligible voters," including upon "death of the registrant" or "change in residence of the registrant"); see *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 148 (2023) (holding that "contextual clues persuade us" that federal statute used two different terms "as synonymous").

Thus, the Quiet Period Provision restricts programs with the "purpose" of "systematic[ally]" removing voters—those who had the "right to vote," but who are no longer "qualified" to vote in a given election (for instance, because they moved to a different jurisdiction). See *Mi Familia Vota*, 152 F.4th at 1166 (Nelson, J., dissenting from the denial of rehearing en banc). The plain text of the Quiet Period Provision therefore does not prohibit removing from the rolls individuals who never could have validly registered in the first place because such individuals were never "eligible voters" or even "ineligible voters." 52 U.S.C. § 20507(c)(2)(A). They are not "voters" or "registrants" at all. Therefore, States are free to systematically remove noncitizens, as well as minors and fictitious persons, at any time including within 90 days of an election, without running afoul of the NVRA.

To the extent that any confusion remains, the canon of constitutional avoidance counsels against interpreting "voter," eligible or ineligible, to include noncitizens. Doing so would lead to "absurd results and raise serious constitutional concerns." *Mi Familia Vota*, 129 F.4th at 756 (Bumatay, J., dissenting). States decide who can vote, and the Supreme Court has explained that it would "raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013). Going even further to prohibit States from removing noncitizens without an individualized inquiry would, at a bare minimum, raise "serious constitutional doubts" about the quiet period's validity. *Ibid.*

This Court previously concluded that noncitizens were protected by the Quiet Period Provision, but Defendants respectfully request that it reconsider its ruling. The primary basis for the Court's holding was the Fourth Circuit's denial of the stay pending appeal. See ECF No. 153 at 22–23. But the Supreme Court disagreed with the Fourth Circuit and granted the stay. *Beals*,

2024 WL 4608863. And since then, the Supreme Court has reiterated that lower courts should take heed of its rulings, even those on the emergency docket. See *Trump v. Boyle*, 145 S. Ct. 2653 (2025); see also *National Inst. of Health v. American Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (mem.) (Gorsuch, J., concurring in part) (similar). This Court's conclusion that "at best, the Supreme Court merely preferred the case go through the litigation and appeal process while staying this Court's Order in the interim," ECF No. 153 at 23 n.9, appears inconsistent with Supreme Court caselaw. Indeed, under any standard for granting a stay pending appeal in the *Purcell v. Gonzalez*, 549 U.S. 1 (2006), context, the merits are a crucial stay factor. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of applications for stays).

## 2. Defendants' removal of noncitizens was "individualized" and not "systematic"

Even if this Court does not reconsider its holding that the NVRA's Quiet Period Provision applies to the removal of persons who were never eligible to vote, Virginia's process does not have the "purpose" of "systematic[ally]" removing voters from its rolls. 52 U.S.C. § 20507(c)(2)(A).

The Quiet Period Provision prohibits States from operating any "program" whose "purpose" is to "systematic[ally]" remove voters from the rolls fewer than 90 days before the election. 52 U.S.C. § 20507(c)(2)(A). But the Quiet Period Provision allows removals during this 90-day period if the actions are performed on an individualized basis. See 52 U.S.C. § 20507(c)(2)(B); see also *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1348 (11th Cir. 2024) ("[T]he 90 Day Provision would not bar a state from investigating potential non-citizens and removing them on the basis of individualized information, even within the 90–day window.").

Virginia's method for determining citizenship falls on the "individualized" side of the line. *Arcia*, 772 F.3d at 1348. As Plaintiffs readily admit, DMV forwards the names of individual self-declared noncitizens to ELECT, which matches them to the VERIS database, generally by using

"an exact match of Social Security Number, first name, last name, and date of birth." SAC ¶ 48. If the individual appears to match a person on the voter rolls, ELECT forwards the self-declared noncitizen to the local registrar who then manually reviews each entry on the list. See *id.* ¶ 49. There is a third step of individualized review when the local registrar mails the Notice of Intent to Cancel to each self-declared noncitizen, at which point he has an individual opportunity to address any issue with ELECT's records by mailing back within 14 days a pre-printed form affirming his citizenship. *Id*. ¶ 53. As the Supreme Court has noted with respect to this very type of procedure, "a reasonable person with an interest in voting is not likely to ignore notice of this sort" and thus can be expected to "take the simple and easy step of mailing back the preaddressed, postage prepaid card." *Husted v. A. Phillip Randolph Institute*, 584 U.S. 756, 779 (2018). And if he does not return the pre-printed affirmation of citizenship, he is sent a Voter Registration Cancellation Notice, which invites him *a second time* to contact the local registrar to correct any mistake concerning his citizenship.

The process thus begins with a personal attestation of noncitizenship, requires multiple levels of review to ensure a match, and ends in the removal of that person from the voter rolls only after he has been sent two letters offering opportunities for an individual corrective response. And, as the new allegations relating to Ms. Shaw point out, a person who believes she has been wrongly removed from the rolls can simply call and have her name put back on. SAC ¶ 41. This is the definition of an individualized process.

ELECT did conduct a one-time *ad hoc* examination of the voter rolls using legal presence documents indicating noncitizenship on file in DMV, coupled with a *fresh* search of the SAVE database. See ECF No. 23-1 at 3-4; Va. Code § 24.2-404(E) ("The Department shall apply to participate in the [SAVE Program] for the purposes of verifying that voters listed in the Virginia

voter registration system are United States citizens."); see also SAC ¶ 8 (alleging that Defendants use "databases from the DMV or other sources"). But the *ad hoc* search—which was separate from the individualized process of removing self-declared noncitizens described above—was not "systematic" either. The same individualized verification procedures as described were used, from ELECT's matching process to the local registrars' manual review and sending of letters. In any event, the *ad hoc* examination is not ongoing and therefore cannot be the basis of prospective relief in this suit. See Part C, *supra*.

### 3. The Individual Plaintiffs lack a cause of action

Even if this Court concludes that Plaintiffs are correct on the meaning of the Quiet Period Provision, Plaintiffs Shaw and Shiferaw should be dismissed from this case because they lack a cause of action to sue. The NVRA only allows "aggrieved" parties who have notified the relevant state officer to initiate a lawsuit. 52 U.S.C. § 20510(b)(1). After notice, if "the violation is not corrected," the aggrieved party can sue in federal district court. *Id*. § 20510(b)(2)

Any potential "violation" of the NVRA that would have made Shaw and Shiferaw "aggrieved parties" had long been "corrected" by the time they even notified the relevant Virginia officer, much less filed this lawsuit. 52 U.S.C. § 20510(b)(1). As Shaw and Shiferaw concede, they were able to cast votes in 2024 and are currently entitled to vote because they are on the voter rolls. SAC ¶¶ 38, 41. Thus, any potential NVRA violation with respect to them was "corrected." 52 U.S.C. § 20510(b)(1). And because only uncorrected NVRA violations authorize a person to sue, their claims must be dismissed. *Ibid.*

### B. Defendants' process for removing noncitizens is nondiscriminatory

Plaintiffs' second count alleges that Virginia's process for removing noncitizens does not qualify as "nondiscriminatory" under the NVRA. 52 U.S.C. § 20507(b)(1). This Court previously

held that Plaintiffs stated a claim because the term "nondiscriminatory" creates a disparate-impact standard. ECF No. 153 at 24–25. Defendants ask that the Court reconsider the holding.

In addition to the language in *Husted*, 584 U.S. at 779, implying that "discriminatory intent" was required to violate the nondiscrimination provision, a long line of election-law precedent interprets the term to mean "without discriminatory intent" or "not facially discriminatory." Only a year before Congress enacted the NVRA, the Supreme Court weighed in on the constitutionality of a statute that prohibited "write-in" votes. See *Burdick v. Takushi*, 504 U.S. 428, 430 (1992). There was no question that the statute had a disparate impact on certain political groups, yet the Supreme Court applied the doctrinal test for politically "nondiscriminatory" regulations because the statute made no classifications on its face and was not enacted with discriminatory intent. *Id.* at 434. Likewise, the Supreme Court used the term "nondiscriminatory" as a synonym for "generally applicable" in *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983), which was also decided before the enactment of the NVRA. *Id*. at 788 n.9. The Supreme Court has continued to use the term "nondiscriminatory" to reference intentional or facial discrimination since then. For example, in the Supreme Court's marquee case concerning voting regulations that have a disparate impact, *Crawford v. Marion County Election Board*, 553 U.S. 181, 196–97, 206 (2008), both Justice Stevens's plurality and Justice Scalia's concurrence described Indiana's voter-ID law as "nondiscriminatory" because it was facially neutral.

To be sure, these cases did not concern alleged discrimination based on national origin (as compared to political viewpoint or race), but the fact remains that the term "nondiscriminatory" has been consistently used in the election-law context to refer to policies that do not discriminate facially or intentionally. This Court instead relied on two out-of-circuit cases that appeared to read "nondiscriminatory" to create a disparate-impact standard, ECF No. 153 at 24, but neither of them

undertook any in-depth analysis of the term or discussed the Supreme Court's consistent usage of "nondiscriminatory" to mean facially neutral.

Properly viewing "nondiscriminatory" in light of these precedents, Defendants plainly comply with the NVRA because they are not classifying *anyone* based on that person's national origin or status as a naturalized citizen. A person is subject to the noncitizen removal process only when that person states contemporaneously on a DMV form that he is not an American citizen, or when his DMV documentation, confirmed by a fresh SAVE search, indicates a lack of citizenship. SAC ¶ 70; ECF No. 23-2 at 3–4. Nothing in this process discriminates against individuals on the basis of naturalized citizenship or national origin. If a natural-born citizen erroneously answers "no" to the citizenship question on a DMV form, he is treated the same as a naturalized citizen who erroneously checks the "no" box. The complaint makes no allegations to the contrary. Both individuals will receive a letter in the mail asking them to clarify their citizenship and will remain on the rolls if they respond to the letter confirming their citizenship status. SAC ¶ 50.

### C.    Plaintiffs' claim for information under the NVRA fails

Plaintiffs' claim under the NVRA's public-inspection provision should also be dismissed. See 52 U.S.C. § 20507(i) ("Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."). Plaintiffs allege that Defendant Beals violated their right to "public inspection" by "refusing to provide Plaintiffs with the list of voters identified as potential noncitizens." SAC ¶ 98.

Plaintiffs have failed to state a claim. The public-inspection provision of the NVRA does not give any person an unfettered right to *receive* state voting records in any way he pleases. As the Eleventh Circuit has made clear, the phrase "public inspection" has definite meaning in the

information-litigation realm, and it does not require the *production* of documents. *Greater Birmingham Ministries*, 105 F.4th at 1332.

The phrase "public inspection" was transplanted from its original location in FOIA's "reading room provision," which allowed individuals to come to the agency in-person and review documents in a physical room. Michael Herz, *Law Lags Behind: FOIA and Affirmative Disclosure of Information*, 7 Cardozo Pub. L., Pol'y & Ethics J. 577, 586–87, 591 (2009). If a document was available for "public inspection," it was "exempted from an agency's FOIA obligation to produce records upon request." *Greater Birmingham Ministries*, 105 F.4th at 1332. Thus, the "public inspection" requirement does not force States to produce documents to private parties. 52 U.S.C. § 20507(i). It simply requires them to open the doors to the file room if the party shows up in person and requests to see them.

Plaintiffs do not request in-person access to a file room in Richmond. They request that Defendants produce the requested records. ECF No. 23-7 (copy of document request). Production and inspection are not the same thing, and a right to one does not create a right to the other. See *Greater Birmingham Ministries*, 105 F.4th at 1332. They therefore fail to state a claim under the "public inspection" provision. 52 U.S.C. § 20507(i)

Plaintiffs do not attempt to plead facts sufficient to invoke the photocopy requirement in the Public Inspection Provision, and for good reason. That provision mandates that States "shall" provide for, "where available, photocopying [of voting records] at a reasonable cost." 52 U.S.C. § 20507(i). This provision, as it plainly states, creates a mandatory duty to (1) furnish "photocopies" when they are (2) "available" to create at a (3) reasonable price. *Ibid.* The complaint does not attempt to explain how "photocop[ies]" of the electronic data it requests are "available." 52 U.S.C. § 20507(i)(1). Indeed, the word "photocopy" does not appear in the complaint a single

time. Without these allegations, the complaint does not create a plausible inference that Plaintiffs are entitled to relief.

Even if Plaintiffs did attempt to invoke this provision, their attempt would fail. A photocopy is "a photographic reproduction of (printed or graphic material)." *Photocopy*, The American Heritage Dictionary of the English Language (3d ed. 1992). And as the Eleventh Circuit plainly put it, a "photocopy" does not "include electronic production." *Greater Birmingham Ministries*, 105 F.4th at 1334. "As any former intern can tell you, if your boss asks for a photocopy of a document, you walk over to the photocopier, feed the original into the machine, and return with a physical, printed copy." *Ibid.* One cannot "photocopy" a database. The complaint is clear that the data being sought is contained in "databases," and does not seek paper copies of physical files. SAC ¶¶ 8, 48, 49, 71.

This Court concluded otherwise, but it did so based on a seeming misunderstanding of Defendants' argument. The Court construed Defendants' argument to be that electronic records were *per se* excluded. ECF No. 153 at 31. But Defendants' argument is that they have no obligation to "produce" any records whatsoever. That is what the Eleventh Circuit held in *Greater Birmingham Ministries*, and that decision is correct. Because Defendants have no obligation to produce documents, it is irrelevant that the NVRA's public-inspection provision covers a broad category of documents. *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336–38 (4th Cir. 2012). What documents the NVRA covers and what the NVRA requires parties to do with those documents are two different questions.

## CONCLUSION

This Court should dismiss the complaint.

Dated: November 6, 2025

Respectfully submitted,

**SUSAN BEALS**, in her official capacity as Virginia Commissioner of Elections; **JOHN O'BANNON**, in his official capacity as Chairman of the State Board of Elections; **ROSALYN R. DANCE**, in her official capacity as Vice-Chairman of the State Board of Elections; **GEORGIA ALVIS-LONG**, in her official capacity as Secretary of the State Board of Elections; **CHRISTOPHER P. STOLLE**, and **J. CHAPMAN PETERSEN**, in their official capacities as members of the State Board of Elections; and **JASON MIYARES**, in his official capacity as Virginia Attorney General

By:   */s/ Thomas J. Sanford*
    Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*

Charles J. Cooper *(Pro Hac Vice)*
Bradley L. Larson *(Pro Hac Vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Defendants Susan Beals, John O'Bannon, Rosalyn R. Dance, Georgia Alvis-Long, Christopher P. Stolle, J. Chapman Petersen, and Attorney General Jason Miyares*

Jason S. Miyares
    *Attorney General*
Kevin M. Gallagher (VSB #87548)
    *Solicitor General*
Graham K. Bryant (VSB #90592)
    *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on November 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

   */s/ Thomas J. Sanford*

Thomas J. Sanford (VSB #95965)

*Deputy Attorney General*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

<table>
<tr><td>

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*,

    *Plaintiffs*,

        v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*,

    *Defendants*.

</td><td>

Case No. 1:24-cv-01778
Judge Patricia Tolliver Giles

</td></tr>
</table>

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................2

    I.     Statutory Framework and Factual Background ...................................................2

    II.    Procedural Background..........................................................................................4

LEGAL STANDARD .......................................................................................................7

ARGUMENT ...................................................................................................................8

    I.     The law of the case doctrine bars Defendants' duplicative arguments ..........................8

    II.    Plaintiffs' claims are not jurisdictionally barred .......................................................10

          A.  This Court correctly held that the Organizational Plaintiffs have Article III standing ..................................................................................10

          B.  The Individual Plaintiffs have Article III standing ...................................................14

          C.  This Court correctly held that Plaintiffs' Quiet Period Provision claim is not moot ...........................................................................................17

          D.  This Court correctly held that Defendants are proper parties to this lawsuit.........20

    III.   Plaintiffs have sufficiently stated their claims ...........................................................22

          A.  Individual Plaintiffs have a cause of action under the NVRA ..............................22

          B.  This Court correctly held that Plaintiffs have sufficiently stated that Defendants systematically purged voters in violation of the Quiet Period Provision in the NVRA .........................................................................................23

               i.    This Court correctly held that Defendants' removals within 90 days of the election were systematic ..........................................................................24

               ii.   This Court correctly held that the Quiet Period Provision protects the voters removed by Defendants' Purge Program ...........................................25

          C.  This Court correctly held that Plaintiffs have sufficiently pled that the Defendants' Purge Program is nonuniform and discriminatory in violation of the NVRA .......27

          D.  This Court correctly held that Plaintiffs have sufficiently pled that Defendants have violated the Public Disclosure of Voter Registration Activities Provision of the NVRA ...........................................................................................29

CONCLUSION.................................................................................................................30

i

**JA306**

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016) ........................................22

*Al Shimari v. CACI Premier Technology, Inc.*, 684 F. Supp. 3d 481 (E.D. Va. 2023) ....................8

*Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476
    (N.D. Ala. Oct. 16, 2024)........................................................................26

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) ................................13, 25, 26

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)....................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................7, 24

*Azalea Spa & Nails Inc. v. Zhang*, No. 1:23-cv-712, 2025 WL 991029 (E.D. Va. Apr. 2, 2025)....8

*Beals v. Virginia Coalition for Immigrant Rights*, No. 24A407, 2024 WL 4608863, slip op.
    (U.S. Oct. 30, 2024) (mem.) .............................................................5

*Bishop v. Bartlett*, 575 F.3d 419 (4th Cir. 2009) .......................................................16

*Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770
    (4th Cir. 2023)...........................................................................15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)......................................................14

*Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989)........................................................21

*Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163 (4th Cir. 2025)....................7, 8

*Commodity Futures Trading Commission v. Board of Trade of City of Chicago*, 701 F.2d 653
    (7th Cir. 1983)...........................................................................18

*CSX Transportation, Inc. v. Board of Public Works*, 138 F.3d 537 (4th Cir. 1998)......................21

*Deutsche Bank National Trust Company v. Fegely*, No. 3:16-cv-147, 2020 WL 201048
    (E.D. Va. Jan. 13, 2020) ................................................................8

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021)...........................................................21

*Evans v. United States*, 105 F.4th 606 (4th Cir. 2024) .................................................7

*Ex parte Young*, 209 U.S. 123 (1908) ..................................................................20

*FDA v. Alliance for Hippocratic Medicine* ("*AHM*"), 602 U.S. 367 (2024)...............10, 11, 12, 15

*Federal Election Commission v. Wisconsin Right to Life, Inc.* (*WRTL*),
    551 U.S. 449 (2007).....................................................................18, 19

**JA307**

*Florida State Conference of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008)....................13

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000) .........................................................12

*Fusaro v. Howard*, 19 F.4th 357 (4th Cir. 2021)..........................................................................10

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ....................................................................7

*Gonzalez v. Arizona*, No. 06-cv-1268, 2008 WL 11395512 (D. Ariz. Aug. 20, 2008) .................23

*Greater Birmingham Ministries v. Secretary of State of Alabama*,
    105 F.4th 1324 (11th Cir. 2024)..............................................................................................29

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982).................................................10, 11

*Honig v. Doe*, 484 U.S. 305 (1988).................................................................................................19

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ......................................................................7

*Lighthouse Fellowship Church v. Northam*, 20 F.4th 157 (4th Cir. 2021)....................................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .....................................................................17

*Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011) ................................................................................18, 19

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025) ....................................................9, 26, 28

*North Carolina Right to Life v. Leake*, 524 F.3d 427 (4th Cir. 2008) ...........................................18

*North Carolina State Conference of the NAACP v. North Carolina State Board of Elections*,
    No. 1:16-CV-1274, 2016 WL 6581284 (M.D.N.C. Nov. 6, 2016) .........................................25

*Northern Virginia Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025).......1, 14

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .........................27, 29

*Public Interest Legal Foundation v. Chapman*, 595 F. Supp. 3d 296 (M.D. Pa. 2022)................30

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)............................30

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
    996 F.3d 257 (4th Cir. 2021).....................................................................................................7

*Pulsifer v. United States*, 601 U.S. 124 (2024) ..............................................................................26

*RNC v. North Carolina State Board of Elections*, 120 F.4th 390 (4th Cir. 2024) ..............10, 11, 12

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .....................15

*Schneider v. Rusk*, 377 U.S. 163 (1964) ..........................................................................................2

*Sejman v. Wanter-Lambert Company, Inc.*, 845 F.2d 66 (4th Cir. 1988) ........................................7

iii

*Sharma v. Hirsch*, 121 F.4th 1033 (4th Cir. 2024) ................................................16, 18, 19

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...............................................16, 17

*Town of Chester, New York v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) .......................14

*United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012)..................................28

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002) .........20

*Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071,
    2024 WL 4601052 (4th Cir. Oct. 27, 2024) ....................................5, 24, 25, 26

*Voter Reference Foundation, LLC v. Torrez*, 727 F. Supp. 3d 1014 (D.N.M. 2024).....................30

*Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008) ...........................................................7

**Codes**

52 U.S.C. §§ 20501 *et seq.*..................................................................................................2

52 U.S.C. § 20507...............................................................................................................25

52 U.S.C. § 20507(a)(3)....................................................................................................26

52 U.S.C. § 20507(b)(1)................................................................................................2, 27, 28

52 U.S.C. § 20507(c)(2)(A).........................................................................................2, 25, 26

52 U.S.C. § 20507(i)...........................................................................................................3

52 U.S.C. § 20507(i)(1)....................................................................................................29

52 U.S.C. § 20510(b)(1)....................................................................................................22

52 U.S.C. § 20510(b)(2)....................................................................................................22

Va. Code § 24.2-104..........................................................................................................4

Va. Code § 24.2-104.1......................................................................................................4

Va. Code § 24.2-404.4......................................................................................................4

Va. Code § 24.2-410.1(A)..............................................................................................3, 19

Va. Code § 24.2-427..........................................................................................................1

Va. Code § 24-2-427(B)-(C).........................................................................................4, 21

Va. Code § 24.2- 427(B)(iii) ...........................................................................................3

iv

**JA309**

**Other Authorities**

Emergency Application for Stay, *Beals v. Virginia Coalition for Immigrant Rights*,
   No. 24A407 (U.S. Oct. 28, 2024) .............................................................................4

H.R. Rep. No. 103-9 (1993) .............................................................................................27

S. Rep. No. 103-6 (1993) ................................................................................................27

**JA310**

## INTRODUCTION

The Parties are before this Court to assess a second Motion to Dismiss from Defendants. Their Memorandum in Support of the motion begins with the statement, "some arguments Defendants raise for dismissal will be familiar to the Court." ECF No. 186 at 1. This is a vast understatement: Defendants ask this Court to reconsider its prior rulings on standing for the Organizational Plaintiffs, on sovereign immunity, and on mootness, as well as its prior rulings that Plaintiffs sufficiently pled that the Purge Program[1] is systematic, the Quiet Period Provision protects voters from purges purportedly aimed at eliminating noncitizens from the rolls, that the Purge Program is nonuniform and discriminatory, and that Defendants violate the NVRA's Public Disclosure requirements. This Court rejected all these arguments when it considered Defendants' first Motion to Dismiss and many of them at the preliminary injunction stage as well. This Court should reject these arguments under the law of the case doctrine, because Defendants have entirely failed to demonstrate any of the extraordinary circumstances that would warrant a departure from this Court's prior holdings. And Defendants' "new" arguments concerning Individual Plaintiffs Shaw and Shiferaw are equally unavailing, because they almost entirely rely on arguments that have already been rejected by this Court in its consideration of the first Motion to Dismiss.

On the merits, nothing has changed. Organizational Plaintiffs have Article III standing, as do Individual Plaintiffs, and regardless, this Court has jurisdiction so long as one plaintiff has standing to seek each form of relief requested. *See N. Va. Hemp and Agric., LLC v. Virginia*, 125 F.4th 472, 491 (4th Cir. 2025). Further, Plaintiffs' claims are not moot, and Defendants are proper parties to this lawsuit. Plaintiffs have also sufficiently stated their claims that: Individual Plaintiffs have a cause of action under the NVRA's plain text and relevant case law; Defendants have

---

[1] The "Purge Program" as used herein refers to Executive Order 35 (E.O. 35), Va. Code § 24.2-427, and actions taken to further Defendants' voter purge effort.

1

systematically purged voters in violation of the NVRA's Quiet Period Provision and will continue to do so; the Purge Program is nonuniform and discriminatory in violation of the NVRA; and Defendants violated the NVRA's Public Disclosure Provision.

The right to vote is foundational to American democracy, and American citizens hold that right in equal measure regardless of where they were born. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964). In passing the National Voter Registration Act (NVRA), Congress sought to protect that fundamental right, in particular defending it against voter registration and list maintenance programs that threaten to exclude eligible voters from the ballot box and/or operate in a nonuniform or discriminatory manner. Defendants are operating such a program. The Court should deny Defendants' duplicative Motion in its entirety and permit Plaintiffs' case to move forward.

## BACKGROUND

## I.     Statutory Framework and Factual Background

The United States Congress enacted the National Voter Registration Act of 1993 to protect and promote the "fundamental right" to vote. 52 U.S.C. §§ 20501 *et seq*. The NVRA contains several key provisions at issue here. First, the Quiet Period Provision prohibits systematic voter purges on the eve of an election because they could strip eligible citizens of their fundamental right to vote. 52 U.S.C. § 20507(c)(2)(A). Second, the NVRA requires that all voter list maintenance programs "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id.* § 20507(b)(1). These provisions are intended to "increase the number of eligible citizens who register to vote in elections for Federal office," to protect "the integrity of the electoral process," and ensure the maintenance of "accurate and current voter registration rolls." 52 U.S.C. § 20501(b). Third, the NVRA's Public Disclosure of Voter Registration Activities Provision requires that states "shall maintain for at least 2 years and shall make available for public inspection . . . all

records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

The Virginia Code provides that general registrars shall cancel the registrations of all persons who are known not to be U.S. citizens by reasons of report from the Department of Motor Vehicles (DMV) or from the Department of Elections (ELECT) based on information received from the Systematic Alien Verification for Entitlements Program (SAVE). Va. Code § 24.2-427(B)(iii). Virginia law also requires the DMV to provide to ELECT on a monthly basis a list of people "who have indicated a noncitizen status." Va. Code § 24.2-410.1(A).

On August 7, 2024, the beginning of the Quiet Period for the 2024 General Election, Governor Youngkin announced Executive Order 35 (E.O. 35), which mandates an escalation of the list maintenance procedures established by the Virginia Code. ECF No. 26-4. E.O. 35 directs the DMV to "expedite the interagency data sharing with [ELECT] of noncitizens by generating a daily file of all non-citizens transactions." *Id.* at 4. ELECT is then required to make daily updates to the voter rolls by comparing "the list of individuals who have been identified as non-citizens to the list of existing registered voters[.]" ECF No. 26-4 at 3-4. Defendants also have described an "*ad hoc*" review purported to remove, after applying a SAVE search, voters who indicated citizenship in a DMV transaction but also had noncitizen documents on file. ECF No. 92-1 at 5.

Once ELECT has identified these alleged noncitizens, ELECT sends the data to county registrars. Once ELECT notifies a registrar that a registered voter is allegedly a noncitizen, the registrar performs no additional citizenship check—the registrar verifies only that the purported noncitizen is the same person as the one listed on the voter rolls. ECF No. 26-5 at 35-36. Indeed, Virginia law does not allow registrars to conduct any further inquiry into the individual's

3

citizenship status.[2] When there is an identity match, the registrar, as directed by ELECT, sends a letter to "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days" of sending the notice and ultimately cancels the voter's registration if the registrar's office does not receive this affirmation. ECF No. 26-4 at 4; *see also* Va. Code § 24-2-427(B)-(C); ECF No. 120 at 10. The registrar can manually cancel the recipient's registration starting 14 days from the date the letter was mailed by the registrar. *Id.* The person is automatically canceled and removed from the voter rolls by the Virginia Election and Registration Information System (VERIS) after 21 days. *Id.* As a result of the Purge Program, many registrants with contradictory indicators of citizenship were automatically subjected to the removal process. ECF No. 26-4 at 4; ECF No. 182 ¶ 51. From the start of the pre-election Quiet Period on August 7, 2024 until October 21, 2024—the date on which Defendants provided the Purge List to Plaintiffs—over 1,600 voters were purged. *See* ECF No. 110-1.

The Purge Program also directs counties to refer voters removed for alleged noncitizenship to Commonwealth Attorneys for criminal investigation and potential prosecution. ECF No. 26-4 at 4. Some counties have also referred those voters to Defendant Attorney General Miyares, who has authority under statute to decide whether to take action regarding ELECT referrals. Va. Code §§ 24.2-404.4, 24.2-104, 24.2-104.1.

## II.     Procedural Background

On October 7, 2024, Plaintiffs filed their complaint challenging Defendants' administration of an ongoing program to remove certain Virginia voters from the rolls and their refusal to provide information regarding the program. *See* ECF No. 23. Plaintiffs allege that Defendants'

---

[2] Defendants have conceded no further inquiry is conducted. *See, e.g.*, Emergency Application for Stay at 7, *Beals v. Va. Coal. for Immigrant Rts.*, No. 24A407 (U.S. Oct. 28, 2024); ECF No. 119 at 95-97; ECF No. 92-1 at 2; Va. Code § 24.2-427(C).

4

administration of the Purge Program violates several provisions of the NVRA, including

provisions governing voter list maintenance and the public disclosure of related records. ECF No.

182 ¶¶ 87-99.

On October 15, 2024, Plaintiffs moved for a preliminary injunction. ECF No. 26. After a

hearing, this Court found that Plaintiffs suffered irreparable harm from Defendants' Program,

which "curtailed the right of eligible voters to cast their ballots in the same way as all other eligible

voters," ECF No. 120 at 20:6-8, and enjoined Defendants from "continuing any systemic program

intended to remove the names of ineligible voters from registration lists less than 90 days before

the November 5, 2024, federal General Election." ECF No. 112 at 2. The Fourth Circuit denied

stay pending appeal, concluding that Defendants' Purge Program constitutes a "program" that

"most certainly is" systematic, and that at least some "eligible citizens have had their registrations

canceled and were unaware that this was even so." *See Va. Coal. for Immigrant Rts. v. Beals*, No.

24-2071, 2024 WL 4601052, at *1-2 (4th Cir. Oct. 27, 2024) (internal quotations omitted). On

October 30, 2024, the Supreme Court granted Defendants' motion for stay. *Beals v. Va. Coal. for

Immigrant Rts.*, No. 24A407, 2024 WL 4608863, slip op. at 1 (U.S. Oct. 30, 2024) (mem.).

On November 21, 2024, Defendants filed their first Motion to Dismiss and a Memorandum

in Support of that motion. ECF Nos. 121, 122. On August 12, 2025, this Court denied in part and

granted in part Defendants' Motion. ECF No. 153. This Court rejected all of Defendants'

jurisdictional arguments, holding that Plaintiffs VACIR, LWVVA, and ACT have organizational

standing and associational standing to pursue Counts I, II, and III, and that VACIR and LWVVA

have organizational standing to pursue Count IV. ECF No. 153 at 14. This Court also rejected each

of Defendants' sovereign immunity arguments as to the Attorney General and the remaining

Defendants, holding that Plaintiffs' allegations sufficed to support an action under *Ex parte Young*,

because Plaintiffs sought a prospective remedy for ongoing harm, and that *Ex parte Young* applied to the Attorney General, because he "unambiguously has the authority to enforce the law or practice Plaintiffs challenge." *Id.* at 17-19.

Next, this Court rejected Defendants' Rule 12(b)(6) arguments, except as to Count III. The Court rejected Defendants' argument that Plaintiffs' Quiet Period Provision claim (Count I) was moot, concluding that Defendants' conduct was "capable of repetition, yet evading review." *Id.* at 19-21 (citation omitted). The Court held that Plaintiffs had adequately pled a violation of the Quiet Period Provision, rejecting for a second time in this case Defendants' arguments that the Purge Program was not systematic and Defendants' proposed reading of the Quiet Period Provision. *Id.* at 22-23. This Court also decided that Plaintiffs adequately pled a violation of the NVRA's Uniform and Nondiscriminatory Provision (Count II) by alleging that "naturalized citizens . . . are more likely to have their registrations flagged for cancellation" and that "Defendants' program has a discriminatory impact." *Id.* at 24-26. Finally, the Court held that Plaintiffs sufficiently stated their Public Disclosure Provision claim (Count IV), rejecting Defendants' narrow reading of the Public Disclosure Provision and holding that the claim is not moot, because certain records Plaintiffs requested remained outstanding and the claim "fits the capable of repetition yet evading review exception." *Id.* at 29-32.

On October 1, 2025, Plaintiffs filed a Motion for Leave to File Second Amended Complaint and Add Party Plaintiffs. ECF No. 172-1 at 1-2. On October 17, 2025, this Court granted Plaintiffs' Motion. The Second Amended Complaint adds two individual plaintiffs, Rina Shaw and Genet Shiferaw, and includes updated information on organizational plaintiffs' activities and information that Defendants have (and have not) provided since the First Amended Complaint was filed. ECF No. 182 at 1-2.

On November 6, 2025, Defendants filed their second Motion to Dismiss and a Memorandum in Support of that motion. ECF Nos. 185, 186.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing a 12(b)(6) motion, the Court must "accept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 263 (4th Cir. 2021); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Likewise, under Rule 12(b)(1), "[w]hen a defendant makes a facial challenge to subject matter jurisdiction, . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation modified); *see also, e.g.*, *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024); *Wilson v. Johnson*, 535 F.3d 262, 264 (4th Cir. 2008).

 "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages if the same case." *Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163, 169 (4th Cir. 2025) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)). The doctrine, which guides courts' discretion to revisit interlocutory orders before entering final judgment, is "a prudent judicial response to the public policy favoring an end to litigation." *Sejman*

*v. Wanter-Lambert Co., Inc.*, 845 F.2d 66, 68 (4th Cir. 1988); *see also Columbia Gas Transmission*, 148 F.4th at 169.

> [T]he law of the case, once established, 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal [] unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'

*Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 491 (E.D. Va. 2023) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). Courts in this district have applied the law of the case doctrine to reject second motions to dismiss which "raise[] identical claims to those rejected" previously. *Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-147, 2020 WL 201048, at *4 (E.D. Va. Jan. 13, 2020); *Azalea Spa & Nails Inc. v. Zhang*, No. 1:23-cv-712, 2025 WL 991029, at *1 (E.D. Va. Apr. 2, 2025) (rejecting, under the law of the case doctrine, defendant's second motion to dismiss in which "arguments mirror the arguments raised by Defendant" previously).

## ARGUMENT

I.     **The law of the case doctrine bars Defendants' duplicative arguments.**

Defendants' Motion should be denied because, as discussed *infra*, the law of the case wholly snuffs out Defendants' arguments, and none of the exceptions to the law of the case doctrine are met here. Defendants repeatedly ask this court to reconsider conclusions and findings in its ruling on the first Motion to Dismiss. While the law of the case doctrine dictates that courts *may* revisit their decisions when the circumstances require, "as a rule[,] courts should be loathe to do so in the absence of extraordinary circumstances." *Al Shimari*, 684 F. Supp. 3d at 491 (quoting *Christianson*, 486 U.S. at 817). There are no such extraordinary circumstances here. Nor do Defendants even attempt to make such a showing; the law of the case doctrine appears in a *single*

*sentence* of Defendants' Motion, ECF No. 186 at 8, and Defendants neither identify nor apply the exceptions to the law of the case doctrine.

*First*, there has been no subsequent trial producing substantially different evidence. Even if this Court were to consider evidence outside of a subsequent trial, which Defendants seem to encourage by gesturing at new facts in the Second Amended Complaint and the fact of Governor-elect Spanberger's recent election, none of those facts change the core of the Court's analysis in its prior denial of Defendants' Motion to Dismiss.

*Second*, there has been no change in controlling authority that would justify reversing course. Defendants seem to attempt to argue for this exception for the Quiet Period Claim, relying on "six judges on the Ninth Circuit" who recently adopted Defendants' reading of the Quiet Period Provision. *See* ECF No. 186 at 19. But those six judges, apart from being in a circuit which does not provide controlling authority to this Court, were writing to *dissent* from the Ninth Circuit's vote, *not* to rehear *en banc* a Ninth Circuit panel's *rejection* of Defendants' interpretation of the Quiet Period Provision. The Ninth Circuit panel held that a purge program like Defendants', that was purportedly aimed to remove non-citizens, was "precisely the type of systematic cancellation program that the 90-day Provision was meant to preclude." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025). Therefore, rather than providing a contrary decision of law, *Mi Familia Vota* further *supports* this Court's holding. Absent any change in controlling authority, Defendants are merely re-raising their rejected jurisdictional arguments in substantially the same form and duplicating their prior rejected assertions that Plaintiffs insufficiently pled Counts I, II, and IV.

*Third*, this Court's prior decision was not clearly erroneous and would not work manifest injustice. In this context,

> for a prior decision of this Court to be 'clearly erroneous,' it cannot be 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old,

**JA319**

unrefrigerated dead fish.' . . . That is, in order for this exception to apply, the prior decision must be 'dead wrong.'

*Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021) (*quoting TFWS, Inc.*, 572 F.3d at 194). Once again, Defendants' repetition of old arguments and mere disagreement with this Court's well-reasoned and supported holdings do not meet this high bar.

This Court should decline Defendants' invitations to reconsider its prior rulings and reject Defendants' Motion to Dismiss the Second Amended Complaint, because the law of the case requires it.

## II.    Plaintiffs' claims are not jurisdictionally barred.

### A.    This Court correctly held that the Organizational Plaintiffs have Article III standing.

Defendants provide no reason for this Court to depart from its prior holding that Plaintiffs VACIR, LWVVA, and ACT have both organizational and associational standing. Defendants largely attempt to revive arguments made in their first Motion to Dismiss. Defendants do not substantively challenge causation or redressability, focusing their arguments on whether Organizational Plaintiffs have suffered an injury in fact for organizational standing or made a sufficient showing for associational standing. *See* ECF No. 186 at 8-14. Curiously, Defendants appear to argue that the passage of time, in which Plaintiff Organizations' injury has continued and compounded, and the Second Amended Complaint's more specific pleadings, which identify by pseudonym organizational members threatened by the Purge Program, undermine Plaintiff Organizations' standing claims. ECF 186 at 9-12. But those assertions are baseless, and the Court should reject Defendants' arguments for the same reasons it did previously. ECF No. 153 at 7-14.

As this Court and the Fourth Circuit have already held, Plaintiffs have established organizational standing. This Court should once again reassert its interpretation and application of *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982); *FDA v. Alliance for Hippocratic*

*Medicine* ("*AHM*"), 602 U.S. 367 (2024); and *RNC v. North Carolina State Board of Elections*,
120 F.4th 390 (4th Cir. 2024).

Rather than abrogating *Havens Realty* in the way Defendants imagine, *see* ECF No. 186 at
11-13, *AHM* in fact expressly re-affirmed the core of *Havens Realty*: that plaintiff organizations
have standing when a defendant's actions "perceptibly impair[]" their core organizational activities
"with the consequent drain on the organization's resources." *Havens Realty*, 455 U.S. at 379; *see
AHM*, 602 U.S. at 395. The *AHM* plaintiffs alleged only that they had incurred costs by
"advocat[ing] against the defendant's actions," *AHM*, 602 U.S. at 394, but not that those actions
"imposed any similar impediment" to their core organizational activities, *id.* at 395. The *AHM*
Plaintiffs were just "concerned bystanders" without a concrete stake in the dispute. *Id.* at 382. In
other words, *AHM* merely clarified that, absent an impairment of core organizational activities as
in *Havens Realty*, plaintiffs had done nothing more than "assert standing simply because they
object to [defendant's] actions." *Id.* at 394.

*RNC v. North Carolina State Board of Elections* foreclosed Defendants' reading of *AHM*
and remains "squarely on point." ECF No. 153 at 10-12. In *RNC*, the Court explained that alleged
non-compliance with a federal voter-registration law "directly affected and interfered with" the
core organizational activities of "counseling interested voters and volunteers on election
participation," because the alleged inaction forced plaintiffs to "divert significantly more of their
resources into combatting election fraud" and "frustrated their organizational and voter outreach
efforts." *RNC*, 120 F.4th at 397, 410 (internal citations and quotation marks omitted). Considering
*AHM*, the Fourth Circuit distinguished between an "uncompelled choice to expend resources" "not
[made] in response to a threat to the organization's core mission," which cannot establish standing,
and resource expenditures necessary to continue conducting core organizational activities—the

11

**JA321**

kind of expenditures made by Organizational Plaintiffs here—which can. *Id.* at 396-97. Defendants assert that *RNC* stands for the proposition that organizations may have standing to challenge only "a law that directly harms its *already existing* activities" and claim that Plaintiffs have made no such allegations. ECF No. 186 at 13-14. But this Court already rejected Defendants' reading of *RNC* ("The Fourth Circuit required no more than what Plaintiffs allege here to establish organizational standing for the *RNC* plaintiffs." ECF No. 153 at 11) and furthermore found that Plaintiffs have satisfied even that reading ("Even if the test required Plaintiffs to allege direct harm to pre-existing core activities, Plaintiffs have sufficiently alleged that Defendants' program has stymied their 'organizational and voter outreach efforts' because they have to re-train staff and volunteers and expend more resources encouraging and educating voters on how to check their registration." *Id.*).

This Court correctly found that Plaintiff Organizations have themselves suffered redressable injuries, because "Defendants' violations of the NVRA impair their core mission of providing voting counseling, voter outreach, among other initiatives, which consequently force them to divert their resources to re-register voters." ECF No. 153 at 10-11. Plaintiffs' updated allegations about how the Purge Program continues to "directly affect[] and interfere[] with" their core organizational activities, *AHM*, 602 U.S. at 395, reinforce, rather than undercut, this Court's prior holding that Plaintiff Organizations have organizational standing to challenge the Purge Program.

As this Court previously held, Plaintiffs also have associational standing, because at least one member has standing in their own right, and organizations have standing to sue on behalf of their members. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 181 (2000). Evidence shows that least one member of Plaintiff League of Women Voters of Virginia,

who does not wish to be named, appeared on the Purge List and was removed from the voting rolls pursuant to Defendants' Purge Program.[3] ECF No. 103-1 (Suppl. Porte Decl.) ¶¶ 3-5; see ECF No. 103 at 16. Even Defendants do not contest that a purged voter, whose fundamental right to vote has been directly impaired by removal from the voter rolls and referral for investigation, would undoubtedly have standing. And at no point—not during the preliminary injunction proceedings, not in their first Motion to Dismiss briefing, and not in their second Motion to Dismiss briefing— have Defendants challenged the Supplemental Porte Declaration's confirmation that a LWVVA member was purged.

The naturalized-citizen members in Plaintiff Organizations' ranks, including those pseudonymously named in the Second Amended Complaint,[4] further bolster associational standing, because those members also face threatened harm—such as removal from the voter rolls and referral for investigation—due to the Purge Program. *See* ECF No. 182 ¶¶ 23, 25, 31, 34, 36. Indeed, the Eleventh Circuit recognized that the "risk of false positives and mismatches" in voter registration removals creates a "realistic danger" that Plaintiff Organizations' naturalized-citizen members will be erroneously swept up by such programs. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014). Nor is this harm speculative: both the mechanism of harm—errors and mismatches—and the threatened result—purging naturalized citizens—are actually occurring and entirely traceable to Defendants' actions. See ECF No. 26-1 at 17-19; ECF No. 26-2 at 4, 7-9; *see also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1163-64 (11th Cir. 2008)

---

[3] Given that Plaintiffs brought this suit in part to protect their members from Defendants' threats of prosecution and attendant intimidation, *see* ECF No. 182 ¶¶ 5, 23, 27, 31, 36, it is unsurprising that affected individuals do not wish to be identified by name.

[4] Plaintiffs can provide the full names of these naturalized citizen members to Defendants pursuant to a protective order if necessary. Defendants have previously indicated that they are open to the same. *See* ECF No. 119 at 11:5-12.

(distinguishing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on that basis in the context of a similar voter purge program). This harm and the naming of naturalized-citizen members experiencing it confer associational standing on behalf of these members and, therefore, extinguish Defendants' arguments that Organizational Plaintiffs have not identified specific members.

In any event, this Court correctly determined, and Defendants have provided no reason to disturb this Court's holding, that "at this stage, it is not necessary that an organizational plaintiff alleging associational standing disclose the identity of the specific member that was harmed so long as they allege a sufficient injury to a member." ECF No. 153 at 14. Organizational Plaintiffs therefore also have established associational standing.

Finally, this Court found and Defendants do not appear to challenge anew that Plaintiffs VACIR and LWVVA have established organizational standing for Count IV. ECF No. 153 at 14-15. Plaintiffs VACIR and LWVVA submitted the notice they sent to Defendants regarding Defendants' failure to comply with the statute along with responsive documents. ECF No. 26-16 ¶¶ 17, 20. Because the NVRA requires such disclosure, Plaintiffs VACIR and LWVVA have suffered an injury in fact and have standing for their Public Disclosure Provision claim.

## B.    The Individual Plaintiffs have Article III standing.

To start, this Court need not consider Defendants' arguments about Individual Plaintiffs' standing, because Organizational Plaintiffs have standing to seek each form of relief requested. When there are multiple plaintiffs in a suit, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Once the Court has determined at least one plaintiff has "standing to seek each form of relief requested in the complaint . . . it is unnecessary to consider the other plaintiffs." *N. Va. Hemp and Agriculture, LLC v. Virginia*, 125 F.4th 472, 491 (4th Cir. 2025); *see also, e.g.,*

14

**JA324**

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006); *Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023). This Court has already correctly determined that Organizational Plaintiffs have standing to pursue each claim. ECF No. 153 at 14-15. The Court's analysis can end there.

    Regardless, the Individual Plaintiffs do have standing. A Plaintiff establishes standing by showing they suffered an "injury-in-fact" that was caused by the Defendant and that the Court can redress. *AHM*, 602 U.S. at 380. Ms. Shiferaw and Ms. Shaw have sufficiently alleged that they are "U.S. citizens who were erroneously purged by Defendants' Purge Program." ECF No. 182 ¶ 12. Ms. Shiferaw has further alleged that the harm to her is directly traceable to the fact that she is a naturalized citizen. ECF No. 182 ¶¶ 39-41. Defendants' program "flags registrations for cancellation who have indicated that they *may have been* a non-citizen at some point but otherwise attested to being a citizen," ECF No. 153 at 25 (emphasis in original), and Ms. Shiferaw has clearly alleged that her registration would carry that indication because "[p]rior to naturalization, Ms. Shiferaw self-identified as a noncitizen when she obtained a Virginia resident identification card." ECF No. 182 ¶ 39. With the benefit of full discovery, Plaintiffs will have more certainty as to when and why both Ms. Shiferaw and Ms. Shaw were removed from the voter rolls, but Plaintiffs' allegations are sufficient to survive Defendants' Motion.[5]

    Defendants' assertions that the Individual Plaintiffs lack standing conflate standing and mootness, and they are wrong on either account. ECF No. 186 at 14-15. Defendants seemingly do not contest that Individual Plaintiffs were injured by being purged from the voter rolls in the 2024

_____

[5] Defendants also object that Ms. Shiferaw makes no specific allegation that she was removed within the Quiet Period. But Ms. Shiferaw has challenged the Purge Program both as it may have been or may in the future be applied to systematically remove her within the Quiet Period *and* because it is nonuniform and discriminatory in violation of the NVRA no matter when she may have been or may in the future be removed.

election cycle. ECF No. 186 at 14. Indeed, the "right to vote is 'the most basic of political rights,' . . . such that the government's interference with that right may satisfy the injury-in-fact requirement." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (internal citation omitted) (quoting *FEC v. Akins*, 524 U.S. 11, 25 (1998)). Instead, they claim that Plaintiffs' past injury cannot support standing to seek prospective injunctive relief. However, this Court has already addressed this argument, and Individual Plaintiffs' allegations fall squarely within the "capable of repetition yet evading review" exception to mootness. ECF No. 153 at 20-21. Where, as here "repeated conduct is before the court in the present, the prospect of future repetition becomes all the more likely." *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2023). The Court's prior findings are consistent with this. In discussing the impacted LWVVA member, the Court found that it was "not persuaded by Defendants' self-serving and circuitous argument that because the member voted in the past 'without an issue' makes the likelihood that the same harm will recur speculative." ECF No. 153 at 21. Likewise, with Ms. Shaw and Ms. Shiferaw, "[a]ccepting Plaintiffs' allegations as true, Defendants offer no reason why, if Defendants were to renew their program before a subsequent federal election cycle, the program would not affect th[ese] same [voters] again." *Id.*; *see also, id.* at 21 n.7 ("Defendants offer no explanation for why Plaintiff LWVVA's member would be removed only in this cycle or any reason to believe that the problem would not recur in a subsequent cycle."); *infra* Part II.C.

Individual Plaintiffs also have standing because they face a credible threat of future enforcement of the Purge Program against them. Plaintiffs may bring pre-enforcement challenges to laws where they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm*

16

JA326

*Workers Nat. Union*, 442 U.S. 289, 298 (1979)). *Driehaus* held that a pro-life organization alleged

a credible threat of enforcement where the organization's intended future conduct was "'arguably

. . . proscribed by [the] statute' they wish[ed] to challenge" and the State previously enforced the

statute against similar conduct. 573 U.S. at 162-67 (quoting *Babbitt*, 442 U.S. at 298). So too here.

Ms. Shaw and Ms. Shiferaw have alleged an intention to vote in future election cycles—conduct

which certainly affects a constitutional interest—and face a credible threat of enforcement under

the Purge Program, as evidenced by their experiences being purged in the 2024 cycle and the

significant evidence that purged voters have been removed from the voter rolls repeatedly. ECF

182 ¶¶ 37-41, 60-61. That threat is especially acute because it carries the threat of criminal

investigation and prosecution of individuals who vote unlawfully. ECF No. 153 at 18; *Driehaus*,

573 U.S. at 165.[6]

The Individual Plaintiffs have alleged injury-in-fact capable of repetition yet evading

review, as well as a credible threat of enforcement sufficient to establish standing at this stage of

litigation.

### C.    This Court correctly held that Plaintiffs' Quiet Period Provision claim is not moot.

Defendants incorrectly contend that Plaintiffs' Quiet Period Provision claim is moot, since

the 2024 elections are over. *See* ECF No. 186 at 15-16. Though the 2024 elections have indeed

passed, Defendants have repeatedly asserted that they have removed voters during the 90-day

periods prior to federal elections for many years and election cycles. *See* ECF No. 122 at 2; ECF

No. 186 at 4. Thus, Plaintiffs challenge a longstanding and ongoing policy of violating federal law,

---

[6] Each element of standing must be proven "with the manner and degree of evidence required at the successive stages of litigation," so "on a motion to dismiss[,] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

17

**JA327**

albeit one that bars action during certain cyclical periods of time. Since Defendants make no claim of cessation of that policy, they cannot reasonably claim mootness simply because we are not presently within a 90-day quiet period. *See, e.g.*, *Commodity Futures Trading Comm'n v. Bd. of Trade of City of Chicago*, 701 F.2d 653, 655 (7th Cir. 1983) (explaining that the passage of the challenged delivery cycle did not moot the case, since Plaintiffs sought "a broader injunction" that would affect future delivery cycles as well).

In any event, this Court correctly held that the "capable of repetition yet evading review" exception applies here as well. ECF No. 153 at 19-22. That exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.* (*WRTL*), 551 U.S. 449, 462 (2007) (quotations omitted). The Fourth Circuit has explained that "[e]lection-related disputes qualify as 'capable of repetition' when there is a reasonable expectation that the challenged provisions will be applied against the plaintiffs again during future election cycles." *Sharma v. Hirsch*, 121 F.4th 1033, 1039 n.1 (4th Cir. 2024) (quotations omitted). Importantly, the Fourth Circuit has made clear that "reasonable expectation" in this context does not require anything approaching certainty. *See N.C. Right to Life Comm. for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 435-36 (4th Cir. 2008) (quoting *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991)). And "the Supreme Court has repeatedly instructed that the exception is especially appropriate when mootness would have otherwise been the result of a completed election cycle." *Id.*; *see also Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011); *N.C. Right to Life*, 524 F.3d. That exception unmistakably applies here, because there is a reasonable expectation that Plaintiffs will suffer injury during future

**JA328**

quiet periods.[7] That standard is easily met here where Defendants have repeatedly argued that the Quiet Period Provision allows the Program to continue during the quiet period; they have not offered to halt purges during future quiet periods; and the accelerated purge required by E.O. 35 is ongoing.

Defendants newly assert that this month's election lessens the risk of future harm and divests this Court of jurisdiction. This is not so. The Defendants claim that "it is wholly speculative" whether Governor-elect Spanberger will leave the Purge Program in place. But Defendants misunderstand what the "capable of repetition yet evading review" exception requires. The concern in these cases is "whether the controversy was *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original). Predicting political futures is an "inexact science at best." *See id.* at 321 (holding possibility that school officials may adapt IEPs to mitigate disruptive student conduct giving rise to injury was too inexact make recurrence improbable). This Court should not guess as to what actions a future Governor may take. Moreover, even if Governor-elect Spanberger rescinds E.O. 35, a possibility for which Defendants provide no proof, a statute still requires some version of the Program to be carried out. Va. Code § 24.2-410.1(A). And it is entirely possible that, even if the General Assembly also wanted to change that statute and the Governor-elect wanted to sign that change into law, that may not be done before

---

[7] Defendants do not dispute that the "challenged action [was] in its duration too short to be fully litigated prior to cessation or expiration," *WRTL*, 551 U.S. at 462, and the Fourth Circuit has not focused on the duration inquiry in election-related cases. *See Sharma*, 121 F.4th at 1039 n.1; *Lux*, 651 F.3d at 401. Even if it were relevant here, there is no question that the duration of Defendants' action during the previous 90-day quiet period was too short to be fully litigated. *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021) ("Notably, the Supreme Court has found a period of as long as two years too short to complete judicial review in the context of the exception for wrongs capable of repetition yet evading review.").

the next quiet period. But ultimately these hypotheticals are, to borrow a phrase from Defendants, "wholly speculative" and do nothing to moot Plaintiffs' claims. Any extension of the Purge Program into the next quiet period will harm Plaintiffs in all the ways Plaintiffs were harmed by the previous quiet period purge, including their organizational harms and the harms to their members. *See* Part II.A., *supra*. Plaintiffs' Quiet Period claim is not moot.

**D.    This Court correctly held that Defendants are proper parties to this lawsuit.**

As this Court has repeatedly found, Defendants remain proper parties this this lawsuit. Under *Ex parte Young*, when a plaintiff seeks injunctive relief to remedy an ongoing violation of federal law and names as defendant a state official who has "some connection" to enforcement of the challenged law, the state official is not entitled to sovereign immunity. 209 U.S. 123, 158, 161 (1908). In determining whether *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646.

Here, the Court has conducted that inquiry, and found that the *Ex parte Young* exception to sovereign immunity applies because, despite Defendants' claims to the contrary, *see* ECF No. 186 at 17, Plaintiffs' Quiet Period Provision claim challenges and seeks prospective relief from an ongoing Purge Program that will continue to improperly remove voters from the rolls within 90 days before every federal election until the Program is enjoined. ECF No. 153 at 15-17; ECF No. 182 ¶¶ 55, 88-89; *id.* at 31 ¶¶ (c), (h), (i), (j), (m). As this Court found, "Defendants' program is neither a one-time event, nor have the removed voters been reinstated" and "[t]o the extent citizens

were systematically removed from these rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law." ECF No. 153 at 16-17. "Further, a permanent injunction would prevent voters who were removed and re-registered from being removed all over again ahead of the next federal general election." *Id.* at 17; *see also, e.g.*, *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989) (former state employee's challenge of his termination satisfied *Ex parte Young* because loss of benefits of employment caused ongoing harm and employee requested injunctive remedy of reinstatement); *see also, e.g.*, *CSX Transp., Inc. v. Bd. of Pub. Works*, 138 F.3d 537, 541 (4th Cir. 1998). Defendants all but ignore these findings by this Court and still can cite no comparable case in which a court held that a similarly situated plaintiff had failed to meet *Ex parte Young*'s requirement.

Defendants also once again claim, under the Fourth Circuit's "special relation" test for *Ex parte Young*, that the Attorney General is not a proper party to the lawsuit because he "plays no role in enforcing Va. Code § 24.2-427(C)." ECF No. 186 at 18. Defendants again "draw the challenged action too narrowly by focusing on whether the Attorney General makes the determination to remove voters from the rolls. After ELECT and the registrars forwards the names of voters who were removed, the Attorney General then chooses whether to investigate and prosecute referrals." ECF No. 153 at 18 (citing Va. Code Ann. §§ 24.2-104, 24.2-1019). This Court correctly held that the Attorney General satisfies the Fourth Circuit's "special relation" test. ECF No. 153 at 18. As the Fourth Circuit explained in *Doyle v. Hogan*, the requisite enforcement authority under *Ex parte Young* can "come from the 'particular act' being challenged, a more general law providing enforcement authority, or 'the general duties of the officer.'" 1 F.4th 249,

255 (4th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. at 157-58). Defendants take issue with the Court's findings but offer no reason why they should be reconsidered.

## III.    Plaintiffs have sufficiently stated their claims.

### A.    Individual Plaintiffs have a cause of action under the NVRA.

Defendants' argument that Plaintiffs do not have a cause of action because they were able to vote in the 2024 election fails, because Defendants misread 52 U.S.C. § 20510(b)(1) and misstate Individual Plaintiffs' claims.

52 U.S.C. § 20510(b)(1) gives "[a] person who is aggrieved" by a violation of the NVRA the ability to bring a civil suit if they provide notice to the relevant state officer and the violation is not corrected within specified time frames. *Id.* § 20510(b)(1)-(2). Defendants contend that the NVRA violations that aggrieved Plaintiffs Shaw and Shiferaw must have been "corrected," because "they were able to cast votes in 2024 and are currently entitled to vote because they are on the voter rolls." ECF No. 186 at 26. But in their NVRA Notice Letters, Plaintiffs Shaw and Shiferaw did not identify their own 2024 purge from the voter rolls as the NVRA violation which they were challenging, but instead challenged the continuing Purge Program as a whole. Ex. A, NVRA Notice Letter on Behalf of Rina Shaw and Genet Shiferaw. There can be no question that Defendants have not corrected that violation and that Plaintiffs Shaw and Shiferaw therefore maintain their cause of action under the plain text of § 20510(b)(2). Defendants provide no case to support a contention that the scope of the NVRA-violative practice being challenged by individuals need be limited to a practice which is continuously aggrieving those individuals. In contrast, courts have allowed NVRA claims by individuals against large-scale practices to move forward even when the individuals' own violations had been "corrected." In *Action NC v. Strach*, voters were deprived of their vote due to an NVRA violation that was subsequently corrected for those voters; the court found that "not only have Individual Plaintiffs alleged sufficient facts to support a

22

particularized, concrete claim of injury-in-fact when denied their right to vote in 2014, they have also sufficiently alleged that if Defendants are not enjoined into compliance with the NVRA, there is a reasonable expectation they will be so injured in the future." 216 F. Supp. 3d 597, 615 (M.D.N.C. 2016). Plaintiffs Shaw and Shiferaw here are in a similar situation in which they have been restored to the voter rolls for now, but their initial purge was still an injury that they have a reasonable expectation will recur. And, despite the fact that the injury they have suffered did not amount to full vote denial, "[a] plaintiff need not have the franchise wholly denied to suffer injury. Any concrete particularized, non-hypothetical injury to a legally protected right is sufficient." *Id.*

*Arizona v. Inter Tribal Council of Arizona, Inc.* is also instructive; in that case, the trial court found individual plaintiffs had a cause of action against a law requiring proof of citizenship to register to vote, even though they had the necessary paperwork to register and vote in person on election day. *Gonzalez v. Arizona*, No. 06-cv-1268, 2008 WL 11395512, at *9-10 (D. Ariz. Aug. 20, 2008), *aff'd in part rev'd in part on other grounds by* 570 U.S. 1 (2013). The NVRA is simple: if a party is injured by the State's failure to follow the NVRA, reasonably expects to be injured again, and provides proper notice, they may sue so long as the State continues to violate the NVRA. Defendants' attempt to smuggle a mootness challenge into the text of the NVRA is unavailing.

### B.    This Court correctly held that Plaintiffs have sufficiently stated that Defendants systematically purged voters in violation of the Quiet Period Provision in the NVRA.

Plaintiffs have alleged facts sufficient to show that Defendants have engaged in a systematic Purge Program impacting persons protected by the NVRA. As this Court has already found, Defendants' Program is systematic, is not based on individualized determination, and has resulted in the improper removal of eligible voters from the voter rolls. ECF No. 120 at 14-17. All of this is clearly laid out in the operative complaint. ECF No. 182 ¶¶ 8-11, 64. Thus, under the NVRA's Quiet Period Provision, Plaintiffs have included "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation and quotations omitted). For the purposes of this Motion, it is unnecessary to again rebut all of Defendants' statutory arguments, but those arguments still lack merit.

### i.    This Court correctly held that Defendants' removals within 90 days of the election were systematic.

As the Fourth Circuit and this Court have both concluded, the Purge Program is systematic: it "does not require communication with or particularized investigation into any specific individual. Rather, the inclusion of a person's name on a list electronically compared to other agency databases is enough for removal from the voter rolls." *VACIR v. Beals*, 2024 WL 4601052, at *1-3; ECF No. 23 ¶¶ 39-43; ECF No. 153 at 21-22. Defendants appear to assert once again that because they initially collect data from individual transactions, any subsequent data matching process should be considered individualized. ECF No. 186 at 24-26. But as the Second Amended Complaint alleges, the Purge Program systematically selects voters for removal based on a mass database matching exercise. ECF No. 182 ¶¶ 47-51. Defendants' Program amounts to "simply checking data fields, matching in mass." ECF No. 120 at 16.[8]

As this Court noted, Plaintiffs have alleged that "Defendants' program does not require communication with or particularized investigation into any specific individual[.]" ECF No. 153 at 22 (citing *VACIR*, 2024 WL 4601052, at *1) (internal quotations omitted). The Fourth Circuit previously affirmed in this litigation that "[a] process is systematic if it uses a 'mass computerized data-matching process' to identify and confirm names for removal without 'individualized information or investigation.'" *VACIR*, 2024 WL 4601052, at *1 (quoting *Arcia*, 772 F.3d at 1344). Moreover, courts have uniformly held that mass mailing to affected voters does not make the

---

[8] Defendants concede that they perform no individualized investigation into the citizenship status of removed individuals. *See* ECF No. 120 at 16; ECF No. 122 at 33; ECF No. 186 at 24-25. The only process resembling individualized investigation is limited to identification purposes. *Id.*

24

process "individualized." *See, e.g.*, *Arcia*, 772 F.3d at 1344; ECF No. 91-1 at 9; *N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, No. 1:16-CV-1274, 2016 WL 6581284, at *6-7 (M.D.N.C. Nov. 6, 2016). Plaintiffs' allegations that Defendants are using a computerized data matching system and mailing system to purge voters without individualized investigation is sufficient at this stage of litigation.

> ### ii.    This Court correctly held that the Quiet Period Provision protects the voters removed by Defendants' Purge Program.

Defendants unavailingly raise the proposed statutory interpretation of the Quiet Period Provision that they presented to this Court—and that was rejected by this Court—twice before on the Motion for Preliminary Injunction and in their first Motion to Dismiss. ECF No. 122 at 24; ECF No. 153 at 22. And for the third time, the Defendants' argument "violates basic principles of statutory construction by focusing on a differently worded statutory provision that is not at issue here and proposing a strained reading of the Quiet Period Provision to avoid rendering that other provision absurd or unconstitutional." *VACIR*, 2024 WL 4601052, at *1.

The plain language of the Quiet Period Provision states in simple terms that programs like Defendants' are prohibited: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). As this Court noted, "the only exceptions" to that prohibition include removals at "the request of the registrant," "by reason of criminal conviction or mental incapacity," or due to "the death of the registrant." ECF No. 120 at 14. The Quiet Period Provision is designed not to protect ineligible voters—be they noncitizens or nonresidents—but the eligible voters ensnared in systematic list maintenance prior to an election. *See* 52 U.S.C. § 20507. As Plaintiffs have alleged, the Purge Program is a "program" that "systematically removes" the names of both

eligible and ineligible voters from the voter rolls within the meaning of § 20507(c)(2)(A), and no exceptions apply. ECF No. 182 ¶¶ 2-8.

Defendants' suggested reading of the Quiet Period Provision remains "inconsistent with Congress' intent" to protect eligible voters from erroneous last-minute purges and indeed would circumvent that purpose entirely. ECF No. 120 at 17. Defendants argue again that, because the NVRA's General Removal Provision prohibits removal of "registrants" unless an enumerated exception applies and because none of those exceptions relate to noncitizenship, the term "registrants" and the Quiet Period Provision's separate reference to "ineligible voters" cannot be read to include noncitizens. See ECF No. 186 at 20-23; 52 U.S.C. § 20507(a)(3). However, no court or state, including the parties and courts in this case, has concluded that the NVRA disallows states from ever removing noncitizens. And Congress' decision to use different words in the Quiet Period and General Removal provisions is a strong reason to conclude that they should be given different meanings. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024).

Furthermore, Defendants' reading of the NVRA would permit states to remove any eligible citizens so long as the states used the correct pretense of suspected noncitizenship or any other category that fits Defendants' "*ab initio*" construction. ECF No. 186 at 20. This statutory construction has been rejected by this Court, the Fourth Circuit, and established jurisprudence in the federal courts. *See* ECF No. 120 at 17-18; *VACIR*, 2024 WL 4601052; *Arcia*, 772 F.3d at 1348; *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025); *Ala. Coal. for Immigrant Justice v. Allen*, No. 2:24-cv-1254, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024).

Defendants point to the Supreme Court's reiteration that lower courts should heed its rulings as reason to reassess the Court's previous opinion. ECF No. 186 at 24 (citing *Trump v. Boyle*, 145 S. Ct. 2653 (2024); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658,

2663 (2024) (mem.) (Gorsuch, J., concurring in part)). But, as this Court noted, the Supreme Court did not provide any reasoning for its stay. ECF No. 153 at 23 (citing Order Granting Stay, *Beals v. VACIR*, No. 24-2071 (U.S. Oct. 30, 2024)). This Court was right to "decline[] to overread the Supreme Court's decision" in August, and nothing has changed between then and now. *Id.* Twice, this Court has rejected Defendants' "tortured reading." *Id.* at 23. It should do so again here.

### C.  This Court correctly held that Plaintiffs have sufficiently pled that the Defendants' Purge Program is nonuniform and discriminatory in violation of the NVRA.

This Court previously held that Plaintiffs have stated a plausible claim for relief on their claim that the Purge Program is nonuniform and discriminatory in violation of 52 U.S.C. § 20507(b)(1). ECF No. 153 at 24-25; *see* ECF No. 23 ¶¶ 2, 9, 14, 55-71, 83. It should so do again now. "The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'" *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (quoting 52 U.S.C. § 20501(a)). The NVRA sought to eliminate nonuniform, discriminatory practices such as "selective purging of the voter rolls" with a specific concern that "[s]uch processes must be structured to prevent abuse which has a disparate impact on minority communities." S. Rep. No. 103-6, at 3, 18 (1993); *see also* H.R. Rep. No. 103-9, at 15 (1993). Voter list maintenance programs must accordingly be applied uniformly throughout the jurisdiction and cannot discriminatorily single out specific subsets of voters, such as voters born outside the United States (*i.e.*, naturalized citizens), for purging under the NVRA. 52 U.S.C. § 20507(b)(1).

Plaintiffs have alleged more than enough factual content to allow the Court to draw the reasonable inference that Defendants' Purge Program discriminates based on national origin and

thus also citizenship classification. The Purge Program "by design singles out individuals who were once identified in DMV records as noncitizens and subjects them to scrutiny not generally faced by U.S.-born citizens." ECF No. 182 ¶¶ 78-79; *see also* ECF No. 23 ¶ 69 ("[N]oncitizen designation or transactions in the DMV data are often the sole criterion to trigger voter registration cancellation."). The Program is therefore exactly the sort of discriminatory, selective purge that federal courts have repeatedly held violates the NVRA's Uniform and Nondiscriminatory provision. *See, e.g.*, *Mi Familia Vota*, 129 F.4th at 714 ("The citizenship checks are non-uniform and are discriminatory in effect because it is likely that the properly registered citizens who would be required to respond and provide documentation would be naturalized citizens." (quotations omitted)); *United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012) (selective purge that swept in "primarily newly naturalized citizens" likely violated the NVRA's Uniform and Nondiscriminatory requirement). And, because Plaintiffs have alleged facts sufficient to show that the Purge Program classifies individuals on the basis of naturalized citizenship status and national origin, Plaintiffs need not otherwise demonstrate discriminatory intent: such a policy is flatly unlawful under the NVRA. *See, e.g.*, *Florida*, 870 F. Supp. 2d 1346; *Mi Familia Vota*, 129 F.4th at 714.

Defendants' citation to *Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018), is inapposite. As this Court found, *Husted* "did not concern the Uniform and Nondiscriminatory Provision of § 20507(b)(l) because 'respondents did not assert a claim under that provision.'" ECF No. 153 at 25-26 (quoting *Husted*, 584 U.S. at 779). "Thus, that case offers no clarity on what Plaintiffs must allege here." *Id.* Plaintiffs, therefore, have sufficiently alleged their Uniform and Nondiscriminatory claim.

**D.    This Court correctly held that Plaintiffs have sufficiently pled that Defendants have violated the Public Disclosure of Voter Registration Activities Provision of the NVRA.**

Defendants attempt to revive their extremely narrow construction of the NVRA's public disclosure provision on the grounds that this Court seemed to "misunderstand[]" their argument. ECF No. 186 at 30. This Court did no such thing. Instead, it correctly rejected Defendants' attempt to construe the provision exceedingly narrowly and render it nugatory. ECF No. 153 at 31. This Court should reject Defendants' arguments once more.

A practical reading of the NVRA, understanding advances in technology since it was enacted, shows that the digital systems Virginia uses for list maintenance are subject to records request claims. Defendants rely on a strained, overly-narrow reading of the NVRA to suggest that Plaintiffs have not properly pleaded their records claim, because they have not included a request to "photocopy" records or to review records via "in-person access to a file room in Richmond." ECF No. 186 at 29. To support their position, Defendants again attempt to rely on *Greater Birmingham Ministries v. Secretary of State of Alabama*, 105 F.4th 1324 (11th Cir. 2024), an out of circuit case that does not create binding precedent. But if Defendants' proposed reading of the NVRA were accepted, the NVRA's public records provision would be rendered useless in the modern age where states rely on digital databases to carry out list maintenance. Moreover, Defendants have not argued (nor could they) that they have made the requested records available for public inspection in lieu of electronic production. As this Court agreed, Defendants' arguments about what means of disclosure would be adequate under the NVRA are therefore premature at the motion to dismiss stage. ECF No. 153 at 31.

The NVRA requires states to disclose "all records" related to any effort by the state to ensure "the accuracy and currency" of voter registration lists. *See* 52 U.S.C. § 20507(i)(1). As the Fourth Circuit has recognized in the context of interpreting the NVRA's public disclosure

provision, "the use of the word all as a modifier suggests an expansive meaning because all is a term of great breadth." *See Project Vote/Voting for Am., Inc.*, 682 F.3d at 336 (citation modified) ("[T]he fact that [Section 8(i)(1)] very clearly requires that 'all records' be disclosed brings voter registration applications within its reach.") (quotations omitted). Consistent with this, numerous courts have concluded that voter databases are subject to the public records disclosure provision, because the information housed in those databases is "the output and end result" of voter list registration and maintenance activities and therefore "plainly relates" to said activities. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024); *see also, e.g.*, *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1218 (D.N.M. 2024); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022). This Court, consistent with circuit precedent broadly interpreting the NVRA's public disclosure provision, should once again do the same. Accordingly, the request to dismiss the public records disclosure claim should once again be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Date: November 20, 2025                    Respectfully submitted,

                                           /s/ Shanna Ports
Ryan Snow*                                 Shanna Ports (VSB No. 86094)
Javon Davis*                               Danielle Lang*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS        Brent Ferguson*
UNDER LAW                                  Simone Leeper*
1500 K Street, NW, Ste. 900               Katherine Hamilton*
Washington, DC 20005                       CAMPAIGN LEGAL CENTER
(202) 662-8600                             1101 14th Street NW, Suite 400
rsnow@lawyerscommittee.org                 Washington, DC 20005
jdavis@lawyerscommittee.org                Tel: (202) 736-2200
                                           Fax: (202) 736-2222
Orion Danjuma*                             sports@campaignlegalcenter.org
John Paredes*                              dlang@campaignlegalcenter.org
THE PROTECT DEMOCRACY PROJECT, INC.        bferguson@campaignlegalcenter.org

30

**JA340**

82 Nassau Street, # 601
New York, NY 10038
Telephone: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick*
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman*
THE PROTECT DEMOCRACY PROJECT, INC.
200 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
anna.dorman@protectdemocracy.org

sleeper@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

John Powers*
Hani Mirza*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, D.C. 20005
(202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs Virginia Coalition for
Immigrant Rights, the League of Women Voters
of Virginia, African Communities Together,
Rina Shaw, and Genet Shiferaw*

*Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2025, I electronically filed the above document with the Clerk of Court using the ECF system, which will provide electronic copies to any counsel of record.

/s/ Shanna Ports
Shanna Ports