No. 25-2108

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs-Appellees*,

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of Elections, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia

**OPENING BRIEF**

JASON S. MIYARES
  *Attorney General*

THOMAS J. SANFORD
  *Deputy Attorney General*

CHARLES J. COOPER
BRADLEY L. LARSON
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile
ccooper@cooperkirk.com
blarson@cooperkirk.com

December 12, 2025

KEVIN M. GALLAGHER
  *Solicitor General*

GRAHAM K. BRYANT
  *Principal Deputy Solicitor General*

MEREDITH L. BAKER
  *Deputy Solicitor General*

JESSICA X. TONG
  *John Marshall Fellow*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
solicitorgeneral@oag.state.va.us

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

ISSUES PRESENTED ....................................................................... 3

JURISDICTIONAL STATEMENT ..................................................... 3

STATEMENT ..................................................................................... 4

    I.   Factual Background ................................................................. 4

    II.  Procedural History ................................................................. 8

STANDARD OF REVIEW ................................................................. 11

SUMMARY OF ARGUMENT ........................................................... 12

ARGUMENT ...................................................................................... 13

    I.   Sovereign immunity bars this suit against the Attorney
        General .................................................................................... 13

        A.   The Attorney General has no special relation to
            the challenged action and therefore is immune
            from suit ........................................................................ 15

            1.   The Attorney General has no special relation
                to the removal of noncitizens from the voter
                rolls ..................................................................... 15

            2.   General authority to enforce the election
                laws is not enough to abrogate sovereign
                immunity ............................................................. 20

i

B.     The Attorney General has not threatened to enforce the challenged law and therefore is immune from suit ........................................................ 27

II.    Sovereign immunity bars Count I as to all the defendants because there is no ongoing violation of law .......................... 30

CONCLUSION ................................................................. 39

CERTIFICATE OF COMPLIANCE ..................................... 41

CERTIFICATE OF SERVICE ............................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Cooper*,
  895 F.3d 337 (4th Cir. 2018)..................................................... *passim*

*Beals v. Virginia Coalition for Immigrant Rights*,
  __ U.S. __, 2024 WL 4608863 (slip op.) (2024) (mem.)....................... 10

*Booth v. Maryland*,
  112 F.3d 139 (4th Cir. 1997)............................................................ 32

*Coakley v. Welch*,
  877 F.2d 304 (4th Cir. 1989)..................................................... 37, 38

*CSX Transp., Inc. v. Board of Pub. Works of the State of W. Va.*,
  138 F.3d 537 (4th Cir. 1998)..................................................... 37, 38

*DeBauche v. Trani*,
  191 F.3d 499 (4th Cir. 1999)..................................................... 31, 34

*Doyle v. Hogan*,
  1 F.4th 249 (4th Cir. 2021) ...................................................... *passim*

*Federal Maritime Comm'n v. South Carolina State Ports Auth.*,
  535 U.S. 743 (2002)........................................................................ 14

*Franks v. Ross*,
  313 F.3d 184 (4th Cir. 2002)........................................................... 12

*Hafer v. Melo*,
  502 U.S. 21 (1991)......................................................................... 14

*Hutto v. South Carolina Ret. Sys.*,
  773 F.3d 536 (4th Cir. 2014)............................................ 2, 14, 16, 19

*King v. Youngkin*,
  122 F.4th 539 (4th Cir. 2024) ................................................. *passim*

*Kobe v. Haley*,
 666 Fed. Appx. 281 (4th Cir. 2016)........................................21

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
 666 F.3d 244 (4th Cir. 2012)................................................3

*McBurney v. Cuccinelli*,
 616 F.3d 393 (4th Cir. 2010)....................................*passim*

*Okpalobi v. Foster*,
 244 F.3d 405 (5th Cir. 2001).............................................27

*Republic of Paraguay v. Allen*,
 134 F.3d 622 (4th Cir. 1998).........................31, 32, 36, 37

*Sherman v. Community Consol. Sch. Dist. 21*,
 980 F.2d 437 (7th Cir. 1992)............................................29

*South Carolina Wildlife Federation v. Limehouse*,
 549 F.3d 324 (4th Cir. 2008)......................................17, 19

*Trump v. CASA*,
 606 U.S. 831 (2025)........................................................36

*Virginia Coalition for Immigrant Rights v. Beals*,
 2024 WL 4601052 (4th Cir. Oct. 27, 2024)........................9

*Waste Mgmt. Holdings v. Gilmore*,
 252 F.3d 316 (4th Cir. 2001)...............................19, 23, 26

*Wright v. North Carolina*,
 787 F.3d 256 (4th Cir. 2015)...........................................23

*Ex parte Young*,
 209 U.S. 123 (1908).......................................1, 14, 15, 16

## Statutes

52 U.S.C. § 20501 ...................................................4

52 U.S.C. § 20503 ...................................................4

52 U.S.C. § 20504 ................................................................. 4

52 U.S.C. § 20507 ........................................................... *passim*

Va. Code § 24.2-104 ....................................................... 20, 22

Va. Code § 24.2-400 ......................................................... 6, 39

Va. Code § 24.2-400 *et seq.* ............................................... 4

Va. Code § 24.2-410.1 ....................................................... 5, 8

Va. Code § 24.2-420.1 ....................................................... 6, 39

Va. Code § 24.2-427 ............................................... 6, 22, 25, 29

## Other Authorities

Commonwealth of Virginia, Office of the Governor,
   *Executive Order Number Thirty-Five* (Aug. 7, 2024),
   https://tinyurl.com/4sr88jhe ..................................... *passim*

## INTRODUCTION

A handful of advocacy organizations asked the district court to hold unlawful Virginia's processes for removing self-identified noncitizens from its voter rolls, particularly within the 90-day "quiet period" before the 2024 federal election, see 52 U.S.C. § 20507(c)(2)(A), and permanently enjoin Virginia officials from following those processes. But the Virginia Attorney General has no role in removing noncitizens from the voter rolls, and the 2024 quiet period is now over. Sovereign immunity thus bars all claims against the Attorney General and the plaintiffs' claim concerning the 2024 quiet period against all defendants.

This Court should dismiss the Attorney General from this lawsuit because sovereign immunity bars all claims against him, and the limited exception of *Ex parte Young,* 209 U.S. 123 (1908), does not apply. The plaintiffs challenge the way that Department of Elections (ELECT) officials and local general registrars remove noncitizens from Virginia's voter rolls under Executive Order No. 35 and Virginia Code § 24.2-427, a longstanding statute requiring general registrars to cancel registrations of noncitizens. But the Attorney General has no relationship at all with these challenged laws, much less the special

relationship required for *Ex parte Young* to apply. Nor have the plaintiffs even alleged that he has threatened to enforce those laws. By refusing to dismiss the Attorney General as immune from the plaintiffs' suit, the district court expanded *Ex parte Young* beyond its narrow scope and "eviscerate[d] the fundamental principle" of sovereign immunity. *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (quotation marks omitted).

This Court should also dismiss the plaintiffs' claim that the executive order and statute violate the Quiet Period Provision of the National Voter Registration Act because *all* the defendants are entitled to sovereign immunity on that claim. *Ex parte Young* applies only when plaintiffs allege an "ongoing" violation of federal law. *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd*, 589 U.S. 248 (2020). The plaintiffs allege that removing noncitizens during the 90-day quiet period before a federal election is unlawful. But the 2024 election's quiet period has ended, and another quiet period will not begin until 2026. An alleged violation that depends on future actions, especially speculative ones, that might be taken in a future quiet period cannot be "ongoing" within the meaning of *Ex parte Young*. This Court should therefore reverse.

## ISSUES PRESENTED

1.    Is the Attorney General entitled to sovereign immunity when he is neither proximate to nor responsible for the challenged action of removing noncitizens from voter rolls and when he has neither threatened nor acted to commence proceedings enforcing that action?

2.    Are government officials entitled to sovereign immunity when the plaintiffs allege a violation of law that is not ongoing because the alleged violation is limited to the "quiet period" of the federal election that occurs only every two years?

## JURISDICTIONAL STATEMENT

Plaintiffs asserted jurisdiction in the district court under 28 U.S.C. §§ 1331, 1343(a)(3)–(4), and 1357, on the ground that their claims purportedly arise under federal law. See JA47. This Court has jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine because a denial of state sovereign immunity "is deemed a final decision." *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 247 (4th Cir. 2012). The district court entered its opinion and order on August 12, 2025, JA134–66, and the defendants timely noticed this appeal on September 11, 2025, JA186.

## STATEMENT

### I.    Factual Background

Both Congress and the Virginia General Assembly have enacted laws to keep elections secure and promote the participation of eligible voters. See 52 U.S.C. § 20501 *et seq.*; Va. Code § 24.2-400 *et seq.* Congress enacted the National Voter Registration Act (NVRA) to "enhance[] the participation of eligible citizens as voters in [federal] elections," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). To facilitate eligible citizens' registration to vote, the NVRA requires each State to establish procedures so that citizens can apply for voter registration when they apply for a driver's license. *Id.* §§ 20503(a)(1), 20504. An eligible applicant who submits a valid registration form to vote cannot be removed from the official roll of eligible voters except upon request, death, felony conviction or mental incapacity, or a change in residence. *Id.* § 20507(a)(3)–(4).

Recognizing the importance of accurate voter rolls, the NVRA requires States to conduct programs to remove "ineligible voters" from the rolls, such as deceased registrants and registrants made ineligible by a change in residence. 52 U.S.C. § 20507(a)(4). But the NVRA creates a

4

"quiet period" before federal elections, providing that "State[s] shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." *Id.* § 20507(c)(2)(A). And any state program to "ensur[e] the maintenance of an accurate and current voter registration roll" for federal elections must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." *Id.* § 20507(b)(1).

Consistent with these federal provisions, in 2006 Virginia enacted election laws that require the Virginia Department of Motor Vehicles (DMV) to share certain information with ELECT. See Va. Code § 24.2-410.1(A). For example, to protect election integrity and ensure that registration lists include only eligible voters, Virginia Code § 24.2-410.1 requires the DMV to share with ELECT information about individuals who have declared themselves to be noncitizens on DMV forms. *Ibid.* ("The [DMV] shall furnish monthly to [ELECT] a complete list of all persons who have indicated a noncitizen status to the [DMV] . . . ."). Under that statute, ELECT then forwards that information to general registrars. *Ibid.*

5

Once a general registrar learns that a registrant is not a citizen, the general registrar must "mail notice promptly" to that person before canceling that person's registration. Va. Code § 24.2-427(C). That "notice shall inform the person of the report from the [DMV] or from [ELECT]." *Ibid.* In response, the person can "submit his sworn statement that he is a United States citizen within 14 days of the date that the notice was mailed." *Ibid.* If that person does not respond within 14 days of the notice, "[t]he general registrar shall cancel the registration[]" of that person. *Ibid.* Any citizen mistakenly removed from the voter rolls can simply re-register, including on Election Day itself. See Va. Code §§ 24.2-400, 24.2-420.1.

Consistent with both the NVRA and Virginia's election laws, Governor Youngkin issued Executive Order 35 (E.O. 35) in 2024 "to protect the casting of legal ballots by legally eligible voters in Virginia's elections." See Commonwealth of Virginia, Office of the Governor, *Executive Order Number Thirty-Five* (E.O. 35), at 1 (Aug. 7, 2024), https://tinyurl.com/4sr88jhe. First, E.O. 35 instructed the Commissioner of the Department of Elections to "certify annually in writing to the Governor" that certain election security procedures are in place,

including procedures to keep ballots secure, certify counting machines, and ensure that election results are accurate. E.O. 35, at 2–3.

Second, E.O. 35 instructed the Commissioner to "certify in writing to the Governor" that the voter list was being updated daily—in lieu of past practices which featured monthly updates. E.O. 35, at 3–4. The Commissioner was to also certify that ELECT was "compar[ing] the list of individuals . . . identified as non-citizens to the list of existing registered voters" and the registrars were "notify[ing] any matches of their pending cancellation unless they affirm[ed] their citizenship within 14 days." E.O. 35, at 4. And the Commissioner was to certify that, prior to issuing a credential such as a driver's license, the DMV was "verif[ying] applicants' proof of identity and legal status with the Department [of] Homeland Security Systematic Alien Verification for Entitlements (SAVE) database and the Social Security Administration database." E.O. 35, at 4.

Next, E.O. 35 instructed the DMV to generate "a daily file of all non-citizens transactions" to "expedite the interagency data sharing" between the DMV and ELECT. E.O. 35, at 4. And E.O. 35 required all registrars, in accordance with Virginia law, "to cancel the registrations

of non-citizens who have registered to vote . . . by falsely claiming that they are a citizen" and "notify the Commonwealth's Attorney . . . of this alleged unlawful conduct." E.O. 35, at 4. Finally, E.O. 35 instructed ELECT to "encourage and provide information [about election-related offenses] to all general registrars to post or provide to voters." E.O. 35, at 4. E.O. 35, notably, did not change whom Virginia removed from the voter rolls or whether individuals were removed from the voter rolls within 90 days of a federal election. Virginia had set its policies on those issues by statute since at least 2006. See Va. Code § 24.2-410.1.

## II.  Procedural History

After Governor Youngkin issued E.O. 35, four organizations filed a complaint against the Attorney General, the Virginia Commissioner of Elections, and the five members of the State Board of Elections, challenging Virginia's removal of noncitizens from voter rolls pursuant to E.O. 35. See JA41–74. The plaintiffs brought four claims: (1) that Virginia's removal of noncitizens under E.O. 35 fewer than 90 days before the 2024 federal election violated the NVRA's "quiet period" provision (Count I); (2) that Virginia's removal of noncitizens under Virginia Code § 24.2-427 and E.O. 35 violated the NVRA's provision requiring voter-roll

maintenance programs to be "nondiscriminatory" (Count II); (3) that Virginia Code § 24.2-427(C) and Virginia's removal of noncitizens under E.O. 35 violated the NVRA's limitations on voter-registration requirements (Count III); and (4) that the Commissioner and her office had not turned over documents to which the plaintiffs were allegedly entitled under the NVRA's public-inspection provision (Count IV). See JA66–70.

The plaintiffs moved for a preliminary injunction. The district court granted their motion in part, enjoining the defendants "from continuing any systematic program intended to remove the names of ineligible voters from registration lists" and requiring them to restore the registrations of those removed during the quiet period pursuant to the noncitizen removal process. JA78. The district court set the injunction to expire "the day after the 2024 General Election." JA80. This Court declined to stay the injunction pending appeal. *Virginia Coalition for Immigrant Rights v. Beals*, 2024 WL 4601052 (4th Cir. Oct. 27, 2024). The Supreme Court of the United States, however, stayed the injunction, functionally preventing it from ever taking effect. *Beals v. Virginia*

9

*Coalition for Immigrant Rights*, __ U.S. __, 2024 WL 4608863 (slip op. at 1) (2024) (mem.).

The defendants then moved to dismiss the suit based on sovereign immunity and the complaint's failure to state a claim, among other things. JA85. The district court granted in part and denied in part the motion to dismiss. JA134–66. The court dismissed Count III of the complaint but otherwise rejected the defendants' sovereign immunity arguments and merits arguments. JA148–52, JA165–66. Relevant to this appeal, the court held that the claims against the Attorney General satisfy the *Ex parte Young* exception to sovereign immunity because he has a "special relation" to the challenged state action. JA151. It reasoned that Virginia Code § 24.2-104(A) "grants the Attorney General the full authority to enforce the election laws and prosecute violations thereof" and that "[a]fter ELECT and the registrars forward[] the names of voters who were removed, the Attorney General then chooses whether to investigate and prosecute the referrals." JA151. Thus, the court held that the Attorney General has "some connection with the enforcement of the act" and is a proper party. JA152 (quoting *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021)).

The court also held that the plaintiffs sufficiently alleged an ongoing violation of federal law because they "seek to prevent" implementation of the process outlined in E.O. 35 and Virginia Code § 24.2-427(C) "before any future federal election." JA149. Further, the court held that "[t]o the extent citizens were systematically removed from [the voter] rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law." JA150.

Defendants now appeal the district court's denial of sovereign immunity on Count I as to all defendants and on Count II as to the Attorney General.[1]

## STANDARD OF REVIEW

"The existence of sovereign immunity is a question of law that [this Court] review[s] de novo." *King v. Youngkin*, 122 F.4th 539, 543 (4th Cir. 2024) (cleaned up); see also *Franks v. Ross*, 313 F.3d 184, 192–93 (4th

---

[1] Only Counts I and II are at issue in this interlocutory appeal. Count III was dismissed. See JA165. And the plaintiffs brought Count IV only against the Commissioner, not the Attorney General, and have a different theory of the alleged "ongoing violation." See JA69. Thus, Count IV is also not at issue in this interlocutory appeal.

Cir. 2002) ("[W]e review de novo a . . . legal determination of whether *Ex parte Young* relief is available." (cleaned up)).

## SUMMARY OF ARGUMENT

The district court wrongly denied the defendants' motion to dismiss on sovereign-immunity grounds. First, the *Ex parte Young* exception to sovereign immunity does not apply to the Attorney General in this case. The *Ex parte Young* exception only applies to officials who bear a "special relation" to the challenged action and have "acted or threatened to act" to enforce the challenged action. *McBurney v. Cuccinelli*, 616 F.3d 393, 399, 402 (4th Cir. 2010) (quotation marks omitted). The Attorney General has no "special relation" to the challenged actions—the removal of noncitizens both generally and during the quiet period before a federal election under E.O. 35 and Virginia Code § 24.2-427(C)—because the Attorney General does not implement any part of that removal process. Rather, the Commissioner, ELECT staff, and registrars do. And in any case, the Attorney General has not acted or threatened to enforce that statute or any other part of the removal process.

Second, sovereign immunity bars Count I against all defendants because there is no ongoing violation of federal law. *Ex parte Young*

applies only to suits against state officers for prospective relief against ongoing violations of law. *Allen*, 895 F.3d at 354. But the alleged quiet-period violation is not ongoing. The quiet period lasts 90 days every two years, absent a federal primary, and it ended over a year ago. Any suggestion that the remaining defendants may violate the NVRA's Quiet Period Provision in future quiet periods—which will occur after Virginia inaugurates a new Governor with control over Virginia's executive branch—cannot give rise to an ongoing violation *today*. Sovereign immunity, unlike the mootness doctrine, contains no exception for violations that are capable of repetition yet evading review. *Ibid.*

This Court should reverse.

## ARGUMENT

### I.   Sovereign immunity bars this suit against the Attorney General

Sovereign immunity bars the plaintiffs' claims against the Attorney General. As this Court recently reaffirmed, "[t]he Eleventh Amendment and the broader principles of federalism it reflects generally prevent private parties from suing a State without its consent." *King*, 122 F.4th at 543. In protecting States from being "haled into federal court without their consent," *Doyle*, 1 F.4th at 254, sovereign immunity "accord[s] the

States the respect owed them as joint sovereigns," *Hutto*, 773 F.3d at 543 (quoting *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 765 (2002)). Consistent with this principle, courts must treat "[s]uits against state officials in their official capacity . . . as suits against the State" barred by sovereign immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

*Ex parte Young* provides a narrow exception to sovereign immunity: a federal court can issue prospective injunctive relief against certain state officers to stop ongoing violations of federal law. See *Ex parte Young*, 209 U.S. at 159–60; *King*, 122 F.4th at 548. But the *Ex parte Young* exception applies only to "officers of the State [who] are clothed with some duty in regard to the enforcement of the laws of the State, *and* who threaten and are about to commence proceedings . . . to enforce [an unconstitutional act] against parties affected." *Ex parte Young*, 209 U.S. at 155–56 (emphasis added). Thus, to benefit from this exception to sovereign immunity, a plaintiff must show that a defendant official bears a "special relation" to the challenged state action and has "acted or threatened to act." *McBurney*, 616 F.3d at 399, 402 (quotation marks omitted).

14

The Attorney General does not bear this special relation to the actions the plaintiffs challenge. And he has not "acted or threatened" to enforce the challenged state law or to engage in any of the challenged state actions. *McBurney*, 616 F.3d at 402. Sovereign immunity therefore still applies to the Attorney General in this suit, and the district court should have dismissed the claims against him.

## A. The Attorney General has no special relation to the challenged action and therefore is immune from suit

The Attorney General is not responsible for implementing Virginia Code § 24.2-427(C) or removing noncitizens from voter rolls under E.O. 35. He therefore lacks a special relation to the challenged state actions, and the district court should have dismissed the claims against him.

### 1. The Attorney General has no special relation to the removal of noncitizens from the voter rolls

State officers are immune from suit under *Ex parte Young* unless they are "clothed with some duty in regard to the enforcement of the laws of the State," *Ex parte Young*, 209 U.S. at 155–56, meaning that officers must have a "special relation" to the "challenged state action" for the *Ex parte Young* exception to apply, *King*, 122 F.4th at 548 (quotation marks omitted). That "special relation" requires an officer to have both "*proximity to* and *responsibility for* the challenged state action."

15

*McBurney*, 616 F.3d at 399 (quotation marks omitted). "[G]eneral authority to enforce the laws of the state" does not suffice. *Ibid.* (quotation marks omitted).

The state officer must have a "connection with the enforcement of the [challenged] act" because otherwise the "suit would essentially make the State a party." *Doyle*, 1 F.4th at 255 (quoting *Ex parte Young*, 209 U.S. at 157). Without this special-relation requirement, the *Ex parte Young* exception "would eviscerate the fundamental principle" of sovereign immunity. *Hutto*, 773 F.3d at 550 (quotation marks omitted); see also *ibid.* ("The requirement that there be a relationship between the state officials . . . and the enforcement of the state statute prevents parties from circumventing a State's Eleventh Amendment immunity."); *Ex parte Young*, 209 U.S. at 157 (explaining that sovereign immunity does not permit "the constitutionality of every [state] act" to "be tested by a suit against . . . the attorney general, based upon the theory that" the attorney general "might represent the State in litigation involving the enforcement of its statutes"). This "requirement ensures that the appropriate party is before the federal court," so that "a federal injunction will be effective" but not "interfere with the lawful discretion of state

officials." *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008).

Here, the Attorney General does not have any "special relation" to the challenged action—the removal of noncitizens from the voter rolls pursuant to E.O. 35 and Virginia Code § 24.2-427(C). *King*, 122 F.4th at 548 (quotation marks omitted). In Count I, the plaintiffs challenge the removal of noncitizens during the quiet period. JA66–67. In Count II, they challenge the State's removal process as a whole. JA67–68. The Attorney General is not responsible for either of these actions.

The Attorney General does not have a "special relation" to removing noncitizens from the voter rolls—either during the quiet period (Count I) or more generally (Count II). Nowhere in their complaint do the plaintiffs allege that the Attorney General removed *anyone* from the voter rolls during that 90-day period—or ever. Indeed, the complaint fails to allege that the Attorney General has taken *any* action at all regarding the voter rolls. See JA63. Further, the complaint tacitly acknowledges that there is no connection between the Attorney General and the challenged action when it asks the court to order the other defendants—but not the

Attorney General—to restore to the rolls those who have been removed. See JA71.

This lack of allegations about the Attorney General is unsurprising—neither Virginia Code § 24.2-427 nor E.O. 35 gives the Attorney General any responsibility for effecting these removals. Virginia Code § 24.2-427(C) requires general registrars to mail notices to noncitizens and cancel the registrations of those who do not respond. And E.O. 35 directs the Commissioner, ELECT, the DMV, registrars, and "state agencies that register individuals to vote" to carry out its instructions. E.O. 35, at 2–4.

Specifically, E.O. 35 instructs the Commissioner—not the Attorney General—to certify that she has procedures to "[r]emove individuals who are unable to verify that they are citizens to the [DMV] from the statewide voter registration list." E.O. 35, at 4. It also instructs ELECT—not the Attorney General—to "compare[] the list of individuals who have been identified as non-citizens to the list of existing registered voters." E.O. 35, at 4. And it instructs general registrars—not the Attorney General—to: (1) "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days"; (2) "cancel the registrations

18

of non-citizens who have registered to vote . . . by falsely claiming that they are a citizen"; and (3) "notify the Commonwealth's Attorney . . . of this alleged unlawful conduct." E.O. 35, at 4.

Indeed, the only reference to the Attorney General is a recognition of his general enforcement authority over election laws. See E.O. 35, at 4 ("Additionally, the Office of the Attorney General has full authority to enforce election laws pursuant to Code of Virginia § 24.2-104."). This is decidedly short of the mark to show a special relation. *Limehouse*, 549 F.3d at 333 ("[G]eneral authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity." (quotation marks omitted)); see Part I.A.2, *infra*. Thus, the Attorney General does not have the special relation required to satisfy the narrow *Ex parte Young* exception. See *Hutto*, 773 F.3d at 540, 551 (holding that the defendants lacked the requisite relation to satisfy *Ex parte Young* when the challenged statute did not give the defendants authority to do what the plaintiffs sought to enjoin).

This result is entirely consistent with the purpose of the *Ex parte Young* doctrine. See *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) ("The purpose of allowing suit against state officials to

enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute."). Were they to prevail, the plaintiffs could obtain all the relief they seek through an injunction directed to other defendants without enjoining the Attorney General. This is because, as the plaintiffs acknowledge, see JA71, the Attorney General has no role in executing the challenged laws, see *King*, 122 F.4th at 549. This Court should therefore reverse the district court's refusal to dismiss the Attorney General from this case.

### 2.    General authority to enforce the election laws is not enough to abrogate sovereign immunity

Against this weight of authority, the district court incorrectly held that *Ex Parte Young* applies because the Virginia Code "grants the Attorney General the full authority to enforce the election laws and prosecute violations thereof." JA151. But the Attorney General's authority to enforce the state election laws generally does not create a "special relation" to Virginia Code § 24.2-427(C) or the removal process.

Within the context of "assist[ing] . . . [the] attorney for the Commonwealth," Virginia Code § 24.2-104(A) provides that the Attorney General has "full authority to do whatever is necessary or appropriate to

enforce the election laws or prosecute violations thereof," including the power "to conduct an investigation, prosecute a violation, assure the enforcement of the election laws, and report the results of the investigation to the State Board." Notably, at most this authority extends only to enforcing the "election laws"—the provisions in Title § 24.2—but not to any actions taken in obedience to an executive order such as E.O. 35. In any case, however, general enforcement authority does not create a special relationship to the challenged action. *King*, 122 F.4th at 548. Defendants who actually *administer* the challenged statutes fall within the *Ex parte Young* exception, while defendants who at best have an attenuated connection to those statutes do not. See *ibid.*

This Court's recent decision in *King* illustrates this point. There, this Court held that the district court should have dismissed claims against the Governor and the Secretary of the Commonwealth challenging Virginia's felon-disenfranchisement constitutional provision because the Governor and Secretary "do not administer the rules restricting voter eligibility—the other defendants do." *King*, 122 F.4th at 548; see also *Kobe v. Haley*, 666 Fed. Appx. 281, 299–300 (4th Cir. 2016) (per curiam) (holding that the governor was not a proper party under *Ex*

*parte Young* because she did not have the "responsibility" to decide whether the plaintiffs received certain medical coverage or the "authority to administer" the State's Medicaid plans).

Just as in *King*, here the Attorney General lacks the requisite connection to the challenged action. The Attorney General does not administer the rules governing who is removed from the voter rolls—"the other defendants do." *King*, 122 F.4th at 548. Virginia Code § 24.2-427(C) requires the local general registrar to "mail notice promptly to all persons known by him not to be United States citizens by reason of a report" from the DMV or ELECT and "cancel the registrations of such persons who do not respond within 14 days to [that] notice." The statute plainly states that the "general registrar," not the Attorney General, administers the statute by canceling the person's registration. Va. Code § 24.2-427(C). Even under the Attorney General's general authority to "enforce the election laws," Code § 24.2-104(A), the Attorney General has no authority to cancel any registrations himself or otherwise oversee the cancellation process.

Indeed, this Court's case law makes clear that any relationship between the Attorney General and Virginia Code § 24.2-427(C) is too

22

tenuous to satisfy the "special relation" requirement of *Ex parte Young* when the general registrar, not the Attorney General, is the one mailing notices and canceling voter registrations under that Section. See *Allen*, 895 F.3d at 354 (holding that *Ex parte Young* did not apply because "none of [the defendants] would or could have any role in enforcing the statute"); *Wright v. North Carolina*, 787 F.3d 256, 262 (4th Cir. 2015) (affirming dismissal of legislators from suit because the legislature "retains no ability to enforce any of the laws it passes"); *Waste Mgmt. Holdings*, 252 F.3d at 331 (holding that the Governor should have been dismissed as a party because he "lack[ed] a specific duty to enforce the challenged statutes" restricting municipal solid waste); *Doyle*, 1 F.4th at 255 (holding that the Attorney General was not the proper party because the challenged statute "specifically put[] disciplinary authority in the hands of" the licensing board and the Attorney General had only the "limited authority to represent and do legal work for the Board").

This long line of precedent thus undermines the reasons proffered by the plaintiffs—and accepted by the district court—for the proposition that the Attorney General's enforcement authority justifies applying *Ex parte Young* here. See JA56, JA151–52. For instance, even if the Attorney

23

General *were* to seek to enforce Virginia Code § 24.2-427(C) under his authority to enforce the election laws, see pp. 20–21, *supra*, he would be enforcing that statute against the general registrar—not the plaintiffs. Virginia Code § 24.2-427(C) imposes obligations only on general registrars to mail notices and cancel registrations; nothing in it could warrant a proceeding by the Attorney General against the plaintiffs because it does not govern their conduct. See *Allen*, 895 F.3d at 355 (holding that *Ex parte Young* did not apply when the plaintiffs "ha[d] not even shown that" the challenged statute could "be enforced against a private party"); *Doyle*, 1 F.4th at 257 (holding that the plaintiff had "sued the wrong defendants" because those defendants "ha[d] no control over the potential enforcement actions that could be brought *against him*" (emphasis added)).

Next, the plaintiffs and the district court both incorrectly pointed to the Attorney General's ability to investigate and prosecute voter fraud. Plaintiffs alleged that general registrars have referred individuals removed from the voter rolls to the Attorney General for investigation and possible prosecution, and the district court relied on the fact that the Attorney General "chooses whether to investigate and prosecute"

24

referrals under Virginia Code §§ 24.2-104 and 24.2-1019, provisions that criminalize false statements and illegal voting, in holding that sovereign immunity did not protect him. JA56, JA151. But whether the Attorney General has discretion to prosecute someone who voted unlawfully is irrelevant to whether the Attorney General has a special relation to the process for removing noncitizens from the voter rolls. He does not. Instead, Virginia law exclusively charges local *general registrars* with cancelling the registration of *every* person who receives a notice under Virginia Code § 24.2-427(C) and fails to respond within 14 days. Va. Code § 24.2-427(C). A general registrar's decision to refer suspected noncitizens to the Attorney General—and the Attorney General's decision whether to investigate or prosecute—does not depend on or necessarily follow from the general registrar's decision to remove these individuals from the voter rolls.

In any event, were the Attorney General to investigate or prosecute these referred individuals, he would be enforcing criminal laws, not Virginia Code § 24.2-427(C), E.O. 35, or the noncitizen-removal process at issue in this case. Indeed, it would be impossible for these removed individuals to have violated Virginia Code § 24.2-427(C) or E.O. 35, which

25

are directed at general registrars, the DMV Commissioner, and other government entities, not individuals. And this Court has made clear that a state officer's authority to enforce a related law does not create a special relation to the challenged law. *King*, 122 F.4th at 548 ("[T]his Court has never recognized a 'special relationship' via textual proximity or a related powers theory of *Ex parte Young*, and we decline to do so today.").

Finally, the plaintiffs' allegations that the Attorney General "endorsed" and "claim[ed] credit" for the removal of noncitizens from the voter rolls do nothing to show a special relation. JA56. "[P]ublicly endors[ing] and defend[ing]" a challenged state action does not create a special relationship. *Waste Mgmt. Holdings*, 252 F.3d at 331 (holding that the Governor was not a proper defendant even though he had "actively and publicly defended the statutory provisions at issue"). Accordingly, the Attorney General does not have a "special relation" to the challenged actions—the removal of noncitizens from voter rolls as instructed by E.O. 35 or Virginia Code § 24.2-427(C), and so the *Ex parte Young* exception does not apply.

**B.     The Attorney General has not threatened to enforce the challenged law and therefore is immune from suit**

Even if the Attorney General had a special relation to the challenged state actions, he would still be immune from suit because he has not threatened to enforce the challenged statutes against the plaintiffs. *Ex parte Young* requires plaintiffs to show not only that the defendant has a special relation to the challenged action, but also that the defendant is "threaten[ing]" or is "about to commence proceedings." *Doyle*, 1 F.4th at 255 (cleaned up). Thus, "any probe into the existence of a *Young* exception should gauge" not only "the ability of the official to enforce the statute at issue" but also the official's "*demonstrated willingness*" to do so. *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001) (en banc) (plurality opinion) (emphasis added).

Plaintiffs did not allege that the Attorney General has threatened enforcement of Virginia Code § 24.2-427(C), E.O. 35, or any part of the noncitizen-removal process, and so the *Ex parte Young* exception does not overcome his immunity from suit. Indeed, the Attorney General has repeatedly explained that he has nothing to do with enforcement of the noncitizen removal process. See, *e.g.*, JA191, JA290–91; see also *McBurney*, 616 F.3d at 402 ("[E]ven were we to find a special relation, we

27

cannot apply *Ex parte Young* because the Attorney General has not acted or threatened to act."). In *McBurney*, this Court held that the Attorney General was not subject to suit in a challenge to Virginia's Freedom of Information Act because he had "neither personally denied any of the Appellant's VFOIA requests nor advised any other agencies to do so." *Ibid.* And this Court later clarified that "[s]imply advising other departments does not give the Attorney General control over enforcing [an] Act." *Doyle*, 1 F.4th at 256; see also *ibid.* ("The Attorney General's limited authority to represent and do legal work for the Board, with no power to make the decision about whether to bring the [enforcement] action in the first place, does not create the requisite connection to the enforcement of [the challenged act] to overcome sovereign immunity.").

Just as in *McBurney*, here the plaintiffs have not alleged that the Attorney General has acted or threatened to act in relevant ways. 616 F.3d at 402. The plaintiffs have not alleged that the Attorney General has sued or threatened to sue the Commissioner, ELECT itself, or any general registrar for failing to follow Virginia Code § 24.2-427(C) or E.O. 35, or that he is at all likely to do so. See generally JA41–73. And as discussed, the Attorney General does not himself remove noncitizens

from the rolls, see pp. 17–19, *supra*, and the plaintiffs have not alleged otherwise. Much less have they alleged that the Attorney General has threatened to enforce Va. Code § 24.2-427(C) against the plaintiffs themselves. See JA41–73; see also *McBurney*, 616 F.3d at 402 ("Because the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the [challenged statute] against the [plaintiffs], the *Ex parte Young* fiction cannot apply."); *Sherman v. Community Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992) (holding that claims against the state attorney general must be dismissed because he had "never threatened the [plaintiffs] with prosecution and as far as [the court could] tell ha[d] no authority to do so").

At bottom, the Attorney General does not administer the state laws the plaintiffs challenge, nor has he threatened to enforce them against the plaintiffs. Because the *Ex parte Young* exception is inapplicable to the Attorney General for each of these independent reasons, this Court should reverse the district court's erroneous denial of his entitlement to sovereign immunity.

## II. Sovereign immunity bars Count I as to all the defendants because there is no ongoing violation of law

In addition to the Attorney General, all remaining defendants are entitled to immunity as to the Quiet Period Provision claim because there is no ongoing violation of federal law as required for the *Ex parte Young* exception to apply. Although the plaintiffs allege that E.O. 35 and the noncitizen removal process violate the Quiet Period Provision of the NVRA, JA66–67, the quiet period before a federal election necessarily ends after the election concludes, see 52 U.S.C. § 20507(c)(2)(A). Thus, an activity that is only unlawful during a quiet period cannot be an ongoing violation of law outside of the quiet period. The plaintiffs have therefore failed to meet their burden of alleging an ongoing violation of law. See *Allen*, 895 F.3d at 355 ("[I]t remains [the plaintiff's] burden in the context of sovereign immunity to establish an *ongoing* violation of federal law to qualify for relief under *Ex parte Young*.").

*Ex parte Young* only allows a federal court to issue prospective equitable relief against a state officer to prevent "*ongoing* violation[s] of federal law." *Allen*, 895 F.3d at 354. *Ex parte Young* "does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of

federally-protected rights." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998); see *King*, 122 F.4th at 542 (stating that *Ex parte Young* applies to suits "when a plaintiff seeks forward-looking relief to halt an ongoing violation of federal law"). A violation that "occurred entirely in the past" is insufficient, even if the other *Ex parte Young* requirements are satisfied. *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

Here, the plaintiffs fail to allege any ongoing violation of federal law in Count I. Their complaint simply alleges that engaging in the noncitizen removal process during the quiet period before the 2024 general election (the ninety days before the federal election that was completed in November 2024) violates the NVRA. JA66–67. But even if removal of noncitizens from voter rolls were a violation, it would not be an *ongoing* violation because it would only be a violation during a quiet period. JA44–45. Accordingly, any alleged violation related to the 2024 election has ended because the 2024 quiet period has ended. See 52 U.S.C. § 20507(c)(2)(A); *DeBauche*, 191 F.3d at 505 (*Ex parte Young* does not apply when "the alleged violation of federal law occurred entirely in the past"). Indeed, if the violation were ongoing after the quiet period

ended, it would have made little sense for the district court to order that the preliminary injunction would expire the day after the 2024 election. JA80.

Further, the entirely hypothetical proposition that any kind of noncitizen removal process related to Virginia Code § 24.2-427 or E.O. 35 may occur during the next quiet period in 2026—which will begin after a new Governor takes office in Virginia—is insufficient to establish an ongoing violation under *Ex parte Young*. The violation must be "continuing" to satisfy *Ex parte Young*. *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997); *see also Republic of Paraguay*, 134 F.3d at 628 (holding *Ex parte Young* did not apply where alleged violation was "a past event that [was] not itself continuing" at the time the plaintiff filed suit). A claim concerning a quiet period that lasts only 90 days every two years (absent a federal primary) and otherwise ceases completely in between does not meet this standard outside of the quiet period.

The mere possibility that removal of noncitizens may recur does not create an "*ongoing*" violation within the *Ex parte Young* doctrine. *Allen*, 895 F.3d at 355. Indeed, this Court has refused to "conflate[] the *Ex parte Young* exception with the doctrine of mootness," which does occasionally

32

allow for past injuries to serve as a basis for injunctive relief. *Ibid.* In *Allen*, the plaintiffs alleged that the State had infringed their copyrights and could "resume infringing [the] copyrights" at any moment. Thus, they argued, an ongoing violation of federal law existed. *Ibid.* But this Court refused to apply mootness concepts in the *Ex parte Young* context, holding that "[e]ven assuming that [the State] ha[d] failed to provide reasonable assurances that it [would] avoid infringing [the] copyrights in the future," the plaintiffs could not "employ the *Ex parte Young* exception to address their fear of future infringements" because "the only ongoing infringement that [the plaintiffs] plausibly alleged ha[d] concededly ended." *Ibid.* Accordingly, the chance of recurrence alone, even if nonspeculative, does not transform a concluded violation into an ongoing one that satisfies *Ex parte Young*. Even the voluntary cessation of allegedly violative conduct *after* a lawsuit is filed will defeat *Ex parte Young* liability when it might not otherwise moot the case. *Id.* at 354 (discussing that the State had removed the infringing material "shortly before the . . . hearing on its motion to dismiss").

In any case, the plaintiffs can only speculate that the defendants would implement E.O. 35 during the next quiet period, and speculation

is certainly not enough to abrogate a State's sovereign immunity under the *Ex parte Young* doctrine. See *DeBauche*, 191 F.3d at 505 (holding that a gubernatorial candidate's allegations that she had been excluded from a debate and that her party would "be excluded from future debates d[id] not, as a matter of law, allege an ongoing violation of federally-protected rights"); *Allen*, 895 F.3d at 355 (holding that allegations of "a history of infringements" and the "possibility" that the State would "resume infringing" the plaintiffs' copyrights did not amount to an ongoing violation). "Mere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation." *DeBauche*, 191 F.3d at 505.

The district court attempted to distinguish this case from *DeBauche* and *Allen* on the ground that "the plaintiffs' fears [in those cases] amounted to conjecture and were not ongoing violations." JA149. But that attempt fails for two reasons. First, even if the fear of future harm were not speculative, *Allen* holds that courts cannot breach sovereign immunity merely by borrowing from mootness-exception doctrines. *Allen*, 895 F.3d at 355. The district court failed to even engage with this holding from *Allen*. Second, the plaintiffs' fears in this case are nothing more than

34

conjecture, which indisputably cannot serve as the basis to establish an ongoing violation. The Governor who assumes office on January 17, 2026, may revoke or supplant E.O. 35 with another executive order, and she may instruct Virginia's executive agencies to carry out Virginia Code § 24.2-427's commands differently than they have to date. And of course, the General Assembly—including many new Delegates recently elected—may elect to amend Virginia Code § 24.2-427 before the next quiet period in a way that affects the plaintiffs' allegations. Like in *DeBauche* and *Allen*, the speculative possibility that future quiet periods may involve similar noncitizen removal processes as those alleged in the instant complaint does not establish an ongoing violation of federal law adequate to invoke *Ex parte Young*.

The district court's conclusion—that the plaintiffs satisfied *Ex parte Young* because "[t]o the extent citizens were systematically removed from [the voter] rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law"—is doubly flawed. JA150. First, the complaint did not identify any members of the plaintiff organizations that were wrongly removed from

35

the voter rolls and would be reinstated pursuant to the requested injunction. The court thus relied on *hypothetical* individuals who were wrongly removed from the rolls. But *Ex parte Young* only allows plaintiffs to assert their own rights; they cannot allege an ongoing violation of federal law with respect to hypothetical persons to breach a defendant's sovereign immunity. *Cf. Trump v. CASA*, 606 U.S. 831, 847 n.9 (2025) (describing *Ex parte Young* as based on the historical anti-suit injunction, which allowed individuals to initiate a suit when the defendant was about to commit a tort against that individual).

Second, even when a violation is ongoing, "the plaintiff must identify and seek *prospective* equitable relief" to benefit from *Ex parte Young. Allen*, 895 F.3d at 354 (emphasis added). Here, the plaintiffs seek to undo *past* state action, not remedy a current violation of law. See *Republic of Paraguay*, 134 F.3d at 628 (holding that injunctive relief voiding a state conviction and sentence was retroactive and therefore not within the *Ex parte Young* exception). Even when plaintiffs seek relief "formally couched in injunctive, declarative terms," rather than "monetary damages," if the effect of that relief "would be to undo accomplished state action and not to provide prospective relief against

the *continuation* of the past violation," the relief is retrospective, and *Ex parte Young* does not apply. *Ibid.*

Here, the plaintiffs seek an order requiring the defendants, either themselves or through directions to registrars, "to place *back* on the rolls" "any persons whose voter registration was cancelled or marked inactive" as part of the noncitizen removal process during the 2024 quiet period, "send letters to affected voters *retracting* the notice letters already sent out," "alert the public and all individuals who were sent notice letters . . . that the notice letters . . . are being *rescinded*," and "*retract* all referrals made to Virginia law enforcement for investigation or prosecution." See JA71–72 (emphases added). This request seeks "to undo [the] accomplished state action" of removing noncitizens from the voter rolls and "is quintessentially retrospective." *Republic of Paraguay*, 134 F.3d at 628.

The district court erred in holding otherwise, relying on authorities holding that employee reinstatement and future relief from an unlawfully assessed tax were forms of prospective relief. JA149 (citing *CSX Transp., Inc. v. Board of Pub. Works of the State of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998), and *Coakley v. Welch*, 877 F.2d 304, 305, 307

n.2 (4th Cir. 1989)). These precedents are inapposite. When a public employee is fired for an unlawful reason, there is a "continuing violation" of his right to employment, curable by prospective reinstatement, because the unlawful reason for his firing never becomes lawful. See *Coakley*, 877 F.2d at 307 n.2. Similarly, an unlawfully assessed tax continues to harm taxpayers if collected in the future and is thus curable by an injunction against collection. See *CSX Transp., Inc.*, 138 F.3d at 541–42. In both cases, an underlying right can be vindicated by prospective relief.

In contrast, when a noncitizen is removed from the voter rolls during a quiet period, whatever alleged unlawfulness there may have been in removing that noncitizen during a quiet period becomes lawful as soon as the quiet period ends. See 52 U.S.C. § 20507(c)(2)(A). Indeed, by requiring systematic removal programs to be "complete[d] not later than 90 days prior to the date of a primary or general election for Federal office," the NVRA contemplates that States will conduct systematic removal programs the rest of the year. The NVRA's Quiet Period Provision does not entitle any of these removed individuals to be listed on the voter rolls *today*. To the extent that any removals violated the

quiet period, there is no ongoing harm—and no prospective relief available—because the defendants could have legally removed these noncitizens the day after the 2024 election.[2]

Because the plaintiffs do not seek prospective relief to remedy an ongoing violation of federal law in Count I, *Ex parte Young* does not apply to that claim. Sovereign immunity thus bars the plaintiffs' Quiet Period Provision claim against all the defendants.

## CONCLUSION

This Court should reverse the district court and remand for dismissal of Count I in its entirety and Count II as to the Attorney General.

---

[2] And regardless, if any citizens actually were mistakenly removed from the voter rolls, they could have re-registered since removal, including on Election Day 2024 or 2025. See ECF 92-1, at 3; Va. Code §§ 24.2-400, 24.2-420.1.

Respectfully submitted,

SUSAN BEALS, *et al.*

By: */s/ Kevin M. Gallagher*
KEVIN M. GALLAGHER
   *Solicitor General*

JASON S. MIYARES
   *Attorney General*

GRAHAM K. BRYANT
   *Principal Deputy Solicitor General*

THOMAS J. SANFORD
   *Deputy Attorney General*

MEREDITH L. BAKER
   *Deputy Solicitor General*

JESSICA X. TONG
   *John Marshall Fellow*

CHARLES J. COOPER
BRADLEY L. LARSON
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile
ccooper@cooperkirk.com
blarson@cooperkirk.com

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
solicitorgeneral@oag.state.va.us

December 12, 2025                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,837 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Kevin M. Gallagher*
_____
Kevin M. Gallagher

## CERTIFICATE OF SERVICE

I certify that on December 12, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

_/s/ Kevin M. Gallagher_
Kevin M. Gallagher