No. 25-2108

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

VIRGINIA COALITION FOR IMMIGRANT RIGHTS, *et al.*,

*Plaintiffs-Appellees,*

v.

SUSAN BEALS, in her official capacity as Virginia Commissioner of
Elections, *et al.*,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division

_____

**RESPONSE BRIEF FOR PLAINTIFFS-APPELLEES**

_____

Ryan Snow
Javon Davis
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
Tel: (202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org


Orion Danjuma
John Paredes
THE PROTECT DEMOCRACY PROJECT,

/s/ Katherine Hamilton
Katherine Hamilton
Danielle Lang
Brent Ferguson
Simone Leeper
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, D.C. 20005
Tel: (202) 736-2200
khamilton@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org

Inc.
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick
THE PROTECT DEMOCRACY PROJECT,
INC.
15 Main Street, Ste. 312
Watertown, MA 02472
Tel: (202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman
THE PROTECT DEMOCRACY PROJECT,
INC.
200 Pennsylvania Ave. NW, Ste. #163
Washington, D.C. 20006
Tel: (202) 579-4582
anna.dorman@protectdemocracy.org

John Powers
Hani Mirza
ADVANCEMENT PROJECT
1220 L Street Northwest, Ste. 850
Washington, D.C. 20005
Tel: (202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

*Attorneys for Plaintiffs-Appellees
Virginia Coalition for Immigrant
Rights, the League of Women Voters of
Virginia, African Communities
Together, Rina Shaw, and Genet
Shiferaw.*

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

ISSUES PRESENTED.......................................................................................2

STATEMENT OF FACTS .................................................................................2

    I.    Factual Background.................................................................................2

    II.    Procedural History..................................................................................5

STANDARD OF REVIEW ...............................................................................8

SUMMARY OF ARGUMENT..........................................................................8

ARGUMENT .....................................................................................................9

    I.    *Ex parte Young* applies because Plaintiffs allege an ongoing violation of federal law ............................................................................................9

    II.    The Attorney General is a proper party because he has the authority to enforce Defendants' Purge Program........................................................14

        A.  The Attorney General satisfies the "special relation" requirement.....15

        B.  There is sufficient threat of enforcement ...........................................18

CONCLUSION.................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Pages**

*Allen v. Cooper*, 895 F.3d 337 (4th Cir. 2018).................................................11, 12

*Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002).....................................................14

*Beals v. Virginia Coalition for Immigrant Rights*, __U.S.__, 2024 WL 4608863,
  slip op. (Oct. 30, 2024) (mem.) ...........................................................................6

*Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) ...................................................17

*Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989)................................................10, 13

*CSX Transportation, Inc. v. Board of Public Works of State of West Virginia*,
  138 F.3d 537 (4th Cir. 1998).........................................................................10, 13

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999)..............................................11, 12

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021)..........................................15, 16, 17, 19

*D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334 (4th Cir. 2010) ...............20

*Ex parte Young*, 209 U.S. 123 (1908) ...................................................................8, 15

*Filyaw v. Corsi*, 150 F.4th 936 (8th Cir. 2025) ........................................................9

*Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002) .........................................................8

*Hutto v. South Carolina Retirement System*, 773 F.3d 536 (4th Cir. 2014) ..............8

*Industry Services Group, Inc. v. Dobson*, 68 F.4th 155 (4th Cir. 2023) .................13

*Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423 (4th Cir. 2025) ................8

*King v. Youngkin*, 122 F.4th 539 (4th Cir. 2024).........................................18, 19, 20

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) .....................................15, 18

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993).............................................................................................9

*Schneider v. Rusk*, 377 U.S. 163 (1964) ..................................................................1

*South Carolina Wildlife Federation v. Limehouse*,
    549 F.3d 324 (4th Cir. 2008)........................................................16, 17

*VACIR v. Beals*, No. 24-2071, 2024 WL 4601052 (4th Cir. Oct. 27, 2024) ..............6

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*,
    535 U.S. 635 (2002).....................................................................9

*Waste Management Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001)................................................15, 17, 19

**Statutes, Codes, and Rules**

52 U.S.C. §§ 20501 *et seq.*........................................................ 1

52 U.S.C. § 20507(c)(2)(A) ......................................................1, 6

52 U.S.C. § 20507(b)(1) ...........................................................6

Va. Code § 24.2-104(A) ...........................................................16

Va. Code § 24.2-104.1 ............................................................16

Va. Code § 24.2-410.1(A) ..........................................................3

Va. Code § 24.2-427(B)(iii) .......................................................3

Va. Code § 24.2-427(B)-(C).........................................................4

**INTRODUCTION**

The right to vote is foundational to American democracy, and American citizens hold that right in equal measure regardless of where they were born. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964). Congress enacted the National Voter Registration Act of 1993 (NVRA) to protect and promote that "fundamental right" to vote. 52 U.S.C. §§ 20501 *et seq.* The NVRA defends the right to vote against voter registration and list-maintenance programs that threaten to exclude eligible voters from the ballot box and/or operate in a nonuniform or discriminatory manner. One of the ways in which it does so is through its Quiet Period Provision, which prohibits systematic voter purges on the eve of an election, because they could strip eligible citizens of their fundamental right to vote. 52 U.S.C. § 20507(c)(2)(A).

Defendants-Appellants (hereinafter "Defendants") are operating such a program that is systematically purging eligible voters from Virginia's voter rolls based on state statute and an executive order (hereinafter collectively the "Purge Program"). In 2024, Plaintiffs-Appellees (hereinafter "Plaintiffs") challenged Defendants' Purge Program, alleging that it violates the NVRA's framework for protecting the fundamental right to vote.

As another election draws near with the unlawful Purge Program in effect, Defendants attempt to delay liability by appealing to this Court on sovereign immunity grounds. But as the district court easily held, Defendants are proper parties

1

to this lawsuit under *Ex parte Young*. Plaintiffs request prospective relief for an ongoing program that violates the NVRA, and the Attorney General "unambiguously has the authority" to enforce that Program. JA151.

Defendants' Purge Program unlawfully removed over 1,600 Virginians from the rolls on the eve of the 2024 election. Defendants have made no changes to their Program, and the next Quiet Period begins in March. There is thus considerable risk that Virginians will be unlawfully disenfranchised yet again before the 2026 election. This Court should reject Defendants' dilatory tactic and uphold the district court's determination that the instant suit is not barred by sovereign immunity.

## ISSUES PRESENTED

1. Did the district court correctly determine that *Ex parte Young* applies where Plaintiffs seek prospective injunctive relief to Defendants' ongoing violation of the National Voter Registration Act?

2. Did the district court correctly hold that the Attorney General is a proper party to this suit, since he has the authority to enforce the challenged Purge Program?

## STATEMENT OF FACTS

### I.     Factual Background

Exactly 90 days before General Election Day 2024, Defendants announced the latest version of an effort to implement an ongoing program to systematically remove certain voters from the rolls. JA227.

2

The Virginia Code provides that general registrars shall cancel the registrations of all persons who are "known . . . not to be United States citizens" by reasons of report from the Department of Motor Vehicles (DMV) or from the Department of Elections (ELECT) based on information received from the Systematic Alien Verification for Entitlements (SAVE) program. Va. Code § 24.2-427(B)(iii). Virginia law also requires the DMV to provide to ELECT on a monthly basis a list of people "who have indicated a noncitizen status." Va. Code § 24.2-410.1(A).

Though the NVRA mandates that no systematic voter cancellation or list maintenance programs be conducted during the 90-day "Quiet Period" before an election, Defendants brazenly intensified their Purge Program the very day the Quiet Period commenced.

On August 7, 2024, the beginning of the Quiet Period for the 2024 General Election, Governor Glenn Youngkin announced Executive Order 35 (E.O. 35), which mandates an escalation of the list maintenance procedures established by the Virginia Code. ECF No. 26-4. E.O. 35 directs the DMV to "expedite the interagency data sharing with [ELECT] of non-citizens by generating a daily file of all non-citizens transactions." *Id.* at 5. ELECT is then required to make daily updates to the voter rolls by comparing "the list of individuals who have been identified as non-citizens to the list of existing registered voters[.]" *Id.* at 4-5. Defendants also have

described an "*ad hoc*" review purported to remove, after applying a SAVE search, voters who indicated citizenship in a DMV transaction but also had noncitizen documents on file. ECF No. 92-1 at 5.

Once ELECT has identified these alleged noncitizens, ELECT sends the data to county registrars. ELECT then notifies a registrar that a registered voter is allegedly a noncitizen. The registrar performs no additional citizenship check—the registrar verifies only that the purported noncitizen is the same person as the one listed on the voter rolls. ECF No. 26-5 at 35-36. Indeed, Virginia law does not allow registrars to conduct any further inquiry into the individual's citizenship status. When there is an identity match, the registrar, as directed by ELECT, sends a letter to "notify any matches of their pending cancellation unless they affirm their citizenship within 14 days" of sending the notice and ultimately cancels the voter's registration if the registrar's office does not receive this affirmation. ECF No. 26-4 at 5; *see also* Va. Code § 24.2-427(B)-(C); ECF No. 120 at 10. The registrar can manually cancel the recipient's registration starting 14 days from the date the letter was mailed by the registrar. *Id.* The affected voter is automatically removed from the voter rolls by the Virginia Election and Registration Information System (VERIS) 21 days after the mailing. *Id.*

As a result of the Purge Program, many voters with contradictory indicators of citizenship have been automatically subjected to the removal process. ECF No.

4

26-4 at 5; ECF No. 182 ¶ 51. From the start of the pre-election Quiet Period on August 7, 2024 until October 21, 2024—the date on which Plaintiffs obtained the Purge List through expedited discovery—over 1,600 voters were purged. *See* ECF No. 110-1. E.O. 35 specifically directs counties to refer voters removed for alleged noncitizenship to Commonwealth Attorneys for criminal investigation and potential prosecution and notes that "the Office of the Attorney General has full authority to enforce election laws pursuant to *Code of Virginia* § 24.2-104." ECF No. 26-4 at 5. In keeping with this, some counties have also directly referred voters removed under the Purge Program to Defendant Attorney General Miyares, who claimed credit for E.O. 35's announced purge of thousands of voters and is empowered to investigate for prosecution voters purged through the Program. JA44, JA56.

## II.    Procedural History

On October 7, 2024, Plaintiffs filed their complaint challenging Defendants' administration of the Purge Program and their refusal to provide information regarding the program. JA41. Plaintiffs allege that Defendants' administration of the Purge Program violates several provisions of the NVRA, including the NVRA provision prohibiting systematic voter purges within the Quiet Period and additional provisions governing voter list maintenance and the public disclosure of related records. JA66-70.

On October 15, 2024, Plaintiffs moved for a preliminary injunction, arguing that Defendants' purge program: (1) violated the NVRA's Quiet Period and (2) violated the NVRA's requirement that removal programs be "uniform" and "nondiscriminatory." 52 U.S.C. §§ 20507(c)(2)(A); 20507(b)(1). ECF No. 26. On October 25, 2024, the district court preliminarily enjoined Defendants from enforcing the systematic voter purge, determining that Plaintiffs were likely to succeed on the merits of their Quiet Period claim. JA77-78. The preliminary injunction was set to expire "on the day after the 2024 General Election," which was November 6, 2024. JA80.

Defendants appealed from the district court's order entering the preliminary injunction to this Court and moved to stay the district court's preliminary injunction pending that appeal. The panel denied the motion to stay with one minor exception, concluding that Defendants' Purge Program constitutes a "program" that "most certainly is" systematic, and that at least some "eligible citizens have had their registrations canceled and were unaware that this was even so." *See VACIR v. Beals*, No. 24-2071, 2024 WL 4601052, at *1-2 (4th Cir. Oct. 27, 2024) (internal quotations omitted). Defendants then submitted an emergency application for stay to the U.S. Supreme Court. On October 30, 2024, the Court granted Defendants' motion for a stay, but with no additional reasoning. *Beals v. Va. Coal. for Immigrant Rgts.*, __ U.S. __, 2024 WL 4608863, slip op. at *1 (Oct. 30, 2024) (mem.).

On November 21, 2024, Defendants moved to dismiss Plaintiffs' First Amended Complaint on jurisdictional grounds. ELECT Defendants argued that the Quiet Period claim against them was barred by sovereign immunity, as were all claims against Defendant Attorney General Miyares. JA85, 88. On August 12, 2025, the district court largely denied the motion to dismiss but granted it as to one count. JA134. The district court rejected each of Defendants' sovereign immunity arguments. JA148-152. On September 11, 2025, Defendants noticed an interlocutory sovereign-immunity appeal for the Attorney General on all counts and an interlocutory sovereign-immunity appeal for the Quiet Period claim against the ELECT Defendants. JA186. Defendants moved to stay the district court's proceedings pending resolution of their interlocutory appeal, JA189, which Plaintiffs opposed. JA200.

Plaintiffs moved to file a Second Amended Complaint and add two individual Plaintiffs on October 1, 2025. The district court granted that motion over Defendants' objection, JA225, and Plaintiffs filed their Second Amended Complaint on October 23, 2025. JA226. On November 6, 2025, Defendants moved to dismiss Plaintiffs' Second Amended Complaint, relying almost entirely on the same arguments the district court had already rejected, including substantively similar arguments regarding sovereign immunity. JA266. The district court has not yet ruled on that motion.

**STANDARD OF REVIEW**

"[S]overeign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). "[T]he existence of sovereign immunity is a question of law that [this Court] review[s] de novo." *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

**SUMMARY OF ARGUMENT**

As the district court properly concluded, *Ex parte Young* plainly renders Defendants' claims of sovereign immunity meritless. Unable to contest that determination by the district court on the law, Defendants attempt to mask factual arguments about their Purge Program as legal ones.

Under *Ex parte Young*, "official-capacity suits seeking prospective relief for federal-law violations do not implicate sovereign immunity." *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 434 (4th Cir. 2025). Neither do suits against state officials who, "by virtue of [their] office, ha[ve] some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908). Because Plaintiffs have alleged that the Purge Program constitutes an ongoing violation of federal law for which they seek prospective relief, and because the Attorney General is responsible for implementing aspects of that Program, their claims fall well within the ambit of *Ex parte Young*.

"Rather than defining the nature of Eleventh Amendment immunity, *Young* and its progeny render the Amendment wholly inapplicable to a certain class of suits." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). No aspect of this suit is barred by sovereign immunity, and the Attorney General is a proper party to this litigation.

## ARGUMENT

I.  **  *Ex parte Young* applies because Plaintiffs allege an ongoing violation of federal law.**

Despite Defendants' efforts to complicate the issue, determining whether *Ex parte Young* applies to Plaintiffs' Quiet Period claim requires a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). There can be no doubt that it does.

Plaintiffs' Quiet Period claim challenges and seeks prospective relief from an ongoing Purge Program that will continue to improperly remove voters from the rolls within 90 days before every federal election until the Program is enjoined. JA60, JA66-67, JA148-150, JA248, JA258. *See Filyaw v. Corsi*, 150 F.4th 936, 945 (8th Cir. 2025) ("An ongoing violation can be shown if the very harm alleged remains likely to recur barring a change in the state's operation of the program or judicial

9

intervention.") (internal quotations omitted). As the district court found, "Defendants' program is neither a one-time event, nor have the removed voters been reinstated," and "[t]o the extent citizens were systematically removed from these rolls within 90 days of a federal election and have not been restored, reinstating these voters' registrations would be prospective relief which would cure an ongoing violation of federal law." JA149-150. "Further, a permanent injunction would prevent voters who were removed and re-registered from being removed all over again ahead of the next federal general election." JA150; *see also, e.g.*, *Coakley v. Welch*, 877 F.2d 304, 305, 307 n.2 (4th Cir. 1989) (former state employee's challenge of his termination satisfied *Ex parte Young* because loss of benefits of employment caused ongoing harm and employee requested injunctive remedy of reinstatement); *see also, e.g.*, *CSX Transp., Inc. v. Bd. of Pub. Works of State of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998).

Defendants do not rebut these findings. Rather, with another Quiet Period set to begin in March 2026, all Defendants do to suggest that their Purge Program is not "ongoing" is to gesture at the election of Governor-Elect Spanberger. Br. 35. She "may," they surmise, "revoke or supplant E.O. 35," which otherwise remains in effect. Br. 35. She "may" likewise "instruct Virginia's executive agencies to carry out Virginia Code § 24.2-427's commands differently than they have to date." *Id.*

10

And the General Assembly, "may elect to amend Virginia Code § 24.2-427 before the next quiet period in a way that affects the plaintiffs' allegations." *Id.*

None of these actions have been taken. E.O. 35 remains in effect, as does Virginia Code § 24.2-427. Any legislature "may elect to amend" a statute that violates federal law at any time, but Defendants cite no law—nor could they— indicating that this mere possibility renders *Ex parte Young* inapplicable *before* such an amendment has been made.

While Defendants accuse Plaintiffs of "conjecture" and "speculation" that the Purge Program will continue to operate, it is the potential cessation of the program, not its continuation, that is speculative. To be sure, "conjecture regarding discrete future events" does not "transform a one-time event into a continuing governmental practice or an ongoing violation." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). But this is not a one-time event. Defendants have repeatedly asserted that they have removed voters during the 90-day periods prior to federal elections for many years and election cycles. *See, e.g.*, JA273; ECF No. 122 at 2, 10. Thus, Plaintiffs challenge a longstanding and ongoing policy of violating federal law.

For this reason, Defendants' cited authority is inapposite—neither *DeBauche* nor *Allen v. Cooper* is applicable here. 191 F.3d 499; 895 F.3d 337, 354 (4th Cir. 2018). In *DeBauche*, the plaintiff, a third-party gubernatorial candidate, was excluded from a debate arranged before she qualified to be listed on the ballot. 191

F.3d at 503. She sued the president of the state university where the debate had occurred, alleging that the defendant would "hold statewide debates in the future" from which her party would again be excluded. *Id.* at 505. There was no indication that a future debate was planned, let alone that the plaintiff or her party would be excluded if one were to occur. As a result, this Court concluded that the plaintiff had not alleged an ongoing violation of her rights, but a "conjecture regarding discrete future events," so *Ex parte Young* was inapplicable. *Id.*

*Allen* likewise concerned a one-time event. The plaintiff alleged copyright infringements by North Carolina, which the state asserted (and the plaintiff admitted) had already "ceased" following a takedown notice. 895 F.3d at 345. While the plaintiff's complaint had cited the possibility that additional infringements existed, this Court held that "a general and threadbare catchall, suggesting the *possibility* of other infringing displays, does not plausibly allege the existence of an ongoing violation of federal law . . . to qualify for relief under *Ex parte Young*." *Id*. at 354-55 (emphasis in original).

By contrast, Defendants' Purge Program continues apace. Defendants' implementation of their Program is not a "discrete future event," a mere "possibility," or, as Defendants argue, a "chance." Br. 33. Rather, the Purge Program is ongoing as required by statute and executive order, and there is no indication that the Program's operation will cease in the next Quiet Period; indeed, Defendants are

12

currently vigorously defending its legality. Thus, as the district court observed, "the possibility that they will continue to operate their program is far less speculative and moves toward certainty." JA149.

Because Defendants' Purge Program *is* ongoing, the prospective relief Plaintiffs seek is meaningful, unlike that requested in *DeBauche* and *Allen*. First, Plaintiffs request a permanent injunction that will prevent Virginia's Purge Program from operating 90 days before *any* federal election. JA71. That is objectively prospective relief, since it would "prohibit Defendants from any *additional* or *future* allegedly unlawful actions." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 165 (4th Cir. 2023) (emphasis in original). Second, Plaintiffs request reinstatement for illegally purged voters, a future action that Defendants suggest is retroactive because it relates to violations that occurred in the past. Br. 37. The Fourth Circuit has explained that even where "portions" of requested injunctive relief have "retrospective characteristics," such as relying on a state defendant's "previously unlawful actions," relief sought should be considered prospective within the meaning of *Ex parte Young* where the "the true essence of the relief is prospective." *Indus. Servs. Grp.*, 68 F.4th at 165 (internal quotations omitted). Examples of such prospective relief include rescinding previously assessed regulatory citations, *id.*; reinstating wrongfully terminated employees, *Coakley*, 877 F.2d at 305; and enjoining the collection of previously assessed taxes, *CSX Transp., Inc.*, 138 F.3d at

13

541. The relief Plaintiffs seek here, including the reinstatement of wrongfully removed voters, is akin to these.

Defendants incorrectly suggest that prospective relief is impossible because the Quiet Period is not constantly in effect. "To the extent that any removals violated the [Q]uiet [P]eriod, there is no ongoing harm—and no prospective relief available," they argue, since it would not have been a Quiet Period violation to remove those voters outside of the Quiet Period. Br. 38-39. But Defendants' logic—that a violation cannot be "ongoing" within the meaning of *Ex parte Young* where the action is only barred during cyclical periods of time—makes a mockery of the doctrine. As this Court has explained, the purpose of *Ex parte Young* is "to preserve the constitutional structure established by the Supremacy Clause. Thus, it allows private citizens . . . to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). This Court should not allow Defendants' ongoing and longstanding NVRA violations to avoid the scrutiny *Ex parte Young* was designed to provide.

## II. The Attorney General is a proper party because he has the authority to enforce Defendants' Purge Program.

The district court correctly held that the Attorney General is a proper party to the lawsuit, since he "unambiguously has the authority to enforce the law or practice that Plaintiffs challenge." JA151. This easily satisfies the Fourth Circuit's

requirement that there be a "special relation between the state officer sued and the challenged statute." *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021) (citation modified). Defendants' contentions to the contrary amount to attempts to "draw the challenged action too narrowly by focusing on whether the Attorney General makes the determination to remove voters from the rolls," JA151, and to make factual arguments about the operation of the Purge Program inappropriate at this stage of litigation.

*Ex parte Young* authorizes suits against officers with "some connection with the enforcement" of a challenged law, and who "threaten and are about to commence proceedings." 209 U.S. at 156-57. In addition to detailing the "special relation" test, which assesses the officer's "connection" to the challenged law, the Fourth Circuit has explained that the "threat" requirement is "satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Doyle*, 1 F.4th at 255; *see also McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (same); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) (same). Both of these requirements are met with regard to the Attorney General.

**A.  The Attorney General satisfies the "special relation" requirement.**

The Fourth Circuit has held *Ex parte Young's* "connection" requirement is met where there is a "'special relation' between the state officer sued and the challenged

statute, which provides the officer with the authority to enforce the particular law at issue." *Doyle*, 1 F.4th at 254 (citation modified). That authority need not derive from the "particular act being challenged"; rather, it may stem from "a more general law providing enforcement authority, or 'the general duties of the officer.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 157-58). "Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).

The Attorney General indisputably has authority to enforce the challenged Purge Program, which is broader than the mere removal from the voter rolls of alleged noncitizens. Rather, as alleged, the Purge Program includes the investigation and potential prosecution of the individuals whose voter registration was cancelled. JA44. Responsibility for those actions lies with the Attorney General, who has "full authority to do whatever is necessary or appropriate to enforce the election laws or prosecute violations thereof," Va. Code § 24.2-104(A), and who may also "commence a civil action . . . for appropriate relief" "[w]henever the Attorney General has reasonable cause to believe that a violation of an election law has occurred[.]" Va. Code § 24.2-104.1. The Attorney General's authority was directly referenced in the issuance of E.O. 35. ECF No. 26-4 at 5. By contrast, neither ELECT nor local registrars may conduct investigations or commence a civil action. JA152.

Recognizing the Attorney General's enforcement authority related to the Purge Program, "Registrars and County Electoral Boards have . . . referred to Defendant Miyares for investigation and possible criminal prosecution . . . individuals whose voter registration was cancelled because of the Purge Program." JA56. And touting his own connection to enforcing the Purge Program, the Attorney General claimed credit for E.O. 35's original announced purge of 6,303 alleged noncitizens from the voter rolls. JA56.

The Attorney General's enforcement role is thus not "attenuated" at all and fulfills the Fourth Circuit's "special relation" requirement. In describing what qualifies as a "special relation," the Fourth Circuit has emphasized whether the state official has "supervisory authority" over the challenged action, *Limehouse*, 549 F.3d at 333, and whether he has the "power to make the decision about whether to bring the action," *Doyle*, 1 F.4th at 256. For example, the Fourth Circuit held that the Governor of Virginia could not be enjoined from enforcing the state's waste management practices by virtue of his "[g]eneral authority to enforce the laws of the state." *Waste Mgmt. Holdings, Inc.*, 252 F.3d at 331. By contrast, a clerk responsible for granting and denying marriage licenses had the requisite special relation to the state's marriage laws to fall within *Ex parte Young*'s exception. *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). Because the Attorney General likewise holds the

17

"power to make the decision" about whether to investigate and prosecute Virginians ensnared by the Purge Program, he is likewise a proper party to this litigation.

Unable to demonstrate that the Attorney General's role is "attenuated" from the Purge Program, Defendants again resort to mischaracterizing the Program itself. As they did below, they repeatedly refer to the "challenged actions" as only "the "removal of noncitizens" from the voter rolls. *See* Br. 12, 15, 17, 18. Were this in fact the extent of the challenged Program or all Plaintiffs sought to enjoin, the question would be a closer one.[1] But Plaintiffs here challenge and seek to enjoin the entire Purge Program, including the *Attorney General's* investigation and prosecution of wrongfully removed voters. JA44, JA72. Because Virginia law grants the Attorney General the ability to decide whether to investigate and prosecute the referrals he receives from ELECT and the registrars, he certainly has a special relation to the challenged Program.

**B.      There is sufficient threat of enforcement.**

There is sufficient threat that the Attorney General will enforce the Purge Program to support an action under *Ex parte Young*. While *Ex parte Young* provides that enforcement of the challenged law must be "threatened" for the exception to

---

[1] Defendants are correct that the Attorney General's "general authority to enforce the laws of the state" is insufficient to establish a special relationship where he is otherwise unconnected to the enforcement of the challenged law. *McBurney*, 616 F.3d at 400 (citation omitted). That is not the case here.

apply, the Fourth Circuit has "repeatedly rejected the claim that the *Ex parte Young* doctrine contains its own imminency requirement." *King v. Youngkin*, 122 F.4th 539, 544-45 (4th Cir. 2024). Rather, enforcement must merely be "threatened, even if the threat is not yet imminent." *Doyle*, 1 F.4th at 255 (citation omitted). The existence of a law that would allow for enforcement is sufficient to establish the threat of enforcement itself. *See, e.g.*, *Waste Mgmt. Holdings*, 252 F.3d at 330 (holding that a pre-enforcement challenge to Virginia law restricting the transportation of municipal solid waste was "precisely the type of case to which the *Ex parte Young* doctrine applies," even without evidence that the State had threatened to enforce the laws by actual proceeding).

The threat of the Attorney General enforcing the Purge Program by investigating and prosecuting referrals, powers which he undeniably has under the law governing the Purge Program, is therefore greater than what this Court has required to support an action under *Ex parte Young*. For example, in *King*, two plaintiffs with felony convictions sought an injunction preventing the Chair of the State Board of Elections and other State election officials from enforcing Virginia's felon disenfranchisement law, claiming it violated federal law. 122 F.4th 539. This Court observed that (1) the two plaintiffs were not qualified to vote but wished to register; (2) if the plaintiffs did file registration applications, the State defendants would have to deny their applications, *id.* at 544-45; but (3) if they did manage to

19

somehow register and vote, they would be "subject to criminal prosecution for illegal voting," *id.* at 544. While the threat of enforcement in *King* was contingent on several speculative events, this Court nonetheless found that the enforcement was sufficiently threatened to support an *Ex parte Young* action. *Id*. at 544-45. "Where, as here," it explained, "'an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.' No more is required." *Id.* at 545 (quoting *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326 (2015)).[2]

The Attorney General's threatened enforcement is substantially less speculative here where registrars and County Electoral Boards have *already* referred purged voters to the Attorney General for criminal investigation and potential prosecution. JA56. This satisfies Plaintiffs' burden at the motion to dismiss stage. Because the Attorney General has both the authority to enforce the Purge Program and there is sufficient threat that he will do so in light of pending referrals with his office, the district court correctly determined that he is not entitled to sovereign immunity.

---

[2] This level of review for assessing whether there is a sufficient threat of enforcement is consistent with the general level of review for assessing the applicability of *Ex parte Young*: "[T]o fall within the *Ex parte Young* exception, it is sufficient for Plaintiffs' suit to *allege* an ongoing violation of federal law; actually *proving* such an ongoing violation is unnecessary." *D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334, 338 (4th Cir. 2010) (emphasis in original). Requiring more would be "a merits-based argument dressed in Eleventh Amendment clothing." *Id*.

**CONCLUSION**

For the foregoing reasons, this Court should uphold the district court's determination that Defendants are not entitled to sovereign immunity on Plaintiffs' Quiet Period claim and that the Attorney General is a proper party to this suit.

Date: January 12, 2026

Respectfully submitted,

Ryan Snow
Javon Davis
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
Tel: (202) 662-8600
rsnow@lawyerscommittee.org
jdavis@lawyerscommittee.org

Orion Danjuma
John Paredes
THE PROTECT DEMOCRACY PROJECT,
INC.
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
orion.danjuma@protectdemocracy.org
john.paredes@protectdemocracy.org

Benjamin L. Berwick
THE PROTECT DEMOCRACY PROJECT,
INC.
15 Main Street, Ste. 312
Watertown, MA 02472

/s/ Katherine Hamilton
Katherine Hamilton
Danielle Lang
Brent Ferguson
Simone Leeper
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, D.C. 20005
Tel: (202) 736-2200
khamilton@campaignlegalcenter.org
dlang@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
sleeper@campaignlegalcenter.org

John Powers
Hani Mirza
ADVANCEMENT PROJECT
1220 L Street Northwest, Ste. 850
Washington, D.C. 20005
Tel: (202) 728-9557
jpowers@advancementproject.org
hmirza@advancementproject.org

Tel: (202) 579-4582
ben.berwick@protectdemocracy.org

Anna Dorman
THE PROTECT DEMOCRACY PROJECT,
INC.
200 Pennsylvania Ave. NW, Ste. #163
Washington, D.C. 20006
Tel: (202) 579-4582
anna.dorman@protectdemocracy.org

*Attorneys for Plaintiffs-Appellees
Virginia Coalition for Immigrant
Rights, the League of Women Voters of
Virginia, African Communities
Together, Rina Shaw, and Genet
Shiferaw.*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,734 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word in Times New Roman 14-point font, a proportionally spaced typeface.

/s/ Katherine Hamilton
Katherine Hamilton

**CERTIFICATE OF SERVICE**

I certify that on January 12, 2026, I electronically filed the foregoing motion with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system

/s/ Katherine Hamilton
Katherine Hamilton